**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| CASA DE MARYLAND, INC., et al, | |
| Plaintiffs, | |
| vs. | Civil Action No.: DKC-21-01778 |
| ARBOR REALTY TRUST, INC., et al, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
ARBOR REALTY TRUST, INC., ARBOR REALTY
LIMITED PARTNERSHIP, AND ARBOR REALTY SR, INC.
TO DISMISS PLAINTIFFS' COMPLAINT**

Ray D. McKenzie
**WTAII PLLC**
PO Box 609
Vienna, Virginia 22183
Telephone (202) 688-3150
Facsimile (202) 869-1882
ray.mckenzie@wtaii.com

Peter W. Tomlinson (*pro hac vice*)
Muhammad U. Faridi (*pro hac vice*)
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, New York 10036
Telephone (212) 336-2000
Facsimile (212) 336-2222
pwtomlinson@pbwt.com
mfaridi@pbwt.com

*Attorneys for Defendants Arbor Realty Trust, Inc.,
Arbor Realty Limited Partnership, and Arbor Realty
SR, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND ........................................................................................................2

      A.      The Arbor Defendants are Not Property Owners or Managers .............................3

      B.      Public Records Establish That the Arbor Defendants Do Not Own the BVS Properties.........................................................................................................4

             1.      Bedford United and Victoria United Acquire the BVS Properties, Using Mortgage Loans Made by Arbor Realty SR.....................................5

             2.      Bedford United and Victoria United Refinance Arbor Realty SR's Loans.........................................................................................................6

      C.      Plaintiffs' Improper Group Allegations Highlight the Lack of Merit in Their Claims......................................................................................................7

ARGUMENT .................................................................................................................................9

I.      PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT THE ARBOR DEFENDANTS HAVE AN INTEREST IN THE BVS PROPERTIES ..........................10

II.    THE COMPLAINT IMPROPERLY GROUPS ALL DEFENDANTS TOGETHER ......................................................................................................................13

CONCLUSION............................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Oliver*,
510 U.S. 266 (1994)................................................................................................10

*Anderson v. Fed. Deposit Ins. Corp.*,
918 F.2d 1139 (4th Cir. 1990) ...............................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................10, 13, 15

*Boykin Anchor Co. v. AT&T Corp.*,
Case No. 5:10-cv-591-FL, 2011 WL 1456388 (E.D.N.C. Apr. 14, 2011) .............14

*Brown v. JP Morgan Chase Bank, N.A.*,
No. DLB-19-3301, 2021 WL 37656 (D. Md. Jan. 5, 2021) ....................................12

*Carhartt, Inc. v. Innovative Textiles, Inc.*,
323 F. Supp. 3d 917 (E.D. Mich. 2018)..................................................................18

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
381 F. Supp. 2d 452 (D. Md. 2005) ..................................................................13, 16

*Coulibaly v. J.P. Morgan Chase Bank, N.A.*,
Case No. DKC-10-3517, 2011 WL 3476994 (D. Md. Aug. 8, 2011)......................13

*Cozzarelli v. Inspire Pharms. Inc.*,
549 F.3d 618 (4th Cir. 2008) ...................................................................................2

*Gianfredi v. Hilton Hotels Corp.*,
Case No. 08-5413 (PGS), 2010 WL 1381900 (D.N.J. Apr. 5, 2010), *Report
and Recommendation adopted by* 2010 WL 1655635 (D.N.J. Apr. 22, 2010)........ 14-15

*Harris v. Nationstar Mortg., LLC*,
Case No. CCB-19-3251, 2020 WL 4698062 (D. Md. Aug. 13, 2020) ......................4

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ..................................................................................10

*Jien v. Perdue Farms, Inc.*,
Case No. 1:19-cv-2521-SAG, 2020 WL 5544183 (D. Md. Sept. 16, 2020)............14

*Messinger v. Moore*,
  Case No. 2:21-cv-19-RAJ, 2021 WL 3514747 (E.D. Va. Aug. 10, 2021) ............................16

*Papasan v. Allain*,
  478 U.S. 265 (1986) ..................................................................................................................10

*Proctor v. Metro. Money Store Corp.*,
  579 F. Supp. 2d 724 (D. Md. 2008) ........................................................................12, 14, 15

*Revene v. Charles Cty. Comm'rs*,
  882 F.2d 870 (4th Cir. 1989) ..................................................................................................10

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) ................................................................................13, 14, 16

*Sprint Nextel Corp. v. Simple Cell, Inc.*,
  Case No. CCB-13-617, 2013 WL 3776933 (D. Md. July 17, 2013) ....................................18

*State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*,
  381 F. Supp. 3d 536 (D. Md. 2019) ......................................................................................13

*Taylor v. NationsBank, N.A.*,
  365 Md. 166 (Md. 2001) ..........................................................................................................17

*United Black Firefighters v. Hirst*,
  604 F.2d 844 (4th Cir. 1979) ..................................................................................................10

*Walsh v. Bank of N.Y. Mellon*,
  Case No. GJH-15-934, 2017 WL 239367 (D. Md. Jan. 19, 2017) ...........................................4

*Webber v. Maryland*,
  Case No. RDB-16-2249, 2017 WL 86015 (D. Md. Jan. 10, 2017) .........................................18

*Willis v. Bank of Am. Corp.*,
  Case No. ELH-13-2615, 2014 WL 3829520 (D. Md. Aug. 1, 2014) .......................................4

*Zos v. Wells Fargo Bank, N.A.*,
  Case No. GJH-16-466, 2017 WL 221787 (D. Md. Jan. 18, 2017) ...........................................4

**Statutes**

Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ..........................................................................9, 17

Md. Code, Real Prop. § 7-101(a) ................................................................................................5

Md. Code, Real Prop. § 7-103 ................................................................................................6, 12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................1, 10

Prince George's County Landlord-Tenant Regulations § 13-138(a)(7) ........................................16

Defendants Arbor Realty Trust, Inc. ("Arbor Realty Trust"), Arbor Realty Limited Partnership ("Arbor Realty Limited"), and Arbor Realty SR, Inc. ("Arbor Realty SR") (collectively, the "Arbor Defendants") respectfully move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice the Complaint filed by Plaintiffs CASA de Maryland, Inc., Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (collectively, "Plaintiffs") for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

The Complaint should be dismissed as to the Arbor Defendants because they do not currently have and never previously had any ownership interest, direct or indirect, in the two properties at issue in the lawsuit—the Bedford Station and Victoria Station apartment complexes (together, the "BVS Properties").  Moreover, the Complaint impermissibly groups all eight defendants in the lawsuit together as "Defendants" without forecasting a factual showing that each defendant is plausibly liable.  This the law does not allow.

The gravamen of the 125-page Complaint is that the "Defendants" are responsible for the living conditions at the BVS Properties.  The Arbor Defendants are certainly not.  This is because the Arbor Defendants have not held any ownership interest in the BVS Properties or their owners, and therefore they cannot be liable.  Faced with this insurmountable hurdle, Plaintiffs rely on speculation and innuendo to suggest that a link exists between the Arbor Defendants and the BVS Properties.  In so doing, they conspicuously omit that the same publicly available land records on which they rely in the Complaint also irrefutably demonstrate that any interest held by the Arbor Defendants in the BVS Properties—as a mortgage lender, and never as

1

an owner—was extinguished years ago.  Accordingly, the Court should dismiss all claims against the Arbor Defendants.

Rather than articulating a theory of how or why the Arbor Defendants exercise control over the BVS Properties, Plaintiffs take a shotgun approach to pleading facts about the alleged wrongdoing.  Throughout the Complaint, Plaintiffs group together no fewer than eight distinct legal entities, relying on monolithic references to "Arbor" or "Defendants."  The approach does not satisfy applicable pleading standards.  The law in this circuit is clear that a complaint must make factual allegations showing that each defendant is plausibly liable.  Simply put, the Complaint is a textbook example of impermissible group pleading, and the Court should reject Plaintiffs' broad-brush approach.

For these reasons, and those stated in the motion to dismiss and memorandum of law filed by Arbor Management Acquisition Company, LLC; Bedford United, LLC ("Bedford United"); Victoria United, LLC ("Victoria United"); and Hyattsville United, LLC (collectively, the "Hyattsville Defendants"), which are incorporated herein by reference, the Complaint should be dismissed in its entirety, with prejudice, as to the Arbor Defendants.[1]

## FACTUAL BACKGROUND

Plaintiffs' claims against the Arbor Defendants are premised entirely on the misguided notion that the Arbor Defendants have an indirect ownership interest in the BVS Properties. Attempting to make a connection where none exists, the Complaint relies upon cherry-picked

---

[1] The Arbor Defendants seek dismissal with prejudice because no amendment can change the fundamental fact that the Arbor Defendants have never had any ownership interest in the BVS Properties; nor have Plaintiffs even articulated a theory as to how the Arbor Defendants allegedly exercise control, let alone facts to support one.  *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (upholding dismissal with prejudice where "it is clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability").

snippets from public records, conveniently omitting the fact that the full quotes and their context demonstrate the baseless nature of Plaintiffs' claims.  Indeed, as demonstrated herein, the Arbor Defendants have **no ownership interest whatsoever** in and **do not exercise any control** over the subject properties.  This incontrovertible fact, which can be established based on public records that the Court can consider, is fatal to Plaintiffs' claims against the Arbor Defendants.

## A.  The Arbor Defendants are Not Property Owners or Managers

Large swathes of the Complaint are rooted in Plaintiffs' mistaken belief that the Arbor Defendants' main line of business is property ownership or management.  It is not.  Rather, the Arbor Defendants focus their business activities on providing financing for real estate.  Indeed, as explained *infra*, the sole connection between the Arbor Defendants and the BVS Properties is that the Arbor Defendants provided financing to the owners of the BVS Properties many years ago.  And those loans were paid off within months of having been made.

Arbor Realty Trust is a publicly-owned Maryland corporation organized to qualify as a real estate investment trust under the federal tax laws.[2]  Compl. ¶ 26 (ECF No. 1).  Arbor Realty Trust and its subsidiaries provide loans secured by multifamily, single-family rental, and commercial real property.  Its assets consist primarily of bridge and mezzanine loans.  *Id.*  To support the contention that the Arbor Defendants are owners of the BVS Properties, the Complaint misleadingly references a quote from Ivan Kaufman, the CEO of Arbor Realty Trust.[3]  Specifically, the Complaint quotes Mr. Kaufman as stating that 80% of Arbor Realty Trust's balance sheet comprises of ownership in multifamily properties.  *See id.* ¶ 57.  However, as the

_____

[2] Arbor Realty Limited and Arbor Realty SR are subsidiaries of Arbor Realty Trust.  Compl. ¶¶ 27, 29.

[3] Elsewhere in the Complaint, Plaintiffs concede—as they must—that the BVS Properties are owned by Bedford United and Victoria United, not the Arbor Defendants.  *See* Compl. ¶¶ 30, 31.

context of Mr. Kaufman's statement and the documentation filed with the Securities and

Exchange Commission demonstrate, the 80% reference was to Arbor Realty Trust's interest in

multifamily properties as a *lender*, not as an *owner* or *manager*.  *See* Ex.[4] 1 at 5 (Feb. 2020 10-

K).[5]

### B.  Public Records Establish That the Arbor Defendants Do Not Own the BVS Properties

The very Maryland land records that the Plaintiffs rely upon make clear that no Arbor

Defendant has, or has ever had, any ownership interest in the BVS Properties.[6]  While Defendant

Arbor Realty SR provided financing for the acquisition of the BVS Properties in April 2013, that

financing created only a security interest, not an ownership interest, therein.  In any event, the

loans provided by Arbor Realty SR were paid in full—and, therefore, any interest Arbor Realty

SR had in the BVS Properties was extinguished—by November 2013.

---

[4] "Ex." refers to exhibits listed in the Index of Exhibits, appended hereto.

[5] The Arbor Defendants have submitted the relevant excerpts from Ex. 1 with their motion, but can provide  Arbor Realty Trust, Inc.'s full Form 10-K dated February 2020 at the Court's request.

[6] On a motion to dismiss, the Court appropriately may take judicial notice of publicly available land records from the Maryland State Archives.  *See Zos v. Wells Fargo Bank, N.A*., Case No. GJH-16-466, 2017 WL 221787, at *1 n.2 (D. Md. Jan. 18, 2017) (taking judicial notice at pleading stage of land records as "integral" to breach of contract, civil conspiracy, and FHA claims); *see also Harris v. Nationstar Mortg., LLC*, Case No. CCB-19-3251, 2020 WL 4698062, at *2 n.1 (D. Md. Aug. 13, 2020) (taking judicial notice at pleading stage of deed of trust "which was publicly filed in Maryland's land records"); *Walsh v. Bank of N.Y. Mellon*, Case No. GJH-15-934, 2017 WL 239367, at *1 (D. Md. Jan. 19, 2017) (taking judicial notice at pleading stage of Prince George's County land records and loan assignments to show current owner of property); *Willis v. Bank of Am. Corp.*, Case No. ELH-13-2615, 2014 WL 3829520, at *2 n.6 (D. Md. Aug. 1, 2014) (taking judicial notice at pleading stage of assignment of deed of trust recorded in Baltimore City land records as a "public record").

1.  **Bedford United and Victoria United Acquire the BVS Properties, Using Mortgage Loans Made by Arbor Realty SR**

On April 10, 2013, Bedford United purchased the real property located in Prince

George's County known as the Bedford Station Apartments for approximately $25.8 million,

taking title and ownership pursuant to a deed.[7]  Ex. 2 (Bedford Station Substitute Trustees'

Deed).  Bedford United financed its purchase, in part, with a mortgage loan made by Arbor

Realty SR in the amount of approximately $23 million, which loan was secured by a purchase

money deed of trust for the property, as well as an assignment of leases and rents.  *See* Ex. 3

(Deed of Trust), Ex. 4 (Assignment of Leases and Rents); *see also* Ex. 5 (UCC Financing

Statement) (recording and perfecting security interest created by deed of trust and assignment of

leases and rents).  Under Maryland law, this deed of trust established a security interest, but did

not act to transfer ownership.  *See* Md. Code, Real Prop. § 7-101(a) ("Every deed which . . .

appears to have been intended only as security for payment of an indebtedness or performance of

an obligation, though expressed as an absolute grant[,] is considered a mortgage.").

Similarly, and on that same day, Victoria United purchased the real property located in

Prince George's County known as the Victoria Station Apartments for approximately $5.1

million, taking title and ownership pursuant to a deed.[8]  Ex. 6 (Victoria Station Substitute

Trustees' Deed).  Victoria United, too, financed its purchase, in part, with a mortgage loan made

by Arbor Realty SR in the amount of approximately $4.69 million, which loan was secured by a

purchase money deed of trust as well as an assignment of leases and rents.  *See* Ex. 7 (Deed of

---

[7] As Plaintiffs acknowledge, Bedford United owns Bedford Station to this day.  Compl. ¶ 30 ("Bedford United, LLC owns the Bedford Station Apartments.").

[8] As Plaintiffs acknowledge, Victoria United owns Victoria Station to this day.  Compl. ¶ 31 ("Victoria United, LLC owns the Victoria Station Apartments.").

Trust), Ex. 8 (Assignment of Leases and Rents); *see also* Ex. 9 (UCC Financing Statement) (recording and perfecting security interest created by deed of trust and assignment of leases and rents).

### 2.   Bedford United and Victoria United Refinance Arbor Realty SR's Loans

A few months later, the mortgage loans made by Arbor Realty SR to Bedford United and Victoria United for the acquisition of the respective BVS Properties were paid off through new financing obtained by the property-owners.  Specifically, in November 2013, Bedford United and Victoria United refinanced ***and paid off in full*** the loans made by Arbor Realty SR with a new mortgage loan by German American Capital Corporation ("GACC"), a Deutsche Bank affiliate, in the amount of $33 million.  GACC has never had had any relationship with any of the Arbor Defendants.  Like the previous loans, the GACC loan was secured by deeds of trust for the BVS Properties, as well as the assignments of leases and rents for both properties.  *See* Ex. 10 (Deed of Trust), Ex. 11 (Assignment of Leases and Rents); *see also* Ex. 12 (UCC Financing Statement) (recording and perfecting security interest created by deed of trust and assignment of leases and rents).

Thus, in November 2013, the loans made by Arbor Realty SR were paid off.  *See* Ex. 13 (Certificates of Satisfaction stating that both loans Arbor Realty SR made to Bedford United and Victoria United, respectively, "ha[ve] been fully paid and discharged.").  In other words, with its loans being paid off in full, the Arbor Defendants no longer had ***any*** interest in the BVS Properties.  *See* Md. Code, Real Prop. § 7-103 ("If the mortgage is duly released of record, the . . . debt secured by the mortgage . . . conclusively is presumed to be paid as far as any lien on the property granted by the mortgage is concerned.").

Following the refinancing transaction in November 2013, Bedford United and Victoria United refinanced the GAAC loan again, but through a lender that did not then and does not now

have any relationship with any of the Arbor Defendants.  Specifically, in September 2018, Bedford United and Victoria United obtained mortgage financing for the BVS Properties from KeyBank National Association ("KeyBank") in the amount of $52.3 million.  The KeyBank loan, like the prior loans, was secured by deeds of trust and assignments of leases of rents for the BVS Properties.  *See* Ex. 14 (Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing).  The day that the loan was originated, KeyBank assigned its interest in it to Fannie Mae.  Ex. 15 (Assignment of Security Instrument); *see also* Ex. 16 (UCC Financing Statement).

Most recently, in May 2020, Bedford United and Victoria United obtained another, subordinate mortgage loan from KeyBank in the amount of $6.5 million, which also was secured by deeds of trust and assignment of leases and rents for the BVS Properties.  Ex. 17 (Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing); *see also* Ex. 18 (UCC Financing Statement).  Again, KeyBank assigned its interest in this subordinate loan to Fannie Mae that same day.  Ex. 19 (Assignment of Security Instrument).

As the Maryland land records demonstrate, any interest that the Arbor Defendants had in the BVS Properties was extinguished in November 2013.  Since then, the Arbor Defendants have had no relationship whatsoever with the BVS Properties.

### C. Plaintiffs' Improper Group Allegations Highlight the Lack of Merit in Their Claims

In addition to selectively omitting the relevant property ownership and financing documents in the Maryland land records, the Complaint also groups practically all of the defendants together (with the sole exception of the property manager, Realty Management Services, Inc. ("RMS")) under two expansive defined terms—"Arbor" and the "Company." Plaintiffs explain that they use the collective terms "Arbor" and the "Company" to refer to the "Arbor-owned or -affiliated co-defendants[,]" stating that "[e]ach reference to Arbor in the

Complaint refers collectively to each of the co-defendants[.]"  Compl. ¶ 9 & n.1.  Plaintiffs then describe the alleged wrongdoings throughout the Complaint only by collective terms such as "Defendants" or "Arbor."  *See, e.g.*, *id.* ¶ 4 ("*Defendants'* business is to financialize, harvest, and decidedly refuse to invest in maintenance, management or renovation in the low-income and multifamily housing properties they own and manage . . . ." (emphasis added)); ¶ 138 (referring to "*Arbor's* otherwise facially neutral policies and practices regarding the targeted purchase and subsequent refusal to maintain low-income properties" (emphasis added)).  Continuing this pattern of impermissible group pleading, all claims are brought against the collective "Defendants" or "Arbor," *see* Compl. ¶¶ 224-95, except for Count VIII (breach of contract – third party intended beneficiary), which is brought only against RMS.

In fact, as to the Arbor Defendants, the Complaint is devoid of factual allegations of specific conduct they allegedly committed.  The Complaint alleges only that the Arbor Defendants are the corporate parents or part of the same corporate structure of entities of the actual owners of the properties in question, i.e., Bedford United and Victoria United.  *See, e.g.*, *id.* ¶ 26 ("Arbor Realty Trust, Inc. is the parent company and/or exerts controlling authority over . . . co-defendants and subsidiaries").  Without providing any factual support, Plaintiffs allege that Bedford United and Victoria United are "owned and controlled by Arbor Realty Trust, Inc. and its subsidiaries"; in the same breath, Plaintiffs concede that the properties themselves are not owned by any Arbor Defendant, but rather by Bedford United and Victoria United.  *Id.* ¶¶ 30-31.  Moreover, the Complaint goes on to state that the properties' owners were only "partially disclosed" to them, *id.* ¶ 261, only further demonstrating that Plaintiffs are grasping at straws in

their attempt to hold the Arbor Defendants liable for the alleged acts of the BVS Properties' owners.[9]

Plaintiffs assert more than 300 paragraphs (inclusive of subparagraphs) of allegations in their 125-page Complaint, including a total of nine causes of action, eight of which are made against all "Defendants," thus including the Arbor Defendants.  They are: Counts I, II, III, and IV for assorted violations of the Fair Housing Act, Count V for injunctive relief, Count VI for breach of contract, Count VII for breach of the implied warranty of habitability, and Count IX for civil conspiracy.[10]  *See* Compl. ¶¶ 224-95.  Nowhere does the Complaint explain which specific allegation applies to the Arbor Defendants.  This is not surprising, given the established fact that the Arbor Defendants were—at most—prior mortgage lenders, who ceased to have any interest in the properties eight years ago.

## ARGUMENT

The Complaint should be dismissed as to the Arbor Defendants for two independent reasons.  First, it fails to allege plausibly that the Arbor Defendants have an interest—direct or indirect, ownership or otherwise—in the BVS Properties, the predicate for any liability under each of the claims asserted by Plaintiffs.  Second, the Complaint improperly lumps all defendants together without delineating the specific allegation against each of them.

---

[9] The Complaint cites Arbor Realty Trust's SEC filings for a list of its "significant subsidiaries." Compl. ¶ 68.  However, that list does not include any defendant other than the Arbor Defendants. *Id.*  It certainly does not include any of the Hyattsville Defendants.  *Id.*  Plaintiffs conveniently omit this fact from their Complaint.

[10] As mentioned previously, Count VIII, for breach of contract for a third-party intended beneficiary, is the only claim not brought against all of the "Defendants" and is asserted solely against RMS.

# I. Plaintiffs Do Not Plausibly Allege That the Arbor Defendants Have an Interest in the BVS Properties

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; instead, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Although when making its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999), the Court need not accept unsupported legal allegations, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

Here, Plaintiffs' claims against the Arbor Defendants are predicated on the notion that the Arbor Defendants have an indirect ownership interest in the BVS Properties or in their owners. However, public records of the type that the Court may take judicial notice of on a motion to

dismiss make clear that whatever limited interest the Arbor Defendants had in the BVS Properties as a lender—and never as an owner—was extinguished years ago.

Though stuffed to the gills with unsupported legal conclusions, the Complaint is devoid of facts tying the Arbor Defendants to the BVS Properties.  The only concrete piece of evidence that Plaintiffs allege is that Bedford United and Victoria United made assignments of leases and rents to Arbor Realty SR, which assignments Plaintiffs seem to demonstrate an ownership interest in the BVS Properties, Compl. at ¶¶ 111-12; indeed, the entire basis for the allegations against the Arbor Defendants hinges on this allegation.  But the very records upon which Plaintiffs rely demonstrate that shortly after those assignments, the leases and rents were assigned to other, non-Arbor-Defendant entities:

- In April 2013, Arbor Realty SR provided mortgages to Bedford United and Victoria United for their respective purchases of the BVS Properties, and received assignments of leases and rents in connection therewith.  *See* pp. 4-5, *supra*.

- On November 13, 2013, Bedford United and Victoria United paid off in full the loans made by Arbor Realty SR by obtaining a new mortgage loan from GACC.  *See* p. 5, *supra*.

- Thereafter, the GACC loan was refinanced by a loan from KeyBank, which loan was assigned to Fannie Mae.  *See* pp. 5-6, *supra*.

Plaintiffs take a head-in-the-sand approach to this irrefutable transactional history, but the upshot is clear:  Arbor Realty SR provided mortgages to the BVS Properties for seven months in 2013, and that is the **sole** interest that **any** Arbor Defendant ever had in those properties.  Once those mortgages were refinanced, GACC replaced Arbor Realty SR as the lender to Bedford United and Victoria United, and Arbor Realty SR **no longer had any interest as a lender in**

*either property*.  *See* Md. Code, Real Prop. § 7-103 ("If the mortgage is duly released of record, the . . . debt secured by the mortgage . . . conclusively is presumed to be paid as far as any lien on the property granted by the mortgage is concerned.").  And, as the publicly available land records demonstrate, after those loans were paid off, none of the Arbor Defendants have ever provided any financing for either BVS Property.

Moreover, Plaintiffs themselves concede that the BVS Properties are owned, respectively, by Bedford United and Victoria United.  Compl. ¶¶ 30-31.  And, importantly, they concede that they do not know the identity of the entities that own or control Bedford United and Victoria United.  *Id.* ¶¶ 103, 261.  Indeed, they have failed to articulate any facts showing that any of the Arbor Defendants own and/or otherwise control Bedford United and Victoria United, nor can they: according to publicly available SEC filings that Plaintiffs themselves recite, there is no such relationship.  *See* Compl. ¶¶ 68, 70 (referencing SEC filings, but failing to connect any Arbor Defendants to any of the Hyattsville Defendants in those references).  To the extent Plaintiffs' claim hinges upon the notion that the Arbor Defendants somehow control Bedford United and Victoria United, they have not pled any facts, let alone plausible facts, to support such a contention.  *See Brown v. JP Morgan Chase Bank, N.A.*, No. DLB-19-3301, 2021 WL 37656, at *3 (D. Md. Jan. 5, 2021) (granting motion to dismiss, in part because allegations that the defendant "owned, controlled, and managed" a piece of real property, without explaining how such control was exercised, were "mere conclusory statements"); *see also Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 744 (D. Md. 2008) (the "lone specific allegation" that one defendant "supervised" the activities of another was "vague, speculative, and ultimately conclusory, making no specific factual allegations as to how [that defendant] was 'involved'").

Plaintiffs' contention as to the ownership of the BVS Properties is also belied by the

Arbor Defendants' and the Hyattsville Defendants' corporate disclosure forms, which the Court

may take judicial notice of at the current juncture.  *See Anderson v. Fed. Deposit Ins. Corp.,* 918

F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial

notice of its own records"); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.,* 381 F.

Supp. 3d 536, 573 (D. Md. 2019) (relying on and taking judicial notice of defendants' corporate

disclosure statements for purposes of recognizing parent-subsidiary structure and applying intra-

corporate immunity doctrine to dismiss civil conspiracy claim alleged against parent and wholly-

owned subsidiary (citing *Anderson*)).  The corporate disclosure documents filed

contemporaneously with the Arbor Defendants' and the Hyattsville Defendants' motions to

dismiss, respectively, indicate that the Arbor Defendants do not own, directly or indirectly, the

BVS Properties, nor do they have any ownership interest in the entities that own these properties.

"If the 'bare allegations of the complaint' conflict with exhibits or other properly considered

documents, then 'the exhibits or documents prevail.'"  *Coulibaly v. J.P. Morgan Chase Bank,*

*N.A.*, Case No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) (quoting *Fare*

*Deals Ltd. v. World choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001)).[11]

## II.  The Complaint Improperly Groups All Defendants Together

Under *Twombly*, a plaintiff may not rely on "indeterminate assertions against all

defendants," but instead must include specific allegations of each defendant's actions.  *SD3, LLC*

---

[11] Similarly, the Complaint focuses on ten properties allegedly "purchased" and acquired by "Arbor" within the DC-VA-MD HUD Metro FMR Area that includes Prince George's County. Compl. ¶¶ 107-110.  However, as with the allegations regarding the BVS Properties, the Complaint provides no indication—and there is none—that any Arbor Defendant actually purchased or had any ownership interest in any of these properties during the time period alleged in the Complaint.

*v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422-23 (4th Cir. 2015); *see also Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (holding that a general allegation that all "Defendants" had manufactured and distributed the allegedly-infringing product was insufficient because it "fail[ed] to delineate the particular acts of infringement attributable to each Defendant"). The "complaint must forecast [a] factual showing [that each defendant is plausibly liable], and if it fails to allege particular facts against a particular defendant, then the defendant must be dismissed." *SD3,* 801 F.3d at 422.

Indeed, the Complaint must allege specific facts to establish a corporate affiliation—such as a parent-subsidiary relationship—between allegedly related defendants. *See id.* at 423 (holding that allegation that related corporate subsidiaries were "dominated by" their corporate parents was insufficient to state a claim against the parent entities, without more specific allegations describing those entities' alleged involvement); *see also Boykin Anchor Co. v. AT&T Corp.*, Case No. 5:10-cv-591-FL, 2011 WL 1456388, at *3-4 (E.D.N.C. Apr. 14, 2011) (rejecting plaintiff's "attempts to treat all defendants as one 'corporate family'" because, without detailed allegations of each entity's individual involvement, parent corporations are *not* automatically liable for acts of their subsidiaries); *Jien v. Perdue Farms, Inc.*, Case No. 1:19-cv-2521-SAG, 2020 WL 5544183, *4 (D. Md. Sept. 16, 2020) (holding that, without "any factual allegations linking each distinct subsidiary to the conspiracy, the Amended Complaint fails to sufficiently state a claim against those entities").

Bare and unsupported allegations that one defendant "owned," "controlled," "supervised," or generally was involved in actions attributed to another defendant are not sufficient to meet the pleading standard. *Proctor*, 579 F. Supp. 2d at 744 ; *see also Gianfredi v. Hilton Hotels Corp.*, Case No. 08-5413 (PGS), 2010 WL 1381900, at *8 (D.N.J. Apr. 5, 2010)

(holding that the vague allegation of a corporate parent's "ownership interest in the 'brand'"
failed to state a claim against that entity, where plaintiffs otherwise "fail[ed] to delineate
amongst the parties, merely referring to 'Defendants' as a collective unit"), *Report and
Recommendation adopted by* 2010 WL 1655635 (D.N.J. Apr. 22, 2010).

Here, by grouping the Arbor Defendants together with other defendants, the Complaint
fails to state a plausible claim for relief against each of the individual Arbor Defendants as the
controlling pleading standards require.  Plaintiffs cannot simply throw all defendants together in
a single defined term, thus crafting from whole cloth an "entity," and then proceed to lob each
and every allegation against this fictional "entity."  *See Proctor*, 579 F. Supp. 2d at 744 ("At
worst, the repeated refrain that all three individuals committed each and every act must be read
as an allegation that *one of the three* did each act, an assertion that amounts to speculation and
which is deficient under *Twombly*." (emphasis in original)).  "The Court cannot permit Plaintiffs
to go forward on a claim based on factual allegations in which basic questions of who did what
are completely unclear."  *Id.* at 744.

Plaintiffs make no effort to hide their shotgun pleading tactics. The Complaint at its
outset declares that "Arbor Realty Trust, Inc. and its subsidiaries" are "referred to hereinafter
*collectively* with the Arbor-owned or -affiliated co-defendants as 'Arbor' or 'the Company'" and
"[e]ach reference to Arbor . . . refers *collectively* to each of the co-defendants . . . ."  Compl. ¶ 9,
n.1 (emphasis added).  This approach pervades the Complaint, and Plaintiffs use not only the
collective terms "Arbor" or "the Company" but also, at various points, the group terms
"Defendants" and "Arbor Defendants."  *See, e.g.*, *id.* ¶ 4 ("Defendants' business is to
financialize, harvest, and decidedly refuse to invest in maintenance, management or renovation
in the low-income and multifamily housing properties they own and manage in the State of

Maryland and across the United States."), ¶ 5 (same, referring to conduct of "Defendants"), ¶

284 ("The Arbor Defendants and Ross entered into a contract for the maintenance and

management of the property.").  Such "indeterminate assertions" against collective groups of

defendants are insufficient to state a claim.  *SD3, LLC*, 801 F.3d at 422.

Moreover, the Complaint describes various policies purportedly instituted by certain

"Arbor" entities, but never describes which entities allegedly enacted these policies.  *See*

*generally* Compl. ¶¶ 138-85.  For instance, the Complaint criticizes what it alleges was

"Arbor's" response to tenants at the BVS Properties and "Arbor['s]" "neglect" of those

properties.  *See* Compl. ¶ 189.  But it does not specify which defendant, and it fails to grapple

with the undisputable fact that none of the Arbor Defendants owns (either directly or indirectly)

or maintains those properties.  This textbook example of impermissible group pleading leaves the

Arbor Defendants guessing as to which allegations actually apply to them and how.  By lumping

defendants together and "fail[ing] to delineate the particular acts . . . attributable to each

Defendant," the Complaint fails to inform those defendants of the nature of the claims against

them and to provide sufficient information to defend against those claims.  *Classen*, 381 F. Supp.

2d 452, 455; *see also Messinger v. Moore*, Case No. 2:21-cv-19-RAJ, 2021 WL 3514747, at *13

(E.D. Va. Aug. 10, 2021).

That the catch-all groupings used in the Complaint cannot plausibly make the same

factual allegations against all "Defendants" is illustrated by even a cursory examination of

Plaintiffs' claims.  For example, Count VII (breach of the implied warranty of habitability)

alleges that all "Defendants" violated Prince George's County's Landlord-Tenant Code by

failing to maintain the subject properties.  *See* Compl. ¶¶ 274-75.  But this statute applies only to

a landlord, which is defined statutorily as "the legal and equitable owner[] of a property."  *See*

Prince George's County Landlord-Tenant Regulations § 13-138(a)(7).  By its own terms, then, the provisions of the statute do not apply to any non-owner, like the Arbor Defendants. Undeterred by such legal niceties, the Complaint nevertheless asserts Count VII against "all Defendants," despite conceding explicitly that the Arbor Defendants are not the owners of the BVS Properties.  *See* Compl. ¶¶ 30-31.[12]  Thus, the collective term "Defendants," as used in Count VII, does not and cannot plausibly include the Arbor Defendants—and similarly, the term as it is used elsewhere in the Complaint also cannot plausibly include these entities.  Nor do Plaintiffs' other claims, including their Fair Housing Act claims, fare any better; each claim impermissibly lumps distinct entities together under the collective group of "Defendants" or "Arbor."  This approach is forbidden by applicable law.

Similarly, Count VI of the Complaint, which asserts a breach of contract claim against all "Defendants," further demonstrates the improper nature of Plaintiffs' lumping of the Arbor Defendants along with the other defendants.  For a contract to be breached, there must be a valid and legal contract between the plaintiff and the defendant.  *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (Md. 2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.").  But Plaintiffs fail to state a claim for breach of contract against any of the Arbor Defendants.  There are no facts alleged in the Complaint suggesting, let alone plausibly establishing, contractual privity between any Plaintiff and any Arbor Defendant.[13]  Instead,

---

[12] Indeed, Plaintiffs take facially inconsistent positions on the dispositive issue of ownership of the BVS Properties, which warrants dismissal.  Plaintiffs concede that the Arbor Defendants do not own the BVS properties (*see* Compl. ¶¶ 30-31) while also suggesting at other points that the Arbor Defendants are the owners of the BVS Properties (*see* Compl. ¶ 57).

[13] Nor does the Complaint contain sufficient facts alleging contractual privity between Plaintiffs and the Hyattsville Defendants.  *See* Hyattsville Defs. Mem. of L., ECF No. 30-1 at 30-33.

Plaintiffs concede that they entered into leases with a separate entity, RMS as agent for the owner of the BVS Properties—whom Plaintiffs allege is Bedford United and Victoria United, respectively.  Compl. ¶ 261.  This will not do, because "Maryland law requires that a plaintiff alleging a breach of contract must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant."  *Sprint Nextel Corp. v. Simple Cell, Inc.*, Case No. CCB-13-617, 2013 WL 3776933, at *3 (D. Md. July 17, 2013) (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012)).  There are no allegations that any of the Arbor Defendants entered into leases with Plaintiffs, and therefore, Plaintiffs' conclusory guesswork fails to state a claim for breach of contract.  *See Sprint Nextel Corp.*, 2013 WL3776933 at *2 ("[N]o set of conclusory magic words will save a deficiently pled claim[.]"); *see also Webber v. Maryland*, Case No. RDB-16-2249, 2017 WL 86015, at *4 (D. Md. Jan. 10, 2017) (dismissing breach of contract claims that "lack factual enhancement and merely offer labels, conclusions, and formulaic recitations of elements that fall below the minimum pleading standard"); *Carhartt, Inc. v. Innovative Textiles, Inc.*, 323 F. Supp. 3d 917, 922-23 (E.D. Mich. 2018) (dismissing breach of contract claim that failed to allege the existence of a contract between the parties or "state what the contract required" of each party, because the allegations contained only "a formulaic recitation of the elements of a cause of action for breach of contract") (quoting *Twombly*, 550 U.S. at 555).

## CONCLUSION

Plaintiffs' Complaint is premised on implausible and conclusory statements about the Arbor Defendants' relationship not only to the BVS Properties, but also to the other defendants. None of the Arbor Defendants have ever had any ownership interest in the BVS Properties, and any interest Arbor Realty SR previously had as a lender relinquished almost a decade ago. Further, Plaintiffs' allegations and claims group all defendants as one, improperly painting all defendants with one brush.  The Complaint should be dismissed, in its entirety, with prejudice, for the reasons set forth herein and in the motion to dismiss and memorandum in support filed by the Hyattsville Defendants, which is incorporated herein by reference.


Dated:  December 20, 2021

Respectfully submitted,


By: ___/s/ *Ray D. McKenzie*_____
Ray D. McKenzie (Bar No. 21069)
WTAII PLLC
1600 Wilson Blvd., Suite 201
Arlington, VA 22209
Telephone (202) 688-3150
ray.mckenzie@wtaii.com

Peter W. Tomlinson (*pro hac vice*)
Muhammad U. Faridi (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York  10036
Telephone (212) 336-2000
Facsimile (212) 336-2222
pwtomlinson@pbwt.com
mfaridi@pbwt.com

*Attorneys for Defendants Arbor Realty
Trust, Inc.; Arbor Realty Limited
Partnership; and Arbor Realty SR, Inc.*

## INDEX OF EXHIBITS

| EXHIBIT | DOCUMENT(S) |
|---|---|
| 1 | Excerpts from 2020 Form 10-K for Arbor Realty Trust, Inc., filed on February 14, 2020 |
| 2 | Bedford Station Substitute Trustees' Deed, dated April 10, 2013 |
| 3 | Purchase Money Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing between Bedford United, LLC and Susan E. Milne, Esq. for Arbor Realty SR, Inc., dated April 10, 2013 |
| 4 | Assignment of Leases and Rents, Bedford United, LLC to Arbor Realty SR, Inc., dated April 10, 2013 |
| 5 | UCC Financing Statement – Bedford United, LLC in favor of Arbor Realty SR, Inc., recorded on April 12, 2013 |
| 6 | Victoria Station Substitute Trustees' Deed, dated April 10, 2013 |
| 7 | Purchase Money Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing between Victoria United, LLC and Susan E. Milne, Esq. for Arbor Realty SR, Inc., dated April 10, 2013 |
| 8 | Assignment of Leases and Rents, Victoria United, LLC to Arbor Realty SR, Inc., dated April 10, 2013 |
| 9 | UCC Financing Statement – Victoria United, LLC in favor of Arbor Realty SR, Inc., recorded on April 12, 2013 |
| 10 | Deed of Trust, Assignment of Leases and Rents and Security Agreement by Bedford United, LLC and Victoria United, LLC to Terrence M. Sullivan and Thomas D. Gibbons for the benefit of German American Capital Corporation, dated November 13, 2013 |
| 11 | Assignment of Leases and Rents, Bedford United, LLC to German American Capital Corporation, dated November 13, 2013 |
| 12 | UCC Financing Statement – Bedford United, LLC and Victoria United, LLC, in favor of German American Capital Corporation, recorded on November 26, 2013 |

| EXHIBIT | DOCUMENT(S) |
|---|---|
| 13 | Certificate of Satisfaction – Bedford United, LLC, dated November 13, 2013, and Certificate of Satisfaction – Victoria United, LLC, dated September 5, 2014 |
| 14 | Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing by Bedford United, LLC and Victoria United, LLC to Brian J. Iwashyna for the benefit of KeyBank National Association, dated September 28, 2018 |
| 15 | Assignment of Security Instrument, dated September 28, 2018 – KeyBank National Association transfers to Fannie Mae the Multifamily Deed of Trust entered into by Bedford United, LLC and Victoria United, LLC |
| 16 | UCC Financing Statement – Bedford United, LLC and Victoria United, LLC, in favor of Fannie Mae, recorded on October 3, 2018 |
| 17 | Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (Maryland) by Bedford United, LLC and Victoria United, LLC to Brian J. Iwashyna for the benefit of KeyBank National Association, dated May 20, 2020 |
| 18 | UCC Financing Statement – Bedford United, LLC and Victoria United, LLC, in favor of Fannie Mae, recorded on June 1, 2020 |
| 19 | Assignment of Security Instrument – KeyBank National Association transfers to Fannie Mae the Multifamily Deed of Trust entered into by Bedford United, LLC and Victoria United, LLC, dated April 23, 2020 |