IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CASA DE MARYLAND, INC., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 8:21-cv-01778-CBD |
| | ) | |
| ARBOR REALTY TRUST, INC. et al. | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## DEFENDANT REALTY MANAGEMENT SERVICES, INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

AND NOW, comes Defendant Realty Management Services, Inc., ("Defendant" or "RMS") by and through its counsel, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., and hereby files its Opening Brief in Support of its Motion to Dismiss Plaintiffs' Class Action Complaint.

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

*/s/ Megan T. Mantzavinos*
Megan T. Mantzavinos, Esquire (Bar #: 16416)
mmantzavinos@moodklaw.com
600 Baltimore Avenue, #305
Towson, Maryland  21204
(410) 339-6880
*Attorney for Defendant, Realty Management Services, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... iii

I.     PRELIMINARY STATEMENT .............................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND............................................. 1

III.   STANDARD OF REVIEW ...................................................................................... 4

IV.    ARGUMENT............................................................................................................. 6

    A.   COUNT I FAILS AS THERE ARE NO ALLEGATIONS THAT RMS
        INTENTIONALLY DISCRIMINATED AGAINST ANY PROTECTED CLASS
        IN PROSECUTING EVICTIONS, AND ATTACKING THE JUSTIFICATION
        FOR THE EVICTIONS VIOLATES ROOKER-FELDMAN ..................................... 6

        1.   The Complaint fails to allege that RMS' evictions were prosecuted because
            of race or national origin......................................................................................... 6

        2.   The *Rooker-Feldman* Doctrine precludes this Court from collaterally attacking
            state court approved evictions by arguing that the evictions were violations of
            the FHA.................................................................................................................... 8

    B.   COUNT II FAILS TO STATE AN ACTIONABLE CLAIM AS TO RMS ................ 8

        1.   The Complaint identifies no valid FHA claim against RMS, as there are no
            challenges to any of its policies. .............................................................................. 8

    C.   COUNT III'S PERPETUATION OF SEGREGATION VIOLATION AGAINST
        RMS IS BOTH FACTUALLY AND LEGALLY INSUFFICIENT......................... 11

    D.   COUNT IV FAILS AS TO RMS BECAUSE IT CONTAINS NO SPECIFIC
        REFERENCE TO IT................................................................................................ 12

    E.   PLAINTIFFS' INJUNCTIVE RELIEF REQUEST FAILS BECAUSE NO RELIEF
        COULD APPLY TO RMS ....................................................................................... 14

    F.   PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS TO RMS BECAUSE
        OF RMS' ALLEGED AGENT STATUS................................................................. 14

    G.   PLAINTIFFS' BREACH OF THE IMPLIED WARRANTY OF HABITABILITY
        AS A STAND-ALONE CAUSE OF ACTION IS IMPROPER AS A MATTER OF
        LAW ........................................................................................................................ 17

    H.   PLAINTIFFS' THIRD PARTY INTENDED BENEFICIARY CLAIMS AGAINST
        RMS FAIL DUE TO LACK OF STANDING .......................................................... 18

        1.   Plaintiffs Lack Standing to Assert a Claim Against RMS for Breach of the
            Property Management Agreement. .......................................................................... 18

    I.   PLAINTIFFS' CIVIL CONSPIRACY CLAIMS ARE INSUFFICIENTLY
        PLED...................................................................................................................... 23

        1.   The Complaint alleges that RMS performed all of its actions as the agent of the
            BVS Owners and, therefore, the civil conspiracy claim fails............................... 25

2.    The Complaint does not sufficiently allege any agreement between RMS and any party to perform an unlawful act ........................................................................... 26

J.    PLAINTIFFS FAIL TO MEET THE REQUISITE STANDARDS OF FED. R. CIV. P. 23 ..................................................................................................... 27

1.    Plaintiffs Fail to Define a Potentially Certifiable Class They Might be Deemed to Represent ............................................................................................. 28

2.    Plaintiffs Fail to Establish Themselves as Sufficiently Representative of Either Class They Seek to Certify .................................................................................... 29

V.   CONCLUSION ...................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*120 West Fayette*, 426 Md. at 35-36 ...............................................................................................23

*Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*,
  336 Md. 635, 650 A.2d 260 (Md.1994)....................................................................................24

*Arthur v. City of Toledo, Ohio*,
  782 F.2d 565 (6th Cir.1986) ....................................................................................................11

*Arthur v. Ticor Title Ins. Co. of Fla.*,
  No. CIV. AMD 07-1737, 2008 WL 7854915 (D. Md. Mar. 11, 2008), <u>aff'd,</u>
  569 F.3d 154 (4th Cir. 2009) ...................................................................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................4, 5

*Austin v. Lakeview Loan Servicing, LLC*,
  No. CV RDB-20-1296, 2020 WL 7256564 (D. Md. Dec. 10, 2020) ......................................14

*Babalola v. B.Y. Equities, Inc.*,
  63 F. App'x 534 (2d Cir. 2003).................................................................................................8

*Baker v. Montgomery Cty*,
  201 Md. App. 642 (2011) ........................................................................................................18

*Barger v. Elite Mgmt. Servs.*,
  2018-Ohio-3755, 119 N.E.3d 953 (Ct. App.) .........................................................................23

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2009)................................................................................................4, 5, 16, 26

*Benik v. Hatcher*,
  358 Md. 507 (2000) (Cathell, J., dissenting) .........................................................................17

*Boykin v. Gray*,
  895 F. Supp. 2d 199 (D.D.C. 2012), *aff'd sub nom. Boykin v. Fenty,* 650 F.
  App'x 42 (D.C. Cir. 2016).......................................................................................................11

*Bray v. Alexandria Women's Health Clinic*,
  506 U.S. 263, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993)...........................................................27

*Calomiris v. Woods*,
  353 Md. 425 (1999) .................................................................................................................20

*Carpenters v. Scott*,
     463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)..........................................................27

*Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.*,
     53 Md.App. 379, 454 A.2d 367 (Md.Ct.Spec.App.1983).......................................................24

*Century Campus Hous. Mgmt., L.P. v. Elda Hana, LLC*,
     141 Haw. 383, 409 P.3d 787 (Ct. App. 2018) ........................................................................23

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*,
     794 F. Supp. 2d 602 (D. Md. 2011)..........................................................................................5

*Condo. Ass'n of Unit Owners v. Daystar Sills, Inc.*,
     No. N15C-01-108 WCC CCLD, 2015 Del. Super. LEXIS 587, at *11-12
     (Super. Ct. Oct. 28, 2015)........................................................................................................23

*CR-RSC Tower I, LLC v. RSC Tower 1, LLC*,
     429 Md. 387 (2012) .....................................................................................................21, 22, 24

*CR-RSC Tower I, LLC v. RSC Tower I, LLC*,
     202 Md. App. 307 (2011) ....................................................................................................20, 21

*Crosee v. Callis*,
     265 Md. 65, 282 A.2d 86 (1971) ........................................................................................15, 16

*Curtis G. Testerman Co. v. Buck*,
     340 Md. 569, 667 A.2d 649 (1995) .....................................................................................15, 16

*Decohen v. Abbasi*,
     LLC, No. CIV. WDQ-10-3157, 2011 WL 3438625 (D. Md. July 26, 2011),
     *vacated in part on other grounds sub nom. Decohen v. Cap. One, N.A.,* 703
     F.3d 216 (4th Cir. 2012) ..........................................................................................................26

*Dickerson v. Longoria*,
     414 Md. 419 (2010) .................................................................................................................19

*District of Columbia Court of Appeal v. Feldman*,
     460 U.S. 462 (1983)...................................................................................................................8

*Fraidin v. Weitzman*,
     93 Md. App. 168, 611 A.2d 1046 (1992)...........................................................................24, 25

*Gao v. Progressive Max Ins. Co*,
     2019 Md. App. LEXIS 321 (2019)..........................................................................................23

*Garrison v. McCormick & Co.*,
     2010 U.S. Dist. LEXIS 64920 (D. Md. June 30, 2010)............................................................6

*Giacomelli*, 588 F.3d at 194-97 ....................................................................................................5

*Glassman*, 628 F.3d at 145-50; ....................................................................................................5

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) ...................................................................................................19

*Goldberg v. Mayor & City Council of Baltimore*,
  791 F.3d 500 (4th Cir. 2015) ....................................................................................................5

*Graoch Associates # 33, L.P. v. Louisville/Jefferson County Metro Human
  Relations Comm'n*,
  508 F.3d 366 (6th Cir.2007) ...................................................................................................11

*Gray-Koyier v. Gladding Chevrolet, Inc.*,
  2017 U.S. Dist. LEXIS 179069 (D. Md. Oct. 30, 2017)............................................................5

*Greenacre Props. v. Rao*,
  933 So. 2d 19, 31 Fla. L. Weekly 1223 (Dist. Ct. App. 2006) ................................................23

*Griffin v. Breckenridge*,
  403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)................................................................27

*Hallmark Developers, Inc. v. Fulton County, Ga.*,
  466 F.3d at 1286 .......................................................................................................................11

*Hardaway v. Equity Residential Servs., LLC*,
  2015 WL 858086 ......................................................................................................................13

*Harnish v. Herald–Mail Co.*,
  264 Md. 326, 286 A.2d 146 (1972) ..........................................................................................25

*Hill v. Brush Eng'g Materials, Inc.*,
  383 F.Supp.2d (D.Md.2005)......................................................................................................24

*Hill v. Cty. Concrete Co.*,
  108 Md. App. 527, 672 A.2d 667 (1996)...................................................................................14

*Huntington Branch, NAACP v. Town of Huntington*,
  844 F.2d at 937 .........................................................................................................................11

*Lema v. Bank of Am., N.A.*
  375 Md. 625 (2003) ..................................................................................................................20

*Lemus v. Cookscreek 255, LLC*,
  No. 05-17-01085-CV, 2018 Tex. App. LEXIS 9836 (Tex. App. Nov. 30,
  2018) .........................................................................................................................................23

*Little v. Union Tr. Co.*,
    45 Md. App. 178 (1980) ...................................................................................................21, 22

*Lloyd v. Gen. Motors Corp.*,
    397 Md. 108, 916 A.2d 257 (2007) .........................................................................................24

*Lovell Land, Inc. v. State Highway Admin.*,
    408 Md. 242 (2009) ............................................................................................................19, 21

*Luber v. Anne Arundel Cty.*,
    No. CIV.A. RDB-11-237, 2011 WL 8129826 (D. Md. July 12, 2011), *aff'd*
    sub nom. *Luber v. Anne Arundel Cty. Maryland,* 461 F. App'x 321 (4th Cir.
    2012) ....................................................................................................................................24, 26

*Marlboro Shirt Co. v. Am. Dist. Tel. Co.*,
    196 Md. 565 (1951) ...................................................................................................................22

*Marmott v. Maryland Lumber Co.*,
    807 F.2d 1180 (4th Cir.1986) *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96
    L.Ed.2d 700 (1987) ...................................................................................................................25

*Metropolitan Housing Development Corp. v. Village of Arlington Heights*,
    558 F.2d at 1290 .......................................................................................................................11

*Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*,
    639 F.2d 1073 (4th Cir.1981) ..................................................................................................24

*Nat'l Fair Hous. All. v. Bank of Am., N.A.*,
    401 F. Supp. 3d 619 (D. Md. 2019) ........................................................................................10

*Nerenhausen v. Washco Mgmt. Corp.*,
    2017 U.S. Dist. LEXIS 59426 (D. Md. Apr. 18, 2017) ..........................................................17

*Novak v. Cmty. Living Servs.*,
    No. 340414, 2019 Mich. App. LEXIS 287 (Ct. App. Feb. 19, 2019).....................................23

*Parlette v. Parlette*,
    88 Md. App. 628 (1991) ...........................................................................................................23

*Phillips v. Pitt Cnty. Mem'l Hosp.*,
    572 F.3d 176 (4th Cir. 2009) .....................................................................................................6

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
    903 F.3d 415 (4th Cir. 2018) .....................................................................................................9

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923)....................................................................................................................8

*Scharpenberg v. Carrington*,
    686 F. Supp. 2d 655 (E.D. Va. 2010) ......................................................................................26

*Sears Roebuck & Co. v. W/S Lebanon LLC*,
    No. 14-cv-422-JL, 2017 U.S. Dist. LEXIS 143902 (D.N.H. Sep. 6, 2017) ...........................23

*Shillman v. Hobstetter*,
    249 Md. 678 (1968) ................................................................................................................24

*Sugarloaf Citizens Ass'n, Inc. v. Gudis*,
    78 Md .App. 550, 552-53, 560 (1989), *aff'd on other grounds,* 319 Md. 558
    (1990)......................................................................................................................................18

*Sy-Lene of Wash., Inc. v. Starwood Urban Retail II*,
    376 Md. 157 (2003) ................................................................................................................20

*Syriani v. Gebhart*,
    195 Md. 69, 72 A.2d 766 (1950) ............................................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)........................................................19

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
    576 U.S. 519, 135 S. Ct. 2507, 192 L. Ed. 2d 514 (2015)..............................................7, 9, 10

*United States v. Mitchell*,
    580 F.2d 789 (5th Cir. 1978) ..................................................................................................12

*Volcjak v. Wash. Cty. Hosp. Ass'n*,
    124 Md. App. 481 (1999) ........................................................................................................20

*Walker v. City of Lakewood*,
    272 F.3d 1114 (9th Cir. 2001) ................................................................................................13

*Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.*,
    109 F.Supp.2d 424 (D.Md.2000)............................................................................................24

**Statutes**

42 U.S.C. §3604...............................................................................................................................6, 7

42 U.S.C. § 3613(c)(1).......................................................................................................................14

Md. Code Ann., Real Prop. § 8-401, *et seq.* .......................................................................................7

**Acts**

Fair Housing Act..........................................................................................................................1, 11

Federal Housing Act, 42 U.S.C. § 3601, *et seq.* ..............................................................................2

**Rules**

Fed. R. Civ. Proc. Rule 8(a)(2) ........................................................................................................4

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................4

Rule 8: (1) .........................................................................................................................................4

Rule 8(a)(2)........................................................................................................................................5

Rule 12(b)(a).....................................................................................................................................4

Fed. R. Civ. P. 23(a)(1) ..................................................................................................................29

## I.   PRELIMINARY STATEMENT

Plaintiffs, a nationwide advocacy organization and several residential tenants, attempt to hold various entities liable under the Fair Housing Act for alleged discriminatory rental tactics as co-conspirators. Without specifying any individualized actions for which RMS, as mere agent-manager for the subject properties, might be held responsible, Plaintiffs fail to demonstrate a *prima facie* case of either discrimination or conspiracy by RMS. The Complaint's allegations are intentionally imprecise in that Plaintiffs purposefully fail to differentiate between or among "Defendants" as to which or who may have done what. Consequently, all of Plaintiffs' claims against RMS fail as a matter of law and are subject to dismissal with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The Complaint was filed on July 17, 2021, by seven alleged residents of Bedford and Victoria Stations apartment complexes ("BVS"), and Casa de Maryland ("CASA"), whom Plaintiffs identify as "one of the largest immigrant rights membership organizations in the Mid-Atlantic region." [Doc. 1, ¶ 20]. BVS is located in Langley Park, Maryland, and is alleged to be occupied by residents representing the following groups: 14.8% African American and 85.2% Hispanic/Latino, *id.,* ¶ 6. 54% of housing units in Langley Park, generally, are occupied by residents 55 and older, *id.,* ¶ 80. Eight distinct Defendants are being sued and are alleged in some way to have contributed to BVS being "uninhabitable," through improper maintenance, care, and repair. *See e.g., id.,* ¶¶ 12, 15, 138. The 297-paragraph Complaint attempts to manufacture a discrimination claim under the Federal Housing Act, 42 U.S.C. § 3601, *et seq.* (Counts I – IV). Plaintiffs also attempt to articulate claims for Breach of Contract (Count VI), Breach of Implied Warranty of Habitability (Count VII), Breach of Contract as Third-Party Beneficiaries (Count VIII), Civil Conspiracy (County IX), and have additionally sought injunctive relief (Count V).

As the Complaint acknowledges, the Bedford and Victoria Station apartment complexes ("BVS") are owned by Bedford United, LLC and Victoria United, LLC, respectively. Plaintiffs' Exhibit C, at pg. 7; *see* [Doc. 1, ¶ 109]. Attempting to transform a landlord-tenant dispute into a much more complex and higher-profile case by injecting a race discrimination claim and improperly conflating seven different entities—not counting RMS—as a single "Arbor" entity, Plaintiffs blur the lines between distinct and unrelated corporate entities: Bedford United, LLC, Victoria United, LLC, Hyattsville United, LLC, and Arbor Management Acquisition Company, LLC (together, the "Hyattsville Defendants"); and Arbor Realty Trust, Inc., Arbor Realty Limited Partnership, and Arbor Realty SR, Inc. (together, the "Arbor Defendants").[1] Importantly, footnote 1 of the Complaint affirmatively states that any reference to "Arbor" in the Plaintiffs' Complaint does not include RMS "unless otherwise indicated." Id., ¶ 9 n. 1.

The Complaint alleges that poor conditions at BVS have come about as a result of certain alleged "policies" that Plaintiffs say violate the FHA. *See, e.g., id.* ¶¶ 9, 10, 12, 14, 15. Plaintiffs attribute these policies generally to their straw man, "Arbor," without specifying which of the Hyattsville or Arbor Defendants enacted these alleged policies or how they did so. *See id.*

In contrast to the Complaint's far-reaching allegations against the Hyattsville and Arbor Defendants, the claims against RMS are fairly limited. RMS is alleged to be a domestic corporation doing business in the State of Maryland via the registered trade name "Ross Management Services" and the management company of BVS.[2] *Id.,* ¶ 33. RMS is not alleged to be a subsidiary

---

[1] Plaintiffs' attempt to aggregate these entities is inappropriate and inaccurate because, as explained more fully in the Arbor Defendants' Brief in Support of their Motion to Dismiss, the Arbor Defendants have no ownership or interest in BVS whatsoever. To the extent that the term "Arbor" is used herein, it refers to the allegations that Plaintiffs direct to unrelated entities and should not be construed as an admission that any entity "Arbor" exists or has any connection to BVS.

[2] The Complaint seemingly uses Ross and RMS interchangeably and it is presumed that any reference or allegation to Ross or RMS is made against RMS.

of any other Defendant. [Doc. 1]. It is alleged that RMS entered into a contract with the owners of BVS—i.e., Bedford and Victoria United—for the maintenance and management of the BVS properties. *See id.,* ¶ 284. While failing to attach it to the Complaint, Plaintiffs characterize the contract by suggesting RMS would provide property management services to Plaintiffs, would maintain the tenants' properties in a habitable condition for the benefit of the tenants, and would otherwise manage the property to the benefit of the tenants, including the Plaintiffs. *Id.,* ¶ 286. Plaintiffs go further and suggest that:

> "[a] material term of each contract was that Ross keep all leased Units in clean, safe, and sanitary conditions at all times and that Ross maintain the common areas and each individual unit in a manner that is free from unhealthy indoor molds and water intrusion and environmental hazards."

*Id.,* ¶ 287. Plaintiffs, claiming the status of "third party beneficiaries" under the purported management agreement, allege "Ross breached the contract by failing to provide clean, safe, and sanitary units that are free from unhealthy indoor molds, water intrusion, microbial contaminants and other unsanitary conditions." *Id.,* ¶ 288. Apparently, RMS is alleged to also have a role in evictions. *Id.,* ¶¶ 237, 240.

RMS is generally alleged (without specifics) to have acquiesced and been complicit in evictions of tenants despite BVS's underlying uninhabitable conditions resulting in  unlawful and disproportionate impact on communities of color. *Id.,* ¶ 240. Notably, there are no claims or factual allegations that RMS has a policy that is discriminatory in intent or that has a disparate impact. RMS's alleged liability under Plaintiffs' theory is dependent on whether the alleged policies of other entities are deemed to be violations of the FHA. Indeed, the Plaintiffs – without any facts - allege that:

> Each of the Defendants works in agreement amongst themselves and with property managers — in the case of BVS, the property manager is Ross — to conspire to implement policies that violate the FHA and cause the apartments to be uninhabitable as a further breach of contract and local ordinances.

*Id.,* ¶ 74. The Plaintiffs' conclusory claims against RMS are wholly inadequate on the face of their Complaint and should thus be dismissed with prejudice.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) mandates that a Complaint should be dismissed if it does not state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6)(2014). Even though Fed. R. Civ. Proc. Rule 8(a)(2) requires only a short and plain statement showing entitlement to relief, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 679-70 (2009).

Federal courts utilize a two-prong approach in analyzing the sufficiency of a pleading under Rule 8: (1) a court should accept the truth or factual allegations but not conclusory allegations; and (2) a complaint will only survive a Rule 12(b)(a) motion where it states a plausible claim for relief. Iqbal, 556 U.S. at 678-79; *see also Bell Atlantic v. Twombly,* 550 U.S. 544, 555-56 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Well-pleaded factual allegations contained in the Complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly,* 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)).

Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *See Twombly,* 550 U.S. at 555. Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. 662.

Once a pleading is stripped of its allegations that are not entitled to the presumption of truth, the second prong requires the court to determine if the remaining factual allegations state a

"plausible" claim for relief. *See Iqbal,* 556 U.S. at 677-84; *Twombly,* 550 U.S. at 555-70; *Glassman,* 628 F.3d at 145-50; *see also Giacomelli*, 588 F.3d at 194-97. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. However, where the well-pled facts of a pleading "…do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 670 (citing Fed. Rule Civ. Proc. 8(a)(2)) (internal quotation marks and brackets omitted).

While a court is generally limited to allegations contained in the complaint, courts may also consider documents explicitly incorporated into the complaint by reference and/or "'a document submitted by the movant that was not attached to or expressly incorporated in the complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.'" *Gray-Koyier v. Gladding Chevrolet, Inc.,* 2017 U.S. Dist. LEXIS 179069, *5 (D. Md. Oct. 30, 2017). "A document is 'integral' when 'its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Id.* at *5-6 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011)). "Considering such documents does not convert a motion to dismiss to one for summary judgment." *Id.* (citing *Goldberg v. Mayor & City Council of Baltimore,* 791 F.3d 500, 508 (4th Cir. 2015)); *see also Garrison v. McCormick & Co.,* 2010 U.S. Dist. LEXIS 64920, *2-4 at n. 2 (D. Md. June 30, 2010) (citing *Phillips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) ("[C]ourts may take judicial notice of matters of public record, and they may consider documents attached to a motion to dismiss 'so long as they are integral to the complaint and authentic.'")).

## IV.     ARGUMENT

### A.     COUNT I FAILS AS THERE ARE NO ALLEGATIONS THAT RMS INTENTIONALLY DISCRIMINATED AGAINST ANY PROTECTED CLASS IN PROSECUTING EVICTIONS, AND ATTACKING THE JUSTIFICATION FOR THE EVICTIONS VIOLATES *ROOKER-FELDMAN*

#### 1.     The Complaint fails to allege that RMS's evictions were prosecuted because of race or national origin.

It must first be noted that Plaintiffs' claims completely fail to make any actionable allegation about RMS under 42 U.S.C. §3604(a) for disparate treatment. Plaintiffs allege that nationwide policies exist that "constitute[] intentional discrimination on the basis of race and national origin" and that such policies had a "disproportionate impact on communities of color." [Doc. 1, ¶ 232]. Critically, however, there is no allegation that RMS engaged in or was responsible for these alleged policies. The claims as to the intentionality and the disparate impact (albeit separately inadequate) relate only to defendants <u>other than RMS</u>. *See id.,* fn.1. The only statement regarding RMS relates to its alleged "acquiescence and complicity in the enforcement of evictions of tenants despite the property's underlying uninhabitable conditions." *Id.* These allegations fail to create a cause of action under 42 U.S.C. §3604 against RMS as a matter of law.

In a disparate-treatment case, a "plaintiff must establish that the defendant had a discriminatory intent or motive" in taking the complained of action. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 524, 135 S. Ct. 2507, 2513, 192 L. Ed. 2d 514 (2015). For RMS to be held liable, the relevant intent is what motivated RMS's own actions, not the intent behind the policies that RMS might be shown to have been contractually obligated to fulfill.

Here, RMS, as the acknowledged agent-manager of two particular properties in Maryland, is alleged to have carried out its contractually-obligated agency on behalf of the disclosed property owners without any assertion that RMS carried out the evictions "because of" race or national

origin. *See* 42 U.S.C. §3604(a). Instead, Plaintiffs appear to stretch FHA liability to turn otherwise lawful evictions into violations, because the Hyattsville Defendants and/or the Arbor Defendants allegedly have nationwide policies related to their investment strategy.

In Maryland, eviction cases are generally based on a tenant's a) failure to pay rent or b) lease default. Md. Code Ann., Real Prop. § 8-401, *et seq.* Importantly, Maryland enacted a heightened standard for breach of lease cases, where it allows for restitution of the property only if a court determines that the tenant breached the terms of the lease and that the breach was substantial and warrants an eviction. *Id.,* § 402.1. For non-payment of rent evictions, tenants are provided with a right to redeem. *Id.,* § 401(g).[3] None of the Plaintiff-tenants raised any issue of specific discriminatory intent in defense of their Maryland state court eviction proceedings.  No evidence exists and, perhaps to Plaintiffs' credit, no assertions have been made that RMS discriminated through the evictions because of race or national origin.

Further, RMS is not involved in making any purported policy nor did it have any hand in determining how any other property is funded and managed. Absent RMS acting with discriminatory intent in violation of the FHA, there is no basis to impose liability on the alleged agent for the purported improper policies of the principal.

> 2. The *Rooker-Feldman* Doctrine precludes this Court from collaterally attacking state court approved evictions by arguing that the evictions were violations of the FHA.

Under the *Rooker-Feldman* Doctrine, federal courts are prohibited from considering claims that are "inextricably intertwined" with prior state court determinations*. See Rooker v. Fidelity*

---

3 After a search, undersigned counsel could not determine that any evictions were based on improper hold-over in the last three years. This leaves the only possibilities for eviction under Maryland law as failure to pay rent and substantial breach of the lease agreement. It is clear that a court with competent jurisdiction is (and surely must) be closely involved in any eviction proceeding.

*Trust Co.,* 263 U.S. 413, 416 (1923) and *District of Columbia Court of Appeal v. Feldman,* 460

U.S. 462, 482 (1983). In order to declare that any of the evictions processed by RMS ran afoul of

the FHA, the Court would first need to review the underlying eviction basis and state that the writ

of eviction was incorrectly issued. This clearly runs afoul of the *Rooker-Feldman* Doctrine. *See*

*also Babalola v. B.Y. Equities, Inc.,* 63 F. App'x 534, 535 (2d Cir. 2003).

      While the Complaint seeks to hold RMS liable under the FHA for improper evictions,

Plaintiffs make no effort to identify the various predicates upon which eviction proceedings were

based. Nevertheless, Plaintiffs thereby seek to collaterally attack the Maryland Court rulings

authorizing their evictions. Under the *Rooker-Feldman* Doctrine, revisiting these prior holdings is

beyond this Court's authority.

      **B.**    **COUNT II FAILS TO STATE AN ACTIONABLE CLAIM AS TO RMS**

        1.    <u>The Complaint identifies no valid FHA claim against RMS, as there are no challenges to any of its policies.</u>

      Plaintiffs appear to be alleging the existence of nationwide investment policies that had a

disparate impact on the minority population found at BVS. Specifically, Plaintiffs allege that there

has been a failure to maintain or repair BVS. *See* [Doc. 1, ¶ 237]. But as to RMS, Plaintiffs only

make the vague allegation that it provided "assistance" in "forc[ing] tenants into eviction despite

the uninhabitability of their housing." *Id.* This vague allegation is insufficient to present a claim

against RMS. *See* discussion, *supra.* While the Supreme Court has recognized "disparate impact"

cases under the FHA, the complaint "must demonstrate a robust causal connection between the

<u>defendants' challenged policy</u> and the disparate impact on the protected class." *Reyes v. Waples*

*Mobile Home Park Ltd. P'ship,* 903 F.3d 415, 424 (4th Cir. 2018) (emphasis added); *see also Texas*

*Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 540

(2015)(emphasis added). This robust causal connection must be met by identifying the defendant's

specific practice that is challenged and then demonstrating "that the disparity they complain of is the result of one or more of the [ ] practices that they are attacking ..., specifically showing that each challenged practice has a significantly disparate impact" on the protected class." *Reyes,* 903 F.3d at 425.

In other words, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id.* (quoting *Inclusive Communities*, 576 U.S. at 542). Additionally, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion [complained of] because of their membership in a protected group. *Id.* "Our formulations, which have never been framed in terms of any rigid mathematical formula, have consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation." *Id.* (internal citations omitted). Disparate impact claims are not, however, intended to displace valid private priorities. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 540, 135 S. Ct. 2507, 2522, 192 L. Ed. 2d 514 (2015).

To the extent it might be inferred from Plaintiffs' allegations that one or more of the Defendants make nationwide policy decisions regarding which properties to maintain and repair, without any specific allegation as to RMS's delegated maintenance discretion in this regard, any such policymaking authority is presumptively outside the scope of RMS's agency. *Cf.  Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 633 (D. Md. 2019) ("Whether articulated as undue delegation of maintenance discretion (and discrimination by the parties handed discretion) or a failure to properly supervise maintenance responsibilities, the policy alleged is sufficiently concrete for purposes of this motion to dismiss."). Moreover, Plaintiffs suggest no basis whatsoever for inferring discriminatory intent by RMS in the exercise of any such delegated

9

discretion. Simply stated, Plaintiffs allege neither a policy of RMS which could be found to be discriminatory, nor any delegation of maintenance discretion, pursuant to which the court could under any circumstances find RMS liable. As with the disparate treatment claim, Plaintiffs improperly seek to hold RMS, as the agent, liable solely for the alleged discriminatory policymaking actions of its acknowledged principal(s).

Similarly, the allegations that RMS facilitated evictions in properties with alleged defects are not sufficient to give rise to an FHA claim against RMS. The Plaintiffs' purported statistical assertions do not demonstrate or even suggest causal connection (let alone a "robust" one) between any alleged national policies and local disparate impact. The alleged "financialization policy" at the heart of the Plaintiffs' claims is not a policy applied to the specific Maryland, DC and Virginia area. *C.f.* [Doc. 1, ¶¶ 48-49]. Rather, Plaintiffs contend that this policy applies nationwide to some 8,000 residential units allegedly owned by other Defendants. The statistics presented by Plaintiffs, however, relate solely to those properties in Maryland and the surrounding communities. To attempt to create the appearance of a national scope of analysis, Plaintiffs refer to two properties, one in Chinatown in New York and another in Texas. Plaintiffs provide no information concerning the racial composition of either the New York or Texas (or any other) properties, and, instead, undermine any potential anecdotal support these references might otherwise provide when noting that the Chinatown "10 Rutgers" location was recently renovated despite being located in a minority neighborhood.

## C.   COUNT III'S PERPETUATION OF SEGREGATION VIOLATION AGAINST RMS IS BOTH FACTUALLY AND LEGALLY INSUFFICIENT

Claims for alleged perpetuation of segregation typically arise in the context of public zoning laws or other broadly applied rules. *See Boykin v. Gray,* 895 F. Supp. 2d 199, 213 (D.D.C. 2012), *aff'd sub nom. Boykin v. Fenty,* 650 F. App'x 42 (D.C. Cir. 2016); *Graoch Associates # 33,*

*L.P. v. Louisville/Jefferson County Metro Human Relations Comm'n,* 508 F.3d 366, 378 (6th Cir.2007). The first "occurs when [a] decision has a greater adverse impact on one racial group than on another." *Id.* "The second is the effect which the decision has on the community involved; if it perpetuates segregation and thereby prevents interracial association it will be considered invidious under the Fair Housing Act independently of the extent to which it produces a disparate effect on different racial groups." *Id.* (quoting *Arthur v. City of Toledo, Ohio,* 782 F.2d 565, 575 (6th Cir.1986)); *see Hallmark Developers, Inc. v. Fulton County, Ga.,* 466 F.3d at 1286 ("A plaintiff can demonstrate a discriminatory effect in two ways: it can demonstrate that the decision has a segregative effect or that it makes housing options significantly more restrictive for members of a protected group than for persons outside that group.") (internal quotation omitted); *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d at 1290 (same); *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d at 937 ("The discriminatory effect of a rule arises in two contexts: adverse impact on a particular minority group and harm to the community generally by the perpetuation of segregation.... [T]he lower court concentrated on the harm to blacks as a group, [but] failed to consider the segregative effect of maintaining a zoning ordinance that restricts private multi-family housing to an area with a high minority concentration."). Very few cases have recognized the actions of a private party as sufficient to sustain a perpetuation of segregation claim, as opposed to a government unit or municipal township. Such cases have generally been supported by facts tending to show actions directly impacting on the separation of protected classes, as opposed to a mere disparate impact. *See, e.g., United States v. Mitchell,* 580 F.2d 789, 791 (5th Cir. 1978) (finding the fact that "ninety five of all blacks renting in the complex were rented apartments in the same section" constituted a "significant discriminatory effect" and was "highly probative of a 3604(a) violation").

Here, Plaintiffs fail to contend or provide support for any such contention that a failure to maintain the properties has had the effect of wrongfully segregating a population. The mere occurrence of a higher proportion of minorities at the properties, without more, does not support a claim that the policies steered or confined minorities to certain locations. At most in this context, it might be inferred that Plaintiffs contend that a lack of maintenance at BVS perpetuated segregation through destabilizing and alienating minority and immigrant communities. *See* [Doc. 1 ¶ 245]. Factually, however, such an inference is unsupportable by allegations the sum total of which establish at most a concentrated minority population in the community. Nothing alleged by Plaintiffs could, even in a light most favoring them, render any of the non-governmental, property-owner defendants and/or related entities, or RMS as the agent of any of them, liable for perpetuation of segregation in that community based solely on such minority concentration.

### D.     COUNT IV FAILS AS TO RMS BECAUSE IT CONTAINS NO SPECIFIC REFERENCE TO IT

Plaintiffs contend that "[b]y poorly maintaining properties in predominantly minority communities, Defendants have interfered with the rights of neighboring residents (predominantly persons of color) to use and enjoy their homes and communities. [Doc. 1, ¶ 250]. The elements of a § 3617 claim are, as follows: (1) the plaintiff was engaged in protected activity, (2) the defendant was aware of that activity, (3) the defendant took adverse action against the plaintiff, (4) there is a causal connection between the protected activity and the adverse action; and, (5) the defendant's "discriminatory intent." *Hardaway v. Equity Residential Servs., LLC,* 2015 WL 858086, at *4 (D. Md. Feb. 26, 2015 (Chasanow, J.) (dismissing a Section 3617 claim on the basis that there "simply are no facts alleged that suggest a discriminatory intent by Defendant to retaliate against Plaintiffs"). The adverse action requirement under Section 3617 encompasses coercion, intimidation, threats, or interference. *See Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th

Cir. 2001). These terms are interpreted based upon their plain meaning. *Id.* at 1128-29. "[Section] 3617 does not require a showing of force or violence for coercion, interference, intimidation, or threats to give rise to liability." *Id.* at 1128. HUD promulgated a regulation purporting to interpret § 3617, which provides a non-exhaustive list of prohibited actions. *See* 24 C.F.R. § 100.400. The regulatory list includes the following:

> Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons.

24 C.F.R. § 100.400(c)(2).

Here, there are no factual allegations that RMS interfered with anyone's use and enjoyment because of race, national origin, or any other protected class. Indeed, RMS is only alleged to manage the BVS properties and there are no facts or allegations that RMS manages the properties differently based on any protected status. Plaintiffs' feeble attempt to hold RMS liable under this theory relies exclusively on the location of the properties being in a predominately minority community and somehow bootstrapping RMS's agency on behalf of one or more of other defendants as its principal without demonstrating in the least how RMS might have acted "because of" race or national origin.

### E. PLAINTIFFS' INJUNCTIVE RELIEF REQUEST FAILS BECAUSE NO RELIEF COULD APPLY TO RMS

Plaintiffs seek remedies provided by 42 U.S.C. § 3613(c)(1), which grants declaratory and injunctive relief for violations of the FHA. [Doc. 1, ¶ 256]. Ironically, injunctive relief sought serves to demonstrate the impropriety of the Complaint's claims as against RMS. Plaintiffs seek to enjoin Defendants collectively from 1) engaging in the financialization of residential property; 2) engaging in the targeting of low-income neighborhoods for rental property acquisition; and 3) engaging in the harvesting of rental income while delaying renovations and maintenance to

property. Plaintiffs fail, however, to allege that RMS has engaged in any such behavior anywhere in the Complaint.

### F.   PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS TO RMS BECAUSE OF RMS' ALLEGED AGENT STATUS

Plaintiffs' breach of contract claims against RMS, premised as they are on their respective lease agreements, necessarily fail as a matter of law[4] because, as the Complaint acknowledges, RMS is merely an agent for the BVS Owners that performed building management services. *See Compl.* [Doc. 1], ¶ 33. With RMS serving in each of the leases only as "agent for owner" of the BVS properties, no Plaintiff has privity of contract with RMS pursuant to which RMS might otherwise be held liable.

Agents to a corporation are not liable for the known corporation's contracts when the contract makes clear that the entity is acting only as agent for a principal. *Hill v. Cty. Concrete Co.,* 108 Md. App. 527, 532, 672 A.2d 667 (1996). Here, the lease agreements are expressly clear that certain Plaintiffs entered into leases with RMS as "agent for owner" of the BVS properties, which Plaintiffs plainly allege is Bedford United and Victoria United. The leases could not have been more clear in indicating that RMS was "plainly . . . acting as the agent of another" and accordingly, bear no liability. *Id.; see* Hyattsville Defendants' Exhibits (attaching Plaintiffs' lease agreements). Aware of this, and attempting to create the appearance of agency liability for their claims, Plaintiffs' Complaint makes the conclusory statement that each Plaintiff "entered into a lease with Ross for a partially disclosed principal." [Doc. 1, ¶ 261] (emphasis added). The label

---

[4] RMS joins in and reaffirms the arguments raised in the Hyattsville Defendants' Memorandum in Support of Motion to Dismiss concerning the Breach of Contract claims, and notes that neither CASA nor Ms. Ramirez have contracts with any party and therefore cannot assert a claim for breach of contract as a matter of law. *See Austin v. Lakeview Loan Servicing, LLC,* No. CV RDB-20-1296, 2020 WL 7256564 (D. Md. Dec. 10, 2020) (to assert a claim for breach of contract the plaintiff must allege a contractual relationship between the plaintiff and defendant).

"partially disclosed principal" is a legal conclusion in agency law, wherein agents can be held liable for contracts of their principals, depending on certain circumstances. *See Crosee v. Callis,* 265 Md. 65, 282 A.2d 86 (1971) (if the other party has notice that an agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal) (citing Restatement (Second) of Agency § 4 (1958).

The rule in Maryland is clear that if an agent discloses the identity of its principal to a third party, then, absent an agreement to the contrary, they are insulated from liability. *Curtis G. Testerman Co. v. Buck,* 340 Md. 569, 667 A.2d 649 (1995). Inversely, when an agent entirely fails to disclose the existence or identity of a principal, the agent will be liable. *Crosse v. Callis*, 282 A.2d 86, 90 (Md. 1971). When a principal is only partially disclosed, agents are generally subject to liability, however, there are exceptions:

> When upon the face of an agreement, <u>a party contracting plainly appears to be acting as the agent of another</u>, the stipulations of the contract are to be considered as solely to bind the principal, unless otherwise intended.

*Curtis G. Testerman Co.,* 340 Md. at 577 (emphasis added).

Furthermore, even if the agency relationship is not obvious on the face of an agreement, so long as there were "reasonable grounds" for the contracting party to believe they were contracting with an agent acting for a principal, then under Maryland law, the agent is not liable. *Syriani v. Gebhart,* 195 Md. 69, 79, 72 A.2d 766 (1950). "Reasonable grounds" include the ability of the contracting party to inquire or otherwise perform due diligence as to the identity of the principal. *Id.* When an agent is partially disclosed, the agent can also avoid liability through "seasonable disclosure" of the principal's identity. *Crosse*, 282 A.2d at 90. Consequently, in order to have sufficiently stated a claim for agency liability against RMS, the Plaintiffs must have made some allegation that no such disclosure was made and/or the actual disclosures made to them, the substance of any such disclosure(s), and an identification of what efforts, if any, they made to

uncover the identity of the principal based on the "partial disclosures" they acknowledge receiving. Plaintiffs allege none of the above, and, consequently, fail entirely to plead a viable breach claim against RMS.

Aside from one conclusory statement labeling RMS's alleged principal as "partially disclosed," there is no allegation in the Complaint to support liability against RMS, a fully disclosed property manager, for a lease agreement between Plaintiffs and the BVS Owners.[5]  On the contrary, much of the Complaint serves to confirm Plaintiffs' awareness that RMS was not the property owner.  Plaintiffs note having complained about property conditions to all Defendants, including the BVS Owners. [Doc. 1], ¶¶ 21-25. CASA, in particular, alleges of having complained not only to RMS, but to other defendants as well. *Id.,* ¶ 98.

In sum, other than the single conclusory statement that RMS was a "partially disclosed principal," the Complaint is devoid of any facts indicating what was or was not disclosed and/or the extent to which Plaintiffs might have done anything with the information.  As such, Plaintiffs fail to plead a viable claim for breach of contract against RMS, and Count IV should therefore be dismissed as to RMS.

### G. PLAINTIFF'S BREACH OF THE IMPLIED WARRANTY OF HABITABILITY AS A STAND-ALONE CAUSE OF ACTION IS IMPROPER AS A MATTER OF LAW

Plaintiffs' Count VII improperly seeks to enforce an implied warranty of habitability as a stand-alone cause of action.[6] Under Maryland law, there is no such cause of action. *See Benik v.*

---

[5] Plaintiffs' also make the entirely conclusory statement "Plaintiffs rely upon the doctrines of actual and apparent agency where necessary." [Doc. 1, ¶ 270]. This statement is likewise an insufficiently pled legal conclusion and does not meet the pleading requirements articulated by the Supreme Court in *Twombly.*

[6] Again, the Complaint asserts this Count on behalf of "All Plaintiffs," including CASA, a non-tenant. As discussed more fully below, there is no private cause of action where tenants in Prince

*Hatcher,* 358 Md. 507, 549 (2000) ("The General Assembly has never enacted a warranty of habitability on a statewide basis for the market in previously occupied, residential-rental properties…") (Cathell, J., dissenting).

To sustain their claim for a breach of the implied warranty of habitability, the claim must be brought under some specific local ordinance. *Nerenhausen v. Washco Mgmt. Corp.,* 2017 U.S. Dist. LEXIS 59426, at \*14 (D. Md. Apr. 18, 2017). Here, the Complaint does not identify any specific ordinance that was allegedly violated. Rather, the Plaintiffs' Complaint makes vague reference to "Prince George's County Local Code," [Doc. 1, ¶ 274], ("PGCC") but points to no actual provision of the PGCC that would authorize a private cause of action for any of the conditions alleged.

Still, a brief review of the PGCC demonstrates that Prince George's County has developed a comprehensive housing code and has authorized penalties with which it determines that a property owner has failed to comply with the ordinances. The PGCC specifically creates and designates the Department of Permitting, Inspection, and Enforcement ("DPIE") as the sole entity responsible for the enforcement and administration of the housing code, including the landlord tenant provisions contained therein. *See* PGCC § 13-102. The PGCC further provides a procedure for the County to investigate complaints made by tenants and to enforce its findings with respect to actual violations of the housing code, including for the alleged failure to maintain a dwelling unit. *See* PGCC §§ 13-110-111. It also includes appeal rights for persons aggrieved by the County's administrative decisions for implementing the housing code. PGCC § 13-116.

---

George's County can sue their landlords solely for a breach of an implied warranty of habitability, let alone former tenants after having been evicted. CASA is not even a tenant at the relevant properties, and therefore, CASA's claim under Count Seven must be dismissed.

The County did not, however, create a private cause of action for violations of these ordinances. Prince George's County, while clearly aware of its authority to do so, did not include any language that could reasonably be construed to create a private cause of action for tenants, and the County's decision not to grant this express authority is controlling:

> [I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."

*Baker v. Montgomery Cty,* 201 Md. App. 642, 668-69 (2011) (quoting *Sugarloaf Citizens Ass'n, Inc. v. Gudis,* 78 Md .App. 550, 552-53, 560 (1989), *aff'd on other grounds,* 319 Md. 558 (1990)). There is no provision of the PGCC that gives Plaintiffs the authority to seek relief sought in Count Seven through the Court system. Consequently, their claims must be dismissed.

## H. PLAINTIFFS' THIRD PARTY INTENDED BENEFICIARY CLAIMS AGAINST RMS FAIL DUE TO LACK OF STANDING

### 1. Plaintiffs Lack Standing to Assert a Claim Against RMS for Breach of the Property Management Agreement.

In the Complaint, Plaintiffs seek recovery under a theory that they have a putative status as third-party beneficiaries to enforce the management agreements. [Doc. 1, ¶¶ 282-291]. While Plaintiffs fail to attach the Property Management Agreement ("PMA"), they cite to make-believe provisions not actually contained in the document to support their claimed status as intended third-party beneficiaries. For instance, Plaintiffs allege as follows regarding the Management Agreement:

> The contract provided that Ross would provide property management services to Plaintiffs, would maintain the tenants' properties in a habitable condition for the benefit of the tenants, and would otherwise manage the property to the benefit of the tenants, including the Plaintiffs.

> A material term of each contract was that Ross keep all leased Units in clean, safe, and sanitary conditions at all times and that Ross maintain the common areas and each individual unit in a manner that is free from unhealthy indoor molds and water intrusion and environmental hazards.

[Doc. 1, ¶¶ 286, 287]. However, this language is not contained in the Management Agreement, and directly contradicted by the language in the Management Agreement. *See* PMA, Exhibit A, generally. RMS is entitled to dismissal on this claim based upon the unambiguous language of the Management Agreement.

"[D]ocuments that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits" may be considered by the Court. *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). The Court may also consider other documents so long as they are integral to the complaint and there is no dispute about the document's authenticity. *Id.* When the language of the PMA is taken into consideration, it is readily clear that Plaintiffs are not intended third-party beneficiaries, and the allegations simply misrepresent the nature of the Management Agreement. Exhibit A.

Maryland's third-party beneficiary doctrine acts as an exception to the general rule at common law that only the parties to a contract can sue to enforce it. *Lovell Land, Inc. v. State Highway Admin.,* 408 Md. 242, 260 (2009). "An individual is a third-party beneficiary to a contract if the contract was intended for his benefit and it clearly appear[s] that the parties intended to recognize him as the primary party in interest and as privy to the promise." *Dickerson v. Longoria,* 414 Md. 419, 452 (2010) (internal quotations and bracketed text removed) (quoting *Shillman v. Hobstetter*, 249 Md. 678, 687 (1968)). "The primary method of determining the intention of the parties to a contract is to look at the language in the contract." *CR-RSC Tower I, LLC v. RSC Tower I, LLC,* 202 Md. App. 307, 354 (2011) (denying beneficiary status to a lease). Where the Agreement merely results in a benefit to a third-party or seeks to protect the contracting parties from possible liability and/or litigation by a third party, it does not make a third party an intended

beneficiary who can sue to enforce the contract. *Volcjak v. Wash. Cty. Hosp. Ass'n,* 124 Md. App. 481, 510 (1999) ("We do not think, however, that the mere prospect of litigation by a claimant is enough to qualify that claimant as a third-party beneficiary of a contract wherein one contracting party takes steps to minimize the possibility of such litigation.").

The Court of Appeals has been clear that the intention of the parties, determined by the unambiguous language of the contract, controls. *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II,* 376 Md. 157, 166 (2003) ("The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law…Maryland follows the law of objective contract interpretation.  The court's duty is to determine the intention of the parties as reflected in the terms of the contract."); *Lema v. Bank of Am., N.A.* 375 Md. 625, 641 (2003) (quoting *Calomiris v. Woods,* 353 Md. 425, 434 (1999) ("The determination of [contract] ambiguity is one of law, not fact[.]")

In *CR-RSC Tower,* after first explaining that "[a]t common law, only a party to a contract could bring suit to enforce the terms of a contract…,"the court acknowledged that the common law rule has expanded to permit third-party beneficiaries to bring suit but only if "the contract was intended for his or her benefit and it clearly appears that the parties intended to recognize him or her as the primary party in interest and as privy to the promise." *CR-RSC Tower I, LLC v. RSC Tower 1, LLC,* 429 Md. 387, 457 (2012) (emphasis added) (internal citations omitted). Continuing, the *CR-RSC Tower* Court explained that "[i]t is not enough that the contract merely operates to an individual's benefit: An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee." *CRC-RSC Tower,* 429 Md. at 457 (internal citations omitted).

Referring to its prior decision in *Lovell Land* specifically, the Court of Appeals in *CR-RSC Tower* expounded further on third-party beneficiary standard:

> We said the "decisive [ ] distinction" was between "intended and incidental beneficiaries," with the "crucial fact" being whether the pertinent provisions of the contract were "inserted … to benefit" the third party. Another "factor to consider," we said, is whether the third party is named in the contract or its "antecedent agreements."

*CR-RSC Tower,* 429 Md. at 457 (internal citations omitted).  In applying this standard, "we look to 'the intention of the parties to recognize a person or class as a **primary party in interest** as expressed in the language of the instrument and consideration of the surrounding circumstances as reflecting upon the parties' intention[.]" *Id.* at 458 (emphasis added).

Maryland courts have routinely recognized that tenants are merely incidental beneficiaries of contracts between their landlords and others regarding the rental property conditions. Thus, in *Little v. Union Tr. Co.,* the Court held that tenants are not intended beneficiaries of a contract between a landlord and HUD that required the landlord to "maintain the mortgaged premises, accommodations and the grounds and equipment appurtenant thereto, in good repair and condition." 45 Md. App. 178, 179 (1980). To reach that conclusion, the court analyzed the contract's language, noting that it nowhere mentioned the tenants, and that it provided that "'[t]his instrument shall bind, *and the benefits shall inure to,* the respective Owners, their heirs, legal representatives, executors, administrators, successors in office or interest, and assigns, *and to the Commissioner and his successors . . .*'" Id., at 180-81 (quoting contract; emphasis in original.)

Turning to the PMA here, the potential claim supporting language proffered in the Complaint is directly contradicted by the language of the agreement itself. There is no reference to any obligation owed to the Plaintiffs. Instead, the PMA is unequivocal that the tenants (nor the organizational Plaintiff) are not third-party beneficiaries:

> **No person or entity shall be deemed to be a third party beneficiary of any term or provision of this Agreement,** including, without limitation, the terms and provisions of this Section 9.01, and no person or entity shall have any rights of subrogation or similar rights under this Section 9.01, other than Affiliates of Owner and Manager, respectively, entitled to indemnification pursuant to the provisions of

> this Article 9. Notwithstanding the foregoing Servicer shall be deemed a third party beneficiary of the provisions of the Agreement. All indemnification obligations under this Agreement and the provisions of this Article 9 shall survive the expiration and any termination of this Agreement.

Exhibit A, ¶ 9.01(c) (emphasis added). The PMA expressly and unequivocally denies to the Plaintiffs any third-party beneficiary rights as tenants or otherwise. While the "Servicer" was a contemplated beneficiary, tenants were not. The Court cannot reform the contract contrary to the intent of the parties thereto in order to give a third party standing. Moreover, all of the terms related to tasks that RMS undertakes, none of which requires that RMS incur a financial debt or expense, and subject to the funding and approval of the owner.  Exhibit A, ¶ 5.04.

The PMA is similar to the agreement in *Little,* in that it does not mention the tenants as beneficiaries. Moreover, it expressly rejects any argument that the parties to the agreement might have intended to convey third-party beneficiary status on anyone other than the Servicer. The benefits it confers on the BVS tenants, if any, are comparable to those in *Little,* where the court held that it was "abundantly clear that the tenants are, at most, incidental beneficiaries, and it is well settled under Maryland law that an incidental beneficiary of a contract has no cause of action against either the promisor or the promisee." *Little,* 45 Md. App. at 181; *see also Marlboro Shirt Co. v. Am. Dist. Tel. Co.,* 196 Md. 565, 571-572 (1951) (denying intended beneficiary status of tenant for an alarm installation contract between landlord and alarm company). [7] Thus, Plaintiff-

---

[7] Other jurisdictions that have addressed third-party beneficiary status in relation to property management and comparable agreements have overwhelmingly found that there is no right of the third-party to recovery for a perceived breach of the agreement because the non-signing party is, at best, an incidental beneficiary. *Greenacre Props. v. Rao,* 933 So. 2d 19, 23, 31 Fla. L. Weekly 1223 (Dist. Ct. App. 2006) (denying homeowner third-party beneficiary status to an agreement between a homeowners' association and its management company."); *Century Campus Hous. Mgmt., L.P. v. Elda Hana, LLC,* 141 Haw. 383, 409 P.3d 787 (Ct. App. 2018) (applying Texas law to deny owner and development company third-party beneficiary status to a management agreement); *Sears Roebuck & Co. v. W/S Lebanon LLC,* No. 14-cv-422-JL, 2017 U.S. Dist. LEXIS 143902, at *10-11 (D.N.H. Sep. 6, 2017) (denying third-party beneficiary standing to non-party to

tenants are at most, incidental beneficiaries of the Agreement which entitles them to "no right against the promisor or the promise." *CR-RSC*, 429 Md. at 457-58 (quoting *120 West Fayette*, 426 Md. at 35-36); *see also, Gao v. Progressive Max Ins. Co,* 2019 Md. App. LEXIS 321,\*11-12 (2019) (citing *Parlette v. Parlette,* 88 Md. App. 628, 637 (1991) and *Shillman v. Hobstetter,* 249 Md. 678, 687-88 (1968)). Count VIII of the Complaint must, therefore, be dismissed.[8]

## I.     PLAINTIFFS' CIVIL CONSPIRACY CLAIMS ARE INSUFFICIENTLY PLED

Plaintiffs' civil Conspiracy claim is purely the recitation the elements of civil conspiracy:

Specifically, the Defendants conspired to refrain from performing maintenance or making repairs for known or reasonably knowable defects to further the policies identified above in violation of the FHA.

[Doc. 1, ¶ 293]. While Maryland has recognized a common law concept of a civil conspiracy, "civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act" that results in damage to a plaintiff. *Hill v. Brush Eng'g Materials, Inc.,* 383 F.Supp.2d, 814, 821 (D.Md.2005) (citations omitted). Conspiracy is not a tort on its own but is dependent on some underlying tort that caused

---

property management agreement); *Barger v. Elite Mgmt. Servs.,* 2018 Ohio 3755, ¶ 7, 119 N.E.3d 953, 957 (Ct. App.) (denying homeowners third-party beneficiaries to management agreement); *Lemus v. Cookscreek 255, LLC,* No. 05-17-01085-CV, 2018 Tex. App. LEXIS 9836, at \*58 (Tex. App. Nov. 30, 2018) (denying extrinsic evidence to interpret unambiguous management agreement and denying tenant third-party beneficiary status); *Novak v. Cmty. Living Servs.,* No. 340414, 2019 Mich. App. LEXIS 287, at \*2 (Ct. App. Feb. 19, 2019) (finding property owner as merely incidental beneficiary to contract between organization providing housing for disabled adults and property managers hired by organization to maintain property on behalf of disabled adult-tenants); *Wash. House Condo. Ass'n of Unit Owners v. Daystar Sills, Inc.,* No. N15C-01-108 WCC CCLD, 2015 Del. Super. LEXIS 587, at \*11-12 (Super. Ct. Oct. 28, 2015) ("For a contract to confer third-party beneficiary rights, not only is it necessary that performance of the contract confer a benefit upon a third person that was intended, but the conferring of the beneficial effect on such third-party…should be a material part of the contract's purpose.") (quotations omitted)

[8] Assuming that the PMA specifically allowed third party beneficiaries (which it does not), Plaintiffs have failed to identify a specific breach of the PMA. Plaintiffs have not identified a breach of any duty owed to the ownership by RMS under the PMA. *C.f.* [Doc. 1, ¶¶ 154, 164, 178].

injury to the plaintiff. *Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.,* 109 F.Supp.2d 424, 428 (D.Md.2000) (citing *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.,* 336 Md. 635, 650 A.2d 260, 265 n. 8 (Md.1994)). To plead civil conspiracy the plaintiff must show: (1) "a confederation of two or more persons by agreement or understanding;" (2) "some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal;" and (3) "actual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 154, 916 A.2d 257 (2007). Plaintiffs must also allege a clear agreement to conspire because the "[i]ndependent acts of two wrongdoers do not make a conspiracy." *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina,* 639 F.2d 1073, 1076 (4th Cir.1981); *see also Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.,* 53 Md. App. 379, 454 A.2d 367, 372 (Md.Ct.Spec.App.1983) (holding that a plaintiff must allege that there was a "unity of purpose of a common design and understanding, or a meeting of the minds in an unlawful arrangement."); *see also, Luber v. Anne Arundel Cty.,* No. CIV.A. RDB-11-237, 2011 WL 8129826, at \*4 (D. Md. July 12, 2011), *aff'd sub nom. Luber v. Anne Arundel Cty. Maryland,* 461 F. App'x 321 (4th Cir. 2012).

Civil conspiracy, however, cannot occur between a principal and an agent where the agent is acting within the scope of employment. *See Fraidin v. Weitzman,* 93 Md. App. 168, 235, 611 A.2d 1046, 1079 (1992) (citing *Harnish v. Herald–Mail Co.,* 264 Md. 326, 337, 286 A.2d 146 (1972) ("It is doubtful at the least that an employee of a corporation and that corporation can conspire where the employee is acting only for the corporation and not for any personal purpose of his own."); *Marmott v. Maryland Lumber Co.,* 807 F.2d 1180, 1184 (4th Cir.1986), *cert. denied,* 482 U.S. 929 (1987) ("[A] conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility.")).

1.    The Complaint alleges that RMS performed all of its actions as the agent of the BVS Owners and, therefore, the civil conspiracy claim fails.

The Complaint repeatedly alleges that RMS was the ownership's agent in performing various duties at the properties under the Property Management Agreement, including maintenance and evictions in the owner's name. As the alleged agent, however, RMS cannot conspire with the principal as a matter of law. In *Fraidin v. Weitzman,* where an attorney was acting on behalf of his client, the court stated that "it is established law that there can be no conspiracy between a principal and an agent where the agent acts within the scope of his or her employment." 93 Md.App. 168, 234-235, 611 A.2d 1046 (Md. App. 1992). Similarly, in *Harnish v. Herald–Mail Company,* the court stated, "[i]t is doubtful at the least that an employee of a corporation and that corporation can conspire where the employee is acting only for the corporation and not for any personal purpose of his own." 264 Md. 326, 337, 286 A.2d 146 (1972); *see also, Arthur v. Ticor Title Ins. Co. of Fla.,* No. CIV. AMD 07-1737, 2008 WL 7854915, at \*7 (D. Md. Mar. 11, 2008), *aff'd* 569 F.3d 154 (4th Cir. 2009); *Marmott v. Maryland Lumber Co.,* 807 F.2d 1180, 1184 (4th Cir. 1986).

RMS's alleged involvement in this matter is exclusively in acting as the agent for the BVS Owners. There are no allegations that they were acting beyond the scope of the PMA giving rise to that agency relationship, or that RMS was acting for a personal purpose or stake in any of the complained-of activities. To the contrary, the Complaint alleges that the actions taken by RMS were at the direction or pursuant to the wishes of the ownership. Consequently, there is no viable claim of civil conspiracy against RMS for any of the activities alleged in the Complaint.

2.    The Complaint does not sufficiently allege any agreement between RMS and any party to perform an unlawful act.

Plaintiffs' civil conspiracy claim is also devoid of the facts necessary to meet the applicable pleading standard. The bald allegation of an agreement without factual support or basis is

insufficient. *See Decohen v. Abbasi,* LLC, No. CIV. WDQ-10-3157, 2011 WL 3438625, at \*7 (D. Md. July 26, 2011) ("These conclusionary allegations do not show Beacon's agreement or understanding that the GAP Agreement would be used to harm Decohen, and are insufficient under *Iqbal* and *Twombly* to state a civil conspiracy."), *vacated in part on other grounds sub nom. Decohen v. Cap. One, N.A.,* 703 F.3d 216 (4th Cir. 2012) (citing *Scharpenberg v. Carrington,* 686 F. Supp. 2d 655, 662 (E.D. Va. 2010) (broad brush business conspiracy allegations insufficient under Virginia law)). Plaintiffs fail to state "when or where the alleged conspiracy was formed or 'present any other facts tending to show that such agreement was, in fact, reached. Plaintiffs['] allegations are purely speculative and are not entitled to judicial deference." *Luber,* 2011 WL 8129826, at \*4 (citing *Twombly,* 550 U.S. at 555).

The Complaint's facts merely demonstrate that RMS was charged with the maintenance of the Property, as directed by the owners, and that other parties—not RMS—made the alleged decisions that Plaintiffs claim caused the conditions at BVS. *See e.g.* [Doc. 1, ¶¶ 33, 74, 154, 157, 158, 159]. The mere agreement to manage rental property does not amount to an agreement or understanding that by doing so they also agreed to further a policy in violation of the FHA.[9] "Our precedents establishes that in order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, *inter alia,* (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) that the conspiracy '*aimed at interfering with rights'* that are 'protected against private, as well as official, encroachment,'" *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267–68 (1993)(emphasis added), (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971) and

---

[9] In fact, these allegations do not even amount to demonstrating a knowledge of the alleged national policy, let alone an approval of it. In any case, neither would be sufficient to meet the pleading standard.

*Carpenters v. Scott,* 463 U.S. 825, 833 (1983)). In sum, it is not sufficient for there to be either unintended consequences or an agreement to act without discriminatory animus, i.e. the conduct is not "aimed at interfering with rights."

There are no factual allegations supporting what amounts to an baldly contended unity of purpose or common agreement between RMS and either the Hyattsville Defendants or Arbor Defendants in furtherance of any alleged national policies that either may have had. Again, there are no facts or reasonable inferences that RMS, responsible for managing a small number of local properties, was privy to or had any impact on the national policy presumably being implemented by dozens of other property managers around the country. The complaint is devoid of any contention that RMS agreed not to maintain any property, or that RMS did so because of the national origin of the tenants. Absent a meeting of the minds to do an illegal act, there can be no civil conspiracy. Plaintiffs conspiracy claims against RMS are therefore subject to dismissal.

## J.      PLAINTIFFS FAIL TO MEET THE REQUISITE STANDARDS OF FED. R. CIV. P. 23.

For this purpose, RMS adopts Plaintiffs' explanation of requisite "commonality" of potentially certifiable class claims as follows: "There are common questions of law and fact that affect the rights of every member of each respective class, and the types of relief sought are common to every member of each respective class. The same conduct by Defendants has injured or will injure every member of each Class." [Doc. 1], ¶ 212; *see* Fed. R. Civ. P. 23(a)(2). Plaintiffs' follow up assertions that there are such common questions of law and fact" and that the types of relief sought are "common to every member of the respective Classes," serve, if correct, to defeat Plaintiffs' claims as the classes would definitionally preclude any unlawful discrimination.

1. Plaintiffs Fail to Define a Potentially Certifiable Class They Might be Deemed to Represent.

Plaintiffs seek to certify two plaintiff classes pursuant to Rule 23, as follows: (1) "All current tenants nationwide of any property owned by Arbor or any affiliate of Arbor (the "Arbor Class"); and (2) "All current and prior tenants for the last three years of Victoria Station or Bedford Station apartment complexes." (the "BVS Class"). [Doc. 1], ¶ 205.

First, as to the proposed Arbor Class, as proposed, the class is necessarily overbroad, and Plaintiffs are, by their own definition, not representative.  Plaintiffs suggest they be allowed to certify and represent, all current Arbor tenants nationwide, regardless of property and, it must be noted, regardless of tenant population at such properties and regardless of conditions at such properties. If, as Plaintiffs suggest, all Arbor tenants everywhere nationwide face the same allegedly deplorable conditions, there can be no differentiability among conditions,[10] no discriminatory policies, and, consequently, no unlawful discrimination – even by disparate impact. If, however, only certain Arbor properties and certain tenant populations face the allegedly inhumane conditions, Plaintiffs would necessarily have had firstly to identify the properties and, secondarily, to establish the impacted populations at the identified properties to ascertain the extent these Plaintiffs (at least the individual Plaintiffs) might actually be representative.

Similarly, as to the proposed BVS Class, Plaintiffs fail utterly to allege sufficient facts to establish a class they could possibly be deemed to represent.  For instance, with no factual assertions whatsoever as to the makeup of the portion of the class defined as "prior tenants for the last three years," Plaintiffs apparently seek to have this court conclude that Defendants "will continue to injure" such *prior* tenants in a sufficiently similar manner as current tenants due, *inter*

---

[10] That is to say, no protected class or classes would be any worse off than any others under this theory of class definition.

*alia*, to "emotional distress and mental anguish from the stress, fear, and anxiety" of living in unsafe homes, *see* [Doc. 1], ¶ 197, and will somehow continue causing, as well, "physical harm" to such former tenants alleged without explanation still to be "similarly situated," *see id.*  The absurdity of this position ought to be clear on its face without need for more.

       2.   <u>Plaintiffs Fail to Establish Themselves as Sufficiently Representative of Either Class They Seek to Certify</u>.

For the reasons set forth above, *see infra* § IV(J)(i), and incorporated here as if restated in full, even if the Court were to overlook the self-defeating overbreadth of the separate classes Plaintiffs seek to have certified, Plaintiffs fail to establish themselves as sufficiently representative of either of the two potential classes as defined:  the Arbor Class or the BVS Class.

Additionally in this regard, Plaintiffs' inadequate pleading fails Rule 23's numerosity requirement as well. *See* Fed. R. Civ. P. 23(a)(1) (requiring a plaintiff pool so numerous as to render joinder impractical). While there may be a sufficient number of members of the classes as Plaintiffs seek to define them, the substantial overbreadth of each class definition and the complete absence of allegations as to a potentially certifiably-defined class render impossible, based on this Complaint, any potential effort at either class certification or a finding that any of the Plaintiffs might be sufficiently representative, legally speaking, in the context of Fed. R. Civ. P. 23.

## II.      <u>CONCLUSION</u>

For the foregoing reasons, RMS respectfully requests this Court dismiss all claims against

it with prejudice.

MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.

*/s/ Megan T. Mantzavinos*
Megan T. Mantzavinos, Esquire (Bar #: 16416)
mmantzavinos@moodklaw.com
600 Baltimore Avenue, #305
Towson, Maryland  21204
(410) 339-6880
*Attorney for Defendant, Realty Management
Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of December 2021, a copy of Defendant Realty

Management Services, Inc.'s Opening Brief In Support Of Motion To Dismiss Plaintiffs' Class

Action Complaint was electronically filed and mailed via first class mail postage prepaid to:

P. Joseph Donahue, Esquire
The Donahue Law Firm, LLC
18 West Street
Annapolis, Maryland 21401
pjd@thedonahuelawfirm.com

Jonathan Nace, Esquire
Nidel & Nace, P.L.L.C.
One Church Street
Suite 802
Rockville, MD 20850
jon@nidellaw.com

*/s/ Megan T. Mantzavinos*
Megan T. Mantzavinos, Esquire