# Exhibit 4

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) MMB 34604, p. 0219, MSA_CE64_34912. Date available 04/22/2013. Printed 09/13/2021.

Clerk of the Circuit Court
2013 APR 12 PM 3:45
PR GEO CO MD #82

34604  219

**BEDFORD UNITED, LLC**, a
Delaware limited liability company

to

**ARBOR REALTY SR, INC.**, a
Maryland corporation

IMP FD SURE $         40.00
RECORDING FEE         75.00
TOTAL                115.00
Rec# PG06    Rcpt # 70327
MMB    JKF    Blk # 4255
Apr 12, 2013          03:44 PM

---

## ASSIGNMENT OF LEASES AND RENTS

---

Dated as of April 10, 2013

RECORD AND RETURN TO:

Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0208
Attn:  Carol M. Joseph, Esq.

Tax Id Numbers:
17-1955137
17-1955145
17-1955152

Return To:                               410-246-6548
First American Title Insurance Co., - NCS
Attn: Mark Stanley
401 E. Pratt Street Suite 323       3 of 4
Baltimore, MD 21202    595064 MD01

134758.00465/7229467v.1

34604   220

## ASSIGNMENT OF LEASES AND RENTS

This Assignment of Rents and Leases (this "Agreement") is executed as of April 10, 2013, by **BEDFORD UNITED, LLC**, a Delaware limited liability company, having its principal place of business at 2607 Nostrand Avenue, Brooklyn, New York 11210 ("Assignor"), to **ARBOR REALTY SR, INC.**, a Maryland corporation, having its principal place of business at 333 Earle Ovington Boulevard, Uniondale, New York 11553 ("Assignee").

W I T N E S S E T H:

WHEREAS, Assignor has executed that certain Promissory Note dated of even date herewith (as hereafter amended, consolidated or modified from time to time, the "Note"), payable to the order of Assignee in the stated principal amount of **TWENTY-THREE MILLION EIGHTY THOUSAND AND 00/100 DOLLARS ($23,080,000.00)**; and

WHEREAS, the Note is secured and evidenced by that certain Purchase Money Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith (as hereafter amended, consolidated or modified from time to time, the "Security Instrument") from Assignor for the benefit of Assignee, encumbering that certain real property situated in the City of Hyattsville, County of Prince George's, State of Maryland as is more particularly described on Exhibit A attached hereto and incorporated herein by this reference and all buildings and other improvements now or hereafter located thereon (collectively, the "Property") and that certain Loan Agreement of even date herewith (as amended or modified from time to time, the "Loan Agreement") by and between Assignor and Assignee.

WHEREAS, Assignor is desirous of further securing to Assignee the performance of the terms, covenants and agreements hereof and of the Note, the Loan Agreement, the Security Instrument and each other document evidencing, securing, guaranteeing or otherwise relating to the indebtedness evidenced by the Note (the Note, the Loan Agreement, the Security Instrument and such other documents, as each of the foregoing may from time to time be amended, consolidated, renewed or replaced, being collectively referred to herein as the "Loan Documents").

NOW, THEREFORE, in consideration of the making of the loan evidenced by the Note by Assignee to Assignor and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.  Absolute Assignment.  Assignor irrevocably, unconditionally and absolutely assigns to Assignee:

    (a)   all of Assignor's right, title and interest in and to any and all leases (including, without limitation, oil, gas and mineral leases), license agreements, concession agreements, lease termination agreements, and other agreements of any nature relating to the use, enjoyment or occupancy of all or any part of the Property, whether oral or written or implied by course of conduct now or hereafter affecting all or any part of the Property and any and all

134758.00465/7229467v.1

guarantees, extensions, renewals, replacements and modifications thereof (collectively, the "Leases");

(b)     the immediate and continuing right to collect and receive all deposits (whether for security or otherwise), rents, issues, profits, revenues, receipts, royalties, accounts, rights, benefits and income of every nature of and from the Property, including, without limitation, license fees, concession fees, lease termination fees, minimum rents, additional rents, escalation rents, percentage rents, index rents, tax and insurance contributions and deposits, payments in respect of and/or proceeds from the sale of electricity, gas, chilled and heated water and other utilities and services, common area charges, deficiency rents, termination payments, forfeited security deposits, liquidated damages following default and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability due to destruction or damage to the Property, together with the immediate and continuing right to collect and receive the same, whether now due or hereafter becoming due, and together with all rights and claims of any kind that Assignor may have against any tenant, lessee or licensee under the Leases or against any other occupant of the Property (collectively, the "Rents").  Without limiting the foregoing, Rents shall also include all sums paid in connection with obtaining the landlord's consent to any action taken with respect to any Lease, including any assignment or subletting or any modification of a Lease, all amounts paid pursuant to promissory notes given by tenants in connection with loans made by landlord or its Affiliates and all claims and sums paid as damages or otherwise with respect to a rejection of a Lease in bankruptcy or for use and occupancy in a bankruptcy case.

IT IS THE INTENTION OF ASSIGNOR AND ASSIGNEE THAT THE FOREGOING ASSIGNMENT ESTABLISH A PRESENT AND ABSOLUTE TRANSFER AND ASSIGNMENT TO ASSIGNEE OF ALL LEASES AND RENTS (AND ALL GUARANTIES THEREOF).  This Agreement is an absolute assignment to Assignee and not an assignment as security for the performance by Assignor of the obligations under the Loan Documents, or any other indebtedness.  Assignor acknowledges that this Agreement and the Security Instrument, individually and collectively, are intended to give Assignee the benefit of Section 214 of the Bankruptcy Reform Act of 1994 and the provisions of the United States Bankruptcy Code referenced therein, as the same may hereafter be amended from time to time.

2.     Obligations.  This Agreement and the grants, assignments and transfers made in Section 1 secure the payment of all of the following obligations ("Obligations"): (1) the indebtedness evidenced by the Note, (2) all interest, including default interest, all fees, including all exit fees, all charges and other payment obligations under the Note, the Security Instrument and the other Loan Documents, including yield maintenance payments and prepayment premiums, (3) payment and performance of all obligations of Assignor under the Mortgage and each of the other Loan Documents, (4) all sums advanced pursuant to the Mortgage or any other Loan Documents to protect and preserve the Property and the Lien created by the Mortgage, and (5) all costs and expenses incurred by Assignee that Assignor is required to pay to Assignee in accordance with the terms of the Mortgage or any other Loan Document.

3.     Rights of Assignee.  Subject to the provisions of Section 7 below, Assignee shall have the right, power and authority, either in person, by agent or by a court-appointed receiver, to: (a) notify any person that the Leases have been assigned to Assignee and

2

134758.00465/7229467v.1

34604 222

that all Rents are to be paid directly to Assignee, whether or not Assignee has commenced or completed foreclosure or taken possession of the Property; (b) settle, compromise, release, extend the time of payment of, and make allowances, adjustments and discounts of any Rents or other obligations under the Leases; (c) enforce payment of Rents and other rights under the Leases, prosecute any action or proceeding, and defend against any claim with respect to Rents and Leases; (d) enter upon, take possession of and operate the Property; (e) lease all or any part of the Property; and/or (f) perform any and all obligations of Assignor under the Leases and exercise any and all rights of Assignor therein contained to the full extent of Assignor's rights and obligations thereunder, with or without the bringing of any action or the appointment of a receiver. At Assignee's request, Assignor shall deliver a copy of this Agreement to each tenant under a Lease and to each manager and managing agent or operator of the Property. Assignor irrevocably directs any tenant, manager, managing agent, or operator of the Property, without any requirement for notice to or consent by Assignor, to comply with all demands of Assignee under this Agreement and to turn over to Assignee on demand all Rents which it receives.

4. **No Obligation**. Notwithstanding Assignee's rights hereunder, Assignee shall not be obligated to perform, and Assignee does not undertake to perform, any obligation, duty or liability with respect to the Leases, Rents or Property on account of this Agreement. Assignee shall have no responsibility on account of this Agreement for the control, care, maintenance or repair of the Property, for any waste committed on the Property, for any dangerous or defective condition of the Property, for any damages to the Property, or for any negligence in the management, upkeep, repair or control of the Property. Assignee shall not be responsible for or have any duty to produce Rents or profits. Assignee shall not be required to exercise any of the rights, remedies or powers granted to Assignee under this Agreement.

5. **Right to Apply Rents**. (a) Subject to the terms and provisions of the Loan Agreement, Assignee shall have the right, but not the obligation, to use and apply any Rents received hereunder in such order and such manner as Assignee may determine for:

(i) **Enforcement or Defense**. The payment of costs and expenses of enforcing or defending the terms of this Agreement or the rights of Assignee hereunder, and collecting any Rents;

(ii) **Loan Payments**. Interest, principal or other amounts payable pursuant to the Note, the Loan Agreement, the Security Instrument and/or any of the other Loan Documents; and

(iii) **Operating Expenses**. Payment of costs and expenses of the operation and maintenance of the Property, including (A) rentals and other charges payable by Assignor under any ground lease, franchise agreement or other agreement affecting the Property; (B) electricity, telephone, water and other utility costs, taxes, assessments, water charges and sewer rents and other utility and governmental charges levied, assessed or imposed against the Property; (C) insurance premiums; (D) costs and expenses with respect to any litigation affecting the Property, the Leases or the Rents; (E) wages and salaries of employees, commissions of agents and reasonable attorneys' fees and expenses; and (F) all other costs, fees, charges, reserves, and expenses whatsoever relating to the Property.

3

134758.00465/7229467v.1

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) MMB 34604, p. 0222, MSA_CE64_34912. Date available 04/22/2013. Printed 09/13/2021.

34604  223

After the payment of all such costs and expenses and after Assignee has established such reserves as it, in its sole discretion, deems necessary for the proper management of the Property, Assignee shall apply all remaining Rents received by it to the reduction of the Obligations.

(b) If the Rents are not sufficient to meet the costs, if any, of taking possession and control of and managing the Property, any funds expended by Assignee for such purposes shall become a part of the Debt secured by this Agreement. Such amounts shall be payable upon notice from Assignee to Assignor requesting payment thereof and shall bear interest from the date of such notice at the Default Rate (as defined in the Loan Agreement) until paid.

6. <u>No Waiver</u>. The exercise or nonexercise by Assignee of the rights granted in this Agreement or the collection and application of Rents by Assignee or its agent shall not be a waiver of any default by Assignor under this Agreement or any other Loan Document. No action or failure to act by Assignee with respect to any obligations of Assignor under the Loan Documents, or any security or guaranty given for the payment or performance thereof, shall in any manner affect, impair or prejudice any of Assignee's rights and privileges under this Agreement, or discharge, release or modify any of Assignor's duties or obligations hereunder.

7. <u>Revocable License</u>. (a) It is expressly understood and agreed, anything herein contained to the contrary notwithstanding, but without limiting the present and absolute nature of the assignment hereunder, that the Assignee shall not exercise (except to the extent otherwise provided in any of the Loan Documents) any of the rights or powers herein conferred upon it with respect to the Leases and the collection of the Rents, until an Event of Default shall occur, Assignee hereby agrees that Assignor shall have, and Assignee hereby grants to Assignor, until the occurrence of an Event of Default, a license to collect the Rents and to exercise the other rights assigned to Assignee hereunder (in each instance, subject, however to the further conditions and limitations hereof or contained in the Loan Agreement or other Loan Documents with respect thereto) ,<u>provided</u>, <u>however</u>, that all Rents shall be collected and applied in accordance with applicable provisions of the Loan Agreement. Upon the occurrence and continuation of an Event of Default, such license shall, to the fullest extent permitted by law, be automatically revoked, cease and terminate without any further action and without the necessity of the appointment of a receiver and whether or not Assignee has taken possession of the Property. Upon the occurrence of any such Event of Default, the Assignee shall be entitled to deliver notice to the tenants under the Leases (or the guarantors thereof) directing them to pay Assignee (or its agent) all Rents and other amounts then due under or with respect to the Leases (or the guaranties thereof) and thereafter accruing, and this Agreement shall constitute a direction to and full authority to the tenants under the Leases (and such guarantors) to pay all such amounts to the Assignee (or its agents) without proof of the default relied upon. The tenants (and such guarantors) are hereby irrevocably authorized to rely upon and comply with (and shall be fully protected in so doing) any notice or demand by the Assignee (or its agents) for the payment to the Assignee (or its agents) of any rental or other sums which may be or thereafter become due under the Leases (or the guaranties thereof), or for the performance of any of tenants' undertakings under the Leases (or such guarantor's undertakings under the guaranties thereof) and shall have no right or duty to inquire as to whether any default or Event of Default has actually occurred or is then existing.

4

134758.00465/7229467v.1

34604  224

(a) Any Rents received by Assignor or its agents in violation of, or after termination of, its license to collect Rents hereunder shall be held by Assignor in trust for Assignee and shall not be commingled with other funds of Assignor. Assignor shall within one (1) Business Day deliver all such Rents received by it to Assignee (or as Assignee may direct).

8. <u>No Mortgagee in Possession</u>. The acceptance by Assignee of this Agreement, with all of the rights, powers, privileges and authority so created, shall not, prior to entry upon and taking of possession of the Property by Assignee, be deemed or construed to constitute Assignee a mortgagee-in-possession nor thereafter or at any time or in any event obligate Assignee to appear in or defend any action or proceeding relating to the Leases, the Rents or any other part of the Property, or to take any action hereunder, or to expend any money or incur any expenses or perform or discharge any obligation, duty or liability under the Leases, or to assume any obligation or responsibility for any security deposits or other deposits delivered to Assignor by any obligor thereunder and not assigned and delivered to Assignee, nor shall Assignee be liable in any way for any injury or damage to Person or property sustained by any Person in or about the Property except in the case of Assignee's willful misconduct or gross negligence; and that the collection of said Rents and application as aforesaid and/or the entry upon and taking possession of the Property or any part thereof by Assignee or a receiver shall not cure or waive, modify or affect any Event of Default under the Note, the Loan Agreement, the Security Instrument or any other Loan Document so as to invalidate any act done pursuant to such Event of Default, and the enforcement of such right or remedy by Assignee, once exercised, shall continue for so long as Assignee shall elect, notwithstanding that the collection and application aforesaid of the Rents may have cured for the time the original Event of Default. If Assignee shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time following any subsequent Event of Default, whether of the same or a different nature.

9. <u>Representations and Warranties</u>. Assignor makes the following representations and warranties in connection with the Leases: (a) Assignor has not executed any prior assignment of its right, title and interest in the Leases, or of the Rent; (b) Assignor has not done any act which might prevent Assignee from exercising its rights under this Agreement; (c) except only for rent and additional rent for the current month, Assignor has not accepted and will not accept under any of the Leases (i) any payment of advance rent or additional rent in an amount that is more than one month's rent and additional rent and (ii) any security deposit greater than the security deposit stated in the applicable Lease.

10. <u>Leasing of Property</u>. Assignor covenants and agrees to comply with the provisions of Article 6 of the Loan Agreement and, upon demand, to confirm in writing the assignment to Assignee of all subsequent Leases of the Property upon the terms set forth in this Agreement.

11. <u>Specific Covenants of Assignor</u>. Assignor covenants and agrees:

(a) To perform fully all material obligations, duties, and agreements of landlord and, as applicable, tenant under the Leases.

5

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) MMB 34604, p. 0224, MSA_CE64_34912. Date available 04/22/2013. Printed 09/13/2021.

34604 225

(b) To deposit all security deposits delivered by tenants in connection with the Leases in accordance with applicable law;

(c) At Assignor's sole cost and expense, to appear in and defend any action or proceeding arising under the Leases or which is connected with the obligations, duties or liabilities of landlord, tenant or any guarantor and to pay all costs and expenses of Assignee, including reasonable attorneys' fees, in any action or proceeding in which Assignee may appear pursuant to the terms of this Agreement and/or the Loan Agreement.

(d) If Assignor fails to make any payment or to do any acts required by this Agreement, then Assignee may in its sole discretion and without notice to Assignor perform Assignor's obligations under the Leases as Assignee may deem necessary, at Assignor's reasonable cost and expense. These acts may include without limitation appearing in and defending any proceeding connected with the Leases, including without limitation any proceedings of any tenants under the Bankruptcy Code. No action by Assignee shall release Assignor from its obligation under this Agreement. Assignor irrevocably appoints Assignee its true and lawful attorney to exercise its rights under this Agreement, which appointment is coupled with an interest.

(e) To pay immediately upon demand all sums expended by Assignee under this Agreement, together with interest at the Default Rate. These expenditures shall be secured by the Security Instrument.

(f) If a petition under the Bankruptcy Code shall be filed by or against Assignor and Assignor, as landlord, shall determine to reject any lease pursuant to Section 365(a) of the Bankruptcy Code, then Assignee shall have the right, but not the obligation, to demand that Assignor assume and assign the lease to Assignee and Assignor shall provide adequate assurance of future performance under the lease.

(g) Assignee's rights under this Agreement may be exercised either independently of or concurrently with any other right in this Agreement, the Loan Agreement or in any other document securing the Note. No action taken by Assignee under this Agreement shall cure or waive any default nor affect any notice under the Loan Agreement.

12. <u>Event of Default</u>. The occurrence of an Event of Default pursuant to the Loan Agreement shall constitute an Event of Default hereunder.

13. <u>Additional Rights and Remedies of Assignee</u>. In addition to all other rights and remedies provided herein, under the Loan Documents, or otherwise available at law or in equity, if an Event of Default occurs, Assignee shall, in its sole discretion, have the following rights and remedies, all of which are cumulative:

(a) Assignee shall have the right at any time or times thereafter, at its sole election, without notice thereof to Assignor, to enforce the terms of the Leases, to sue for or otherwise collect the Rents, whether in Assignor's or Assignee's name, to enter upon, take possession and manage and control the Leases and any other part of the Property, with or without notice, either in person, by agent or by court-appointed receiver, and to otherwise do any act or incur any reasonable costs or expense as Assignee shall deem proper to protect the security

6

134758.00465/7229467v.1

hereof, as fully and to the same extent as Assignor could do in possession, and in such event to apply the Rents so collected to the operation and management of the Property, or any part thereof, but in such order as Assignee may deem proper, and including payment of reasonable management, brokerage and attorneys' fees, in the name of Assignor, Assignee, a nominee of Assignee, or in any or all of the said names;

(b)     Assignee shall have the right at any time or times, at its sole election, without notice thereof, except such notice as may be expressly provided in the Loan Agreement, if any, to Assignor, to declare all sums secured hereby immediately due and payable and, at its option, exercise any and/or all of the rights and remedies contained in the Note, the Loan Agreement and/or the Security Instrument;

(c)     Assignee may take or release other security for the payment of the Obligations, may release any party primarily or secondarily liable therefor, may grant extensions, renewals or indulgences with respect thereto and may apply any other security held by it to the reduction or satisfaction of the Obligations without prejudice to any of its rights under this Agreement;

(d)     Nothing contained in this Agreement and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, the Mortgage, or the other Loan Documents and this Agreement is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the Obligations and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder; and

(e)     Assignee shall have the right to assign all or any portion of Assignee's right, title and interest under this Agreement in any of the Leases to any subsequent holder of the Note or any participating interest therein or to any Person acquiring title to the Leases or any other portion of the Property through foreclosure or otherwise. Any subsequent assignee shall have all the rights and powers herein provided to Assignee.

14.     <u>No Cure or Waiver</u>. Assignee shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies under this Agreement. Any failure by Assignee to insist upon strict performance by Assignor or any guarantor of any of the terms and provisions of this Agreement or any other Loan Document, shall not be deemed to be a waiver of any of the terms or provisions of this Agreement or such other Loan Document and Assignee shall have the right thereafter to insist upon strict performance by Assignor or any guarantor of any and all of them. A waiver by Assignee of any right or remedy under this Agreement on any one occasion, shall not be construed as a bar to or waiver of any such right or remedy which Assignee would have had on any future occasion nor shall Assignee be liable for exercising or failing to exercise any such right or remedy. Assignee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Obligations as the same become due, without regard to whether or not the balance of the Obligations shall be due, and without prejudice to the right of Assignee thereafter to bring an action of foreclosure, or

7

134758.00465/7229467v.1

34604  227

any other action, for a default or defaults by Assignor existing at the time such earlier action was commenced.

The exercise by Assignee of the option granted it in this Section and the collection of the Rents and all sums received pursuant to any tenant security and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Mortgage, the Leases, this Agreement or the other Loan Documents.

Neither Assignee's nor any receiver's entry upon and taking possession of all or any part of the Property nor any collection of Rents, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Obligations, nor the exercise of any other right or remedy by Assignee or any receiver shall impair the status of the security, or cure or waive any default or notice of default under this Agreement, or nullify the effect of any notice of default or sale (unless all Obligations and obligations which are then due have been paid and performed and Assignor has cured all other defaults), or prejudice Assignee in the exercise of any right or remedy, or be construed as an affirmation by Assignee of any tenancy, lease or option or a subordination of the lien of this Agreement.

15. <u>Waivers</u>. To the extent permitted by Law, Assignor waives: (1) the right to asset a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Assignee arising out of or in any way connected with any of the Loan Documents or the Obligations, (2) the benefit of all laws now or hereafter in force regarding appraisement, valuation, stay, extension, reinstatement and redemption, (3) all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein, (4) any and all rights of redemption from sale under any order or decree of foreclosure of this Agreement on behalf of Assignor, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Agreement and on behalf of all Persons, (5) except as otherwise provided in the Loan Documents, any notices of any nature whatsoever from Assignee except with respect to matters for which this Agreement specifically and expressly provides for the giving of notice by Assignee to Assignor and except with respect to matters for which Assignee is required by applicable law to give notice, (6) the pleading of any statute of limitations as a defense to payment of the Obligations, (7) any defense Assignor might assert or have by reason of Assignee's failure to make any tenant a party defendant in any foreclosure proceeding or action instituted by Assignee.

16. <u>Further Acts, Etc</u>. Assignor will, at the cost of Assignor, and without expense to Assignee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Assignee shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Assignee, the property and rights hereby mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Assignor may be or may hereafter become bound to convey or assign to Assignee, or for carrying out the intention or facilitating the performance of the terms of this Agreement or for filing, registering or recording this Agreement, or for complying with all applicable Laws, provided, however, that Assignor shall have no obligation to take any such action which increases or modifies Assignor's liabilities or obligations in the

8

134758.00465/7229467v.1

34604  228

Loan Documents. Assignor, on demand, will execute and deliver and hereby authorizes Assignee to execute in the name of Assignor or without the signature of Assignor to the extent Assignee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence or perfect more effectively the security interest of Assignee in the Property. Assignor grants to Assignee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Assignee pursuant to this Section.

17. **Additional Security**. Assignee may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the satisfaction of such indebtedness, without prejudice to any of its rights under this Agreement. Assignor shall from time to time upon request of Assignee, specifically assign to Assignee, as additional security for the payment of the Debt, by an instrument in writing in such form as may be reasonably approved by Assignee, all right, title and interest of Assignor in and to any and all Leases now or hereafter on or affecting the Property, together with all security therefor and all Rents payable thereunder, subject to the terms hereof. Assignor shall also deliver to Assignee any notification, financing statement or other document reasonably required by Assignee to perfect the assignment as to any such Lease.

18. **Marshalling**. Notwithstanding the existence of any other security interest in the Property or any part thereof held by Assignee or by any other party, Assignee shall have the right to determine the order in which any of the Leases or any other portion of the Property shall be subjected to the remedies provided herein. Assignee shall have the right to determine the order in which any or all portions of the Debt are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Assignor and any Person who now or hereafter acquires a security interest in any of the Leases or any other portion of the Property and who has actual or constructive notice hereof hereby waives, to the extent permitted by law, any and an right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable Legal Requirements or provided herein.

19. **Term**. This Agreement shall continue in full force and effect until (a) all amounts due under the Loan Documents are paid in full, and (b) all other obligations of Assignor under the Loan Documents are fully satisfied. This Agreement shall be released and terminated as, when and to the extent the Security Instrument is released and discharged without the need to execute and deliver further instruments; provided, however, that Assignee shall, upon Assignor's written request and at Assignor's sole cost and expense, execute and deliver (in recordable form, if necessary), such documents as shall be necessary to release, cancel and terminate this Agreement.

20. **Appointment**. Assignor irrevocably appoints Assignee its true and lawful attorney in fact, which appointment is coupled with an interest, to execute any or all of the rights or powers described herein with the same force and effect as if executed by Assignor, and Assignor ratifies and confirms any and all acts done or omitted to be done by Assignee, its agents, servants, employees or attorneys in, to or about the Property; provided, however, that Assignee shall not exercise any of the rights granted in this paragraph until after the occurrence of an Event of Default and during the continuance thereof.

9

134758.00465/7229467v.1

34604  229

21. <u>Liability of Assignee</u>.  Assignee shall not in any way be liable to Assignor for any action or inaction of Assignee, its employees or agents under this Agreement.

22. <u>Indemnification</u>.  Assignor shall indemnify, defend and hold harmless Assignee from and against all liability, loss, damage, cost or expense which it may incur under this Agreement or under any of the Leases, including any claim against Assignee by reason of any alleged obligation, undertaking, action, or inaction on its part to perform or discharge any terms, covenants or conditions of the Leases or with respect to Rents, and including attorneys' fees and expenses, but excluding any claim to the extent caused by Assignee's fraud, bad faith, gross negligence or willful misconduct, violation of applicable law or breach of this Agreement. Any amount covered by this indemnity shall be payable on demand, and shall bear interest from the date of demand until the same is paid by Assignor to Assignee at a rate equal to the Default Rate.

23. <u>Notices</u>.  All notices, demands, requests, consents, approvals or communications required under this Agreement shall be in writing and shall be deemed to have been properly given if delivered in accordance with the provisions of the Loan Agreement at the addresses set forth in the Loan Agreement.

24. <u>Modification</u>.  This Agreement may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of such change is sought.

25. <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of Assignee and its successors and assigns and shall be binding on Assignor and its successors and assigns.

26. <u>Expenses</u>.  Assignor will upon demand pay to Assignee the amount of any and all costs and expenses, including the reasonable fees and out of pocket disbursements of its counsel and of any experts and agents, which Assignee may incur in connection with (1) any amendment to this Agreement, (2) filing or recording fees incurred with respect to or in connection with this Agreement, (3) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, any of the Property, (4) the exercise or enforcement of any of the rights of Assignee under this Agreement, or (5) the failure by Assignor to perform or observe any of the provisions of this Agreement.

27. <u>General Indemnification</u>.  Assignor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (as defined below) from and against any and all Losses (as defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following (but excluding Losses arising out of Assignee's gross negligence or willful misconduct): (1) ownership of this Agreement, the Property or any interest therein or receipt of any Rents; (2) any amendment to, or restructuring of, the Obligations, and the Note, this Agreement, or any other Loan Documents; (3) any and all lawful action that may be taken by Assignee in connection with the enforcement of the provisions of this Agreement or the Note or any of the other Loan Documents, whether or not suit is filed in connection with same, or in connection with Assignor, any guarantor or indemnitor and/or any member, partner, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or

10

134758.00465/7229467v.1

34604  230

state bankruptcy, insolvency or similar proceeding; (4) any accident, injury to or death of Persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (5) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (6) any failure on the part of Assignor to perform or be in compliance with any of the terms of this Agreement or the other Loan Documents; (7) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (8) the failure of any Person to file timely with the Internal Revenue Service an accurate Form 1099-S, Statement for Recipients of Proceeds from Real Estate Transactions, which may be required in connection with this Agreement, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Agreement is made; (9) any failure of the Property to be in compliance with any applicable Laws; (10) the enforcement by any Indemnified Party of the provisions of this Section; (11) any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; (12) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the loan evidenced by the Note and secured by this Agreement; or (13) any misrepresentation made by Assignor in this Agreement, or any documents or information provided pursuant to this Agreement or any documents or information provided pursuant to this Agreement. Any amounts payable to Assignee by reason of the application of this Section shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by the applicable Indemnified Party until paid.

    For purposes of this Agreement, the term "Indemnified Parties" means Assignee and any Person who is or will have been involved in the origination of the Loan, any Person who is or will have been involved in the servicing of such Loan, any Person in whose name the encumbrance created by the Mortgage is or will have been recorded, Persons who may hold or acquire or will have held a full or partial interest in such Loan, including investors or prospective investors in such Loan, as well as custodians, trustees and other fiduciaries who hold or have held a full or partial interest in such Loan for the benefit of third parties, as well as the respective directors, officers, shareholders, members, partners, employees, agents, servants, representatives, contractors, subcontractors, affiliates, subsidiaries, participants, successors and assigns of any and all of the foregoing (including, but not limited to any other Person who holds or acquires or will have held a participation or other full or partial interest in such Loan or the Property, whether during the term of the Loan or as part of or following a foreclosure of such Loan and including, but not limited to any successors by merger, consolidation or acquisition of all or a substantial portion of Assignee's assets and business, but excluding any third party purchaser at a foreclosure who has not held an interest in the Loan at the time of foreclosure.

    For purposes of this Agreement, the term "Losses" means any and all losses, costs and expenses incurred by Lender in respect of or as a result of any or all claims, suits, liabilities (including strict liabilities), actions, demands, proceedings, obligations, debts, damages (including punitive and consequential), trials, fines, penalties, charges, injury to a person, property or natural resources, fees, judgments, accounts, orders, adjudications, awards, liens, injunctive relief, causes of action or amounts paid in settlement of whatever kind or nature,

134758.00465/7229467v.1

34604 231

including reasonable attorney's fees, reasonable consultant's fees, and other costs of defense or otherwise related thereto.

28. <u>Amendments</u>. No amendment or waiver of any provision of this Agreement, nor consent to any departure by Assignor from this Agreement, shall in any event be effective unless the same shall be in writing and signed by Assignee and Assignor, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

29. <u>Definitions</u>. All capitalized terms used herein and not otherwise defined shall have the respective meanings assigned thereto in the Loan Agreement.

30. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and shall be deemed to have become effective when and only when one or more of such counterparts shall have been signed by or on behalf of each of the parties hereto, although it shall not be necessary that any signed counterpart be signed by or on behalf of each of the parties hereto, and all such counterparts shall be deemed to constitute but one and the same instrument.

31. <u>Governing Law; Jurisdiction</u>. This Agreement shall be governed and construed in accordance with the laws of the State of in which the Property is located (the "State") and the applicable laws of the United States of America. In any action brought under or arising out of this Agreement or the other Loan Documents, Assignor hereby consents to the jurisdiction of any competent state or federal court within the State, and consents to service of process by out of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to Assignor at its address for notices specified in the Loan Agreement.

32. <u>Submission to Jurisdiction</u>. Assignor hereby irrevocably submits to the jurisdiction of any federal or state court sitting in St. George's County, Maryland over any action or proceeding arising out of or related to this Agreement and agrees with Assignee that personal jurisdiction over Assignor rests with such courts for purposes of any action on or related to this Agreement. Assignor hereby waives personal service by manual delivery and agrees that service of process may be made by prepaid certified mail directed to Assignor at the address of Assignor for notices under this Agreement at such other address as may be designated in writing by Assignor to Assignee, and that upon mailing of such process such service will be effective as if Assignor was personally served. Assignor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any manner provided by law. Assignor further waives any objection to venue in any such action or proceeding on the basis of inconvenient forum. Assignor agrees that any action on or proceeding brought against Assignee shall only be brought in such courts.

33. <u>TRIAL BY JURY</u>. ASSIGNOR HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM, OTHER THAN A COMPULSORY COUNTERCLAIM, IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY ASSIGNEE OR ITS AGENTS AND WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING INCLUDING, WITHOUT LIMITATION, ANY TORT ACTION, BROUGHT BY EITHER PARTY HERETO AGAINST THE OTHER OR IN ANY COUNTERCLAIM ASSIGNOR

34604   232

MAY BE PERMITTED TO ASSERT HEREUNDER OR WHICH MAY BE ASSERTED BY ASSIGNEE OR ITS AGENTS AGAINST ASSIGNOR OR IN ANY MATTERS WHATSOEVER, ARISING OUT OF OR IN ANY WAY CONNECTED WITH ASSIGNOR, THIS ASSIGNMENT, THE NOTE, THE LOAN AGREEMENT, THE SECURITY INSTRUMENT OR ANY OF THE OTHER LOAN DOCUMENTS.

34. <u>Definitions</u>. All capitalized terms used herein and not otherwise defined shall have the respective meanings assigned thereto in the Loan Agreement.

35. <u>Conflict</u>. If any conflict or inconsistency exists between the absolute assignment of the Rents and the Leases in this Agreement and the assignment of the Rents and Leases as security in the Loan Agreement, the terms of this Agreement shall control.

36. <u>Limitation on Liability</u>. Assignor's liability hereunder is subject to the limitation on liability provisions of Section 13.26 of the Loan Agreement.

[signature pages follow]

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) MMB 34604, p. 0232, MSA_CE64_34912. Date available 04/22/2013. Printed 09/13/2021.

13

134758.00465/7229467v.1

34604  233

IN WITNESS WHEREOF, Assignor has executed this instrument the day and year first above written.

         **ASSIGNOR**:

         **BEDFORD UNITED, LLC**, a
         Delaware limited liability company

  By:    **HYATTSVILLE UNITED, LLC**, a
         Delaware limited liability company,
         its sole member

      By:    **FIRST MARKET MD, LLC**, a
             Delaware limited liability company,
             its Managing Member

            By: _____
            Name:  Aaron Kurlansky
            Title:   Manager

STATE OF FLORIDA     )
                             : ss.:
COUNTY OF MIAMI-DADE)

On April __5__, 2013, before me, the undersigned Notary Public, personally appeared **AARON KURLANSKY**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature(s) on the instrument, the individual, or the person(s) upon behalf of which the individual(s) acted, executed the same instrument.

_____
Signature and Office of individual
taking acknowledgment

[Notary Seal: SHELLEY L. DUNKELBERGER, Notary Public, State of Florida, Commission #EE68805, My Commission Expires Mar. 12, 2015, Bonded through 1st State Insurance]

134758.00465/7229467v.1

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) MMB 34604, p. 0233, MSA_CE64_34912. Date available 04/22/2013. Printed 09/13/2021.

34604   234

# EXHIBIT A

## LEGAL DESCRIPTION

All that certain piece or parcel of land, together with the improvements thereon, lying, situate and being in Prince George's County, Maryland, being described as follows:

Parcels lettered "H", "J" and "K" in the subdivision entitled "Langley Park, Plat No. 3", as per plat thereof recorded in Plat Book WWW 16 at Plat 37 among the land records of Prince George's County, Maryland, being in the 17th Election District.

Tax Account Number 17-1955137, 1955145 and 1955152

APN:  17-1955137 and 17-1955145 and 17-1955152

134758.00465/7229467v.1