**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

CASA DE MARYLAND, INC., et al,

                 Plaintiffs,

   vs.

                                     Civil Action No.: DKC-21-01778

ARBOR REALTY TRUST, INC., et al,

                 Defendants.

 

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**ARBOR REALTY TRUST, INC., ARBOR REALTY**
**LIMITED PARTNERSHIP, AND ARBOR REALTY SR, INC.**
**TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Ray D. McKenzie
**WTAII PLLC**
PO Box 609
Vienna, Virginia 22183
Telephone (202) 688-3150
Facsimile (202) 869-1882
ray.mckenzie@wtaii.com

Peter W. Tomlinson (*pro hac vice*)
Muhammad U. Faridi (*pro hac vice*)
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, New York 10036
Telephone (212) 336-2000
Facsimile (212) 336-2222
pwtomlinson@pbwt.com
mfaridi@pbwt.com

*Attorneys for Defendants Arbor Realty Trust, Inc.,*
*Arbor Realty Limited Partnership, and Arbor Realty*
*SR, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND.............................................................................3

    A.    The Arbor Defendants Are Not Property Owners or Managers ............................4

    B.    Public Records Establish That the Arbor Defendants Do Not Own the BVS Properties...........................................................................................5

        1.    Bedford United and Victoria United Acquire the BVS Properties, Using Mortgage Loans Made by Arbor Realty SR......................................6

        2.    Bedford United and Victoria United Refinance Arbor Realty SR's Loans..............................................................................................7

    C.    Plaintiffs' Improper Group Allegations and Unsupported Allegations of Domination Highlight the Lack of Merit in Their Claims.........................................9

ARGUMENT ..............................................................................................11

I.    PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT THE ARBOR DEFENDANTS HAVE AN INTEREST IN THE BVS PROPERTIES ..........................12

    A.    The Arbor Defendants Do Not Own the BVS Properties.......................................13

    B.    The Arbor Defendants Do Not Control the BVS Properties..................................16

II.    THE COMPLAINT IMPROPERLY GROUPS ALL DEFENDANTS TOGETHER .............................................................................................24

CONCLUSION............................................................................................31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC,*
    929 F. Supp. 2d 502 (D. Md. 2013) .......................................................................18

*Albright v. Oliver,*
    510 U.S. 266 (1994) ..............................................................................................12

*Am. Realty Trust v. United States,*
    498 F.2d 1194 (4th Cir. 1974) ...............................................................................14

*In re American Honda Motor Co., Inc. Dealerships Relations Litig.,*
    941 F. Supp. 528 (D. Md. 1996) ............................................................................23

*Anderson v. Fed. Deposit Ins. Corp.,*
    918 F.2d 1139 (4th Cir. 1990) ...............................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..............................................................................................12

*Baltimore Line Handling Co. v. Brophy,*
    771 F. Supp. 2d 531 (D. Md. 2011) .......................................................................17

*Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.,*
    340 A.2d 225, 275 Md. 295 (Md. 1975) ...............................................................18

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................12, 24, 26

*Boykin Anchor Co. v. AT&T Corp.,*
    No. 5:10-cv-591-FL, 2011 WL 1456388 (E.D.N.C. Apr. 14, 2011) .....................25

*Bridge v. New Holland Logansport, Inc.,*
    815 F.3d 356 (7th Cir. 2016) .................................................................................21

*Byard v. Verizon W. Va., Inc.,*
    No. 1:11CV132, 2012 WL 1085775 (N.D. W.Va. Mar. 30, 2012) ........................19

*Carhartt, Inc. v. Innovative Textiles, Inc.,*
    323 F. Supp. 3d 917 (E.D. Mich. 2018) ................................................................30

*Century Nat'l Bank v. Makkar,*
    751 A.2d 1 (Md. Ct. Spec. App. 2000) ..................................................................15

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
   381 F. Supp. 2d 452 (D. Md. 2005)................................................................24, 28

*Coulibaly v. J.P. Morgan Chase Bank, N.A.*,
   No. DKC-10-3517, 2011 WL 3476994 (D. Md. Aug. 8, 2011) ..............................16

*In re County Green Ltd. P'ship*,
   604 F.2d 289 (4th Cir. 1979) ........................................................................19, 21

*Cozzarelli v. Inspire Pharms. Inc.*,
   549 F.3d 618 (4th Cir. 2008) ...................................................................................3

*Dash BPO, LLC v. Lindberg*,
   5:20-CV-625-FL (E.D.N.C. Jan. 11, 2022) .............................................................21

*EEOC v. Bass Pro Outdoor World*, *LLC*,
   No. 4:11-CV-3425, 2012 WL 13040407 (S.D. Tex. Oct. 23, 2012) .......................22

*Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*,
   No. WDQ–13–0040, 2014 WL 346630 (D. Md. Jan. 29, 2014) ..............3, 20, 21, 24

*Gianfredi v. Hilton Hotels Corp.*,
   No. 08-5413 (PGS), 2010 WL 1381900 (D.N.J. Apr. 5, 2010), *Report and
   Recommendation adopted*, 2010 WL 1655635........................................................25

*Harris v. Nationstar Mortg., LLC*,
   No. CCB-19-3251, 2020 WL 4698062 (D. Md. Aug. 13, 2020)...............................5

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ...................................................................................12

*Hornsby v. Hornsby Stores, Inc.*,
   734 F. Supp. 302 (N.D. Ill. 1990).............................................................................22

*Hosack v. Utopian Wireless Corp.*,
   No. DKC 11-0420, 2011 WL 1743297 (D. Md. 2011)..............................................27

*Iceland Telecom, Ltd. v. Info. Sys. and Net. Corp.*,
   268 F. Supp. 2d 585 (D. Md. 2003) ..........................................................................17

*Jackson v. Warning*,
   No. CV PJM 15-1233, 2016 WL 7228866 (D. Md. Dec. 13, 2016)........................28

*Jien v. Perdue Farms, Inc.*,
   No. 1:19-CV-2521-SAG, 2020 WL 5544183 (D. Md. Sept. 16, 2020).............24, 25

*Liverpool v. Caesars Baltimore Mgmt. Co.*,
  No. CV JKB-21-0510, 2021 WL 3116106 (D. Md. July 22, 2021), *amended,*
  2021 WL 5909718 (D. Md. Dec. 14, 2021) ............................................................................17

*McKiver v. Murphy Brown, LLC*,
  980 F.3d 937 (4th Cir. 2020) ...................................................................................19, 23

*Messinger v. Moore*,
  No. 2:21-cv-19-RAJ, 2021 WL 3514747 (E.D. Va. Aug. 10, 2021) .....................................28

*In re Moffett*,
  289 B.R. 55 (E.D. Va. 2003), aff'd 356 F.3d 518 (4th Cir. 2004) .........................................15

*Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*,
  160 F.3d 170 (4th Cir. 1998) ...............................................................................20, 21

*Papasan v. Allain*,
  478 U.S. 265 (1986) ................................................................................................12

*Park Miller, LLC v. Durham Grp., Ltd.*,
  No. 19-CV-04185-WHO, 2020 WL 1955652 (N.D. Cal. Apr. 23, 2020) ..............................22

*Proctor v. Metro. Money Store Corp.*,
  579 F. Supp. 2d 724 (D. Md. 2008) .......................................................................25, 26

*Revene v. Charles Cty. Comm'rs*,
  882 F.2d 870 (4th Cir. 1989) ...................................................................................12

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) ................................................................................ *passim*

*Sprint Nextel Corp. v. Simple Cell, Inc.*,
  No. CCB-13-617, 2013 WL 3776933 (D. Md. July 17, 2013) ..........................................29, 30

*State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*,
  381 F. Supp. 3d 536 (D. Md. 2019) ..........................................................................15

*Sullivan v. Gen. Helicopters, Int'l*,
  564 F. Supp. 2d 496 (D. Md. 2008) ..........................................................................23

*Taylor v. NationsBank, N.A.*,
  776 A.2d 645, 365 Md. 166 (Md. 2001) .....................................................................29

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
  64 F.3d 773 (2d Cir. 1995) .....................................................................................23

*Travel Comm., Inc. v. Pan Am. World Airways, Inc.*,
  603 A.2d 1301 (Md. 1992) ......................................................................................20

*Triantis v. Triantis*,
968 A.2d 154 (Md. Ct. Spec. App. 2009) ................................................................14

*United Black Firefighters v. Hirst*,
604 F.2d 844 (4th Cir. 1979) ..................................................................................12

*United States v. Bestfoods*,
524 U.S. 51 (1998) ..................................................................................................21

*Vitol, S.A. v. Primrose Shipping Co.*,
708 F.3d 527 (4th Cir. 2013) ..........................................................17, 20, 22, 24

*Wachovia Sec., LLC v. Banco Panamericano, Inc.*,
674 F.3d 743 (7th Cir. 2012) ..................................................................................19

*Wallace v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) ..............................................................................17

*Walsh v. Bank of N.Y. Mellon*,
Case No. GJH-15-934, 2017 WL 239367 (D. Md. Jan. 19, 2017) ..........................5

*Webber v. Maryland*,
No. RDB-16-2249, 2017 WL 86015 (D. Md. Jan. 10, 2017) ................................30

*Williams v. First Fed. Sav. & Loan Ass'n of Arlington*,
651 F.2d 910 (4th Cir. 1981) ..................................................................................15

*Willis v. Bank of Am. Corp.*,
No. ELH-13-2615, 2014 WL 3829520 (D. Md. Aug. 1, 2014) ................................5

*Zos v. Wells Fargo Bank, N.A.*,
No. GJH-16-466, 2017 WL 221787 (D. Md. Jan. 18, 2017) ....................................5

**Statutes**

Fair Housing Act ................................................................................................11, 18, 30

Md. Code, Real Prop. § 7-101(a) ...................................................................................6

Md. Code, Real Prop. § 7-103 ..................................................................................7, 14

UCC ..........................................................................................................................6, 7, 8

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................................1, 12

Prince George's County Landlord-Tenant Regulations § 13-138(a)(7) ........................28

Defendants Arbor Realty Trust, Inc. ("Arbor Realty Trust"), Arbor Realty Limited Partnership ("Arbor Realty Limited"), and Arbor Realty SR, Inc. ("Arbor Realty SR") (collectively, the "Arbor Defendants") respectfully move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice the Amended Complaint filed by Plaintiffs CASA de Maryland, Inc., Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (collectively, "Plaintiffs") for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

The Amended Complaint should be dismissed as to the Arbor Defendants because they do not currently have and never previously had any ownership interest, direct or indirect, in the two properties at issue in the lawsuit—the Bedford Station and Victoria Station apartment complexes (together, the "BVS Properties"). Moreover, the Amended Complaint impermissibly groups disparate defendants together and argues implausibly for alter ego liability without forecasting a factual showing that each defendant is plausibly liable. This the law does not allow.

The gravamen of the 159-page Amended Complaint is that the eight named Defendants are responsible for the living conditions at the BVS Properties. The Arbor Defendants are certainly not. This is because the Arbor Defendants have not held any ownership interest in the BVS Properties or their owners, nor have they exercised control over the same; therefore they cannot be liable. Faced with this insurmountable hurdle, Plaintiffs rely on speculation and innuendo to suggest that a link exists between the Arbor Defendants and the BVS Properties. In so doing, they elide the fact that the same publicly available land records on which they rely in the Amended Complaint also irrefutably demonstrate that any interest the Arbor Defendants held

in the BVS Properties—as a mortgage lender, and never as an owner—was extinguished years ago.  Plaintiffs' conclusory and speculative attempts to impose alter ego liability on the Arbor Defendants fare no better.  Even if their unsupported allegations were true, Plaintiffs' failure to plead an abuse of the corporate form to perpetrate a fraud or injustice is fatal to their veil-piercing theory.  Accordingly, the Court should dismiss all claims against the Arbor Defendants.  That Plaintiffs have failed to state a plausible claim for relief even after amending their pleading underscores that such dismissal should be with prejudice.

Rather than articulating a theory of how or why the Arbor Defendants exercise control over the BVS Properties, Plaintiffs take a shotgun approach to pleading facts about the alleged wrongdoing.  The Amended Complaint lumps no fewer than eight distinct legal entities together haphazardly in various overlapping groups that make it virtually impossible to determine which entity might be responsible for the alleged conduct.  This approach does not satisfy applicable pleading standards.  The law in this circuit is clear that a complaint must make factual allegations showing that each defendant is plausibly liable.  Simply put, the Amended Complaint is a textbook example of impermissible group pleading, and the Court should reject Plaintiffs' broad-brush approach.

The deficiencies in Plaintiffs' pleading are particularly glaring because the Amended Complaint represents their second attempt to state a claim.  Plaintiffs' original Complaint, filed in July 2021, was full of vague and generalized allegations that were rooted in improper group pleading.  When Defendants pointed out these shortcomings in their motions to dismiss[1], rather than stand behind their initial pleading, Plaintiffs amended.  But a new coat of paint cannot

---

[1] *See* ECF Nos. 30, 35-36, and 40.

salvage their fundamentally flawed theory of liability, which lobs allegations that range from speculative to demonstrably false against collective groups of defendants.

For these reasons, and those stated in the motion to dismiss and memorandum of law filed by Arbor Management Acquisition Company, LLC; Bedford United, LLC ("Bedford United"); Victoria United, LLC ("Victoria United"); and Hyattsville United, LLC (collectively, the "Hyattsville Defendants"), which are incorporated herein by reference, the Complaint should be dismissed in its entirety, with prejudice, as to the Arbor Defendants.[2]

## FACTUAL BACKGROUND

Plaintiffs' claims against the Arbor Defendants are premised on the misguided notion that the Arbor Defendants have an indirect ownership interest in the BVS Properties or otherwise control them.  Attempting to make a connection where none exists, the Amended Complaint relies upon cherry-picked snippets from public records, conveniently omitting the fact that the full quotes and their context demonstrate the baseless nature of Plaintiffs' claims.  Indeed, as demonstrated herein, the Arbor Defendants have ***no ownership interest whatsoever*** in and ***do not exercise any control*** over the subject properties.  This incontrovertible fact, which can be established based on public records that the Court can consider, is fatal to Plaintiffs' claims against the Arbor Defendants.

---

[2] The Arbor Defendants seek dismissal with prejudice.  Despite their amendment, Plaintiffs cannot change the fundamental fact that the Arbor Defendants have never had any ownership interest in the BVS Properties.  Further, Plaintiffs' veil-piercing theory is not merely unsupported, but insufficient as a matter of law to justify disregarding the corporate form even if true.  *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (upholding dismissal with prejudice where "it is clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"); *Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. WDQ–13–0040, 2014 WL 346630, at *10 (D. Md. Jan. 29, 2014) (finding amendment futile where veil-piercing allegations were insufficient on their face).

## A.  The Arbor Defendants Are Not Property Owners or Managers

Large swathes of the Amended Complaint are rooted in Plaintiffs' mistaken belief that the Arbor Defendants' main line of business is property ownership or management.  It is not.  Rather, the Arbor Defendants focus their business activities on providing financing for real estate.  Indeed, as explained *infra*, the sole connection between the Arbor Defendants and the BVS Properties is that the Arbor Defendants provided financing to the owners of the BVS Properties many years ago.  And those loans were paid off within months of having been made.

Arbor Realty Trust is a publicly-owned Maryland corporation organized to qualify as a real estate investment trust under the federal tax laws.[3]  Amended Complaint, ECF No. 43, ("Am. Compl.") ¶ 27.  Arbor Realty Trust and its subsidiaries provide loans secured by multifamily, single-family rental, and commercial real property.  Its assets consist primarily of bridge and mezzanine loans.  *Id.*  To support the contention that the Arbor Defendants are owners of the BVS Properties, the Amended Complaint misleadingly references a quote from Ivan Kaufman, the CEO of Arbor Realty Trust.[4]  Specifically, the Amended Complaint quotes Mr. Kaufman as stating that 80% of Arbor Realty Trust's balance sheet comprises of ownership in multifamily properties.  *See id.* ¶ 61.  However, as the context of Mr. Kaufman's statement and the documentation filed with the Securities and Exchange Commission demonstrate, the

---

[3] Arbor Realty Limited and Arbor Realty SR are subsidiaries of Arbor Realty Trust.  Am. Compl. ¶¶ 28, 30.

[4] Notably, Plaintiffs now admit that their allegations rest on shaky grounds, characterizing Mr. Kaufman's statement as "vague."  Am. Compl. ¶ 61 n.4.  Elsewhere in the Complaint, Plaintiffs concede—as they must—that the BVS Properties are owned by Bedford United and Victoria United, not the Arbor Defendants.  *See* Am. Compl. ¶¶ 31, 32.

80% reference was to Arbor Realty Trust's interest in multifamily properties as a *lender*, not as an *owner* or *manager*. *See* Ex.[5] 1 at 5 (Feb. 2020 10-K).[6]

### B. Public Records Establish That the Arbor Defendants Do Not Own the BVS Properties

The very Maryland land records that the Plaintiffs rely upon make clear that no Arbor Defendant has, or has ever had, any ownership interest in the BVS Properties.[7] While Defendant Arbor Realty SR provided financing for the acquisition of the BVS Properties in April 2013 and made certain assignments to a CLO in June 2013, those transactions created at most a security interest, not an ownership interest, therein. In any event, the loans provided by Arbor Realty SR were paid in full by November 2013, with the CLO interest terminated by September 2014. In other words, any allegedly cognizable interest held by any Arbor Defendant was extinguished well over five years before the filing of the Complaint—an incontrovertible fact that Plaintiffs do not dispute (even after amending their Complaint).

---

[5] "Ex." refers to exhibits listed in the Index of Exhibits, appended to the motion filed contemporaneously with this memorandum of law.

[6] The Arbor Defendants have submitted the relevant excerpts from Ex. 1 with their motion, but can provide Arbor Realty Trust, Inc.'s full Form 10-K dated February 2020 at the Court's request.

[7] On a motion to dismiss, the Court appropriately may take judicial notice of publicly available land records from the Maryland State Archives. *See Zos v. Wells Fargo Bank, N.A.*, No. GJH-16-466, 2017 WL 221787, at *1 n.2 (D. Md. Jan. 18, 2017) (taking judicial notice at pleading stage of land records as "integral" to breach of contract, civil conspiracy, and FHA claims); *see also Harris v. Nationstar Mortg., LLC*, No. CCB-19-3251, 2020 WL 4698062, at *2 n.1 (D. Md. Aug. 13, 2020) (taking judicial notice at pleading stage of deed of trust "which was publicly filed in Maryland's land records"); *Walsh v. Bank of N.Y. Mellon*, Case No. GJH-15-934, 2017 WL 239367, at *1 (D. Md. Jan. 19, 2017) (taking judicial notice at pleading stage of Prince George's County land records and loan assignments to show current owner of property); *Willis v. Bank of Am. Corp.*, No. ELH-13-2615, 2014 WL 3829520, at *2 n.6 (D. Md. Aug. 1, 2014) (taking judicial notice at pleading stage of assignment of deed of trust recorded in Baltimore City land records as a "public record").

1.  **Bedford United and Victoria United Acquire the BVS Properties, Using Mortgage Loans Made by Arbor Realty SR**

On April 10, 2013, Bedford United purchased the real property located in Prince George's County known as the Bedford Station Apartments for approximately $25.8 million, taking title and ownership pursuant to a deed.[8]  Ex. 2 (Bedford Station Substitute Trustees' Deed).  Bedford United financed its purchase, in part, with a mortgage loan made by Arbor Realty SR in the amount of approximately $23 million, which loan was secured by a purchase money deed of trust for the property.  *See* Ex. 3 (Deed of Trust).  As is typical in mortgage lending for multifamily properties, the loan was also secured by an assignment of leases and rents.  *See* Ex. 4 (Assignment of Leases and Rents); *see also* Ex. 5 (UCC Financing Statement) (recording and perfecting security interest created by deed of trust and assignment of leases and rents).  Under Maryland law, this deed of trust established a security interest, but did not act to transfer ownership.  *See* Md. Code, Real Prop. § 7-101(a) ("Every deed which . . . appears to have been intended only as security for payment of an indebtedness or performance of an obligation, though expressed as an absolute grant[,] is considered a mortgage.").

Similarly, and on that same day, Victoria United purchased the real property located in Prince George's County known as the Victoria Station Apartments for approximately $5.1 million, taking title and ownership pursuant to a deed.[9]  Ex. 6 (Victoria Station Substitute Trustees' Deed).  Victoria United, too, financed its purchase, in part, with a mortgage loan made by Arbor Realty SR in the amount of approximately $4.69 million, which loan was secured by a

---

[8] As Plaintiffs acknowledge, Bedford United owns Bedford Station to this day.  Am. Compl. ¶ 31 ("Bedford United, LLC owns the Bedford Station Apartments.").

[9] As Plaintiffs acknowledge, Victoria United owns Victoria Station to this day.  Am. Compl. ¶ 32 ("Victoria United, LLC owns the Victoria Station Apartments.").

purchase money deed of trust, and, as is common in the industry, assignment of leases and rents. *See* Ex. 7 (Deed of Trust), Ex. 8 (Assignment of Leases and Rents); *see also* Ex. 9 (UCC Financing Statement) (recording and perfecting security interest created by deed of trust and assignment of leases and rents). Shortly thereafter, in June 2013, Arbor Realty SR further assigned the Victoria Station leases and rents to non-party Arbor Realty Collateralized Loan Obligation 2013-1, Ltd. ("CLO 2013-1"), a subsidiary of Arbor Realty Trust. Am. Compl. ¶¶ 113-115.

### 2. Bedford United and Victoria United Refinance Arbor Realty SR's Loans

A few months later, the mortgage loans made by Arbor Realty SR to Bedford United and Victoria United for the acquisition of the respective BVS Properties were paid off through new financing obtained by the property-owners. Specifically, in November 2013, Bedford United and Victoria United refinanced ***and paid off in full*** the loans made by Arbor Realty SR with a new mortgage loan by German American Capital Corporation ("GACC"), a Deutsche Bank affiliate, in the amount of $33 million. GACC has never had had any relationship with any of the Arbor Defendants. Like the previous loans, and consistent with industry standards, the GACC loan was secured by deeds of trust for the BVS Properties, as well as the assignments of leases and rents for both properties. *See* Ex. 10 (Deed of Trust), Ex. 11 (Assignment of Leases and Rents); *see also* Ex. 12 (UCC Financing Statement) (recording and perfecting security interest created by deed of trust and assignment of leases and rents).

Thus, in November 2013, the loans made by Arbor Realty SR were paid off. *See* Ex. 13 (Certificates of Satisfaction stating that both loans Arbor Realty SR made to Bedford United and Victoria United, respectively, "ha[ve] been fully paid and discharged."). In other words, with its loans being paid off in full, the Arbor Defendants no longer had ***any*** interest in the BVS Properties. *See* Md. Code, Real Prop. § 7-103 ("If the mortgage is duly released of record, the

. . . debt secured by the mortgage . . . conclusively is presumed to be paid as far as any lien on the property granted by the mortgage is concerned.").  Indeed, Plaintiffs now admit as much in the Amended Complaint—they concede that in November 2013 and thereafter, the BVS Properties were refinanced by mortgages with unaffiliated entities.  *See* Am. Compl. ¶¶ 117-120. Further, even to the extent the assignment of leases and rents to CLO 2013-1 created any cognizable interest in the BVS Properties, Plaintiffs admit that that interest was terminated in September 2014.  *Id.* ¶ 118.

Following the refinancing transaction in November 2013, Bedford United and Victoria United refinanced the GACC loan again, but through a lender that did not then and does not now have any relationship with any of the Arbor Defendants.  Specifically, in September 2018, Bedford United and Victoria United obtained mortgage financing for the BVS Properties from KeyBank National Association ("KeyBank") in the amount of $52.3 million.  The KeyBank loan, like the prior loans and consistent with standard multifamily mortgage lending practices, was secured by deeds of trust and assignments of leases of rents for the BVS Properties.  *See* Ex. 14 (Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing).  The day that the loan was originated, KeyBank assigned its interest in it to Fannie Mae.  Ex. 15 (Assignment of Security Instrument); *see also* Ex. 16 (UCC Financing Statement).

Most recently, in May 2020, Bedford United and Victoria United obtained another, subordinate mortgage loan from KeyBank in the amount of $6.5 million, which also was secured in the typical fashion by deeds of trust and assignment of leases and rents for the BVS Properties. Ex. 17 (Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing); *see also* Ex. 18 (UCC Financing Statement).  Again, KeyBank assigned its

interest in this subordinate loan to Fannie Mae that same day.  Ex. 19 (Assignment of Security Instrument).

The Maryland land records are incontrovertible—and the Amended Complaint now acknowledges, as it must, that the Arbor Defendants' lending relationship with the BVS Properties was extinguished in November 2013.  Further, any residual CLO interest was terminated in September 2014.  Since then, the Arbor Defendants have had no relationship whatsoever with the BVS Properties.

### C. Plaintiffs' Improper Group Allegations and Unsupported Allegations of Domination Highlight the Lack of Merit in Their Claims

In a continued attempt to create a link between the Arbor Defendants and the BVS Properties, the Amended Complaint groups practically all of the defendants together (with the sole exception of the property manager, Realty Management Services, Inc. ("RMS")) under two expansive defined terms.  First, the "Arbor Family" refers to Arbor Realty Trust, Arbor Realty Limited, Arbor Realty SR, and Arbor Management Acquisition Company, LLC ("AMAC").  Am. Compl. ¶ 10 n.2.  Second, the "Arbor Related Defendants" refers to those four entities, plus the three Hyattsville Defendants.  Am. Compl. ¶ 27 n.3.  Plaintiffs then describe the alleged wrongdoings throughout the Amended Complaint almost exclusively by these collective terms or the even broader "Defendants."  *See, e.g.*, *id.* ¶ 4 ("*Defendants'* business is to financialize, harvest, and intentionally refuse to invest in maintenance, sufficient management or renovation in the low-income and multifamily housing properties they own and manage . . . ." (emphasis added)); ¶ 180 (referring to "[*the*] *Arbor Family's* otherwise facially neutral policies and practices regarding the purchase and subsequent refusal to maintain low-income properties" (emphasis added)); ¶ 150 (alleging the existence of "Ross Management's unlawful and unwritten agreement with the *Arbor Related Defendants* . . . ." (emphasis added)).  Continuing this pattern

of impermissible group pleading, all claims are brought against all Defendants collectively, *see* Am. Compl. ¶¶ 267-330, except for Count VII (breach of contract – third party intended beneficiary), which is brought only against RMS.

In fact, as to the Arbor Defendants, the Amended Complaint is devoid of factual allegations of specific conduct they allegedly committed at the BVS Properties.  The Amended Complaint alleges only that the Arbor Defendants are the corporate parents or part of the same corporate family of entities of the actual owners of the properties in question, i.e., Bedford United and Victoria United.  *See, e.g.*, *id.* ¶ 27 ("Arbor Realty Trust, Inc. is the parent company and/or exerts controlling authority over . . . co-defendants and subsidiaries").  Without providing any factual support, Plaintiffs allege that Bedford United and Victoria United are "owned and controlled by Arbor Realty Trust, Inc. and its subsidiaries"; in the same breath, Plaintiffs concede that the properties themselves are not owned by any Arbor Defendant, but rather by Bedford United and Victoria United.  *Id.* ¶¶ 31-32.  Notably, this concession is inconsistent with Plaintiffs' later statement that the properties' owners were only "partially disclosed" to them.  *Id.* ¶ 296.

Grasping at straws in an attempt to hold the Arbor Defendants liable for the alleged acts of the BVS Properties' owners, Plaintiffs contend that the Court should disregard the corporate forms of not just distinct corporate entities, but different corporate families.  *See id.* ¶ 35.  But Plaintiffs are unable to keep their story straight, shifting between different entities or groups controlling others as it suits them:

- First, Plaintiffs assert that "[e]ach of the Defendants other than [Ross Management] is a mere instrumentality or *alter ego* of parent company Arbor Realty Trust, Inc.," relying on a laundry list of speculative allegations.  *Id.* ¶¶ 35-36.

- Then, Plaintiffs allege that Defendants Arbor Realty Trust, Arbor Realty SR, Arbor Realty LP, and AMAC—plus other non-party entities—together "exhibit complete control over their sister and subsidiary companies such as Defendants Bedford United LLC, Victoria United LLC, and Hyattsville United LLC," which are "mere instrumentalities with joint leadership and little or no retained capital." *Id.* ¶¶ 67-68. [10]

- At the same time, Plaintiffs contend that the above entities are a "single entity with mere formal distinction under the control of AMAC." *Id.* ¶ 71.  But in the next breath, the purported support for this statement merely characterizes AMAC as an investment firm and describes its assets.  *Id.*

In all, Plaintiffs assert more than 350 paragraphs (inclusive of subparagraphs) of allegations in their 159-page Amended Complaint, including a total of eight causes of action, seven of which are made against all "Defendants," thus including the Arbor Defendants.  They are: Counts I, II, III, and IV for assorted violations of the Fair Housing Act, Count V for breach of contract, Count VI for breach of the implied warranty of habitability, and Count VII for civil conspiracy.[11]  *See* Am. Compl. ¶¶ 267-330.  Nowhere does the Amended Complaint explain which specific allegation applies to the Arbor Defendants.  This is not surprising, given the established fact that the Arbor Defendants were—at most—prior mortgage lenders, who ceased to have any interest in the properties eight years ago.

## ARGUMENT

The Amended Complaint should be dismissed as to the Arbor Defendants for two independent reasons.  First, it fails to plausibly allege that the Arbor Defendants have an

---

[10] The Amended Complaint cites Arbor Realty Trust's SEC filings for a list of its "significant affiliates."  Am. Compl. ¶ 67.  However, that list does not include any defendant other than the Arbor Defendants.  *Id.*  It certainly does not include any of the Hyattsville Defendants.  *Id.*  Plaintiffs conveniently omit this fact from their Amended Complaint.

[11] As mentioned previously, Count VIII, for breach of contract for a third-party intended beneficiary, is the only claim not brought against all of the "Defendants" and is asserted solely against RMS.

interest—direct or indirect, ownership or otherwise—in the BVS Properties, the predicate for any liability under each of the claims asserted by Plaintiffs.  Second, as with Plaintiffs' original Complaint, the Amended Complaint improperly and inconsistently groups defendants together without delineating the specific allegations against each of them.

## I. Plaintiffs Do Not Plausibly Allege That the Arbor Defendants Have an Interest in the BVS Properties

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; instead, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

Although when making its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999), the Court need not accept unsupported legal allegations, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

A.      **The Arbor Defendants Do Not Own the BVS Properties**

Plaintiffs' claims against the Arbor Defendants are predicated on the notion that the Arbor Defendants have an indirect ownership interest in the BVS Properties or in their owners. However, public records of the type that the Court may take judicial notice of on a motion to dismiss make clear that whatever limited interest the Arbor Defendants had in the BVS Properties as a lender—and never as an owner—was extinguished years ago.

Though stuffed to the gills with unsupported legal conclusions, the Amended Complaint is devoid of facts tying the Arbor Defendants to the BVS Properties.  Plaintiffs allege only two concrete pieces of evidence: that Bedford United and Victoria United made assignments of leases and rents to Arbor Realty SR, and that Victoria United assigned its leases and rents to CLO 2013-1.  Am. Compl. ¶¶ 111-12.  These assignments appear to be the entire basis of Plaintiffs' contention that the Arbor Defendants have any ownership interest in the BVS Properties.  But despite Plaintiffs' insinuations, requesting an assignment of leases and rents is typical practice in the multifamily mortgage lending industry and does not suggest any privity between the Arbor Defendants and any other Defendant, let alone any wrongdoing.  Indeed, the very records upon which Plaintiffs rely demonstrate that shortly after those assignments, the leases and rents were assigned (and later assigned again) to unaffiliated non-party entities that Plaintiffs concede, as they must, do not own the BVS Properties:

- In April 2013, Arbor Realty SR provided mortgages to Bedford United and Victoria United for their respective purchases of the BVS Properties, and received assignments of leases and rents in connection therewith.  In June 2013, the Victoria Station rents were assigned to CLO 2013-1.  *See* pp. 5-9, *supra*.

- On November 13, 2013, Bedford United and Victoria United paid off in full the loans made by Arbor Realty SR by obtaining a new mortgage loan from GACC.  *See* p. 5, *supra*.

- On September 27, 2014, the CLO 2013-1 interest was terminated.  Am. Compl. ¶¶ 118; Ex. 13.

- Thereafter, the GACC loan was refinanced by a loan from KeyBank, which loan was assigned to Fannie Mae.  *See* pp. 5-6, *supra*.

Plaintiffs take a head-in-the-sand approach to this irrefutable transactional history, but the upshot is clear:  Arbor Realty SR provided mortgages to the BVS Properties for seven months in 2013, received standard assignments of leases and rents (as any lender would in this context), and an Arbor-affiliated CLO was assigned leases and rents from one property until September 2014.  That is the ***sole*** interest that ***any*** Arbor Defendant ever had in those properties.  Once those mortgages were refinanced, GACC replaced Arbor Realty SR as the lender to Bedford United and Victoria United, and Arbor Realty SR ***no longer had any interest as a lender in either property***.  *See* Md. Code, Real Prop. § 7-103 ("If the mortgage is duly released of record, the . . . debt secured by the mortgage . . . conclusively is presumed to be paid as far as any lien on the property granted by the mortgage is concerned.").  And, as the publicly available land records demonstrate, after those loans were paid off, none of the Arbor Defendants have ever provided any financing for either BVS Property.  Notably, the Amended Complaint now acknowledges the refinancing history of the BVS Properties, but conspicuously does not mention that the assignments of leases and rents were terminated contemporaneously or that unrelated lenders that Plaintiffs concede do not own the BVS Properties later received the same assignments.  *See* Am. Compl. ¶¶ 110-120.

Even if Arbor Realty SR's interest as a lender had not been terminated the better part of a decade ago, financing a transaction and taking a security interest, such as a deed of trust or assignment of leases and rents, does not create a present ownership interest.  *See Am. Realty Trust v. United States*, 498 F.2d 1194, 1196, 99 (4th Cir. 1974) (recognizing the difference and

analyzing whether sale leaseback transaction functioned as a "secured-lending arrangement" where REIT acquired "only a security interest" in the property, as opposed to a "transfer of true ownership"); *Triantis v. Triantis*, 968 A.2d 154, 161 (Md. Ct. Spec. App. 2009) (holding that a "mortgagee's interest is a security interest, not a concurrent ownership interest" and does not function as an "existing ownership interest in the property"); *In re Moffett*, 289 B.R. 55, 61-62 (E.D. Va. 2003), aff'd 356 F.3d 518 (4th Cir. 2004) (holding that "a secured interest in the collateral" is "not an equitable ownership interest"); *Century Nat'l Bank v. Makkar*, 751 A.2d 1, 4 (Md. Ct. Spec. App. 2000) (holding that "recordation of a security interest in the collateral" does not constitute any ownership or "exercise of dominion or control over the collateral") (citing *Prewitt v. Branham*, 643 S.W.2d 122 (Tex. 1982)); *Williams v. First Fed. Sav. & Loan Ass'n of Arlington*, 651 F.2d 910, 920 (4th Cir. 1981) (recognizing that a "deed of trust . . . securing the note" is separate from "beneficial, ownership" of the property "subject to the security interest created by the [] deed of trust").

Ultimately, the Amended Complaint makes clear that Plaintiffs know who owns the BVS Properties: They concede that the BVS Properties are owned, respectively, by Bedford United and Victoria United. Am. Compl. ¶¶ 31, 32.   And, importantly, they also concede that they do not know the identity of the entities that own or control Bedford United and Victoria United.  *Id.* ¶¶ 109, 296.  Indeed, they have failed to articulate any facts showing that any of the Arbor Defendants own Bedford United and Victoria United, nor can they: According to publicly available SEC filings that Plaintiffs themselves recite, there is no such relationship.  *See* Am. Compl. ¶¶ 72-74 (referencing SEC filings, but failing to connect any Arbor Defendants to any of the Hyattsville Defendants in those references).

Plaintiffs' contention as to the ownership of the BVS Properties is also belied by the Arbor Defendants' and the Hyattsville Defendants' corporate disclosure forms, of which the Court may take judicial notice at the current juncture.  *See Anderson v. Fed. Deposit Ins. Corp.,* 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.,* 381 F. Supp. 3d 536, 573 (D. Md. 2019) (relying on and taking judicial notice of defendants' corporate disclosure statements for purposes of recognizing parent-subsidiary structure and applying intra-corporate immunity doctrine to dismiss civil conspiracy claim alleged against parent and wholly-owned subsidiary (citing *Anderson*)).  The corporate disclosure documents filed contemporaneously with the Arbor Defendants' and the Hyattsville Defendants' motions to dismiss, respectively, indicate that the Arbor Defendants do not own, directly or indirectly, the BVS Properties, nor do they have any ownership interest in the entities that own these properties. "If the 'bare allegations of the complaint' conflict with exhibits or other properly considered documents, then 'the exhibits or documents prevail.'"  *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) (quoting *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001)).[12]

**B.    The Arbor Defendants Do Not Control the BVS Properties**

In a tacit concession that the Arbor Defendants do not own the BVS Properties, Plaintiffs now cast Arbor Realty Trust as a puppetmaster controlling the other Defendants to such an

---

[12] Similarly, the Amended Complaint focuses on seven properties allegedly "purchased" and acquired by "Arbor" within the DC-VA-MD HUD Metro FMR Area that includes Prince George's County.  Am. Compl. ¶¶ 135, 141-145.  However, as with the allegations regarding the BVS Properties, the Amended Complaint provides no indication—and there is none—that any Arbor Defendant actually purchased or had any ownership interest in any of these properties during the time period alleged in the Amended Complaint.

extent that they are no more than its instrumentality or alter ego.  *See, e.g.*, ¶¶ Am. Compl. 35,

36.  But Plaintiffs' attempt to persuade the Court to disregard the corporate form must fail, for

two independent reasons.  First—and fatally—Plaintiffs have failed to plead that the Arbor

Defendants are abusing the corporate form for the purposes of fraud.  Second, Plaintiffs' veil-

piercing allegations would fail to meet the high standard to establish alter ego liability even if

they were not conclusory and speculative.

 Courts must be "reluctant" and "cautious" when deciding to pierce the corporate veil,

because "a corporate entity is liable for the acts of a separate, related entity only

under ***extraordinary circumstances***," such as "the corporate form being used for wrongful

purposes."  *Vitol, S.A. v. Primerose Shipping Co*., 708 F.3d 527, 543-44 (4th Cir. 2013)

(emphasis added) (citation omitted).  Indeed, the corporate veil should not be pierced "except

where it is necessary to prevent fraud or [to] 'enforce a paramount equity,' even where evidence

suggests that a corporate entity was established for the sole purpose of dodging legal

obligations."  *Liverpool v. Caesars Baltimore Mgmt. Co*., No. CV JKB-21-0510, 2021 WL

3116106, at *4 (D. Md. July 22, 2021), *amended,* 2021 WL 5909718 (D. Md. Dec. 14, 2021)

(applying Maryland law).[13]  *See also Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d

531, 553-55 (D. Md. 2011) (Observing that Maryland courts "have described as 'herculean' the

---

[13] The Court need not decide which law to apply at this time, because the Amended Complaint
fails to state a claim under any arguably applicable standard.  *Compare Vitol, S.A.*, 708 F.3d at 543
(applying "extraordinary circumstances" test) *with Liverpool*, 2021 WL 3116106, at *4
("Maryland courts decline to pierce the corporate veil except where it is necessary to prevent fraud
or [to] 'enforce a paramount equity,' even where evidence suggests that a corporate entity was
established for the sole purpose of dodging legal obligations."); *Wallace v. Wood*, 752 A.2d 1175,
1184 (Del. Ch. 1999) (in Delaware, stating a claim under an alter ego theory requires establishing
that "the corporate structure cause[d] fraud or [a] similar injustice", such that the corporation is
essentially a sham, existing "for no other purpose than as a vehicle for fraud.").

challenge facing a party seeking to pierce the corporate veil on these grounds" and "accord the corporate form an extraordinary measure of deference" (internal citations omitted)).

Here, the Amended Complaint fails to articulate a theory, let alone specific facts, of how the Arbor Defendants abused the corporate form to perpetuate a fraud or injustice; it therefore must be dismissed. *See Iceland Telecom, Ltd. v. Info. Sys. and Net. Corp.*, 268 F. Supp. 2d 585, 591 (D. Md. 2003) (declining to "become the first federal court sitting in diversity in Maryland to pierce the corporate veil upon a theory of the need to enforce a paramount equity, expanding the breadth of the law substantially."). According to Plaintiffs, Arbor Realty Trust "causes violations of the Fair Housing Act, breaches of contract, and breaches of duties owed to the tenants, and corporate forms cannot be allowed to be utilized as shields to violations of civil rights."[14] Am. Compl. ¶ 36(i). But this allegation offers no explanation of how abuse of the corporate form specifically resulted in a cognizable injury. *See Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 517 (D. Md. 2013) ("To justify veil piercing on the basis of fraud, for example, the plaintiff would have to show that the parent's *use* of the subsidiary worked a fraud against her." (emphasis in original, alterations and citation omitted)). Certainly, vague allegations that one entity "caused" another to allegedly harm the plaintiffs are no basis to find that the "extraordinary circumstances" required to disregard the corporate form are present. *See id.* ("When a plaintiff seeks to pierce the corporate veil, the complaint must offer more than general and conclusory allegations of fraud, undue control exercised by a parent over its subsidiary, or paramount equity."); *see also Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 340 A.2d 225, 275 Md. 295 (Md. 1975) (declining to pierce the corporate veil in absence of

---

[14] Plaintiffs fail to state a claim on these grounds more generally for all of the reasons set forth in the Memorandum in Support of the Motion to Dismiss filed by the Hyattsville Defendants. *See* Hyattsville Defs. Mem. of L., ECF No. 46-1, at 17-34.

fraud, even when company's assets were depleted to evade its legal obligations and used by other companies and company's principals until company was almost insolvent).

Beyond its fundamental failure to allege a fraud or injustice, the Amended Complaint also fails to allege facts "suggesting the kind of unity of interests that [the Fourth Circuit] usually require[s] a party to plead before permitting them to advance to an alter ego theory." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015). The Amended Complaint's Paragraph 36, which paints a picture "of this dominating relationship between Arbor Realty Trust, Inc. and the other Arbor Related Defendants," forms the core of Plaintiffs' alter ego allegations. But the factors listed are no more than "unadorned conclusory allegations" that are "akin to no allegations at all." *SD3, LLC*, 801 F.3d at 423 (citing *Vitol, S.A.*, 708 F.3d at 543). None of Plaintiffs' support for their alter ego theory meets the pleading standard:[15]

First, Plaintiffs fail to support their allegation that "[e]ach of the entities are grossly undercapitalized or insolvent." Am. Compl. ¶ 36(a). This contention rests solely on Plaintiffs' speculation that "a judgment against the holding companies alone … would be all but impossible to collect upon" because "the excessive amount of debt placed on the holding companies by the Arbor Family … makes the holding companies of Arbor's properties insolvent and therefore essentially 'judgment proof.'" *Id.* ¶ 198(f). How Plaintiffs reached this conclusion is a mystery; the Amended Complaint alleges no facts relating to the balance sheets of any Defendant. *See Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 752 (7th Cir. 2012) ("Adequacy of capitalization compares the amount of capital to the amount of business to be

---

[15] Courts use the effectively synonymous terms "piercing the corporate veil," "alter ego," and the "instrumentality" rule to refer to the doctrine and standards for disregarding the corporate form. *See McKiver v. Murphy Brown, LLC*, 980 F.3d 937, 991 (4th Cir. 2020) (observing that "[t]his doctrine has several descriptors").

conducted and obligations to be fulfilled.") (internal citation omitted); *In re County Green Ltd. P'ship*, 604 F.2d 289, 293 (4th Cir. 1979) (comparing assets and liabilities to assess undercapitalization for veil-piercing analysis); *Byard v. Verizon W. Va., Inc.*, No. 1:11CV132, 2012 WL 1085775, at *12 (N.D. W.Va. Mar. 30, 2012) ("A corporation is inadequately capitalized when it carries on a business without substantial capital in a way that the corporation is likely to have insufficient assets available to meet its debts" (internal quotation marks and citation omitted)).  In short, Plaintiffs' theory that certain Defendants are undercapitalized is pure speculation, especially since Plaintiffs do not suggest that those Defendants are unable to continue transacting business. *See Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170, 174 (4th Cir. 1998) (affirming lower court's finding of lack of evidence to support undercapitalization theory where entity repaid loan, and in any event, continued operations and remained viable); *Fid. & Guar. Life Ins. Co.*, 2014 WL 346630, at *10 (finding theory of undercapitalization that alleged merely that assets were used for other companies as insufficient to state corporate veil piercing claim).

Second, even if Plaintiffs' allegation that Arbor Realty Trust "has a history of siphoning funds from the other Arbor Related Defendants" were true, it would not support veil piercing. Am. Compl. ¶ 36(b) (alleging that Arbor Realty Trust "commanded" Arbor SR to make a loan and causes rents from subsidiaries to be redirected to other investments).  Plaintiffs appear to be describing a situation where purported members of a corporate family transact business with one another—an uncontroversial proposition that does not support alter ego liability.  *See Vitol, S.A.*, 708 F.3d at 547 (holding that loans made between related entities, some of which were repaid but some of which were not, may "show a close business relationship" but "fall[] short of establishing alter ego."); *see also, e.g., Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 603

A.2d 1301 (Md. 1992) (refusing to pierce the corporate veil despite evidence that the stockholder siphoned funds from the corporation given absence of fraud); *Ost-West-Handel,* 160 F.3d at 174-174 (allegations of "siphoning" insufficient to support alter ego liability despite movement of funds between related entities). In any event, Plaintiffs' allegations of fund-siphoning are conclusory. For instance, plaintiffs claim without a shred of evidence that the Arbor Family's supposed "cross-collateralization" enabled them to extract value from the BVS Properties. *See* Am. Compl. ¶¶ 110-122. Even if this allegation rose above the level of innuendo, it would not be sufficient to state a claim. *See Fid. & Guar. Life Ins. Co.*, 2014 WL 346630 at *10 (allegations that corporate assets were used for other companies or individuals were insufficient to state veil piercing claim).

Third, Plaintiffs' allegations that certain Defendants lack officers and have overlapping ownership or management are not sufficient to establish domination or control. *See* Am. Compl. ¶¶ 36(c-e), 126-129. It is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (internal citation and alteration omitted). Consequently, overlapping ownership or management is not a basis to pierce the corporate veil. *See, e.g.*, *Ost-West-Handel,* 160 F.3d at 174-174 (affirming lower court's finding that, even where there was some overlap in officers, such overlap was not "improper" and did not support a finding of alter ego); *In re County Green,* 604 F.2d at 292 (4th Cir. 1979) (reversing lower court's decision to pierce corporate veil, on basis that even where parties were "closely interrelated . . . of course overlapping ownership is not a sufficient reason in and of itself to pierce a corporate veil."); *Bridge v. New Holland Logansport*, *Inc*., 815 F.3d 356 (7th Cir. 2016) (declining to pierce

corporate veil where companies shared similar names, directors, a website, and board members); *Dash BPO, LLC v. Lindberg*, 5:20-CV-625-FL, at *13 (E.D.N.C. Jan. 11, 2022) ("Stock control" and "common officers and directors" are "not sufficient by themselves to invoke the doctrine," because "such factors are common business practice and exist in most parent and subsidiary relationships."). In any event, Plaintiffs' allegations as to common ownership are unsupported and inconsistent on their face. While alleging that Ivan Kaufman is the largest shareholder in every Arbor Related Defendant, the Amended Complaint only cites evidence relating to one entity, Arbor Realty Trust. Am. Compl. ¶ 36(d, e). Further, the Amended Complaint later alleges that the "Arbor Family" has "various but often related" leadership—a far cry from unitary control. *See* Am. Compl. ¶ 68.

Fourth, Plaintiffs' allegations as to shared office space, Am. Compl. ¶ 36(f), are similarly insufficient to pierce the corporate veil. *Vitol, S.A.*, 708 F.3d at 545-46 (finding shared office space insufficient to compel a conclusion of corporate domination and control); *accord Park Miller*, *LLC v. Durham Grp.*, *Ltd.*, No. 19-CV-04185-WHO, 2020 WL 1955652, at *13 (N.D. Cal. Apr. 23, 2020) ("[T]otal ownership, shared office space and/or shared management personnel is not enough to show unity of interest"); *Hornsby v. Hornsby Stores, Inc.*, 734 F. Supp. 302, 307-08 (N.D. Ill. 1990) (allegations that corporations shared "directors, office space, and office staff and directors" did not suggest fraud or injustice or that one corporation was the alter ego of another); *EEOC v. Bass Pro Outdoor World*, *LLC*, No. 4:11-CV-3425, 2012 WL 13040407, at *3 (S.D. Tex. Oct. 23, 2012) (same). Moreover, the Amended Complaint is internally inconsistent on this point: while Paragraph 36(f) states that the "Arbor Related Defendants **all** share common office space" (emphasis added), the caption lists a different address for Bedford United, Victoria United, and Hyattsville United.

Fifth, the Amended Complaint alleges "a lack of any real degree of discretion as the Arbor Related Defendants operate solely for the benefit of Arbor Realty Trust, Inc." Am. Compl. ¶ 36(g). Plaintiffs further allege that the "Arbor Family" is made up of "lines of business" that work together to benefit the parent. *Id.* ¶¶ 67-68. These allegations are not only conclusory, but even if true, on their face they fall short of the mark to disregard the corporate form. *See In re American Honda Motor Co., Inc. Dealerships Relations Litig.*, 941 F. Supp. 528, 551 (D. Md. 1996) (dismissing as insufficient theory of alter ego liability where plaintiffs alleged entities "consolidated financial statements and ha[d] interlocking directorates[.]"); *Sullivan v. Gen. Helicopters, Int'l*, 564 F. Supp. 2d 496, 502 (D. Md. 2008) (finding failure to state a claim for alter ago liability and dismissing allegations that parent supervised financial and business aspects of subsidiary); *see also Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 778 (2d Cir. 1995) (requiring "abandonment of the corporate structure" or cessation of operations as a "distinct entity" to pierce the veil). This allegation boils down to the workaday scenario of a corporate family where the subsidiaries work generally in alignment with the parent—a fact pattern which would eviscerate the corporate separateness doctrine if it supported alter ego liability.

Sixth, according to Plaintiffs, "[t]he Arbor Defendants have routinely dealt with each other without consideration to a good faith arm's length transaction." Am. Compl. ¶ 36(h). But aside from this conclusory statement, the Amended Complaint does not even allege that any such transaction occurred. Plaintiffs purport to offer two examples of what they allege are non-arms'-length transactions: the forgiveness of an unnamed third-party's debt and Arbor Realty SR's loans to Bedford and Victoria United. As to the former, even assuming the transaction occurred, Plaintiffs themselves allege that the debt was forgiven in exchange for the borrower

relinquishing any claim to the collateral property—an exchange of value constituting textbook consideration. *See* Am. Compl. ¶¶ 36(h), 140. In any event, courts may not pierce the corporate veil based on the conduct of non-parties. *See McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 992 (4th Cir. 2020) (holding that "principles of due process and corporate law" render conduct of non-parties irrelevant). As to the latter example, nowhere do Plaintiffs allege that loans made by Arbor Realty SR lacked consideration. Nor do they explain how the extension of credit—which necessarily involves reciprocal promises to pay and to repay—could lack consideration. Regardless, even a lack of repayment of loans would not support alter ego liability. *See Vitol, S.A.*, 708 F.3d at 547 (no alter ego liability where loans between related entities were not completely repaid).

In sum, the Amended Complaint's veil-piercing allegations are conclusory at best and contradicted by other of Plaintiffs' own statements. Even if the allegations rose above the level of speculation, none would support the imposition of alter ego liability. *See Fid. & Guar. Life Ins. Co.*, 2014 WL 346630 at *10 (plaintiff failed to state a claim and amendment was futile despite allegations of shared office space, overlapping employees and officers, and undercapitalization due to use of company assets for benefit of other individuals and companies).

## II.  The Complaint Improperly Groups All Defendants Together

Under *Twombly*, a plaintiff may not rely on "indeterminate assertions against all defendants," but instead must include specific allegations of each defendant's actions. *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422-23 (4th Cir. 2015); *see also Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (holding that a general allegation that all "Defendants" had manufactured and distributed the allegedly-infringing product was insufficient because it "fail[ed] to delineate the particular acts of infringement attributable to each Defendant"). The "complaint must forecast [a] factual showing

[that each defendant is plausibly liable], and if it fails to allege particular facts against a particular defendant, then the defendant must be dismissed." *SD3,* 801 F.3d at 422.  This holds true even when some defendants are corporate subsidiaries or affiliates of one another. *Jien v. Perdue Farms, Inc.,* No. 1:19-CV-2521-SAG, 2020 WL 5544183, at \*4 (D. Md. Sept. 16, 2020).

Indeed, a complaint must allege specific facts to establish a corporate affiliation—such as a parent-subsidiary relationship—between allegedly related defendants.  *See SD3*, 801 F.3d at 423 (holding that allegation that related corporate subsidiaries were "dominated by" their corporate parents was insufficient to state a claim against the parent entities, without more specific allegations describing those entities' alleged involvement); *see also Boykin Anchor Co. v. AT&T Corp.*, No. 5:10-cv-591-FL, 2011 WL 1456388, at \*3-4 (E.D.N.C. Apr. 14, 2011) (rejecting plaintiff's "attempts to treat all defendants as one 'corporate family'" because, without detailed allegations of each entity's individual involvement, parent corporations are *not* automatically liable for acts of their subsidiaries); *Jien,* 2020 WL 5544183 at \*4 (holding that, without "any factual allegations linking each distinct subsidiary to the conspiracy, the Amended Complaint fails to sufficiently state a claim against those entities").

Bare and unsupported allegations that one defendant "owned," "controlled," "supervised," or generally was involved in actions attributed to another defendant are not sufficient to meet the pleading standard.  *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 744 (D. Md. 2008); *see also Gianfredi v. Hilton Hotels Corp.*, No. 08-5413 (PGS), 2010 WL 1381900, at \*8 (D.N.J. Apr. 5, 2010) (holding that the vague allegation of a corporate parent's "ownership interest in the 'brand'" failed to state a claim against that entity, where plaintiffs otherwise "fail[ed] to delineate amongst the parties, merely referring to 'Defendants' as

a collective unit"), *Report and Recommendation adopted*, 2010 WL 1655635 (D.N.J. Apr. 22, 2010).

Here, by grouping the Arbor Defendants together with other defendants, the Amended Complaint fails to state a plausible claim for relief against each of the individual Arbor Defendants as the controlling pleading standards require. Plaintiffs cannot simply throw all defendants together in a single defined term, thus crafting from whole cloth an "entity," and then proceed to lob each and every allegation against this fictional "entity." *See Proctor*, 579 F. Supp. 2d at 744 ("At worst, the repeated refrain that all three individuals committed each and every act must be read as an allegation that *one of the three* did each act, an assertion that amounts to speculation and which is deficient under *Twombly*." (emphasis in original)). "The Court cannot permit Plaintiffs to go forward on a claim based on factual allegations in which basic questions of who did what are completely unclear." *Id.* at 744.

In the Amended Complaint, Plaintiffs continue their shotgun pleading tactics with only slight and immaterial changes from the original Complaint. The Amended Complaint divides all Defendants (other than RMS) into two overlapping groups:

- The "Arbor Family": Arbor Realty Trust, Arbor Realty Limited, Arbor Realty SR, and AMAC. Am. Compl. ¶ 10 n.2

- The "Arbor Related Defendants": The above four entities, plus the three Hyattsville Defendants. Am. Compl. ¶ 27 n.3.

This collective approach pervades the Amended Complaint; Plaintiffs use not only the terms "Arbor Family" or "Arbor Related Defendants," but also, at various points, the group terms "Arbor," "Arbor Defendants," or simply "Defendants." *See, e.g.*, *id.* ¶ 4 ("Defendants' business is to financialize, harvest, and intentionally refuse to invest in maintenance, sufficient management or renovation in the low-income and multifamily housing properties they own and

manage in the State of Maryland and across the United States to ensure minimum funds are directed towards these properties and instead reserved for owner and shareholder."), ¶ 5 (same, referring to conduct of "Defendants"), ¶ 157 ("Arbor acquired an 83-unit apartment building …."), (" ¶ 319 ("The Arbor Defendants and Ross entered into a contract for the maintenance and management of the property.").  Such "indeterminate assertions" against collective groups of defendants are insufficient to state a claim.  *SD3, LLC*, 801 F.3d at 422.

Indeed, Plaintiffs seem unable to decide how exactly each entity is involved in their alleged scheme, asserting various inconsistent theories.  The Amended Complaint first describes all Defendants (other than Ross) of being alter egos of Arbor Realty Trust, then suggests that Defendants Arbor Realty Trust, Arbor Realty SR, Arbor Realty LP, and AMAC—plus other non-party entities—together "exhibit complete control over their sister and subsidiary companies such as Defendants Bedford United LLC, Victoria United LLC, and Hyattsville United LLC," before finally concluding that all of the above are a "single entity with mere formal distinction under the control of AMAC."  *See* pp. 9-11, *supra*; Am. Compl. ¶¶ 35-36, 67-68, 71.  "[W]hen a complaint contains inconsistent and self-contradictory statements, it fails to state a claim." *Hosack v. Utopian Wireless Corp.,* No. DKC 11-0420, 2011 WL 1743297, at *13 (D. Md. 2011) (citing *In re Livent Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 406 (S.D.N.Y. 2001)).

Along similar lines, while the Amended Complaint describes various policies purportedly instituted by certain "Arbor" or "Arbor Family" entities, it never describes which entities allegedly enacted these policies.  *See generally* Am. Compl. ¶¶ 180-235.  For instance, the Amended Complaint criticizes what it alleges was the "Arbor Family's" response to tenants at the BVS Properties and "Arbor['s]" "neglect" of those properties.  *See* Am. Compl. ¶¶ 182-83. But it does not specify which defendant, and it fails to grapple with the undisputable fact that

none of the Arbor Defendants owns (either directly or indirectly) or maintains those properties. This textbook example of impermissible group pleading leaves the Arbor Defendants guessing as to which allegations actually apply to them and how.  By lumping defendants together and "fail[ing] to delineate the particular acts . . . attributable to each Defendant," the Amended Complaint fails to inform the Arbor Defendants of the nature of the claims against them and to provide sufficient information to defend against those claims.  *Classen*, 381 F. Supp. 2d 452, 455; *see also Messinger v. Moore*, No. 2:21-cv-19-RAJ, 2021 WL 3514747, at *13 (E.D. Va. Aug. 10, 2021).

Further mudding the waters, Plaintiffs state that they "include in all counts the doctrine of piercing the corporate veil ***where appropriate***," (¶ 265) and that they "otherwise rely upon the doctrines of actual and apparent agency, *respondeat superior* and *res ipsa loquitur **where appropriate**.*" (¶ 266) (emphasis added).  As discussed *supra*, the Amended Complaint's veil-piercing allegations fail as a matter of law.  But this murky pleading "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading," and makes it "virtually impossible to know which allegations of fact are intended to support which claims for relief."  *Jackson v. Warning*, No. CV PJM 15-1233, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) (internal citations omitted).

That the catch-all groupings used in the Amended Complaint cannot plausibly make the same factual allegations against all "Defendants" is illustrated by even a cursory examination of Plaintiffs' claims.  For example, Count VI (breach of the implied warranty of habitability) alleges that all "Defendants" violated Prince George's County's Landlord-Tenant Code by failing to maintain the subject properties.  *See* Am. Compl. ¶¶ 307-316.  But this statute applies only to a landlord, which is defined statutorily as "the legal and equitable owner[] of a property."

*See* Prince George's County Landlord-Tenant Regulations § 13-138(a)(7).  By its own terms, then, the provisions of the statute do not apply to any non-owner, like the Arbor Defendants. Undeterred by such legal niceties, the Complaint nevertheless asserts Count VI against "all Defendants," despite conceding explicitly that the Arbor Defendants are not the owners of the BVS Properties.  *See* Am. Compl. ¶¶ 31, 32.[16]  Thus, the collective term "Defendants," as used in Count VI, does not and cannot plausibly include the Arbor Defendants.

Similarly, the "Defendants" term, as it is used elsewhere in the Amended Complaint, also cannot plausibly include the Arbor Defendants.  For example, Count V, which asserts a breach of contract claim against all "Defendants," further demonstrates the impropriety of lumping the Arbor Defendants together with the other defendants.  For a contract to be breached, there must be a valid and legal contract between the plaintiff and the defendant.  *See Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651, 365 Md. 166, 175 (Md. 2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.").  But there are no facts alleged in the Complaint suggesting, let alone plausibly establishing, contractual privity between any Plaintiff and any Arbor Defendant.[17]  Instead, Plaintiffs concede that they entered into leases with a separate entity, RMS as agent for the owners of the BVS Properties—whom Plaintiffs allege are Bedford United and Victoria United, respectively.  Am. Compl. ¶ 254.  This will not do, because

---

[16] Indeed, Plaintiffs take facially inconsistent positions on the dispositive issue of ownership of the BVS Properties, which on its own warrants dismissal.  Plaintiffs concede that the Arbor Defendants do not own the BVS properties (*see* Am. Compl. ¶¶ 31, 32) while also suggesting at other points that the Arbor Defendants are the owners of the BVS Properties (*see* Am. Compl. ¶ 61).

[17] Nor does the Amended Complaint contain sufficient facts alleging contractual privity between Plaintiffs and the Hyattsville Defendants.  *See* Hyattsville Defs. Mem. of L., ECF No. 46-1, at 30-33.

"Maryland law requires that a plaintiff alleging a breach of contract must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CCB-13-617, 2013 WL 3776933, at *3 (D. Md. July 17, 2013) (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012)).  There are no allegations that any of the Arbor Defendants entered into leases with Plaintiffs, and therefore, Plaintiffs' conclusory guesswork fails to state a claim for breach of contract.  *See Sprint Nextel Corp.*, 2013 WL3776933 at *2 ("[N]o set of conclusory magic words will save a deficiently pled claim[.]"); *see also Webber v. Maryland*,  No. RDB-16-2249, 2017 WL 86015, at *4 (D. Md. Jan. 10, 2017) (dismissing breach of contract claims that "lack factual enhancement and merely offer labels, conclusions, and formulaic recitations of elements that fall below the minimum pleading standard"); *Carhartt, Inc. v. Innovative Textiles, Inc.*, 323 F. Supp. 3d 917, 922-23 (E.D. Mich. 2018) (dismissing breach of contract claim that failed to allege the existence of a contract between the parties or "state what the contract required" of each party, because the allegations contained only "a formulaic recitation of the elements of a cause of action") (quoting *Twombly*, 550 U.S. at 555).

Plaintiffs' other claims, including their Fair Housing Act claims, fare no better; each claim impermissibly lumps distinct entities together under the collective group of "Defendants" or "Arbor Family."  This approach is forbidden by applicable law.  The Amended Complaint should be dismissed with prejudice on this ground alone.

**CONCLUSION**

Plaintiffs' Amended Complaint is premised on implausible and conclusory statements about the Arbor Defendants' relationship not only to the BVS Properties, but also to the other defendants.  None of the Arbor Defendants have ever had any ownership interest in the BVS Properties, and any interest Arbor Realty SR previously had as a lender relinquished almost a decade ago.  Plaintiffs' alter ego allegations are barely more than a list of elements that, even if they were not conclusory, would not meet the high bar to disregard the corporate form.  Further, Plaintiffs' allegations and claims effectively group all defendants as one, improperly painting all defendants with one brush.  The Amended Complaint should be dismissed, in its entirety, with prejudice, for the reasons set forth herein and in the motion to dismiss and memorandum in support filed by the Hyattsville Defendants, which is incorporated herein by reference.


Dated:  February 18, 2022                                 Respectfully submitted,


                                                          By:  ___/s/ *Ray D. McKenzie*_____
                                                          Ray D. McKenzie (Bar No. 21069)
                                                          WTAII PLLC
                                                          1600 Wilson Blvd., Suite 201
                                                          Arlington, VA 22209
                                                          Telephone (202) 688-3150
                                                          ray.mckenzie@wtaii.com

                                                          Peter W. Tomlinson (*pro hac vice*)
                                                          Muhammad U. Faridi (*pro hac vice*)
                                                          PATTERSON BELKNAP WEBB & TYLER LLP
                                                          1133 Avenue of the Americas
                                                          New York, New York  10036
                                                          Telephone (212) 336-2000
                                                          Facsimile (212) 336-2222
                                                          pwtomlinson@pbwt.com
                                                          mfaridi@pbwt.com

*Attorneys for Defendants Arbor Realty Trust, Inc.; Arbor Realty Limited Partnership; and Arbor Realty SR, Inc.*