IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CASA DE MARYLAND, INC., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 8:21-cv-01778-CBD |
| | ) | |
| ARBOR REALTY TRUST, INC. et al. | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## DEFENDANT REALTY MANAGEMENT SERVICES, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

AND NOW, comes Defendant Realty Management Services, Inc., ("Defendant" or "RMS") by and through its counsel, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., and hereby files its Brief in Support of its Motion to Dismiss Plaintiffs' Amended Class Action Complaint.

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

*/s/ Megan T. Mantzavinos*
Megan T. Mantzavinos, Esquire (Bar #: 16416)
Thomas M. Pié, Jr., Esquire (admitted pro hac)
mmantzavinos@moodklaw.com
tpie@moodklaw.com
600 Baltimore Avenue, #305
Towson, Maryland  21204
(410) 339-6880
*Attorneys for Defendant, Realty Management
Services, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

I.       PRELIMINARY STATEMENT ........................................................................................... 1

II.      FACTUAL AND PROCEDURAL BACKGROUND............................................................. 1

III.     STANDARD OF REVIEW .................................................................................................. 5

IV.      ARGUMENT........................................................................................................................ 8

    A.      THERE ARE NO ALLEGATIONS THAT RMS INTENTIONALLY
        DISCRIMINATED AGAINST ANY PROTECTED CLASS IN PROSECUTING
        EVICTIONS. .......................................................................................................... 8

    B.      THE AMENDED COMPLAINT IDENTIFIES NO VALID FHA CLAIM AGAINST
        RMS, AS THERE ARE NO CHALLENGES TO ANY OF ITS POLICIES. ........... 10

    C.      COUNT III'S PERPETUATION OF SEGREGATION VIOLATION AGAINST
        RMS IS BOTH FACTUALLY AND LEGALLY INSUFFICIENT.......................... 12

    D.      THE AMENDED COMPLAINT VIOLATES THE *ROOKER-FELDMAN*
        DOCTRINE BY ATTACKING THE JUSTIFICATION FOR THE EVICTIONS ... 12

    E.      COUNT IV FAILS BECAUSE IT CONTAINS NO ALLEGATIONS THAT RMS
        MANAGES THE PROPERTIES DIFFERENTLY BASED ON ANY PROTECTED
        STATUS .............................................................................................................. 13

    F.      PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS TO RMS BECAUSE
        OF RMS' ALLEGED AGENT STATUS.................................................................. 14

    G.      PLAINTIFF'S BREACH OF THE IMPLIED WARRANTY OF HABITABILITY
        AS A STAND-ALONE CAUSE OF ACTION IS IMPROPER AS A MATTER OF
        LAW…………………………………………………………………………………17

    H.      PLAINTIFFS' THIRD PARTY INTENDED BENEFICIARY CLAIMS AGAINST
        RMS FAIL DUE TO LACK OF STANDING........................................................... 19

        1.      Plaintiffs Lack Standing to Assert a Claim Against RMS for Breach of the
               Property Management Agreement. ......................**Error! Bookmark not defined.**

    I.      PLAINTIFFS' CIVIL CONSPIRACY CLAIMS ARE INSUFFICIENTLY PLED ... 23

        1.      The Complaint alleges that RMS performed all of its actions as the agent of the
               BVS Owners and, therefore, the civil conspiracy claim fails. .............................. 24

        2.      The Complaint does not sufficiently allege any agreement with RMS to perform
               an unlawful act...................................................................................................... 25

V.       CONCLUSION................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*120 W. Fayette Street, LLLP v. Mayor of Baltimore*, 426 Md.14, 43 A.3d 355
(2012)...........................................................................................................................................23

*Anderson Group, LLC v. City of Saratoga Springs*,
805 F.3d 34 (2d Cir. 2015)......................................................................................................12

*Arthur v. City of Toledo, Ohio*,
782 F.2d 565 (6th Cir.1986) ...................................................................................................12

*Arthur v. Ticor Title Ins. Co. of Fla.*,
No. CIV. AMD 07-1737, 2008 WL 7854915 (D. Md. Mar. 11, 2008), *aff'd*
569 F.3d 154 (4th Cir. 2009) ..................................................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 ........................................................................................................5, 6, 23

*Austin v. Lakeview Loan Servicing, LLC*,
No. CV RDB-20-1296, 2020 WL 7256564 (D. Md. Dec. 10, 2020) ......................................15

*Babalola v. B.Y. Equities, Inc.*,
63 F. App'x 534 (2d Cir. 2003)...............................................................................................13

*Baker v. Montgomery Cty*,
201 Md. App. 64, 30 A.3d 267 (2011).....................................................................................19

*Barger v. Elite Mgmt. Servs.*,
2018 Ohio 3755, 119 N.E.3d 953 (Ct. App.)...........................................................................22

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2009)........................................................................................................5, 6, 25

*Benik v. Hatcher*,
358 Md. 507, 750 A. 2d 10 (2000) (Cathell, J., dissenting) ...................................................17

*Century Campus Hous. Mgmt., L.P. v. Elda Hana, LLC*,
141 Haw. 383, 409 P.3d 787 (Ct. App. 2018) ........................................................................22

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*,
794 F. Supp. 2d 602 (D. Md. 2011).............................................................................................6

*CR-RSC Tower I, LLC v. RSC Tower I, LLC*,
202 Md. App. 307, 32 A.3d 456 (2011)..............................................................................20,23

*Crosee v. Callis*,
   265 Md. 65, 282 A.2d 86 (1971) ...........................................................................................15

*Curtis G. Testerman Co. v. Buck*,
   340 Md. 569, 667 A.2d 649 (1995) ......................................................................................16

*Decohen v. Abbasi*,
   LLC, No. CIV. WDQ-10-3157, 2011 WL 3438625 (D. Md. July 26, 2011),
   *vacated in part on other grounds sub nom. Decohen v. Cap. One, N.A.,* 703
   F.3d 216 (4th Cir. 2012) ........................................................................................................25

*Dickerson v. Longoria*,
   414 Md. 419, 995 A.2d 721 (2010) ......................................................................................20

*District of Columbia Court of Appeal v. Feldman*,
   460 U.S. 462 (1983).................................................................................................................13

*Fare Deals, LTD. v. World Choice Travel.com, Inc.*,
   180 F. Supp. 2d 678 (D. Md. 2001) ....................................................................................19

*Fraidin v. Weitzman*,
   93 Md. App. 168, 611 A.2d 1046 (1992)............................................................................24

*Francis v. Giacomelli*, 588 F.3d 186 at 194-97 (4th Cir. 2009) .......................................................6

*Gao v. Progressive Max Ins. Co*,
   2019 Md. App. LEXIS 321 (2019).......................................................................................23

*Garrison v. McCormick & Co.*,
   2010 U.S. Dist. LEXIS 64920 (D. Md. June 30, 2010)...........................................................6

*Glassman v. Arlington Cty.,* 628 F.3d 140 at 145-50 (4th Cir. 2010).................................................6

*Goines v. Valley Cmty. Servs. Bd.*,
   822 F.3d 159 (4th Cir. 2016) ................................................................................................19

*Goldberg v. Mayor & City Council of Baltimore*,
   791 F.3d 500 (4th Cir. 2015) ..................................................................................................6

*Gray-Koyier v. Gladding Chevrolet, Inc.*,
   2017 U.S. Dist. LEXIS 179069 (D. Md. Oct. 30, 2017)...........................................................6

*Greenacre Props. v. Rao*,
   933 So. 2d 19, 31 Fla. L. Weekly 1223 (Dist. Ct. App. 2006) ...............................................22

*Hardaway v. Equity Residential Servs., LLC*,
   2015 WL 858086 .....................................................................................................................13

*Harnish v. Herald–Mail Company*,
  264 Md. 326, 286 A.2d 146 (1972) ........................................................................24

*Hill v. Cty. Concrete Co.*,
  108 Md. App. 527, 672 A.2d 667 (1996).................................................................15

*Lemus v. Cookscreek 255, LLC*,
  No. 05-17-01085-CV, 2018 Tex. App. LEXIS 9836 (Tex. App. Nov. 30,
  2018) ......................................................................................................................22

*Little v. Union Tr. Co.*,
  45 Md. App. 178, 412 A. 2d 1251 (1980)............................................................21,22

*Lloyd v. Gen. Motors Corp.*,
  397 Md. 108, 916 A.2d 257 (2007) ........................................................................24

*Lovell Land, Inc. v. State Highway Admin.*,
  408 Md. 242 (2009) ................................................................................................20

*Luber,* 2011 WL 8129826, at *4...............................................................................25

*Marlboro Shirt Co. v. Am. Dist. Tel. Co.*,
  196 Md. 565, 77 A.2d 776 (1951) ..........................................................................22

*Marmott v. Maryland Lumber Co.*,
  807 F.2d 1180 (4th Cir. 1986) ...............................................................................24

*Nerenhausen v. Washco Mgmt. Corp.*,
  2017 U.S. Dist. LEXIS 59426 (D. Md. Apr. 18, 2017) ............................................18

*Novak v. Cmty. Living Servs.*,
  No. 340414, 2019 Mich. App. LEXIS 287 (Ct. App. Feb. 19, 2019).......................22

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*,
  745 F.3d 131 (4th Cir. 2014) .................................................................................25

*Parlette v. Parlette*,
  88 Md. App. 628, 596 A.2d 665 (1991)...................................................................23

*Phillips v. Pitt Cnty. Mem'l Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ...................................................................................6

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
  903 F.3d 415 (4th Cir. 2018) ............................................................................10, 11

*Rooker v. Fidelity Trust Co.*,
  263 U.S. 413 (1923)................................................................................................13

*Scharpenberg v. Carrington*,
686 F. Supp. 2d 655 (E.D. Va. 2010) .......................................................................................25

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) ...................................................................................................25

*Sears Roebuck & Co. v. W/S Lebanon LLC*,
No. 14-cv-422-JL, 2017 U.S. Dist. LEXIS 143902 (D.N.H. Sep. 6, 2017) ............................22

*Shillman v. Hobstetter*,
249 Md. 678. 241 A.2d 570 (1968) ..................................................................................20, 23

*Sugarloaf Citizens Ass'n, Inc. v. Gudis*,
78 Md .App. 550, 552-53, 560, 554 A.2d 434 (1989), *aff'd on other grounds*,
319 Md. 558, 573 A.2d 1325 (1990) .......................................................................................19

*Syriani v. Gebhart*,
195 Md. 69, 72 A.2d 766 (1950) .............................................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................................................................19

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
576 U.S. 519, 135 S. Ct. 2507, 192 L. Ed. 2d 514 (2015)...........................................8, 10, 11

*Volcjak v. Wash. Cty. Hosp. Ass'n*,
124 Md. App. 481, 723 A.2d 463 (1999)..................................................................................20

*Walker v. City of Lakewood*,
272 F.3d 1114 (9th Cir. 2001) .................................................................................................14

*Wash. House Condo. Ass'n of Unit Owners v. Daystar Sills, Inc.*,
2015 Del. Super. LEXIS 587 (Super. Ct. Oct. 28, 2015).........................................................23

*Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.*,
109 F.Supp.2d 424 (D.Md.2000)..............................................................................................23

*Young-Bey v. S. Mgmt. Corp., Inc.*,
No. TDC-18-2331, 2019 WL 1992905 (D. Md. May 6, 2019) ..................................................8

**Statutes**

42 U.S.C. §3601.............................................................................................................................2

42 U.S.C. §3604.............................................................................................................................8

42 U.S.C. §3604(a) ........................................................................................................................9

42 U.S.C. §3604(b) ...................................................................................................................9, 10

42 U.S.C. §3617 ............................................................................................................................13, 14

Md. Code Ann., Real Prop. § 8-401, *et seq.* ..........................................................................................9

Md. Code Ann., Real Prop. § 8-401.1. ....................................................................................................9

Md. Code Ann., Real Prop. § 8-401(g) ....................................................................................................9

Prince George's County Code § 13-102 ..................................................................................................18

Prince George's County Code § 13-110-111 ...........................................................................................18

Prince George's County Code § 13-116 ..................................................................................................18

**Regulations**

24 C.F.R. §100.400 ................................................................................................................................14

24 C.F.R. §100.400(c)(2) .......................................................................................................................14

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................................6

Rule 8: (1) ...............................................................................................................................................5

Rule 8(a)(2) ..........................................................................................................................................5, 6

**Other Authorities**

Restatement (Second) of Agency............................................................................................................15

## I.      PRELIMINARY STATEMENT

Plaintiffs, a nationwide advocacy organization and several residential tenants, attempt to hold various entities liable under the Fair Housing Act for alleged discriminatory rental tactics as co-conspirators. In an effort to dodge significant dispositive arguments of the Defendants, Plaintiffs chose to amend their Original Complaint in response to Motions to Dismiss. Notwithstanding this tactic, the Plaintiffs still fail to support their legally insufficient claims against RMS. Without specifying any individualized actions for which RMS, as mere agent-manager for the subject properties, might be held responsible, Plaintiffs fail to demonstrate a *prima facie* case of either discrimination or conspiracy by RMS. The Complaint's allegations are vague and ambiguous in that Plaintiffs purposefully fail to differentiate between or among "Defendants" as to which or who may have done what. Consequently, all of Plaintiffs' claims against RMS fail as a matter of law and are subject to dismissal with prejudice.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The original Complaint was filed on July 17, 2021, by seven alleged residents of Bedford and Victoria Station apartment complexes ("BVS"), and Casa de Maryland ("CASA"), whom Plaintiffs identify as "one of the largest immigrant rights membership organizations in the Mid-Atlantic region." ECF 1, 20.  Defendants, including RMS, filed motions to dismiss on December 20, 2021 ECF 40. In response, Plaintiffs filed an Amended Complaint on January 10, 2022, attempting to bolster the legally insufficient claims. ECF 43-1.

BVS is located in Langley Park, Maryland, and is alleged to be occupied by residents representing the following groups: 14.8% African American and 85.2% Hispanic/Latino,  ECF 43, ¶ 6. 54% of housing units in Langley Park, generally, are occupied by residents 55 and older, *id.,* ¶ 80. Eight distinct Defendants are being sued and are alleged in some way to have contributed to BVS being "uninhabitable," through improper maintenance, care, and repair. *See e.g., id.,* ¶¶ 12,

15, 138. The 332-paragraph Amended Complaint attempts to manufacture a discrimination claim under the Federal Housing Act, 42 U.S.C. § 3601, *et seq.* (Counts I – IV). Plaintiffs also attempt to articulate claims for Breach of Contract (Count V), Breach of Implied Warranty of Habitability (Count VI), Breach of Contract as Third-Party Beneficiaries (Count VII), Civil Conspiracy (County VIII).

The Bedford and Victoria Station apartment complexes ("BVS") are owned by Bedford United, LLC and Victoria United, LLC, respectively. Plaintiffs' Exhibit C, at pg. 7; *see* ECF 43, ¶ 109. Attempting to transform a landlord-tenant dispute into a much more complex and higher-profile case by injecting a race discrimination claim and improperly conflating seven different entities—not counting RMS and Arbor Realty Trust —Plaintiffs blur the lines between distinct and unrelated corporate entities: Bedford United, LLC, Victoria United, LLC, Hyattsville United, LLC, and Arbor Management Acquisition Company, LLC (together, the "Hyattsville Defendants"); and Arbor Realty Trust, Inc., Arbor Realty Limited Partnership, and Arbor Realty SR, Inc. (together, the "Arbor Defendants").[1] Consistent with their original Complaint, the Amended Complaint affirmatively states "[e]ach of the Defendants other than Realty Management Services, Inc. is a mere instrumentality or *alter ego* of parent company Arbor Realty Trust, Inc." ECF 43, ¶ 35.

The Amended Complaint alleges that poor conditions at BVS have come about as a result of certain alleged "policies" that Plaintiffs say violate the FHA. *See, e.g.,* ECF 43, ¶¶ 9, 10, 12, 14,

---

[1] Plaintiffs' continued attempt to aggregate these entities is inappropriate and inaccurate because, as explained more fully in the Arbor Defendants' Brief in Support of their Motion to Dismiss, the Arbor Defendants have no ownership or interest in BVS whatsoever. To the extent that the term "Arbor," "Arbor Family," or "Arbor Family Defendants" are used herein, it refers to the allegations that Plaintiffs direct to unrelated entities and should not be construed as an admission that any such entity exists or has any connection to BVS.

15. Plaintiffs attribute these policies generally to their straw men, the "Arbor Family," the "Arbor Related Defendants" without specifying which of the Hyattsville or Arbor Defendants enacted these alleged policies or how they did so. *See id.*

In contrast to the Amended Complaint's far-reaching allegations against the Hyattsville and Arbor Defendants, the claims against RMS are fairly limited. RMS is alleged to be a domestic corporation doing business in the State of Maryland via the registered trade name "Ross Management Services" and the management company of BVS.[2] ECF 43, ¶ 33. RMS is not alleged to be a subsidiary of any other Defendant. ECF 43-1, ¶ 35. It is alleged that RMS entered into a contract with the owners of BVS—i.e., Bedford and Victoria United—for the maintenance and management of the BVS properties. *See id.,* ¶ 284. Although failing to attach it to the Complaint, Plaintiffs characterize the contract by suggesting RMS would provide property management services to Plaintiffs, would maintain the tenants' properties in a habitable condition for the benefit of the tenants, and would otherwise manage the property to the benefit of the tenants, including the Plaintiffs. *Id.,* ¶ 286. Plaintiffs go further and suggest that:

> "[a] material term of each contract was that Ross keep all leased Units in clean, safe, and sanitary conditions at all times and that Ross maintain the common areas and each individual unit in a manner that is free from unhealthy indoor molds and water intrusion and environmental hazards."

*Id.,* ¶ 322. Plaintiffs, claiming the status of "third party beneficiaries" under the purported management agreement, allege "Ross breached the contract by failing to provide clean, safe, and sanitary units that are free from unhealthy indoor molds, water intrusion, microbial contaminants and other unsanitary conditions." *Id.,* ¶ 323. RMS is also alleged to have a role in evictions. *Id.,* ¶¶ 237, 240. RMS is generally alleged (without any factual support) to have acquiesced and been

---

[2] The Complaint seemingly uses Ross and RMS interchangeably and it is presumed that any reference or allegation to Ross or RMS is made against RMS.

complicit in evictions of tenants despite BVS's underlying uninhabitable conditions somehow resulting in unlawful and disproportionate impact on communities of color. *Id.,* ¶ 240.

Of importance, the Original Complaint contained no claims or factual allegations that RMS has a policy that is discriminatory in intent or that has a disparate impact. ECF 1. In an effort to overcome this deficiency, the Amended Complaint newly alleges that "[i]t is [RMS's] policy and practice to operate outside of the legally recognized scope of its employment agreement with the Arbor Related Defendants, as well as outside the scope of any reasonable interpretation of the duties of a property management company." ECF 43, ¶ 34. In providing mere unsupported conclusions, the Plaintiffs claim "[M]anagement companies such as [RMS] are aware of and actively assist in the enforcement of the Financialization Policy which requires an effective and efficient internal eviction process to ensure vacancy of the subject property remains at the lowest level possible." *Id.*, ¶ 198g. RMS is alleged to work outside the scope of any agreement with purported Arbor Family, "oversee[ing] the wrongful evictions of tenants whose homes are not habitable due to their conditions. " *Id.* RMS is also said to assist in the enforcement of the so-called "Financialization Policy through its complicity and agreement to limit routine maintenance." *Id.* Tellingly, factual predicates are completely absent for these generalized and superficial allegations.

The Original Complaint identified RMS's alleged liability as dependent on whether the alleged policies of other entities are deemed to be violations of the FHA. Indeed, the Plaintiffs – without any facts - alleged that:

> Each of the Defendants works in agreement amongst themselves and with property managers — in the case of BVS, the property manager is Ross — to conspire to implement policies that violate the FHA and cause the apartments to be uninhabitable as a further breach of contract and local ordinances.

ECF 1, ¶ 74. The Amended Complaint endeavors to stretch these conclusions further but still noticeably only provides allegations of what RMS was alleged to be doing in the first instance, namely managing the properties, performing evictions, and maintenance. ECF 43-2, ¶¶ 34, 198g. The Amended Complaint only furthers the failures of the Original Complaint (and better highlights them). This is particularly true regarding the allegation of a conspiracy without the requisite factual support. The Plaintiffs' conclusory claims against RMS are wholly inadequate on the face of their Amended Complaint and should thus be dismissed with prejudice.

## III.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) mandates that a Complaint should be dismissed if it does not state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6)(2014). Federal courts utilize a two-prong approach in analyzing the sufficiency of a pleading under Rule 8: (1) a court should accept the truth or factual allegations but not conclusory allegations; and (2) a complaint will only survive a Rule 12(b)(6) motion where it states a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79; *see also Bell Atlantic v. Twombly,* 550 U.S. 544, 555-56 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Well-pleaded factual allegations contained in the Complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly,* 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)).

Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *See Twombly,* 550 U.S. at 555. Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. 662.

Once a pleading is stripped of its allegations that are not entitled to the presumption of truth, the second prong requires the court to determine if the remaining factual allegations state a "plausible" claim for relief. *See Iqbal,* 556 U.S. at 677-84; *Twombly,* 550 U.S. at 555-70; *Glassman v. Arlington Cty.,* 628 F.3d 140 at 145-50 (4th Cir. 2010); *see also Francis v. Giacomelli*, 588 F.3d 186 at 194-97 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. However, where the well-pled facts of a pleading "…do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 670 (citing Fed. Rule Civ. Proc. 8(a)(2)) (internal quotation marks and brackets omitted).

While a court is generally limited to allegations contained in the complaint, courts may also consider documents explicitly incorporated into the complaint by reference and/or "'a document submitted by the movant that was not attached to or expressly incorporated in the complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.'" *Gray-Koyier v. Gladding Chevrolet, Inc.,* 2017 U.S. Dist. LEXIS 179069, *5 (D. Md. Oct. 30, 2017). "A document is 'integral' when 'its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Id.* at *5-6 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011)). "Considering such documents does not convert a motion to dismiss to one for summary judgment." *Id.* (citing *Goldberg v. Mayor & City Council of Baltimore,* 791 F.3d 500, 508 (4th Cir. 2015)); *see also Garrison v. McCormick & Co.,* 2010 U.S. Dist. LEXIS 64920, *2-4 at n. 2 (D. Md. June 30, 2010) (citing *Phillips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) ("[C]ourts may take judicial notice of matters of public record, and they may consider

documents attached to a motion to dismiss 'so long as they are integral to the complaint and authentic.'")).

## IV.    ARGUMENT

### A.    THERE ARE NO ALLEGATIONS THAT RMS INTENTIONALLY DISCRIMINATED AGAINST ANY PROTECTED CLASS IN PROSECUTING EVICTIONS.

Plaintiffs' claims fail to make any actionable allegation about RMS under 42 U.S.C. §3604(a) and (b) (Counts I and II) for disparate treatment. Plaintiffs allege that nationwide policies exist that "constitute[] intentional discrimination on the basis of race and national origin" and that such policies had a "disproportionate impact on communities of color." ECF 43-1, ¶ 278. Critically, however, there is no allegation that RMS engaged in or was responsible for these alleged policies. The claims as to the intentionality and the disparate impact (albeit separately inadequate) relate only to defendants other than RMS. *See id.,* ¶ 35. The only allegations regarding RMS relates to its alleged acquiescence and complicity in the enforcement of evictions of tenants despite the property's underlying uninhabitable conditions and the "agreement" to limit routine maintenance. *Id.*, ¶ 198g. These allegations fail to create a cause of action under 42 U.S.C. §3604 against RMS as a matter of law.

In a disparate-treatment case, a "plaintiff must establish that the defendant had a discriminatory intent or motive" in taking the complained of action. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 524, 135 S. Ct. 2507, 2513, 192 L. Ed. 2d 514 (2015). For RMS to be held liable, the relevant intent is what motivated RMS's own actions, not the intent behind the policies that RMS might be shown to have been contractually obligated to fulfill. To do so, the Plaintiffs would have to allege facts showing that White tenants were "treated differently or better" with respect to the alleged evictions than protected class members. *Young-Bey v. S. Mgmt. Corp., Inc*., No. TDC-18-2331, 2019 WL 1992905, at *3 (D. Md. May 6, 2019). But that is where Plaintiffs fail, since their Amended Complaint contains no factual statements concerning differential treatment in the eviction process. Instead, the Amended

Complaint contains virtually no *facts* concerning the evictions, including the tenants who were allegedly evicted, which buildings they were evicted from, or any comparative facts showing that White tenants were not similarly subjected to the same eviction process.3 Without any factual allegations to show disparate treatment in the eviction process, the claim simply cannot stand.

Here, RMS, as the acknowledged agent-manager of two particular properties in Maryland, is alleged to have carried out its contractually-obligated agency on behalf of the disclosed property owners without any assertion that RMS carried out the evictions "because of" race or national origin. *See* 42 U.S.C. §3604(a). Instead, Plaintiffs appear to stretch FHA liability to turn otherwise lawful evictions into violations, because the Hyattsville Defendants and/or the Arbor Defendants allegedly have nationwide policies related to their investment strategy.

In Maryland, eviction cases are generally based on a tenant's a) failure to pay rent or b) lease default. Md. Code Ann., Real Prop. § 8-401, *et seq.* Importantly, Maryland enacted a heightened standard for breach of lease cases, where it allows for restitution of the property only if a court determines that the tenant breached the terms of the lease and that the breach was substantial and warrants an eviction. *Id.,* § 402.1. For non-payment of rent evictions, tenants are provided with a right to redeem. *Id.,* § 401(g). None of the Plaintiff-tenants raised any issue of specific discriminatory intent in defense of their Maryland state court eviction proceedings. No evidence exists and, perhaps to Plaintiffs' credit, no assertions have been made that RMS discriminated through the evictions because of race or national origin.

---

3 While the Amended Complaint concludes that Plaintiffs Ramirez and Lopez were constructively evicted (ECF 43 at ¶ 233), it lacks any allegations showing that non-protected class members at BVS were subjected to different or better treatment, which is fatal to Plaintiffs' disparate treatment claim.  Further, there are no allegations that such alleged constructive eviction was in any related to or because of their protected class status.

Further, Plaintiffs did not allege that RMS is involved in making any purported policy, nor that it had any hand in determining how any other property is funded and managed – because RMS did not engage in those activities. Because the Amended Complaint fails to allege adequately that RMS acted with discriminatory intent in violation of the FHA, there is no basis to impose liability on the alleged agent for the purported improper policies of the principal.

## B.    THE AMENDED COMPLAINT IDENTIFIES NO VALID FHA CLAIM AGAINST RMS, AS THERE ARE NO CHALLENGES TO ANY OF ITS POLICIES.

Plaintiffs' claims fail to make any actionable allegation about RMS under 42 U.S.C. §3604(a) and (b) (Counts I and II) for disparate impact. Plaintiffs appear to be alleging the existence of nationwide investment policies that had a disparate impact on the minority population found at BVS. Specifically, Plaintiffs allege that there has been a failure to maintain or repair BVS. *See* ECF 43-1, ¶ 276. But as to RMS, Plaintiffs only make the vague allegation that it provided "assistance" in "forc[ing] tenants into eviction despite the uninhabitability of their housing." *Id.* This vague allegation is insufficient to present a claim against RMS. *See* discussion, *supra.* While the Supreme Court has recognized "disparate impact" cases under the FHA, the complaint "must demonstrate a robust causal connection between the <u>defendants' challenged policy</u> and the disparate impact on the protected class." *Reyes v. Waples Mobile Home Park Ltd. P'ship,* 903 F.3d 415, 424 (4th Cir. 2018) (emphasis added); *see also Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 540 (2015)(emphasis added). This robust causal connection must be met by identifying the defendant's specific practice that is challenged and then demonstrating "that the disparity they complain of is the result of one or more of the [ ] practices that they are attacking ..., specifically showing that each challenged practice has a significantly disparate impact" on the protected class." *Reyes,* 903 F.3d at 425.

In other words, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id.* (quoting *Inclusive Communities*, 576 U.S. at 542). Additionally, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion [complained of] because of their membership in a protected group. *Id.* "Our formulations, which have never been framed in terms of any rigid mathematical formula, have consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation." *Id.* (internal citations omitted). Disparate impact claims are not, however, intended to displace valid private priorities. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 540, 135 S. Ct. 2507, 2522, 192 L. Ed. 2d 514 (2015).

Because there is no specific allegation as to RMS's delegated maintenance discretion affecting in any way one or more of the Defendants alleged nationwide policy decisions regarding which properties to maintain and repair there is no basis for a claim against RMS, Simply stated, Plaintiffs allege neither a policy of RMS which could be found to be discriminatory, nor any delegation of maintenance discretion pursuant to which the court could under any circumstances find RMS liable. As with the disparate treatment claim, Plaintiffs improperly seek to hold RMS, as the agent, liable solely for the alleged discriminatory policymaking actions of its acknowledged principal(s).

Similarly, the allegations that RMS facilitated evictions in properties with alleged defects are not sufficient to give rise to an FHA claim against RMS. As described in the Hyattsville Defendants' Motion to Dismiss, which RMS incorporates, the Amended Complaint fails to sufficiently allege that the challenged policies are causing a disparate impact on protected class members, let along the "robust causal connection" between the two.  *Reyes,* 903 F.3d at 424.

**C.    COUNT III'S PERPETUATION OF SEGREGATION CLAIM AGAINST RMS IS BOTH FACTUALLY AND LEGALLY INSUFFICIENT**

A violation of the Fair Housing Act can arise when a facially neutral rule or policy causes harm to the community at large by the perpetuation of segregation. *Anderson Group, LLC v. City of Saratoga Springs,* 805 F.3d 34, 49 (2d Cir. 2015). If a rule or policy "perpetuates segregation and thereby prevents interracial association it will be considered invidious under the Fair Housing Act independently of the extent to which it produces a disparate effect on different racial groups." *Arthur v. City of Toledo, Ohio,* 782 F.2d 565, 575 (6th Cir.1986). Very few cases have recognized the actions of a private party as sufficient to sustain a perpetuation of segregation claim, as opposed to a government unit or municipal township.

As discussed at length in Section III.B, supra, Plaintiffs do not identify any Policies of RMS with which it takes issue. Even further, Plaintiffs fail to provide factual support for any contention that *any* rule or policy of *any* of the Defendants, has had the effect of wrongfully segregating a population. The mere occurrence of a higher proportion of minorities at the properties, without more, does not support a claim that any of the Defendants' policies steered or confined minorities to certain locations. Nothing alleged by Plaintiffs could, even in a light most favoring them, render any of the non-governmental, property-owner defendants and/or related entities, or RMS as the agent of any of them, liable for perpetuation of segregation in that community based solely on the fact that there are slightly higher concentrations of protected class members at BVS than in the community.

**D.    THE AMENDED COMPLAINT VIOLATES THE *ROOKER-FELDMAN* DOCTRINE BY ATTACKING THE JUSTIFICATION FOR THE EVICTIONS**

The Rooker-Feldman Doctrine precludes this Court from collaterally attacking state court approved evictions by arguing that the evictions were violations of the FHA.  Under the *Rooker-*

*Feldman* Doctrine, federal courts are prohibited from considering claims that are "inextricably intertwined" with prior state court determinations. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923) and *District of Columbia Court of Appeal v. Feldman,* 460 U.S. 462, 482 (1983). In order to declare that any of the evictions processed by RMS ran afoul of the FHA, the Court would first need to review the underlying eviction basis and state that the writ of eviction was incorrectly issued. This clearly runs afoul of the *Rooker-Feldman* Doctrine. *See also Babalola v. B.Y. Equities, Inc.,* 63 F. App'x 534, 535 (2d Cir. 2003).

While the Amended Complaint seeks to hold RMS liable under the FHA for improper evictions, Plaintiffs make no effort to identify the various predicates upon which eviction proceedings were based. Nevertheless, Plaintiffs thereby seek to collaterally attack the Maryland Court rulings authorizing their evictions. Under the Rooker-Feldman Doctrine, revisiting these prior holdings is beyond this Court's authority.

### E.    COUNT IV FAILS BECAUSE IT CONTAINS NO ALLEGATIONS THAT RMS MANAGES THE PROPERTIES DIFFERENTLY BASED ON ANY PROTECTED STATUS

Plaintiffs contend that "[b]y poorly maintaining properties in predominantly minority communities, Defendants have interfered with the rights of neighboring residents (predominantly persons of color) to use and enjoy their homes and communities." ECF 43-1, ¶ 289. The elements of a § 3617 claim are: (1) the plaintiff was engaged in protected activity, (2) the defendant was aware of that activity, (3) the defendant took adverse action against the plaintiff, (4) there is a causal connection between the protected activity and the adverse action; and, (5) the defendant's "discriminatory intent." *Hardaway v. Equity Residential Servs., LLC,* 2015 WL 858086, at *4 (D. Md. Feb. 26, 2015 (Chasanow, J.) (dismissing a Section 3617 claim on the basis that there "simply are no facts alleged that suggest a discriminatory intent by Defendant to retaliate against Plaintiffs"). The adverse action requirement under Section 3617 encompasses coercion,

intimidation, threats, or interference. *See Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001). These terms are interpreted based upon their plain meaning. *Id.* at 1128-29. "[Section] 3617 does not require a showing of force or violence for coercion, interference, intimidation, or threats to give rise to liability." *Id.* at 1128. HUD promulgated a regulation purporting to interpret § 3617, which provides a non-exhaustive list of prohibited actions. *See* 24 C.F.R. § 100.400. The regulatory list includes the following:

> Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons.

24 C.F.R. § 100.400(c)(2).

Here, in continuing with the Plaintiffs' new theme, the Amended Complaint attempts to aggregate RMS into an alleged § 3617 violation by alleging a conspiracy between it and the Arbor Related Defendants. ECF 43-1, ¶ 291. Unfortunately for the Plaintiffs, however, there are no factual allegations that RMS interfered with anyone's use and enjoyment because of race, national origin, or any other protected class. Indeed, RMS is only alleged to manage the BVS properties and there are no facts or allegations that RMS manages the properties differently based on any protected status. Nor are there any allegations that come close to the standard of what constitutes an adverse action that is actionable under Section 3617. *See* 24 C.F.R. § 100.400; *Walker,* 272 F.3d at 1128.  Plaintiffs' feeble attempt to hold RMS liable under this theory relies exclusively on the location of the properties being in a predominately minority community and somehow bootstrapping RMS's agency on behalf of one or more of other defendants as its principal without demonstrating in the least how RMS might have acted "because of" race or national origin.

### F.    PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS TO RMS BECAUSE OF RMS' ALLEGED AGENT STATUS

Plaintiffs' breach of contract claims against RMS, premised on their purported lease agreements, necessarily fail as a matter of law[4] because, as the Complaint acknowledges, RMS is merely an agent for Bedford United and Victoria United (together, the "BVS Owners") that performed building management services. *See* ECF 43-1, ¶ 34. With RMS serving in each of the leases only as "agent for owner" of the BVS properties, no Plaintiff has privity of contract with RMS pursuant to which RMS might otherwise be held liable. *see* Hyattsville Defendants' Motion to Dismiss Ex. G, ECF 46-8 to ECF 46-12 (Plaintiffs' lease agreements at Paragraph 1).

Agents to a corporation are not liable for the known corporation's contracts when the contract makes clear that the entity is acting only as agent for a principal. *Hill v. Cty. Concrete Co.,* 108 Md. App. 527, 532, 672 A.2d 667 (1996). Here, the lease agreements are expressly clear that certain Plaintiffs entered into leases with RMS as "agent for owner" of the BVS properties, which Plaintiffs plainly allege is Bedford United and Victoria United. The leases could not have been more clear in indicating that RMS was "plainly . . . acting as the agent of another" and accordingly, bear no liability. *Id.; see* ECF 46-8 to ECF 46-12. Aware of this, and attempting to create the appearance of agency liability for their claims, Plaintiffs' Amended Complaint makes the conclusory statement that each Plaintiff "entered into a lease with Ross for a partially disclosed principal." ECF 43-1, ¶ 296 (emphasis added). The label "partially disclosed principal" is a legal conclusion in agency law, wherein agents can be held liable for contracts of their principals, depending on certain circumstances. *See Crosee v. Callis,* 265 Md. 65, 282 A.2d 86 (1971) (if the

---

[4] RMS joins in and reaffirms the arguments raised in the Hyattsville Defendants' Memorandum in Support of Motion to Dismiss, ECF 47, concerning the Breach of Contract claims, and notes that neither CASA nor Ms. Ramirez have contracts with any party and therefore cannot assert a claim for breach of contract as a matter of law. *See Austin v. Lakeview Loan Servicing, LLC,* No. CV RDB-20-1296, 2020 WL 7256564 (D. Md. Dec. 10, 2020) (to assert a claim for breach of contract the plaintiff must allege a contractual relationship between the plaintiff and defendant).

other party has notice that an agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal) (citing Restatement (Second) of Agency § 4 (1958)).

The rule in Maryland is clear that if an agent discloses the identity of its principal to a third party, then, absent an agreement to the contrary, they are insulated from liability. *Curtis G. Testerman Co. v. Buck,* 340 Md. 569, 667 A.2d 649 (1995) When upon the face of an agreement, <u>a party contracting plainly appears to be acting as the agent of another</u>, the stipulations of the contract are to be considered as solely to bind the principal, unless otherwise intended. ").*Id*. at 577 (emphasis added). Because it was clearly disclosed to Plaintiffs that RMS was acting solely as the agent for Bedford United and Victoria United the owners of the BVS, RMS cannot be liable under the lease agreements as a matter of law. *Id.*

Further,  even if the agency relationship is not obvious on the face of an agreement, so long as there were "reasonable grounds" for the contracting party to believe they were contracting with an agent acting for a principal, then under Maryland law, the agent is not liable. *Syriani v. Gebhart,* 195 Md. 69, 79, 72 A.2d 766 (1950). "Reasonable grounds" include the ability of the contracting party to inquire or otherwise perform due diligence as to the identity of the principal. *Id.* When an agent is partially disclosed, the agent can also avoid liability through "seasonable disclosure" of the principal's identity. *Crosse*, 282 A.2d at 90. Consequently, in order to have sufficiently stated a claim for agency liability against RMS, the Plaintiffs must have made some allegation that no such disclosure was made and/or the actual disclosures made to them, the substance of any such disclosure(s), and an identification of what efforts, if any, they made to uncover the identity of the principal based on the "partial disclosures" they acknowledge receiving. Plaintiffs know this but

have not done so in their Amended Complaint. Plaintiffs, thus, fail entirely to plead a viable breach claim against RMS.

Aside from one conclusory statement labeling RMS's alleged principal as "partially disclosed," there is no allegation in the Complaint to support liability against RMS, a fully disclosed property manager, for a lease agreement between Plaintiffs and the BVS Owners.[5]  On the contrary, much of the Complaint serves to confirm Plaintiffs' awareness that RMS was not the property owner. Plaintiffs note having complained about property conditions to all Defendants, including the BVS Owners. ECF 43, ¶¶ 21-25. CASA, in particular, alleges of having complained not only to RMS, but to other defendants as well. *Id.,* ¶ 98.

In sum, other than the single conclusory statement that RMS was a "partially disclosed principal," the Complaint is devoid of any facts indicating what was or was not disclosed and/or the extent to which Plaintiffs might have done anything with the information.  That is the case here.  As such, Plaintiffs fail to plead a viable claim for breach of contract against RMS, and Count IV should therefore be dismissed as to RMS.

G.   **PLAINTIFF'S BREACH OF THE IMPLIED WARRANTY OF HABITABILITY AS A STAND-ALONE CAUSE OF ACTION IS IMPROPER AS A MATTER OF LAW**

Plaintiffs' Count VII improperly seeks to enforce an implied warranty of habitability as a stand-alone cause of action.[6] Under Maryland law, there is no such cause of action. *See Benik v. Hatcher,* 358 Md. 507, 549, 750 A.2d 10 (2000) ("The General Assembly has never enacted a

_____

[6] Again, the Amended Complaint asserts this Count on behalf of "All Plaintiffs," including CASA, a non-tenant. As discussed more fully below, there is no private cause of action where tenants in Prince George's County can sue their landlords solely for a breach of an implied warranty of habitability, let alone former tenants after having been evicted. CASA is not even a tenant at the relevant properties, and therefore, CASA's claim under Count Seven must be dismissed.

warranty of habitability on a statewide basis for the market in previously occupied, residential-rental properties…") (Cathell, J., dissenting).

For Plaintiffs to sustain their claim for a breach of the implied warranty of habitability, the claim must be brought under some specific local ordinance. *Nerenhausen v. Washco Mgmt. Corp.*, 2017 U.S. Dist. LEXIS 59426, at *14 (D. Md. Apr. 18, 2017). Here, the Complaint does not identify any specific ordinance that was allegedly violated. Rather, the Plaintiffs' Complaint makes vague reference to "Prince George's County Local Code," ECF 43, ¶ 274, ("PGCC") but points to no actual provision of the PGCC that would authorize a private cause of action for any of the conditions alleged.

Still, a brief review of the PGCC demonstrates that Prince George's County has developed a comprehensive housing code and has authorized penalties with which it determines that a property owner has failed to comply with the ordinances. The PGCC specifically creates and designates the Department of Permitting, Inspection, and Enforcement ("DPIE") as the sole entity responsible for the enforcement and administration of the housing code, including the landlord tenant provisions contained therein. *See* PGCC § 13-102. The PGCC further provides a procedure for the County to investigate complaints made by tenants and to enforce its findings with respect to actual violations of the housing code, including for the alleged failure to maintain a dwelling unit. *See* PGCC §§ 13-110-111. It also includes appeal rights for persons aggrieved by the County's administrative decisions for implementing the housing code. PGCC § 13-116.

The County did not, however, create a private cause of action for violations of these ordinances. Prince George's County, while clearly aware of its authority to do so, did not include any language that could reasonably be construed to create a private cause of action for tenants, and the County's decision not to grant this express authority is controlling:

> [I]t is an elemental canon of statutory construction that where a statute expressly
> provides a particular remedy or remedies, a court must be chary of reading others
> into it. "When a statute limits a thing to be done in a particular mode, it includes
> the negative of any other mode."

*Baker v. Montgomery Cty,* 201 Md. App. 642, 668-69, 30 A.3d 267 (2011) (quoting *Sugarloaf*

*Citizens Ass'n, Inc. v. Gudis,* 78 Md .App. 550, 552-53, 560, 554 A.2d 434 (1989), *aff'd on other*

*grounds,* 319 Md. 558, 573 A.2d 1325 (1990)). There is no provision of the PGCC that gives

Plaintiffs the authority to seek relief sought in Count Seven through the Court system.

Consequently, their claims must be dismissed.

### H.   PLAINTIFFS' THIRD PARTY INTENDED BENEFICIARY CLAIMS AGAINST RMS FAIL DUE TO LACK OF STANDING

In the Amended Complaint, Plaintiffs seek recovery under a theory that they have a

putative status as third-party beneficiaries to enforce the management agreements. ECF 43-1, ¶¶

317-326. While Plaintiffs fail to attach the Property Management Agreement ("PMA"), they cite

to purported provisions not actually contained in the document to support their claimed status as

intended third-party beneficiaries.[7] For instance, Plaintiffs allege as follows regarding the

Management Agreement:

> The contract provided that Ross would provide property management services to
> Plaintiffs, would maintain the tenants' properties in a habitable condition for the
> benefit of the tenants, and would otherwise manage the property to the benefit of
> the tenants, including the Plaintiffs.
>
> A material term of each contract was that Ross keep all leased Units in clean, safe,
> and sanitary conditions at all times and that Ross maintain the common areas and

---

[7] "[D]ocuments that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits" may be considered by the Court. *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).  The Court may also consider the PMA, and credit it over contradictory allegations in the Amended Complaint, since it is integral to the Amended Complaint in light of Plaintiffs' explicit references to the agreement, and there is no dispute about the document's authenticity. *Id. See also, Fare Deals, LTD. v. World Choice Travel.com, Inc.,* 180 F. Supp. 2d 678, 683 (D. Md. 2001).

each individual unit in a manner that is free from unhealthy indoor molds and water intrusion and environmental hazards.

ECF 34, ¶¶ 321-322. However, the Management Agreement contains no such language. RMS is entitled to dismissal on this claim based upon the unambiguous language of the Management Agreement. *Id.*

When the language of the PMA is taken into consideration, it is readily clear that Plaintiffs are not intended third-party beneficiaries, and the allegations simply misrepresent the nature of the Management Agreement. Exhibit 1.

Maryland's third-party beneficiary doctrine acts as an exception to the general rule at common law that only the parties to a contract can sue to enforce it. *Lovell Land, Inc. v. State Highway Admin.,* 408 Md. 242, 260 (2009). "An individual is a third-party beneficiary to a contract if the contract was intended for his benefit and it clearly appear[s] that the parties intended to recognize him as the primary party in interest and as privy to the promise." *Dickerson v. Longoria,* 414 Md. 419, 452, 995 A.2d 721 (2010) (internal quotations and bracketed text removed) (quoting *Shillman v. Hobstetter*, 249 Md. 678, 687, 241 A.2d 570 (1968)). "The primary method of determining the intention of the parties to a contract is to look at the language in the contract." *CR-RSC Tower I, LLC v. RSC Tower I, LLC,* 202 Md. App. 307, 354, 32 A. 3d 456 (2011) (denying beneficiary status to a lease). Where the Agreement merely results in a benefit to a third-party or seeks to protect the contracting parties from possible liability and/or litigation by a third party, it does not make a third party an intended beneficiary who can sue to enforce the contract. *Volcjak v. Wash. Cty. Hosp. Ass'n,* 124 Md. App. 481, 510, 723 A.2d 463 (1999) ("We do not think, however, that the mere prospect of litigation by a claimant is enough to qualify that claimant as a third-party beneficiary of a contract wherein one contracting party takes steps to minimize the possibility of such litigation.").

Maryland courts have routinely recognized that tenants are merely incidental beneficiaries of contracts between their landlords and others regarding the rental property conditions. Thus, in *Little v. Union Tr. Co.,* the Court held that tenants are not intended beneficiaries of a contract between a landlord and HUD that required the landlord to "maintain the mortgaged premises, accommodations and the grounds and equipment appurtenant thereto, in good repair and condition." 45 Md. App. 178, 179, 412 A.2d 1251 (1980). To reach that conclusion, the court analyzed the contract's language, noting that it nowhere mentioned the tenants, and that it provided that "'[t]his instrument shall bind, *and the benefits shall inure to,* the respective Owners, their heirs, legal representatives, executors, administrators, successors in office or interest, and assigns, *and to the Commissioner and his successors . . .*'" *Id.,* at 180-81 (quoting contract; emphasis in original.)

Turning to the PMA, here, the potential claim supporting language proffered in the Complaint is directly contradicted by the language of the agreement itself. There is no reference to any obligation owed to the Plaintiffs. Instead, the PMA is unequivocal that the tenants (nor the organizational Plaintiff) are not third-party beneficiaries:

> **No person or entity shall be deemed to be a third party beneficiary of any term or provision of this Agreement,** including, without limitation, the terms and provisions of this Section 9.01, and no person or entity shall have any rights of subrogation or similar rights under this Section 9.01, other than Affiliates of Owner and Manager, respectively, entitled to indemnification pursuant to the provisions of this Article 9. Notwithstanding the foregoing Servicer shall be deemed a third party beneficiary of the provisions of the Agreement. All indemnification obligations under this Agreement and the provisions of this Article 9 shall survive the expiration and any termination of this Agreement.

Exhibit A, ¶ 9.01(c) (emphasis added). The PMA expressly and unequivocally denies to the Plaintiffs any third-party beneficiary rights as tenants or otherwise. RMS' initial motion to dismiss identified this provision specifically, but in their Amended Complaint , Plaintiffs have no response other than to regurgitate the same insufficient allegations in the original pleading. While the

"Servicer" was a contemplated beneficiary, tenants were not. The Court cannot reform the contract contrary to the intent of the parties thereto in order to give a third party standing. Moreover, all of the terms related to tasks that RMS undertakes, none of which requires that RMS incur a financial debt or expense, and subject to the funding and approval of the owner. Exhibit 1, ¶ 5.04.

The PMA is similar to the agreement in *Little,* in that it does not mention the tenants as beneficiaries. Moreover, it expressly rejects any argument that the parties to the agreement might have intended to convey third-party beneficiary status on anyone other than the Servicer. The benefits it confers on the BVS tenants, if any, are comparable to those in *Little,* where the court held that it was "abundantly clear that the tenants are, at most, incidental beneficiaries, and it is well settled under Maryland law that an incidental beneficiary of a contract has no cause of action against either the promisor or the promisee." *Little,* 45 Md. App. at 181; *see also Marlboro Shirt Co. v. Am. Dist. Tel. Co.,* 196 Md. 565, 571-572, 77 A.2d 776 (1951) (denying intended beneficiary status of tenant for an alarm installation contract between landlord and alarm company). [8] Thus,

---

[8] Other jurisdictions that have addressed third-party beneficiary status in relation to property management and comparable agreements have overwhelmingly found that there is no right of the third-party to recovery for a perceived breach of the agreement because the non-signing party is, at best, an incidental beneficiary. *Greenacre Props. v. Rao,* 933 So. 2d 19, 23, 31 Fla. L. Weekly 1223 (Dist. Ct. App. 2006) (denying homeowner third-party beneficiary status to an agreement between a homeowners' association and its management company."); *Century Campus Hous. Mgmt., L.P. v. Elda Hana, LLC,* 141 Haw. 383, 409 P.3d 787 (Ct. App. 2018) (applying Texas law to deny owner and development company third-party beneficiary status to a management agreement); *Sears Roebuck & Co. v. W/S Lebanon LLC,* No. 14-cv-422-JL, 2017 U.S. Dist. LEXIS 143902, at *10-11 (D.N.H. Sep. 6, 2017) (denying third-party beneficiary standing to non-party to property management agreement); *Barger v. Elite Mgmt. Servs.,* 2018 Ohio 3755, ¶ 7, 119 N.E.3d 953, 957 (Ct. App.) (denying homeowners third-party beneficiaries to management agreement); *Lemus v. Cookscreek 255, LLC,* No. 05-17-01085-CV, 2018 Tex. App. LEXIS 9836, at *58 (Tex. App. Nov. 30, 2018) (denying extrinsic evidence to interpret unambiguous management agreement and denying tenant third-party beneficiary status); *Novak v. Cmty. Living Servs.,* No. 340414, 2019 Mich. App. LEXIS 287, at *2 (Ct. App. Feb. 19, 2019) (finding property owner as merely incidental beneficiary to contract between organization providing housing for disabled adults and property managers hired by organization to maintain property on behalf of disabled adult-tenants); *Wash. House Condo. Ass'n of Unit Owners v. Daystar Sills, Inc.,* No. N15C-01-108 WCC CCLD,

Plaintiff-tenants are at most, incidental beneficiaries of the Agreement which entitles them to "no right against the promisor or the promise." *CR-RSC*, 429 Md. at 457-58 (quoting *120 West Fayette St., LLLP v. Mayor of Baltimore*, 426 Md. 14 at 35-36, 43 A.3d 355 (2012); *see also, Gao v. Progressive Max Ins. Co,* 2019 Md. App. LEXIS 321,*11-12 (2019) (citing *Parlette v. Parlette,* 88 Md. App. 628, 637, 596 A. 2d 665 (1991) and *Shillman v. Hobstetter,* 249 Md. 678, 687-88 (1968)). Count VIII of the Complaint must, therefore, be dismissed.[9]

## I.     PLAINTIFFS' CIVIL CONSPIRACY CLAIMS ARE INSUFFICIENTLY PLED

Plaintiffs' civil Conspiracy claim is purely the recitation the elements of civil conspiracy:

> Specifically, the Defendants conspired to refrain from performing maintenance or making repairs for known or reasonably knowable defects to further the policies identified above in violation of the FHA.

[Doc. 43-1, ¶ 329]. That is plainly insufficient under federal pleading standards*. Iqbal,* 556 U.S. at 678. While Maryland has recognized a common law concept of a civil conspiracy, it is not a tort on its own but is dependent on some underlying tort that caused injury to the plaintiff. *Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.,* 109 F.Supp.2d 424, 428 (D.Md.2000). To plead civil conspiracy the plaintiff must show: (1) "a confederation of two or more persons by agreement or understanding;" (2) "some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal;" and (3) "actual legal

---

2015 Del. Super. LEXIS 587, at *11-12 (Super. Ct. Oct. 28, 2015) ("For a contract to confer third-party beneficiary rights, not only is it necessary that performance of the contract confer a benefit upon a third person that was intended, but the conferring of the beneficial effect on such third-party…should be a material part of the contract's purpose.") (quotations omitted).

[9] Assuming that the PMA specifically allowed third party beneficiaries (which it does not), Plaintiffs have failed to identify a specific breach of the PMA. Plaintiffs have not identified a breach of any duty owed to the ownership by RMS under the PMA and therefore, they cannot state a claim for breach of contract. *C.f.* ECF 43-1, ¶¶ 211.

damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 154, 916 A.2d 257 (2007).

Here, Plaintiffs' civil conspiracy claim fails as a matter of law because: (1) RMS was acting within the scope of its employment as agent for the owners of BVS and therefore, cannot as a matter of law conspire with its principals, *Fraidin v. Weitzman,* 93 Md. App. 168, 235, 611 A.2d 1046, 1079 (1992) , and; (2) there are no allegations of an agreement.

1.  The Complaint alleges that RMS performed all of its actions as the agent
    of the BVS Owners and, therefore, the civil conspiracy claim fails.

The Amended Complaint repeatedly alleges that RMS was the ownership's agent in performing various duties at the properties under the PMA, including maintenance and evictions in the owner's name. See, ECF 43, ¶¶ 34, 296, and 325. As the alleged agent, however, RMS cannot conspire with the principal as a matter of law. In *Fraidin v. Weitzman,* where an attorney was acting on behalf of his client, the court stated that "it is established law that there can be no conspiracy between a principal and an agent where the agent acts within the scope of his or her employment." 93 Md.App. 168, 234-235, 611 A.2d 1046 (1992). Similarly, in *Harnish v. Herald– Mail Company,* the court stated, "[i]t is doubtful at the least that an employee of a corporation and that corporation can conspire where the employee is acting only for the corporation and not for any personal purpose of his own." 264 Md. 326, 337, 286 A.2d 146 (1972); *see also, Arthur v. Ticor Title Ins. Co. of Fla.,* No. CIV. AMD 07-1737, 2008 WL 7854915, at *7 (D. Md. Mar. 11, 2008), *aff'd* 569 F.3d 154 (4th Cir. 2009); *Marmott v. Maryland Lumber Co.,* 807 F.2d 1180, 1184 (4th Cir. 1986). ) ("[A] conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility.").

Here, there are no allegations that RMS was acting beyond the scope of the PMA giving rise to that agency relationship. The Amended Complaint newly alleges that RMS undertakes its

"policy to operate outside of the legally recognized scope of its employment agreement . . . in an effort to retain the business of its principal." ECF 43-1, ¶ 34. Yet these unsupported assertions, devoid of further factual enhancement, carry no weight. *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). Nakedly alleging general business interests in an effort to illustrate a personal stake is unpersuasive and ineffectual. Indeed, the Plaintiffs have alleged no facts suggesting the kind of business interest that would be harmed *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015). Consequently, there is no viable claim of civil conspiracy against RMS for any of the activities alleged in the operative pleading.

2. <u>The Complaint does not sufficiently allege any agreement with RMS to perform an unlawful act.</u>

The Plaintiffs' bald allegation of the existence of an agreement without factual support or basis is insufficient. *See Decohen v. Abbasi,* LLC, No. CIV. WDQ-10-3157, 2011 WL 3438625, at \*7 (D. Md. July 26, 2011) ("These conclusory allegations do not show Beacon's agreement or understanding that the GAP Agreement would be used to harm Decohen, and are insufficient under *Iqbal* and *Twombly* to state a civil conspiracy."), *vacated in part on other grounds sub nom. Decohen v. Cap. One, N.A.,* 703 F.3d 216 (4th Cir. 2012) (citing *Scharpenberg v. Carrington,* 686 F. Supp. 2d 655, 662 (E.D. Va. 2010) (broad brush business conspiracy allegations insufficient under Virginia law)). Plaintiffs fail to state "when or where the alleged conspiracy was formed or 'present any other facts tending to show that such agreement was, in fact, reached. Plaintiffs['] allegations are purely speculative and are not entitled to judicial deference." *Luber,* 2011 WL 8129826, at \*4 (citing *Twombly,* 550 U.S. at 555).

The Amended Complaint's facts merely demonstrate that RMS was charged with the maintenance of the Property The mere agreement to manage rental property does not amount to an

agreement or understanding that by doing so they also agreed to further a policy in violation of the FHA.[10]

There are no factual allegations supporting what amounts to a baldly contended unity of purpose or common agreement between RMS and either the Hyattsville Defendants or Arbor Defendants in furtherance of any alleged national policies that either may have had. Again, there are no facts or reasonable inferences that RMS, responsible for managing a small number of local properties, was privy to or had any impact on the national policy presumably being implemented by dozens of other property managers around the country. The complaint is devoid of any competent factual allegations that RMS agreed not to maintain any property, or that RMS did so because of the national origin of the tenants.  Absent a meeting of the minds to do an illegal act, there can be no civil conspiracy. Plaintiffs conspiracy claims against RMS are therefore subject to dismissal.

## V.    CONCLUSION

For the foregoing reasons, RMS respectfully requests this Court dismiss all claims against it with prejudice. With their Amended Complaint, it is now certain that no amount of amendments will salvage the Plaintiffs' claims as to RMS.

MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.

*/s/ Megan T. Mantzavinos*
Megan T. Mantzavinos, Esquire (Bar #: 16416)
mmantzavinos@moodklaw.com
600 Baltimore Avenue, #305
Towson, Maryland  21204
(410) 339-6880
*Attorney for Defendant, Realty Management
Services, Inc.*

---

[10] In fact, these allegations do not even amount to demonstrating a knowledge of the alleged national policy, let alone an approval of it. In any case, neither would be sufficient to meet the pleading standard.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of February 2022, a copy of Defendant Realty

Management Services, Inc.'s Opening Brief In Support Of Motion To Dismiss Plaintiffs' Class

Action Complaint was electronically filed and served upon all counsel of record via CM/ECF.

*/s/ Megan T. Mantzavinos*
Megan T. Mantzavinos, Esquire