**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| CASA DE MARYLAND, INC., et al, | |
| Plaintiffs, | |
| vs. | Civil Action No.: DKC-21-01778 |
| ARBOR REALTY TRUST, INC., et al, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION OF ARBOR REALTY TRUST,
INC., ARBOR REALTY LIMITED PARTNERSHIP, AND
ARBOR REALTY SR, INC. TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT**

Ray D. McKenzie
**WTAII PLLC**
PO Box 609
Vienna, Virginia 22183
Telephone (202) 688-3150
Facsimile (202) 869-1882
ray.mckenzie@wtaii.com

Peter W. Tomlinson (*pro hac vice*)
Muhammad U. Faridi (*pro hac vice*)
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, New York 10036
Telephone (212) 336-2000
Facsimile (212) 336-2222
pwtomlinson@pbwt.com
mfaridi@pbwt.com

*Attorneys for Defendants Arbor Realty Trust, Inc.,
Arbor Realty Limited Partnership, and Arbor Realty
SR, Inc.*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT .................................................................... 1

ARGUMENT ........................................................................................... 2

I.     PLAINTIFFS' FHA CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS
       FAIL TO PLAUSIBLY ALLEGE THAT THE ARBOR DEFENDANTS OWN
       OR CONTROL THE UNDERLYING PROPERTIES ........................................ 2

       A.     Plaintiffs Are Mistaken That Ownership Is Never a Prerequisite for FHA
              Liability ................................................................................... 3

       B.     Plaintiffs' Claims Hinge on Ownership and Control, Yet Plaintiffs Fail to
              Meaningfully Respond to the Arbor Defendants' Showing That They Do
              Not Own or Control the Properties ............................................... 10

       C.     Plaintiffs Fail to Plausibly Allege Any Elements of Alter Ego Liability,
              Which They Must Do to Hold the Arbor Defendants Liable for Alleged
              Acts by the Property Owners ...................................................... 14

II.    THE AMENDED COMPLAINT IMPROPERLY GROUPS DEFENDANTS
       TOGETHER .......................................................................................... 16

CONCLUSION ........................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkins v. Morgan Stanley*,
  No. 12 CV 7667 HB, 2013 WL 3835198 (S.D.N.Y. July 25, 2013) .........................................7

*Ave. 6E Invs., LLC v. City of Yuma, Ariz.*,
  818 F.3d 493 (9th Cir. 2016) ...................................................................................................8

*Baltimore Line Handling Co. v. Brophy*,
  771 F. Supp. 2d 531 (D. Md. 2011).........................................................................................15

*Chevron U.S.A., Inc. v. Apex Oil Co.*,
  113 F. Supp. 3d 807 (D. Md. 2015).........................................................................................18

*Dekalb Cty. v. HSBC N. Am. Holdings Inc.*,
  No. 1:12-CV-03640-ELR, 2015 WL 8699229 (N.D. Ga. Nov. 16, 2015) ...........................6, 8

*Ferdinand-Davenport v. Children's Guild*,
  742 F. Supp. 2d 772 (D. Md. 2010).........................................................................................5

*Frazier v. U.S. Bank Nat'l Ass'n*,
  No. 11-8775, 2013 WL 1337263 (N.D. Ill. Mar. 29, 2013) ....................................................18

*Garcia v. Brockway*,
  No. CV 03-193-S-MHW, 2004 WL 7334542 (D. Idaho Apr. 22, 2004).........................3, 4, 5

*Gianfredi v. Hilton Hotels Corp.*,
  Civ. Act. No. 08-5413 (PGS), 2010 WL 1381900 (D.N.J. Apr. 5, 2010) ..............................16

*Growth Horizons, Inc. v. Delaware Cty., Pa.*,
  983 F.2d 1277 (3d Cir. 1993).....................................................................................................3

*Hardaway v. Equity Residential Servs., LLC*,
  No. DKC-13-0149, 2015 WL 858086 (D. Md. Feb. 26, 2015), *aff'd sub nom.*
  *Hardaway v. Equity Residential Mgmt. LLC*, 675 F. App'x 381 (4th Cir. 2017)..........6, 15, 16

*Hoostein v. Mental Health Ass'n (MHA), Inc.*,
  98 F. Supp. 3d 293 (D. Mass. 2015), *aff'd* (1st Cir. Dec. 14, 2015).....................................3, 5

*In re Riddell Concussion Reduction Litig.*,
  77 F. Supp. 3d 422 (D.N.J. 2015) ......................................................................................17, 18

*Miller v. Countrywide Bank, N.A.*,
  571 F. Supp. 2d 251 (D. Mass. 2008) .......................................................................................7

*Montgomery Cty., Md. v. Bank of Am. Corp.*,
421 F. Supp. 3d 170 (D. Md. 2019) ........................................................................7

*Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*,
658 F.3d 375 (3d Cir. 2011) ...................................................................................8

*Nat'l Fair Hous. Alliance v. Bank of Am.*,
401 F. Supp. 3d 619 (D. Md. 2019) .....................................................................6, 7

*Ojo v. Farmers Grp., Inc.*,
600 F.3d 1205 (9th Cir. 2010), *as amended* (Apr. 30, 2010) ..................................8

*Prince George's Cty., Md. v. Wells Fargo & Co.*,
397 F. Supp. 3d 752 (D. Md. 2019) .......................................................................7

*Saint-Jean v. Emigrant Mortg. Co.*,
50 F. Supp. 3d 300 (E.D.N.Y. 2014) ......................................................................7

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) ....................................................................14, 15, 17

*Sprint Solutions, Inc. v. Fils-Amie*,
44 F. Supp. 3d 1224 (S.D. Fla. 2014) ...................................................................18

*Sunrise Dev. Inc. v. Lower Makefield Twp.*,
No. 2:05-CV-02724, 2006 WL 626806 (E.D. Pa. Jan. 23, 2006)................3, 4, 5, 6

*Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*,
17 F.4th 950 (9th Cir. 2021) .................................................................................8, 9

*Viens v. Am. Empire Surplus Lines Ins. Co.*,
113 F. Supp. 3d 555 (D. Conn. 2015)......................................................................8

*White v. City of Annapolis by & through City Council*,
439 F. Supp. 3d 522 (D. Md. 2020).......................................................................8, 9

## Statutes

Fair Housing Act............................................................................................ *passim*

## Other Authorities

Fed. R. Civ. P. Rule 8 ......................................................................................2, 16, 18

Defendants Arbor Realty Trust, Inc. ("Arbor Realty Trust"), Arbor Realty Limited Partnership ("Arbor Realty Limited"), and Arbor Realty SR, Inc. ("Arbor Realty SR") (collectively, the "Arbor Defendants") respectfully submit this reply memorandum in further support of their Motion to Dismiss with prejudice the Amended Complaint filed by Plaintiffs CASA de Maryland, Inc., Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (collectively, "Plaintiffs") for failure to state a claim upon which relief may be granted (ECF No. 47).

## PRELIMINARY STATEMENT

Plaintiffs' bombastic opposition[1] to the Arbor Defendants' Motion to Dismiss rests on two legal arguments: that Plaintiffs need not plead ownership or control to establish liability and that Plaintiffs are allowed to lump unrelated defendants together with group pleading.  If Plaintiffs are wrong about either of these load-bearing assertions, their case against the Arbor Defendants collapses.  Plaintiffs misstate the law on both points.

First, Plaintiffs are incorrect that there can never be such a thing as an improper party in FHA litigation.  Instead, where, as here, claims are based on actions allegedly either taken or not taken by an entity with responsibility for a given property, then ownership or control of that property by the defendant naturally must be shown.  Plaintiffs offer no meaningful dispute that they have not and cannot show that the Arbor Defendants own or control the BVS Properties. This is not surprising, since the very public records upon which Plaintiffs rely make the lack of a connection to the BVS Properties clear.  This is fatal to Plaintiffs' claims.

---

[1] Plaintiffs' brief is replete with *ad hominem* attacks on their opposing attorneys and repeatedly lobs unfounded accusations of intentional misrepresentation.  *See, e.g.,* Plaintiffs' Omnibus Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp."), ECF No. 53, at 1 & n.1, 3 & n.2, 14, 16, 27, 34.  Rather than responding to these distractions, the Arbor Defendants instead have focused on identifying and responding to the numerous flaws in Plaintiffs' legal arguments.

Second, Plaintiffs insist that defining unrelated defendants as a single group and then lobbing each and every claim against that group is somehow consistent with the notice pleading requirements of Rule 8.  It is not, and even if the standard were as Plaintiffs posit in their brief, the Amended Complaint on its face does not meet that standard.

Therefore, the Court should dismiss the Amended Complaint with prejudice.

## ARGUMENT

### I.     Plaintiffs' FHA Claims Must Be Dismissed Because Plaintiffs Fail to Plausibly Allege That the Arbor Defendants Own or Control the Underlying Properties

Plaintiffs accept that the Arbor Defendants do not actually own the underlying properties that are the basis for their Fair Housing Act claims.  *See* Opp. at 2.  Rather than dispute this lack of ownership—which they cannot do because the public records referenced in the Arbor Defendants' motion to dismiss conclusively establish that the Arbor Defendants do not own the BVS Properties—Plaintiffs baldly assert that "property ownership has no relation whatsoever to liability under the Fair Housing Act."  Opp. at 2 (emphasis removed).  But this sweeping claim is contrary to decades of established case law and to common sense.  Plaintiffs themselves frame the alleged FHA violations as policies regarding maintenance, renovation, and property use; by definition, these can only be implemented by parties who own or control the underlying properties.  *See, e.g.*, Amended Complaint ("Am. Compl."), ECF No. 43, ¶¶ 198, 203, 209-211, 215-216.  Consequently, Plaintiffs must plausibly allege that the Arbor Defendants own or control the BVS properties.  Because Plaintiffs make no attempt to refute the Arbor Defendants' showing that they do not own or control the properties, a necessary prerequisite to implementing any of the "policies" alleged in the Amended Complaint, Plaintiffs' claims must be dismissed.

## A.    Plaintiffs Are Mistaken That Ownership Is Never a Prerequisite for FHA Liability

The Opposition rests almost entirely on Plaintiffs' argument that the Arbor Defendants need not own or control BVS in order to be liable under the FHA.  *See* Opp. at 13-18.  Not so. Where, as here, alleged FHA violations depend upon ownership or control of the underlying properties, Plaintiffs must plausibly allege that the Arbor Defendants actually own or control the properties in order to state a claim against them.  Plaintiffs have failed to do so, and their claims against the Arbor Defendants must be dismissed for that reason.

The Fair Housing Act was intended to govern "[t]he conduct and decision-making . . . of persons in a position to frustrate [housing] choices—*primarily, at least, those who own the property of choice and their representatives.*"  *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1283 (3d Cir. 1993) (emphasis added).  In recognition of this fundamental limitation on the statute's scope, numerous courts have held that defendants who did not own the underlying property could not be liable for alleged FHA violations connected to actions which only an owner, landlord, or agent could undertake.  *See, e.g.*, *Hoostein v. Mental Health Ass'n (MHA), Inc.*, 98 F. Supp. 3d 293, 297–98 (D. Mass. 2015), *aff'd* (1st Cir. Dec. 14, 2015) ("Based solely on the facts alleged by Plaintiff, no Defendants qualify as individuals whose actions are controlled by the provisions of the named sections of the FHA, as Defendants *are not landlords or potential home-sellers* of [the underlying property].") (emphasis added); *Sunrise Dev. Inc. v. Lower Makefield Twp.*, No. 2:05-CV-02724, 2006 WL 626806, at *4 (E.D. Pa. Jan. 23, 2006) (dismissing FHA claims against named "defendants [who] *d[id] not own the property at issue,*" were not representatives of the owner, and did not sell or lease the property, because such entities were "not in a position to directly frustrate plaintiffs' housing choices") (emphasis added); *Garcia v. Brockway*, No. CV 03-193-S-MHW, 2004 WL 7334542, at *8 (D. Idaho Apr. 22,

2004) (rejecting plaintiff's argument that the original "designers and constructors of non-complying housing remain liable to reasonably accommodate an individual under the FHA because of their design and construction violations even though [they] *no longer own[] the subject property*") (emphasis added).

When a plaintiff brings claims alleging that a defendant failed to take actions that are the responsibility of the property owner or manager, the plaintiff must prove that the defendant was—in fact—the owner or manager of the underlying property.  This is nothing more than a common-sense prerequisite which, contrary to what Plaintiffs have suggested in the Opposition, federal courts frequently apply.  For example, in *Sunrise Development Inc. v. Lower Makefield Township*, the court evaluated a claim under § 3604(f)(1) of the FHA alleging that defendants made housing unavailable on an impermissible basis by advocating against plaintiff's application to a local zoning board for a special exception from zoning regulations that would have permitted plaintiff to construct an assisted living facility.  2006 WL 626806, at *1-2.  The court held that claims for making desired housing "unavailable" could only be brought against parties directly responsible for selling or leasing the underlying property.  The court dismissed the FHA claims, noting that the "defendants do not own the property at issue, nor are they representatives for those that do," and therefore "are not in a position to directly frustrate plaintiffs' housing choices, as defendants do not have the power to decide whether plaintiffs are allowed to build an assisted living facility."  *Id.* at *3-4.  Therefore, the Court concluded that their "conduct d[id] not fall within the conduct that Congress sought to affect by enacting [the FHA]."  *Id.* at *4.

Similarly, in *Garcia v. Brockway*, the plaintiff brought an FHA claim for failure to accommodate an individual with a disability.  The plaintiff named as defendants the architectural firm that designed the underlying apartment complex and the complex's developer and original

-4-

owner. 2004 WL 7334542, at *1. The developer "sold [the] final building [in the complex over

seven years before the plaintiff moved in] and [the plaintiff] allege[d] no involvement [by the

developer] since that date with the management, ownership, operation or maintenance of the

complex." *Id.* The architecture company similarly was not involved with the property, after

initially designing it. *See id.* The court granted summary judgment[2] to these two defendants,

holding that "the statutory duty to accommodate under [the FHA] would fall upon *the landlord*

*or current owner of the non-compliant dwelling*" and noting the utter lack of authority "for the

proposition that a former owner retains such liability." *Id.* at *8-9 (emphasis added).

Plaintiffs proclaim that "undersigned counsel was unable to find even one case where

defendants had even attempted the argument that lack of ownership of property was a shield to

FHA liability." Opp. at 14 (emphasis omitted). Plaintiffs apparently overlooked the cases cited

above, where courts dismissed or granted summary judgment on FHA claims ***because certain***

***defendants were not property owners or managers***. *See, e.g.*, *Hoostein*, 98 F. Supp. 3d at 297–

98; *Sunrise Dev. Inc.*, 2006 WL 626806, at *4; *Garcia*, 2004 WL 7334542, at *8. Plaintiffs also

ignore a decision of this Court dismissing non-owner defendants from a case alleging

discriminatory rent over-charges because those defendants were not the property owners and

therefore "d[id] not appear to have any relationship to the allegations." *Hardaway v. Equity*

---

[2] While *Garcia* dismissed the non-owner defendants at summary judgment, here the Arbor Defendants have pointed to conclusive evidence of their lack of ownership over the subject properties in public land records which the Court may appropriately consider on a motion to dismiss. *See* Arbor Defendants' Memorandum of Law in Support of Motion to Dismiss the Amended Complaint ("Brief" or "Arbor Br."), ECF No. 48, at 5 n.7. Further, because Plaintiffs do not contest in their Opposition that the Arbor Defendants are not the property owners, they concede the issue, and it is ripe for determination at the 12(b)(6) stage. *See, e.g.*, *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (holding that the plaintiff's "failure to respond to [a dispositive] argument [in a motion to dismiss] . . . abandon[s] [the] claim").

*Residential Servs., LLC*, No. DKC-13-0149, 2015 WL 858086, at *4 (D. Md. Feb. 26, 2015), *aff'd sub nom. Hardaway v. Equity Residential Mgmt. LLC*, 675 F. App'x 381 (4th Cir. 2017).  More importantly, Plaintiffs fail to consider that whether ownership is, or is not, a "shield to FHA liability" turns on the nature of the underlying allegations.  Where the underlying allegations do not cover conduct implicit in ownership or management of the underlying property (such as discriminatory lending practices), the scope of liability extends to a non-owner entity responsible for those practices.  *See, e.g.*, *Dekalb Cty. v. HSBC N. Am. Holdings Inc.*, No. 1:12-CV-03640-ELR, 2015 WL 8699229, at *8 (N.D. Ga. Nov. 16, 2015) (holding, where allegations related to alleged discriminatory lending practices, that a party who "contributed [] to the scheme, such as via . . . enacting and/or enforcing . . .  corporate [lending] policies and practices," could be liable under the FHA).  Where, as here, the underlying allegations relate directly to ownership and control of the properties, lack of ownership is a complete defense to the FHA claim.  *E.g.*, *Sunrise Dev.*, 2006 WL 626806, at *4; *Hardaway*, 2015 WL 858086, at *4.

Notably, Plaintiffs engage in extensive analysis in the Opposition of the underlying facts in *National Fair Housing Alliance v. Bank of America*, 401 F. Supp. 3d 619 (D. Md. 2019) (hereinafter, "*NFHA*") in support of their substantive FHA allegations.  *See* Opp. at 36-37. However, Plaintiffs conveniently ignore that *NFHA* illustrates the type of FHA allegations which may only be brought against defendants who own or control the underlying properties.  Plaintiffs note that the complaint in *NFHA* included allegations that Bank of America "allowed [] properties to deteriorate" and permitted "numerous objective routine maintenance and marketing deficiencies"—exactly the same type of allegations that Plaintiffs make against the Arbor Defendants.  Opp. at 36.  But *NFHA* dealt with "homes upon which Bank of America foreclosed and which the bank, in turn, was unable to sell at a foreclosure sale" in the wake of the financial

crisis—in other words, "**bank-owned** real estate properties."  *NFHA*, 401 F. Supp. 3d at 623-24 (emphasis added).  These claims were appropriately brought against Bank of America because the bank owned the underlying properties and was, therefore, responsible for maintenance and upkeep of those properties.  By contrast, as discussed *infra*, Plaintiffs do not dispute that the Arbor Defendants are *not* the owners of the BVS Properties, and accordingly do not have responsibility for maintenance, upkeep, and day-to-day conditions at the properties.

In the Opposition, Plaintiffs cite a laundry list of cases purporting to show that ownership of the underlying property is "not a prerequisite or a necessary element for an FHA violation." Opp. at 14-16.  But Plaintiffs' premise is incorrect:  It is certainly possible for parties other than the property owner to be liable for an FHA violation which does *not* stem from ownership or control of the underlying property, and the Arbor Defendants have never suggested otherwise. Plaintiffs' case-law citations establish at best that ownership or control need not be shown for *every* FHA violation.  But these cases do not establish that ownership or control need not be shown *here*, where, as discussed *infra*, Plaintiffs framed their claims by reference to ownership and control.

Plaintiffs' cases fall into three general categories, each of which is easily distinguished from the facts here.  First, Plaintiffs cite a number of cases permitting FHA claims to proceed against lenders for alleged discriminatory home-mortgage lending practices.  *See* Opp. at 14-16.[3] Where the substantive allegations are that a lender discriminated in making loans, and that such lending practices impacted housing rights granted by the FHA, then the lender is a proper

---

[3] Citing *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251 (D. Mass. 2008); *Adkins v. Morgan Stanley*, No. 12 CV 7667 HB, 2013 WL 3835198 (S.D.N.Y. July 25, 2013); *Montgomery Cty., Md. v. Bank of Am. Corp.*, 421 F. Supp. 3d 170 (D. Md. 2019); *Prince George's Cty., Md. v. Wells Fargo & Co.*, 397 F. Supp. 3d 752 (D. Md. 2019); *Saint-Jean v. Emigrant Mortg. Co.*, 50 F. Supp. 3d 300 (E.D.N.Y. 2014)).

defendant.  *Dekalb Cty.*, 2015 WL 8699229, at *8.  Plaintiffs' allegations here do not relate to

lending practices—Plaintiffs do not allege that the Arbor Defendants were engaged in the

business of making home loans to buyers and that such lending practices discriminated against

Plaintiffs, for example.  Therefore, the fact that a lender might be liable for an entirely different

set of allegations, also under the FHA, simply is inapposite.

Second, Plaintiffs refer to two cases where courts permitted claims against insurance

companies under the FHA for allegedly discriminatory home insurance underwriting practices.

*See id.*[4]  As with the mortgage lending cases, the fact that an insurance company may be liable

under the FHA for discriminatory practices *in insurance underwriting* which impacts access to

housing is irrelevant here, since such allegations are notably absent.  These cases have no

relevance to the scope of FHA liability outside of the insurance context and do not help Plaintiffs

avoid dismissal of their claims.

Finally, Plaintiffs invoke a line of FHA cases where the allegations involved the allegedly

discriminatory enforcement of local regulations.[5]  In not a single one of these cases did the

plaintiff allege that a non-owner defendant failed to renovate or maintain the underlying

property.  Rather, the cases stand for the proposition that, when a local government agency with

responsibility for the underlying properties either refuses to follow stated policies or applies its

rules in a discriminatory manner, homeowners may sue the government entity responsible for

that policy decision under the FHA.  *See, e.g.*, *Sw. Fair Hous.*, 17 F.4th at 965 (observing that,

---

[4] Citing *Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205 (9th Cir. 2010), *as amended* (Apr. 30, 2010); *Viens v. Am. Empire Surplus Lines Ins. Co.*, 113 F. Supp. 3d 555 (D. Conn. 2015).

[5] Citing *White v. City of Annapolis by & through City Council*, 439 F. Supp. 3d 522 (D. Md. 2020); *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950 (9th Cir. 2021); *Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493 (9th Cir. 2016); *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375 (3d Cir. 2011).

"as a direct result of [the district's policy], a disproportionate percentage of protected-group members were subject to an increased security deposit," giving rise to a claim under the FHA). In these cases, the public entity defendant was not an owner of the underlying property,[6] but rather the public authority responsible for enacting or enforcing the substantive policies challenged in the lawsuit.  These cases might theoretically help Plaintiffs, had they brought claims against local government entities, if those entities had implemented discriminatory rules or policies impacting the properties.  The decisions have no bearing whatsoever on claims against non-owner private entities with no regulatory oversight of the underlying properties, such as the Arbor Defendants.  At most, Plaintiffs plausibly allege a lending relationship with the BVS Properties that was extinguished in November 2013, which does not establish either ownership or control over the properties during the relevant period.  *See* Arbor Br. at 6–8.

Plaintiffs focus almost all of their Opposition on disputing that ownership is relevant to their FHA claims.  *See, e.g.*, Opp. at 13 (referring to "potential violators *of the Act*"); *id.* at 13-14 ("A property right is not a prerequisite or a necessary element *for an FHA violation claim*.") (emphases added).  Plaintiffs never address the argument, set forth in the Arbor Defendants' Brief, that their common law claims are similarly precluded because they fail to allege that the Arbor Defendants actually own or lease the underlying properties.  *See* Arbor Br. at 28-30.  This tacit admission is not surprising—indeed, it is axiomatic that a non-landlord cannot be liable for

---

[6] *White*, however, involved claims against the City of Annapolis related to properties owned by the Annapolis Housing Authority, or HACA.  439 F. Supp. 3d at 532.  HACA—though technically an independent legal entity—had entered into an explicit cooperation agreement with the city, providing that the city would "furnish[] to [HACA] and the tenants [of HACA properties] . . . public services and facilities."  *Id.* at 534.  The FHA claims involved the provision of these public services which the city had agreed to provide; namely, enforcement of city inspection and licensing requirements at HACA properties.  *Id.* at 533.  Here, there are no allegations that the Arbor Defendants agreed by contract to perform any services for the owners of the BVS Properties related to the allegations in the Amended Complaint; and, therefore, *White* is inapposite.

breach of landlord-tenant regulations, and that a non-lessor cannot be liable for breach of a lease agreement. *See* Arbor Br. at 28-29. As conceded in Plaintiffs' opposition, their common-law claims against the Arbor Defendants cannot proceed where Plaintiffs fail to plausibly allege that those defendants own or control the underlying properties.

### B. Plaintiffs' Claims Hinge on Ownership and Control, Yet Plaintiffs Fail to Meaningfully Respond to the Arbor Defendants' Showing That They Do Not Own or Control the Properties

The Amended Complaint presents exactly the type of claims where courts have required Plaintiffs to establish ownership or control in order to proceed. As shown by Plaintiffs' own allegations and arguments in their opposition brief, Plaintiffs allege that the Arbor Defendants engaged in misconduct inextricably tied to their purported ownership and control of the underlying properties referenced in the Amended Complaint. But, as shown in the Arbor Defendants' Brief, it is established as a matter of law that the Arbor Defendants ***do not own*** any of those underlying properties. *See* Arbor Br. at 5-9.[7] Plaintiffs have no response to this showing and thus necessarily concede that they have not pled ownership of the underlying properties which, due to the nature of their allegations, is required for their claims to survive.

A close examination of Plaintiffs' own allegations illustrates that they could only support claims against an entity with ownership or control of the properties. The opening paragraph of the Amended Complaint confirms that the claims are brought against all Defendants based on the allegation that they collectively "beneficially *own*[], *control*[], *and manage*[]" the BVS Properties. Am. Compl. ¶ 1 (emphasis added). Each of the "policies" described in the Amended Complaint—which are the basis for Plaintiffs' FHA and common-law claims against the Arbor

---

[7] *See also* ECF No. 46-1 ("Hyattsville Brief"), at 18 (explaining that Plaintiffs' own allegations and public land records establish that no Arbor Defendant has ever owned the seven HUD DC properties or the San Antonio property referenced in the Amended Complaint).

Defendants—similarly could be enacted and maintained *only* by an entity that owns or controls the underlying properties.  These are described as policies "applied equally across *Arbor's* approximately 139 properties nationwide"; in other words, these "policies" apply to the 139 properties that the Arbor Defendants purportedly *own*.  *Id.* ¶ 198 (emphasis added).  An examination of the allegations regarding each individual "policy" further confirms that the policies could only be employed at properties that the Arbor Defendants actually own or control:

- **Financialization Policy –** The Amended Complaint describes this policy as beginning with the "large scale purchasing of affordable housing by the Arbor Family." *Id.* ¶ 198. The policy itself relates to the manner in which these real estate "acquisitions" are "purchased and managed," and Plaintiffs allege that a central element of the policy is that "much needed renovations are not undertaken [and] rents are harvested." *Id.* The Amended Complaint is even more explicit about the required connection to ownership, stating that the pressure to maintain high occupancy leads "*[o]wners* of financialized properties such as the Arbor Family" to engage in the Financialization Policy. *Id.* ¶ 198(d) (emphasis added).  In describing the use of property as collateral for loans intended to improve other properties, the Amended Complaint explains that "[t]his is only possible when there is equity in the property" being collateralized. *Id.* ¶ 198(e).  In other words, this policy indubitably relies upon ownership.

- **Harvesting Policy –** Plaintiffs describe this policy as comprising a variety of actions alleged taken "by Arbor Family's leadership *related to each of its property investments*"—in other words, property that *Arbor* has purportedly acquired and owns. *Id.* ¶ 201 (emphasis added).  The policy entails decisions (allegedly by the Arbor Defendants) to increase or decrease tenant rent and to spend or withhold money for

building maintenance. *Id.* ¶ 203. Again, effectuating this policy explicitly relies upon ownership.

- **Divestment Policy** – According to Plaintiffs, the Divestment Policy "instructs that *the scheduling and funding of maintenance of Arbor's properties* should be based not on the condition of the property, but instead solely on the age and/or value of the property." *Id.* ¶ 209. The policy relates entirely to property maintenance and renovation decisions that could only be made by an entity that actually owns or controls the properties. *Id.* ¶¶ 209-211 (emphasis added).

- **Outsourcing Policy –** Similar to the "Divestment Policy," the Amended Complaint clarifies that the Outsourcing policy is based on the purported decision by the Arbor Defendants, as owners of the properties, to outsource "the management of [*their*] properties" to third parties so as to allegedly evade their "own duties to comply with statutory and common law obligations *that are placed on owners of real property*." *Id.* ¶¶ 215-216 (emphasis added).

If it were not already clear from the allegations in the Amended Complaint itself, Plaintiffs' Opposition confirms that the challenged policies all involve (and require) ownership or control of the underlying properties. In fact, Plaintiffs themselves agree that, more than anything else, "this case is about . . . *control*." Opp. at 18 (emphasis added). Plaintiffs go on to explain that the allegations against the Arbor Defendants are based on conduct they allegedly engaged in *as owners of the BVS Properties*: "That same Arbor Family purchased the BVS Properties . . . and then proceeded to invest practically nothing in maintaining – much less renovating – these 75-year-old properties, opting for a policy of neglect . . . ." *Id.* at 22. Plaintiffs reiterate that their FHA claims are based on allegations that *the Arbor Defendants*

"refused to renovate the BVS Properties," *id.* at 26 n.6, and "refuse[d] maintenance services to

the properties[.]" *Id.* at 38.[8]  Plaintiffs further confirm in their opposition that their claim for

breach of the implied warranty of habitability deals with an alleged "violation of a duty imposed

*upon an owner or manager of a property* by virtue of local ordinance." *Id.* at 44 (emphasis

altered).

    Plaintiffs' claims rise and fall with their misguided theory that the Arbor Defendants own

or control the underlying BVS Properties, yet Plaintiffs fail to even grapple with the

uncontroverted fact that they have pled neither ownership nor control.  As set forth in the Brief,

public land records (which the Court may properly consider at the motion to dismiss stage)

conclusively establish that the Arbor Defendants ***do not own*** the BVS Properties and ***never had***

***any equity interest in the properties***.  Arbor Br. at 13-16.  Rather, the ***only*** interest that any

Arbor Defendant ever held in the underlying properties was Arbor Realty SR's interest ***as a***

***lender***, which was terminated when the loans were paid in full in November 2013.  *See id.* at 13-

14.  Plaintiffs do not dispute the veracity of these records, but merely contend that the established

lack of ownership is irrelevant.[9]  Opp. at 13-17.  They are wrong.  And as discussed *infra*,

Plaintiffs have not come close to a factual showing of the type of control which might entitle

them to disregard the corporate form.  Plaintiffs' claims are inextricably tied to ownership or

---

[8]  Moreover, as set forth in the Hyattsville Brief, judicially-noticeable records conclusively disprove Plaintiffs' substantive allegations regarding upkeep of the BVS properties; to the contrary, the Prince George's County Department of Permitting, Inspection, and Enforcement *removed* the BVS properties from its list of distressed properties in 2018 and commended Bedford Station for "***substantial*** investment in capital improvements on the property."  *See* Hyattsville Brief at 9-10 (emphasis in original).  Plaintiffs do not dispute these facts in the Opposition.

[9]  Nor do plaintiffs dispute that, as set forth in the Brief, the Court may consider such public records on a motion to dismiss.  Arbor Br. at 5 n.7, 16.

control of the underlying properties.  Because Plaintiffs fail to plausibly allege such ownership or control (and cannot do so), their claims must be dismissed with prejudice.

### C. Plaintiffs Fail to Plausibly Allege Any Elements of Alter Ego Liability, Which They Must Do to Hold the Arbor Defendants Liable for Alleged Acts by the Property Owners

In an Opposition that stretches over nearly sixty pages, Plaintiffs fail to meaningfully respond to the Arbor Defendants' showing that they do not control the underlying properties. Plaintiffs devote only a single footnote to the issue.  Opp. at 16-17 n.4.  Rather than respond substantively to the Arbor Defendants' demonstration of how Plaintiffs' alter ego allegations are mere legal conclusions lacking plausible factual support, Plaintiffs assert that "no piercing of the corporate veil is necessary" because the policies were allegedly implemented by the Arbor Defendants as owners (notwithstanding conclusive, unrefuted evidence that the Arbor Defendants do not own the properties).  *Id.*  Alternatively, Plaintiffs suggest, alter ego liability can be "plainly inferred from the Complaint."  *Id.*  Tellingly, rather than provide any factual support for their veil-piercing allegations, Plaintiffs merely parrot a list of legal elements of alter ego liability without factual, nonconclusory allegations demonstrating how those elements have been met here.  Opp. at 16 n.4.  By declining to point to any factual support that might make their control allegations plausible, Plaintiffs demonstrate that they have failed to properly plead control via alter ego liability.  *See, e.g.*, *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015) (affirming dismissal at 12(b)(6) stage, where allegations were insufficient to support alter ego theory because they were "only [] legal conclusion[s]").

Plaintiffs are also simply incorrect that alter ego liability can be adjudicated only "after discovery is complete."  Opp. at 17 n.4.  Rather, courts frequently reject veil-piercing claims at the motion to dismiss stage when the plaintiff fails to plausibly allege "*facts* suggesting the kind of unity of interests that [would] permit[] them to advance an alter ego theory."  *SD3, LLC.*, 801

F.3d at 423.  Moreover, the corporate form is typically accorded "an extraordinary measure of deference" and a plaintiff seeking to disregard it faces a "herculean" task.  *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 553-54 (D. Md. 2011).  Plaintiffs here make no serious attempt to plausibly allege facts that would permit them to take the extraordinary step of piercing the corporate veil to hold the Arbor Defendants liable for actions by the actual owners of the BVS Properties.

Further, while representatives engaged by a property owner to oversee the property are within the class of persons subject to the provisions of the FHA, the FHA only "imposes liability [on such parties] in accordance with traditional agency principles."  *Hardaway*, 2015 WL 858086, at *4 n.2.  In *Meyer v. Holley*, for example, the Supreme Court overturned an appellate decision that would have extended FHA liability to individuals who "were not at all involved in the discrimination itself and even in the absence of any traditional agent/principal or employee/employer relationship" between the named defendant and the discriminating party. 537 U.S. 280, 284 (2003).  The Court **rejected** the argument that the overriding objectives of the FHA warrant expanded liability, and rather held that courts must determine FHA liability "in accordance with traditional principles of vicarious liability"—which, in the case of a corporation, means that an FHA plaintiff must show all elements of corporate veil-piercing in order for "liability [to] be imputed to the corporation's owner."  *See id.* at 290-92.

Here, Plaintiffs rely solely on a laundry list of legal conclusions citing the elements of corporate veil-piercing.  Opp. at 16 n.4.  As discussed in the Brief, such conclusory statements are insufficient to sustain the application of the doctrine at the motion to dismiss stage.  Arbor Br. at 16-24; *see also SD3, LLC*, 801 F.3d at 423.  While Plaintiffs attempt to distract the court from this fundamental omission with grandiloquent prose and faux outrage, they repeatedly

commit the fatal error of proclaiming what they believe the law must be, rather than what the law is and how courts have actually applied the FHA in similar circumstances.  Plaintiffs' unsupported, fanciful speculation about how the Arbor Defendants *may* have been involved with the underlying properties ***does not obviate*** their burden.  They must support their alter ego theory with plausible factual allegations before the Court may, as a matter of law, take the extraordinary step of disregarding the corporate form to hold these non-owner defendants liable under the FHA.  *See Meyer*, 537 U.S. at 292 (confirming that vicarious liability under the FHA would require showing all elements of veil-piercing under state law).

In the absence of an agency relationship or a *prima facie* showing that alter ego liability would be appropriate, courts dismiss claims against defendants who do not control the individuals or entities accused of substantive statutory violations.  *See, e.g.*, *Hardaway*, 2015 WL 858086, at *4 & n.1 (dismissing "named defendants [who did] not appear to have any relationship to the allegations in the [] complaint" as "not proper parties" because they did own or manage the property at issue); *see also Gianfredi v. Hilton Hotels Corp.*, Civ. Act. No. 08-5413 (PGS), 2010 WL 1381900, at *8 (D.N.J. Apr. 5, 2010), *report and recommendation adopted*, Civ. Act. No. 08-5413 (PGS), 2010 WL 1655635 (D.N.J. Apr. 22, 2010) (dismissing negligence claims against corporate parent of hotel where "there [wa]s no mention of [] an ownership interest in the Hotel to give rise to [the corporate parent's] duty to Plaintiffs").  Plaintiffs have not even approached the showing necessary to survive a motion to dismiss on their alter ego claims, and therefore the Arbor Defendants are not liable for the purported acts of the property owners.

## II.    The Amended Complaint Improperly Groups Defendants Together

The Arbor Defendants' Brief established that Plaintiffs' shotgun pleading tactics violate Rule 8.  *See* Arbor Br. at 24-30.  Instead of providing each Defendant fair notice by delineating

its particular alleged acts, Plaintiffs paint indeterminate and internally contradictory assertions with a broad brush against collective groups of their own fabrication. *Id.*  This they may not do, and the Amended Complaint must therefore be dismissed. *SD3,* LLC, 801 F.3d at 422 (The "complaint must forecast [a] factual showing [that each defendant is plausibly liable], and if it fails to allege particular facts against a particular defendant, then the defendant must be dismissed").

Nothing in Plaintiffs' Opposition compels a contrary conclusion.  The Opposition leans on case law standing for the general proposition that collective pleading may be appropriate in certain narrow circumstances that are not present here.  Opp. at 57-59.  Plaintiffs rely on *In re Riddell Concussion Reduction Litigation,* 77 F. Supp. 3d 422, 431-32 (D.N.J. 2015), where collective pleading was allowed to proceed where claims of deceptive marketing were brought against "related entities, operating under a single brand," were "all owned by the [same]private equity firm," and were "represented by the same counsel, accepted service as a single entity, and all joined in the instant motion to dismiss." *Id.*  Further, the defendants in that case did not dispute their interrelatedness or that each had played a role in the complained-of conduct. *Id.* None of those facts are present here.  In fact, *In re Riddell* explicitly supports dismissal of the Amended Complaint:  The court observed that group pleading would not be appropriate where (like here) a complaint "involve[s] ***civil rights claims which require identification of each defendant's individual role*** to adequately defend and determine liability" or (also like here)

-17-

"blanket assertions against numerous defendants *who could not have acted in concert in the conduct alleged*." *Id.* at 432 (emphases added).[10]

Further, Plaintiffs' claims fail even under the standard set forth in their cited authority (Opp. at 58), that it must be "possible to determine from the Amended Complaint the alleged misconduct of *each defendant*." *See In re Riddell*, 77 F. Supp. 3d at 431 (emphasis added); *see also Frazier v. U.S. Bank, N.A.*, No. 118775, 2013 WL 1337263, at *3 (N.D. Ill. Mar. 29, 2013) (collective pleading appropriate where plaintiff provided "sufficient factual detail about the nature of his allegations and about *each Defendant* to provide fair notice of his claims" (emphasis added)); *Sprint Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014) ("Collective references to defendants most often create problems when broad allegations are directed at a large and diverse group of defendants, leaving unclear just who is alleged to have committed which acts.").

Ultimately, Plaintiffs' task is to demonstrate how their claims meet the pleading standard, and they have failed to do so.  In a single sentence of their 60-page Opposition, Plaintiffs assert without any explanation whatsoever that they have "stated with more than sufficient detail the

---

[10] Plaintiffs fare no better with their reliance on *Chevron U.S.A., Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 815 n.1 (D. Md. 2015), which held that collective treatment does not "necessarily violate[]" Rule 8 "where the complaint alerts defendants that identical claims are asserted against each defendant."  However, the *Chevron* court actually *dismissed* claims against a named defendant because the complaint did not contain sufficient factual detail about how the dismissed defendant was involved in the underlying allegations, but rather only "ma[d]e the conclusory allegation that [the defendant] own[ed] the [subject] Pipeline." *Id.* at 815.  This is the *exact flaw* of the Amended Complaint here as to the Arbor Defendants—and nothing in *Chevron* exempts Plaintiffs from the requirement to "provide[] sufficient factual detail . . . about each defendant." *Id.* at 815 n.1 (quoting *Frazier v. U.S. Bank Nat'l Ass'n*, No. 11-8775, 2013 WL 1337263, at *3 (N.D. Ill. Mar. 29, 2013)).  Plaintiffs have failed to delineate conduct by providing factual detail as to each Defendant's involvement, and it is clear from the face of the Amended Complaint that the same allegations cannot possibly—much less plausibly—apply to all Defendants.  *See* Arbor Br. at 28-30.

roles that each individual Defendant plays." Opp. at 58 (citing Am. Compl. ¶¶ 27-34). But the seven cited paragraphs (out of 332), which list the seven defendants, are virtually the only place in the Amended Complaint where any Defendant receives any individual treatment at all. *Id.* The vast majority of the Amended Complaint, including Plaintiffs' core allegations of purported policies, lumps together unrelated entities and provides no notice of what each one supposedly did. Arbor Br. at 26-28. Plaintiffs' brief allusion to their *alter ego* allegations cannot save their claims—as explained *supra*, those allegations fall far short of the pleading standard. *See also* Arbor Br. at 16-24.

## CONCLUSION

For all the reasons given above and all of the reasons set forth in the reply memorandum submitted by the Hyattsville Defendants, which is incorporated herein by reference, the Amended Complaint should be dismissed in its entirety with prejudice.


Dated:  April 25, 2022                            Respectfully submitted,


By: ___ /s/ *Ray D. McKenzie* _____
Ray D. McKenzie (Bar No. 21069)
WTAII PLLC
1600 Wilson Blvd., Suite 201
Arlington, VA 22209
Telephone (202) 688-3150
ray.mckenzie@wtaii.com

Peter W. Tomlinson (*pro hac vice*)
Muhammad U. Faridi (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone (212) 336-2000
Facsimile (212) 336-2222
pwtomlinson@pbwt.com
mfaridi@pbwt.com

*Attorneys for Defendants Arbor Realty
Trust, Inc.; Arbor Realty Limited
Partnership; and Arbor Realty SR, Inc.*