IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CASA DE MARYLAND, INC., et al. ) ) ) Plaintiffs, ) ) v. ) ) ARBOR REALTY TRUST, INC. ) et al. ) | Case No. 8:21-cv-01778-CBD  JURY TRIAL DEMANDED |

Defendants.

**DEFENDANT REALTY MANAGEMENT SERVICES, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

AND NOW, comes Defendant Realty Management Services, Inc., ("Defendant" or "RMS") by and through its counsel, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., and hereby files its Reply in Support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("FAC"). In support of its Reply, RMS states as follows:

I.   **PRELIMINARY STATEMENT**

Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss fails to adequately address even the most glaring deficiencies apparent on the face of the FAC. Notwithstanding their liberal use of inflammatory language and colorful analogies to distract from their deficient pleading, Plaintiffs' 60 pages of writing

does not rescue their complaint. Plaintiffs fail to address many arguments in RMS's Motion to Dismiss. What's more, they fail to illustrate or describe RMS' alleged action or inaction in a way that would come anywhere near the level required by the applicable law. In fact, in some instances, Plaintiffs' response actually furthers RMS's dispositive arguments. Despite scores of pages of briefing and two complaints, Plaintiffs have failed to provide any compelling - or even particularly persuasive - legal or factual arguments to survive initial dispositive motions. Plaintiffs' claims as to RMS must be dismissed.

## II.  ARGUMENT

### A. Plaintiffs Make No Attempt to Even Discuss *Rooker Feldman*

Count I of the FAC would hold RMS liable under Section 804(a) of the FHA for evictions which were allegedly motivated by the race or nationality of the tenant. [Doc. 43, ¶¶ 63, 149, 151, 267-272]  RMS properly moved to dismiss the allegations under *Rooker-Feldman*.1  By asserting the claims in Count I, Plaintiffs would have this Court revisit the valid state-court rulings authorizing the evictions. *Id.*  In their responsive brief, Plaintiffs fail to provide this Court with <u>any</u> argument or explanation for why the claims should not be dismissed under *Rooker-Feldman*. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923) and *District of Columbia*

---

1 In addition, Count I of the FAC is devoid of allegations relating to any conduct undertaken by RMS which would violate Section 804(a).

*Court of Appeal v. Feldman,* 460 U.S. 462, 482 (1983) (collectively disallowing federal courts from considering claims that are "inextricably intertwined" with prior state court determinations).

In their Opposition, Plaintiffs dismissively note that

> [RMS] never – as the law requires – offer[s] an explanation for their inexplicable deviation from commonsense standards of even a minimally competent property manager. Instead, they seize upon only one of the many allegations against them and argue Plaintiffs cannot collaterally attack evictions carried out in accordance with Maryland law.

[Doc. 53, pg. 23]. Hoping to look past RMS's dispositive argument, Plaintiffs attempt to distract the Court by generally noting "many [other] allegations." Undeniably, however, the role of RMS as agent for the owner in tenant evictions is central to the Plaintiffs' claims of a discriminatory policy. *See* [Doc. 43, ¶ 63] (stating "the model relies heavily on rapid evictions of delinquent tenants and replacement with new tenants"). Plaintiffs fail to identify a single example of an eviction based on grounds other than cause. More specifically, they fail to allege that any residents complaining about poor conditions or unperformed repairs were issued non-renewal notices resulting in evictions. Instead, as Plaintiffs fully understand, resident evictions were based on resident conduct (including non-payment of rent and resident lease defaults) and each and every eviction was judicially authorized (after opportunity for each resident to appear in court and contest the landlord's claims) and carried out by the state court's authorized agent,

the sheriff of Prince George's County. Plaintiffs' opposition to RMS's motion fails to address how such evictions could not be exactly what the court in *Rooker-Feldman* anticipated. Thus, any alleged liability directed at RMS for "improper" evictions" must be dismissed.

> B. Plaintiffs' Argument in Support of Their Claim for Breach of the Implied Warranty of Habitability is Unavailaing, as it Rests Upon a Misconstruction of the Applicable Law

Plaintiffs next argue that "RMS cannot escape liability for breach of the implied warranty of habitability because when the cause of action is pled as a violation of a local code, the action sounds in tort and negligence principles apply." [Doc. 53, pg. 47]. Plaintiffs cite the *Richwind* case for the proposition that a management company can be held liable under this theory. *Id. Richwind v. Brunson*, 335 Md. 661 (Md. 1994) (concerning Baltimore City Code, not Prince George's County Local Code). Plaintiffs' argument is unavailing not only because *Richwind* is inapposite, but also because they completely miss the mark on the dispositive argument elaborated in RMS's Motion to Dismiss.

As is evident from Plaintiffs' discussion in their Opposition, the complaint in *Richwind* was based in negligence2*, Richwind,* 335 Md. at 669, a cause of action which is *not* asserted against any defendant in the FAC. *Id.* Likewise, *Benik v.*

---

2 The Complaint in *Richwind* also included a nuisance claim, and a count under the Maryland Consumer Protection Act (MCPA).

*Hatcher,* 358 Md. 507 (2000), also cited by Plaintiffs to support their position, involved negligence and MCPA claims. See *Benik,* 358 Md. at 513. In both *Richwind* and *Benik,* the court found that violation of a local code, specifically the Baltimore City Code, could give rise to a cause of action for negligence.

It just so happens that the provision of the Baltimore City Code at issue in both *Richwind* and *Benik,* Baltimore City Code of Public Local Laws (1980), §9-14.1, expressly provides that all residential lease agreements are deemed to include a warranty of habitability. It does not follow that violation of *any* local code provision, no matter its subject or content, gives rise to a stand-alone claim for the implied warranty of habitability. Plaintiffs' insistence otherwise is an unsupported leap of faith, and is entirely without merit.

Any fair reading of the FAC will show that Plaintiffs have utterly failed to identify any specific ordinance that was allegedly violated by RMS or its principal, let alone an ordinance which reads a warranty of habitability into their leases. The Plaintiffs' Complaint makes vague reference to "Prince George's County Local Code," ("PGCC") [Doc. 43, ¶ 274], but points to no actual provision of the PGCC that would authorize a private cause of action for any of the conditions alleged.

Plaintiffs have made no attempt to cure this apparent deficiency, which was specifically raised in RMS's motion. For these reasons and for the additional

arguments in the Motion to Dismiss, Plaintiffs' stand-alone cause of action for the implied warranty of habitability must be dismissed as a matter of law.

### C. Plaintiffs' Argument that Their Contract Claim Against RMS is Viable Relies Upon a Misinterpretation of Maryland Agency Law, and is Without Merit

As the agent of a disclosed principal, RMS cannot be held liable to Plaintiffs for breach of contract as a matter of well-settled Maryland agency law. Plaintiffs desperately attempt to salvage their contract claim against RMS by claiming that it is an agent for a "partially disclosed principal" and thus, to avoid liability must "seasonably disclose the identity of [its] principal." [Doc. 53, pg. 48 (citing *Crosse v. Callis*, 263 Md. 65, 73 (Md. 1971)). Their leases, Plaintiffs argue, contain "boilerplate language of a partially disclosed principal." *Id.* ("Realty Management Services, Inc., as agent for the owner of the improved residential real estate known as Bedford and Victoria Station"). Plaintiffs also assert that the fact that the identity of the principal "was able to be discovered after legal research into court and property documents" is immaterial and that, if RMS's argument was accepted, "all any agent to a partially disclosed principal ever has to do is disclose the principal after litigation commences." *Id.*

Plaintiffs' position rests upon *Crosse v. Callis, supra*, and its reliance on the Restatement (Second) of Agency's definition of a partially disclosed principal as being one of whose identity the third party has no *notice,* even though the third party

has notice that the agent is acting for a principal. *Crosse,* 263 Md. at 72 (*quoting* Restatement (Second) of Agency §4(2) (1958)).3  Plaintiffs urge the court to conclude from this that, because the leases do not identify the owners of the properties by name, they had no notice of the identity of RMS's principal. But even a cursory evaluation of the language of the Restatement reveals that Plaintiffs conflate "notice" with actual knowledge in order to reach the conclusion that BVS are partially disclosed principals. This is a gross misinterpretation of the concept of the term "notice."

In fact, actual knowledge is one of several conditions which could constitute notice, but it is not the only one. Under Maryland law, a person has notice of a fact or condition if that person has reason to know about it, knows about a related fact, or is considered as having been able to ascertain it by checking an official filing or recording. *Prince George's County Dep't of Soc. Svcs. v. Knight,* 158 Md. App. 130 (2004), *quoting* BLACK'S LAW DICTIONARY, SEVENTH EDITION, 1999 (*internal quotations omitted*).

As Plaintiffs acknowledge, RMS is merely an agent for Bedford United, LLC and Victoria United LLC (together, the "BVS Owners") that performed building management services. *See* ECF 43-1, ¶ 34. The leases state RMS is an agent for the

---

3 "If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal."

owners of the properties, not merely an agent for another. *Hill v. Cty. Concrete Co.,* 108 Md. App. 527, 532, 672 A.2d 667 (1996); *Curtis G. Testerman Co. v. Buck,* 340 Md. 569, 667 A.2d 649 (1995). Clearly, at an absolute minimum Plaintiffs' leases provided them with enough information relating to the identity of the property owners to enable them to ascertain that identity from public records. This, under Maryland law, is notice of the principal's identity such that RMS was a fully disclosed principal.

Further, even if the agency relationship is not obvious on the face of an agreement, so long as there were "reasonable grounds" for the contracting party to believe they were contracting with an agent acting for a principal, then the agent is not liable. *Syriani v. Gebhart,* 195 Md. 69, 79, 72 A.2d 766 (1950). "Reasonable grounds" include the ability of the contracting party to inquire or otherwise perform due diligence as to the identity of the principal. *Id.* When an agent is partially disclosed, the agent can also avoid liability through "seasonable disclosure" of the principal's identity. *Crosse*, 282 A.2d at 90. Consequently, in order to have sufficiently stated a claim for agency liability against RMS, Plaintiffs must have alleged that no such disclosure was made and/or the actual disclosures made to them, the substance of any such disclosure(s), and an identification of what efforts, if any, they made to uncover the identity of the principal based on the "partial disclosures" they acknowledge receiving. There is no competent allegation in the Complaint to

support liability for breach of contract against RMS, a fully disclosed property manager, for a lease agreement between Plaintiffs and the BVS Owners. The process followed by RMS in the disclosed lease agreements appropriately shields them from liability as a matter of law.

    D.    <u>Plaintiffs Fail in Their Attempt to Cast Themselves as Third-Party Beneficiaries of the Management Agreement</u>

Citing *Lovell Land, Inc. v. State Highway Administration,* 408 Md. 242 (2009), Plaintiffs next argue that Maryland courts now "generally recognize the right of a third-party beneficiary to sue on a contract made expressly for the benefit of either a donee beneficiary or a creditor beneficiary." *Lovell Land, Inc.,* 408 Md. at 260, *citing Mackubin v. Curtiss-Wright Corp.,* 190 Md. 52 (1948). While this may be so as a general principle, it is equally true that the law sets the bar for a third-party to establish itself as a beneficiary far higher than Plaintiffs' allegations reach.

"[B]efore a stranger to a contract can avail himself of the exceptional privilege of suing for a breach thereof, he must at least show that it was *intended* for his direct benefit." *Id* at 261, *quoting Mackubin,* 190 Md. at 56, 57 (emphasis added) (quotations in original). "It is not enough that the contract may operate to his benefit. *It must clearly appear that the parties intend to recognize him as the primary party in interest and as privy to the promise." Id,* quoting *Mackubin* at 58. (emphasis in original). As with any other contract, the intention of the parties, as stated by the

unambiguous language of the contract, controls. *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II,* 376 Md. 157 (2003).

As discussed at length in RMS's Opening Brief, it is clear on the face of the Property Management Agreements that the individual Plaintiffs are not intended beneficiaries. (ECF 40 at pp. 18-23)  In fact, the agreement expressly states this. (Id at pp. 21-22.)   Even though they may derive incidental benefits from the Agreements, and even though those benefits may be substantial, the Property Management Agreement clearly does not support the Individual Plaintiffs' claim to be intended beneficiaries.4

### E.   Plaintiffs' Response Clearly Demonstrates that RMS' Purported FHA Liability Is Legally Deficient

Lastly, it must be emphasized that RMS' alleged actions do not rise to the level of an FHA violation.  By necessity, Plaintiffs begin their 60-page brief by reminding the Court of the FHA's broad purpose.  They now attempt to argue that RMS was "an active, willing participant in implementing policies." [ECF 53, p. 4].  Noticeably lacking, however, is any allegation of intent on the part of RMS.  Neither is there any mention of RMS specifically contributing to or participating in any conduct in violation of the FHA.  (Plaintiffs' reliance upon the evictions which

---

4 Plaintiffs concede that Casa de Maryland, Inc. is not a third-party beneficiary of the Management Agreements, *see* ECF 53 at p. 50.

occurred at the two properties cannot, as alleged, form the basis of a FHA given *Rooker- Feldman.*)  Perhaps most importantly, there is no identified, described or challenged policy, let alone a policy that had a disparate impact.  *See Reyes v. Waples Mobile Home Park Ltd. P'ship,* 903 F.3d 415, 424 (4th Cir. 2018) (emphasis added).

As to RMS, Plaintiffs only make the vague allegation that it provided "assistance" in "forc[ing] tenants into eviction despite the uninhabitability of their housing." *See* [Doc. 43-1, ¶ 276].  Plaintiffs' response to RMS's Motion does nothing to cure these fatal deficiencies.

## CONCLUSION

For the foregoing reasons, RMS respectfully requests this Court dismiss all claims against it with prejudice.

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

*/s/ Megan T. Mantzavinos*
Megan T. Mantzavinos, Esquire (Bar #: 16416)
mmantzavinos@moodklaw.com
600 Baltimore Avenue, #305
Towson, Maryland  21204
(410) 339-6880
*Attorney for Defendant, Realty Management Services, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of April, 2022, a copy of Defendant Realty Management Services, Inc.'s Opening Brief In Support Of Motion To Dismiss Plaintiffs' Class Action Complaint was electronically filed and served upon all counsel of record via CM/ECF.

> */s/ Megan T. Mantzavinos*
> Megan T. Mantzavinos, Esquire