## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF MARYLAND

CASA DE MARYLAND, INC., et al,
      Plaintiffs

          v.

ARBOR REALTY TRUST, INC., et al,
      Defendants.

\*                                   
\*             Civil Action No. 8:21-cv-01778-DKC
\*
\*

****** 

## REPLY IN SUPPORT OF HYATTSVILLE DEFENDANTS'
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

**BUCKLEY LLP**

Benjamin B. Klubes (Bar Number 08085)
Amanda R. Lawrence (*pro hac vice*)
**BUCKLEY LLP**
2001 M Street NW, Suite 500
Washington, D.C.  20036
(202) 349-8000 (Telephone)
(202) 349-8080 (Facsimile)
bklubes@buckleyfirm.com
alawrence@buckleyfirm.com

Dated: April 25, 2022

## **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................. 3

I.   THE FAC FAILS TO STATE A CLAIM UNDER THE FHA. ................................. 3

   A.   Plaintiffs Still Fail to Allege that the Hyattsville Defendants Own or Control Any

   Properties Other than BVS. ....................................................................................... 3

   B.   Plaintiffs Do Not Plead a Prima Facie Case of Disparate Impact. ................................... 4

      1.   Plaintiffs Do Not Sufficiently or Plausibly Allege Nationwide Policies. .................. 4

      2.   Plaintiffs Do Not Establish Causation. ....................................................... 7

   C.   Plaintiffs Do Not Plead a Prima Facie Case of Intentional Discrimination. .................. 11

   D.   Plaintiffs Fail to Allege Perpetuation of Segregation and Racial Interference

   Claims……. ........................................................................................................... 13

II.   PLAINTIFFS' CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ......................... 15

III.   PLAINTIFFS MAY NOT RELY ON GROUP PLEADING OR VEIL PIERCING. ............. 16

IV.   PLAINTIFFS' BREACH OF CONTRACT CLAIMS CANNOT PROCEED. ..................... 17

V.   CASA FAILS TO REBUT ITS LACK OF STANDING. ......................................... 19

VI.   PLAINTIFFS FAIL TO REBUT THAT THEY SEEK TIME BARRED DAMAGES .......... 20

CONCLUSION. .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................7

*Betsey v. Turtle Creek Assocs.*,
736 F.2d 983 (4th Cir. 1984) ..................................................................................9

*Brown v. Dermer*,
357 Md. 344 (2000) ...............................................................................................18

*Butler v. Sundo Capital, LLC*,
2:20-cv-1607-NR, 2021 WL 4134034 (W.D. Pa. Sept. 10, 2021) ...........................8

*Casa de Maryland v. U.S. Dep't of Homeland Sec.*,
284 F. Supp. 3d 758 (D. Md. 2018)........................................................................20

*Edwards v. Johnston Cnty. Health Dep't*,
885 F.2d 1215 (4th Cir. 1989) .................................................................................9

*Ellis v. City of Minneapolis*,
860 F.3d 1106 (8th Cir. 2017) .................................................................................6

*Ferdinand-Davenport v. Children's Guild*,
742 F. Supp. 2d 772 (D. Md. 2010) .......................................................................17

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977)...............................................................................................11

*Nat'l Fair Hous. All. v. Bank of Am.*, *N.A.*,
401 F. Supp. 3d 619 (D. Md. 2019).................................................................*passim*

*North Carolina State Conference of NAACP v. McCrory*,
831 F.3d 204 (4th Cir. 2016) .................................................................................10

*Prince George's Cnty., Md. v. Wells Fargo & Co.*,
397 F. Supp. 3d 752 (D. Md. 2019).......................................................................14

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
903 F.3d 415 (4th Cir. 2018) ..............................................................................5, 7

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) .................................................................................17

*Smith v. City of Jackson*,
  544 U.S. 228 (2005)..................................................................................................5

*Southern Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*,
  713 F.3d 175 (4th Cir. 2013) ...............................................................................15

*State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*,
  381 F. Supp. 3d 536 (D. Md. 2019)................................................................3, 7, 16

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977)......................................................................................10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 8.................................................................................................10, 16

Fed. R. Civ. P. 12....................................................................................................3

Prince George's County Code of Ordinances § 13-138.......................................18

Prince George's County Code of Ordinances § 13-153.......................................18

Prince George's County Open Data Portal,
  https://data.princegeorgescountymd.gov (data last updated as of Aug. 23,
  2021, last visited April 20, 2022)......................................................................14

As detailed in the Hyattsville Defendants' Motion to Dismiss the First Amended Complaint and Memorandum in Support (ECF No. 46) (the "Motion"),[1] the FAC engages in indiscriminate group pleading and fails to state plausible FHA or common law claims.  Instead of addressing the Hyattsville Defendants' arguments on the merits, Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss (ECF No. 53) (the "Opposition") resorts to caustic rhetoric,[2] manufactures strawman arguments, denies the FAC's plain language, fails to sufficiently identify any policy causing a disparate impact on BVS tenants, and doubles down on treating the "Arbor Related Defendants" as one and the same.  Plaintiffs fail to rebut the arguments raised in the Motion which establish that the FAC is deficient, and it cannot be remedied with further amendment.

The Opposition devotes 15 pages to the uncontroversial proposition that ownership is not required for liability under the FHA.  But that is not the Hyattsville Defendants' argument.  Our argument is that where, as here, nationwide claims are based on alleged policies with respect to certain properties, the FAC must plausibly allege that the Defendants control those policies. Because it is an undisputed, judicially-noticeable fact that the Hyattsville Defendants do not own any of the properties cited in the FAC (other than Bedford and Victoria United's ownership of BVS), the FAC must plausibly assert their ability to control the policies that pertain to the properties.[3]  The FAC is fatally flawed because it relies only on legal conclusions—and fails to plausibly allege facts demonstrating that the Hyattsville Defendants control all the properties and policies at issue.

---

[1] Defined terms have the same meaning as in the Motion.

[2] The Opposition intersperses accusations of intentional misrepresentation with personal attacks on opposing counsel and Defendants. *See, e.g.,* Opp. at 3, 14, 27, 34.  These accusations are plainly untrue, and such rhetoric is not necessary or helpful in resolving the issues before the Court.

[3] The Hyattsville Defendants incorporate the replies filed by (i) the Arbor Defendants (hereinafter the "Arbor Defs' Reply"); and (ii) RMS.

Instead, the FAC's theory of liability requires impermissibly blurring valid corporate distinctions.  As the Motion makes clear, the FAC's group pleading fails to give each Defendant notice of the claims against it, and its conclusory allegations of control among the Defendants fail to demonstrate that the corporate veil should be pierced.  Absent fraud or corporate wrongdoing— which Plaintiffs do not and cannot allege—no Defendant is collectively presumed to own or control all of the cited properties, or to implement all policies, nationwide.  This is particularly so where, as here, undisputed, judicially-noticeable facts demonstrate that no Hyattsville Defendant has the legal authority to make any decisions at such properties.  *See* Mot. at 17–18.

The Opposition confirms that Plaintiffs seek to second-guess individualized business decisions to construct, renovate, and maintain multifamily apartment buildings.  Specifically, Plaintiffs are asking the Court to find that threadbare allegations supposedly showing a statistical disparity regarding only three properties—two in Prince George's County and one in San Antonio—state nationwide claims under the FHA for disparate impact, disparate treatment, perpetuation of segregation, and racial interference.  They do not.  Plaintiffs cannot move this litigation into nationwide discovery based on speculative and implausible allegations.  *See* Opp. at 30 n.7 ("Never fear however, Plaintiffs will happily provide the addresses of [the purported nationwide] properties once this case has reached its discovery phase.").  The FAC attempts to transform a simple landlord-tenant case into a sweeping nationwide discrimination matter.  Those breach of contract (and related) allegations should be dismissed for failure to state a claim and because, as to CASA, for lack of standing, and because the claims are time barred.  As Plaintiffs have failed to remedy the deficiencies in their original pleading, further amendment would be futile and the FAC should be dismissed with prejudice.

2

**ARGUMENT**

**I.  THE FAC FAILS TO STATE A CLAIM UNDER THE FHA.**

The FAC fails to state an FHA claim because it does not plausibly allege that Plaintiffs suffered discrimination through disparate impact or discriminatory intent.  First, the FAC's allegations that the Hyattsville Defendants control other properties are unsupported and not plausible.  Second, the Opposition's attempt to allege the existence of nationwide policies or discriminatory impact based solely on cherry-picked statistics relating to a small number of properties is unavailing.  Plaintiffs do not plausibly plead a causal connection between those "policies" and any purported FHA violation.  Further, the Opposition misstates the legal standard for alleging discriminatory treatment and, even under Plaintiffs' mistakenly-low bar, the FAC is deficient.  The FAC's allegations also do not state claims for perpetuation of segregation or interference as a matter of law.

**A.**    **Plaintiffs Still Fail to Allege that the Hyattsville Defendants Own or Control Any Properties Other than BVS.**

Plaintiffs fail to plausibly allege that any Hyattsville Defendant owns or controls property other than BVS—or that there is any basis for collective liability.  Therefore, Plaintiffs cannot establish that any Hyattsville Defendant is liable for nationwide discrimination under the FHA. Judicially-noticeable facts establish that (i) neither AMAC[4] nor Hyattsville United owns BVS, (ii)

---

[4] The Opposition makes much of the fact that AMAC is represented by different counsel than the Arbor Defendants.  Opp. at 1 n.1.  But, of course, AMAC is not a subsidiary of Arbor Realty Trust and therefore it is no surprise that it has different counsel.  *See* ECF No. 31 (AMAC's corporate disclosure statement certifying that "AMAC is not an affiliate or parent of any corporation"); *see also* ECF Nos. 37–39 (Arbor Defendants' corporate disclosure statements not listing AMAC as a subsidiary); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 572 (D. Md. 2019) (taking judicial notice of defendants' corporate disclosure statements on Rule 12(b)(6) motion).

3

no Hyattsville Defendant owns the San Antonio or Chinatown Properties or the 7 properties in the HUD DC Market, and (iii) Bedford United and Victoria United own *only* BVS.  Mot. at 17–18.

The Opposition catalogues numerous cases where FHA claims were allowed to proceed, even though the defendant was not the owner of the underlying property.  Opp. at 14–16.  But the Hyattsville Defendants are not arguing that only owners may be liable under the FHA.  Rather, Plaintiffs' allegations of a purported nationwide policy necessarily require that the Hyattsville Defendants own or control the nationwide properties at issue.[5]  The FAC alleges only legal conclusions of such control, which cannot be reconciled with its contradictory assertions that Bedford United, Victoria United, and Hyattsville United are "single purpose shell companies" whose sole purpose is to manage BVS.  FAC ¶¶ 31–33.  Therefore, Plaintiffs cannot maintain FHA claims against the Hyattsville Defendants.

**B.** **Plaintiffs Do Not Plead a Prima Facie Case of Disparate Impact.**

1. Plaintiffs Do Not Sufficiently or Plausibly Allege Nationwide Policies.

The FAC's disparate impact claim is based on the alleged existence of four "nationwide policies" that are "applied equally across Arbor's approximately 139 properties nationwide."[6] FAC ¶¶ 198, 201, 209, 215; Opp. at 29, 36 ("Plaintiffs have alleged the nationwide policies of the Arbor Family have had a disparate impact on the homes of the BVS Tenants[.]").  Therefore, the FAC must plausibly allege that these four policies are, in fact, "nationwide policies" implemented by the Hyattsville Defendants.  Mot. 19–22.  They cannot do so here.

---

[5] As the Arbor Defendants point out, the alleged "policies" explicitly involve and require ownership or control.  Arbor Defs' Reply at 9–12.  Contrary to Plaintiffs' assertions, multiple FHA cases do turn on defendants' ownership or control of the underlying properties.  *Id.* at 3–8.
[6] Plaintiffs provide no plausible factual allegation tying any Hyattsville Defendant to a property other than BVS—let alone 139 properties.

4

As argued in the Motion, the FAC fails to "isolate and identify" any specific practices. Mot. at 19–20; *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005).  In response, Plaintiffs rely solely on the FAC's length to allege specific practices (Opp. at 33–34)—but length does not beget clarity.  The FAC describes a vague collection of possibilities, rather than alleging actual practices: for example, the Financialization Policy includes the "potential for homelessness," "the potential for cross-collateralization," and "the potential for insolvency."  FAC ¶¶ 198(c), (f).  Further, the Harvesting Policy refers to multiple strategies and unidentified "other factors" that "affect the amount the Arbor Family [takes] as profit to themselves."  *Id.* ¶ 203(c).  The FAC's scattershot approach fails to isolate a specific practice from "the myriad of innocent causes that may lead to statistical imbalances," much less a specific practice tied to the Hyattsville Defendants.  *See Smith*, 544 U.S. at 241; *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 426 (4th Cir. 2018).

Second, the Opposition attempts to infer the existence of nationwide policies from allegations that apply, at best, to a handful of properties.  This unsupported assumption fails to demonstrate a ***nationwide*** policy, even under Plaintiffs' cited authorities.  *See Nat'l Fair Hous. All. v. Bank of Am.*, *N.A.*, 401 F. Supp. 3d 619, 642 (D. Md. 2019) (finding maintenance policies sufficient where plaintiffs tethered the policies to "a list of 37 'objective aspects' of routine exterior maintenance and marketing of REO properties," and applied that list to 1,677 properties in 37 census tracts).[7]

Plaintiffs allege that two properties (out of a self-selected set of 139 identified in the FAC) have maintenance issues and have "never [been] significantly renovated," FAC ¶¶ 88–89.  This

---

[7] Notably, in *Bank of America*, the allegations related to properties owned by the bank.  401 F. Supp. 3d at 623–24.  Here, it is undisputed that the Hyattsville Defendants do not own any property referenced in the FAC other than BVS.

allegation contradicts the judicially-noticeable fact that PG DPIE has removed BVS from the distressed properties list  (from when it had been added to the list under previous ownership) and commended BVS for its "significant capital improvements" that have been made under the current ownership.  *See* Mot. at 9–10.   Alleging merely that ***one other*** property was "targeted for renovation and improvement," Plaintiffs assert the existence of nationwide policies.  *See* FAC ¶ 168.   These allegations do not adequately allege nationwide "Divestment" and "Outsourcing" policies.  Mot. 19–22.  The other two policies fare even worse.  First, Plaintiffs ask the Court to infer a uniform, nationwide "Financialization Policy" based on a single cross-collateralization in which Bedford and Victoria United refinanced the loans used to acquire the BVS properties.  FAC ¶ 198(e).  Second, the "Harvesting Policy" is alleged to apply only to a few isolated properties. FAC ¶¶ 206(b–d) (alleging that the Chinatown and San Antonio properties were "value-add" investments; a Miami lot was an "opportunistic" investment; and BVS were "cash-cows"). Plaintiffs fail to sufficiently allege that any policy applies nationwide.

The claims here are analogous to the claims dismissed in *Ellis v. City of Minneapolis* where the plaintiff alleged that multiple failures to enforce a city housing code amounted to a "policy" to misapply the code.  *See* 860 F.3d 1106, 1113 (8th Cir. 2017) (holding that plaintiffs could not "bootstrap numerous one-time decision[s] together in order to allege the existence of a City policy.").  *Ellis* is hardly "inapposite."  Opp. at 34.  Just as the *Ellis* plaintiffs raised alleged "code citations" at various properties and "disagreement between the [plaintiffs] and the City on the extent of deficiencies," 860 F.3d at 1113, the FAC here challenges business decisions pertaining to several properties and "disagreement" regarding alleged deficiencies.  FAC ¶¶ 196–218.  *Ellis* held that, "given the varying and evolving contexts in which [housing] codes must be applied," governments "must have the leeway to apply reasonable housing-code provisions without fear of

inviting a costly lawsuit." *Id.* at 1113–14.  Here, given the complexity and evolving conditions in the multifamily housing market, one-off business decisions in Prince George's County and San Antonio similarly do not give rise to a nationwide policy of discrimination.

Further, the Opposition parrots the FAC's allegation that the "Arbor Family" Defendants "own and control approximately 139 [properties]" (Opp. at 5) but ignores the FAC's contradictory allegations that these defendants do not formulate or carry out any nationwide policies.  *See, e.g.,* FAC ¶¶ 31–32, 109 (Bedford United, Victoria United, and Hyattsville United are "shell companies"); *id.* ¶ 138, n.6 (AMAC represents an "investment vehicle" and a "single purpose entit[y]"); *see also* Mot. at 13–17 (explaining how the FAC fails to plausibly allege unified control).[8]  Plaintiffs fail to support the farfetched inference that AMAC, as an investing entity, exercises control over any property or policy (particularly when corporate disclosure statements make clear that AMAC is not in the same corporate family as the property owners).  *See* ECF Nos. 31–34, 37–39; *Slade Healthcare*, 381 F. Supp. 3d at 572.  Plaintiffs fail to plead facts that "nudge[] their claims across the line from conceivable to plausible," and their claims should be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

2.   <u>Plaintiffs Do Not Establish Causation.</u>

The FAC fails to allege the required "robust causal connection" between the challenged policies and their alleged disparate impact on protected class members.  *See Reyes*, 903 F.3d at

---

[8] The Hyattsville Defendants are not legally capable of instituting these alleged policies.  Both the "Divestment Policy" and "Financialization Policy" depend on holding a "nationwide portfolio [of] properties at every level of the quality spectrum" (FAC ¶ 198(a)) which the Hyattsville Defendants do not hold.  The "Harvesting Policy" is an "investment strategy" regarding REIT shareholder dividends, but none of the Hyattsville Defendants is alleged to be REITs.  *Id.* ¶ 201.  Plaintiffs challenge the "policies" of maintaining BVS based on the age and value of the properties and outsourcing its management to a third-party property management company, but Plaintiffs do not allege that either Hyattsville United or AMAC owns BVS, much less has any decision-making authority concerning the maintenance of these properties.  *Id.* ¶¶ 208–10.

424 (citing *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015)). The FAC asserts a nationwide disparate impact claim, but the Opposition—recognizing the FAC's lack of nationwide comparison statistics—appears to abandon this nationwide claim in favor of a limited claim of disparate impact only on BVS tenants.[9] No matter which group was allegedly impacted, the claim fails.

To adequately plead a disparate impact claim, Plaintiffs must provide "statistics [that] relate to both the impacted group and the comparator group." *Butler v. Sundo Capital, LLC*, 2:20-cv-1607-NR, 2021 WL 4134034, at *5 (W.D. Pa. Sept. 10, 2021) (citing *Reyes,* 903 F.3d at 428–29) (noting concerns that a "broadly applicable policy could support a plausible claim" where statistics do not involve a comparison to "all tenants subject to [the policy]" but only a subgroup). But Plaintiffs have not even provided coherent definitions of the "disparately" impacted group or the "comparator group" (consisting of persons outside the protected class subject to the alleged policies. Instead, Plaintiffs vacillate between comparing the racial makeup of: (i) BVS and/or Arbor's HUD DC properties to that of the HUD DC Market as a whole (Opp. at 27); (ii) the San Antonio Property to that of the San Antonio Metropolitan Area (*id.* at 28); (iii) BVS to that of the San Antonio Property (*id.* at 29); and (iv) the nationwide properties identified in the FAC to that of "the population of the states in which the [] properties are located as a whole" (*id.* at 30). No matter which comparator group is selected, these allegations all fail for the same reason: the FAC fails to plausibly allege a causal connection between the policies and any alleged statistical

---

[9] *Compare* FAC ¶ 242 (seeking to certify a nationwide class); *id.* ¶¶ 199, 207, 213, 218 (alleging each "Policy" has a disparate impact on, among others, the "other Arbor Family Properties in low-income communities of color across the country")*, with* Opp. at 31 (asserting that "the allegations of Arbor's ownership of the additional 139 properties nationwide relates to the allegations of disparate *treatment* and *not* disparate *impact*") (emphasis in original).

showing that protected class members at BVS fare differently or worse than members outside the protected class subjected to the same policies.  Mot. at 22–26.

The first three comparators do not go far enough: cherry-picked racial comparisons among 10 out of 139 purportedly "Arbor-owned" properties and their surrounding communities, or between "Hispanic BVS tenants" and their "White counterparts in [the] San Antonio Property" (Opp. at 27–29) do not plausibly establish a disparate impact on a protected group.  Such allegations fall far short of a statistically "substantial" effect.  Moreover, Plaintiffs rely on speculative statistics that fail to show anything other than a racial imbalance, at most—which is insufficient as a matter of law to state an FHA disparate impact claim.  *Edwards v. Johnston Cnty. Health Dep't,* 885 F.2d 1215, 1223 (4th Cir. 1989) ("[M]erely demonstrating a statistical imbalance, without more, does not establish a greater discriminatory adverse effect on one race compared to another.").  The last comparator goes too far: the population of 12 entire states extends well beyond the "total group" to whom any policies could theoretically apply.  Plaintiffs fail to provide demographic information regarding this bloated universe of "comparators" which would even permit an initial assessment of such comparisons.  *See Betsey v. Turtle Creek Assocs.*, 736 F.2d 983 (4th Cir. 1984).

As the Motion explains, the FAC contains no regression analysis or other means to control for independent variables that could explain Plaintiffs' rudimentary statistics.  Mot. at 26.  While Plaintiffs argue that such statistical analysis is not required, they are incorrect.  Opp. at 36.  As in *Bank of America,* Plaintiffs' FAC challenges the maintenance policies that the Arbor Related Defendants purportedly employ on all of their properties nationwide.  FAC ¶ 198(g); *Bank of Am.,* 401 F. Supp. 3d at 623.  Therefore, as was the case in *Bank of America*, "more advanced causation allegations" – beyond merely demonstrating a racial imbalance at BVS – are, in fact, "required"

because Plaintiffs are challenging policies which, as alleged, are applied equally at all of the 139 purportedly Arbor-owned properties at issue. Opp. at 37. Unlike here, the plaintiffs in *Bank of America* analyzed a list of objective criteria which might explain alleged racial discrepancies, investigated "100% of the Bank of America-owned homes" and subjected the data to "regression analyses [which] controlled for myriad factors" to plausibly conclude that there was no other non-racial explanation for the activity. 401 F. Supp. 3d at 624. The court held that this detailed regression analysis met the robust causality requirement applicable to all FHA disparate-impact claims. *Id.* at 636–37. The FAC contains nowhere near this level of detailed analysis, and therefore fails to plausibly alleged causation.

Plaintiffs insist that they have demonstrated a "significant disparity" in showing that the "[w]hite population of Arbor's properties is 18% lower in Arbor's properties themselves than in the population of the states in which the Arbor properties are located as a whole," because that statistic purportedly "indicates that whatever the outcome is, consistent with the *Arlington Heights* factors discussed *supra*, the Arbor Family Policies 'bear more heavily on one race than another.'" Opp. at 30–31 (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252 (1977)). That is not the standard for establishing disparate impact causation, nor is it accurate.[10] Plaintiffs have simply alleged that there are slightly higher rates of Latino residents in the BVS properties than in the HUD DC Market as a whole, and slightly lower rates of white residents in

---

[10] Nor is it the standard for disparate treatment claims involving private actors. *Arlington Heights* applies to equal protection claims brought against government entities. *See, e.g., North Carolina State Conference of NAACP v. McCrory,* 831 F.3d 204, 220 (4th Cir. 2016). Plaintiffs cite no case applying the *Arlington Heights* factors to private entities in the FHA context. Plaintiffs cite *Bank of America*, which mentioned the factors in *dicta*, but declined to apply them since "the nature of plaintiffs' claims seem closer to a disparate impact theory." 401 F. Supp. 3d at 631 n.8. Even if *Arlington Heights* set forth the relevant framework (and it does not), Plaintiffs merely conclude that each factor is met by reciting the text of the factor and repeating various, conclusory allegations from the FAC. Opp. at 19–22. That is insufficient under Rule 8.

the purported 139 nationwide properties than in the 12 states in which those properties are located. These statistics merely show a pre-existing racial imbalance, rather than one tied in any way to purported actions or policies of the Hyattsville Defendants.

      **C.**      **Plaintiffs Do Not Plead a Prima Facie Case of Intentional Discrimination.**

Plaintiffs agree with the Hyattsville Defendants that a prima facie disparate-treatment claim requires demonstrating that a "'discriminatory purpose' was a motivating factor [for] a defendant's actions." Opp. at 19; Mot. at 27. As the Motion explains, a plaintiff must plausibly allege that she was treated differently from other tenants outside of the protected class due to her membership in that class. Mot. at 26–28. But the FAC fails to plausibly allege that discrimination was a "motivating factor" in either the policies (which Plaintiffs have not plausibly alleged the Hyattsville Defendants are even capable of implementing) or in the maintenance of the BVS properties. Therefore, Plaintiffs' disparate treatment claim fails.

First, Plaintiffs' own allegations belie any notion of intentional discrimination. First, the FAC alleges that the policies apply equally across a nationwide property portfolio whose tenants are 51% White and 48.4% non-White (FAC ¶ 130) but also that the policies "bear[] more heavily on one race than another." Opp. at 31. The FAC's statistical analysis alleges, at best, a racial imbalance at BVS compared to either the local community or to the San Antonio Property. These limited comparisons do not sufficiently allege that differential treatment was "the regular rather than the unusual practice." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).

    Second, Plaintiffs argue there is a "clear pattern, unexplainable on grounds other than race" that "emerges from the effect of the [private] action." Opp. at 21; *Arlington Heights*, 429 U.S. at 266. But the FAC contradicts that assertion, alleging that "[m]any . . . factors affect the amount the Arbor Family may decide to pay . . . to reinvest in the underlying property." FAC ¶ 203(c).

11

Plaintiffs have not offered any statistical analysis showing a "pattern," much less a "clear pattern," or any statistical showing which attempts to eliminate non-racial explanations for such a pattern. As in *Bank of America*, Plaintiffs might have engaged in regression analysis or dissimilarity indices to attempt to control for the impact of independent variables and pre-existing disparities on the integrity of results. Instead, the FAC simply alleges statistics showing the pre-existing racial makeup of certain properties, their surrounding communities, and the purported nationwide portfolio—without any attempt to control for other explanatory variables. FAC ¶¶ 130–131, 182–91. This slapdash approach cannot establish a "clear pattern" or show that any pattern is attributable to race.

Next, Plaintiffs point to the "historical background" and "sequence of events leading up to the purchase of the BVS Properties and [the policies]." Opp. at 21. But they conveniently overlook *Arlington Heights*' focus on whether that history "reveals a series of official actions taken for invidious purposes." 429 U.S. at 267. The Opposition invokes the Great Recession, which is not an action taken by the Hyattsville Defendants, sheds no "light on the decisionmaker's purposes" and occurred five years before BVS was even purchased. FAC ¶ 110. Plaintiffs' reference to the Great Recession merely highlights the pre-existing racial disparities fatal to their case: "[it] resulted in PG County's **already disproportionately minority population**, disproportionately suffering from the foreclosure crisis as compared to other counties in Maryland, after which time Arbor acquired BVS . . . ." Opp. at 21 (emphasis added). As described *supra*, the FHA does not penalize efforts to provide affordable, lower-income housing developments based simply on the pre-existing demographic makeup of the community in which the development is built.

Finally, Plaintiffs contend that "substantive departures" from the "normal procedural sequence . . . raise [] a clear inference of intentional discrimination." *Id.* (citing *Arlington Heights*,

429 U.S. at 267).  But again, Plaintiffs cannot simultaneously claim that "discrimination was the [Defendants'] standard operating procedure" for purposes of disparate impact (FAC ¶ 82), and also that Defendants departed from that standard operating procedure for purposes of disparate treatment.  Opp. at 21–22.  Even if there were any such "departures," judicially-noticeable facts establish that the BVS properties underwent "substantial investment in capital improvements," as did the Chinatown property.  ECF No. 46-3; Mot. at 26–28.  Plaintiffs conveniently ignore these facts.  Accordingly, this factor does not weigh in favor of an intent to discriminate.  As Plaintiffs have not plausibly pled a disparate treatment theory, their FHA claims should be dismissed.

### D.   Plaintiffs Fail to Allege Perpetuation of Segregation and Racial Interference Claims.

As explained in the Motion, Plaintiffs do not state a claim for perpetuation of segregation under § 3601 or racial interference under § 3617 because the FAC's allegations are too attenuated to support a segregation claim and there are no specific facts plausibly alleging that the Hyattsville Defendants were motivated by an intent to discriminate.  Mot. at 28.  As to the perpetuation claim, the Opposition contends that the fact that BVS had the most inspection violations issued by PG DPIE between 2014 and 2017 (among the other 11 multifamily apartment complexes in Langley Park), plausibly establishes that BVS perpetuates or freezes existing racial segregation.  Opp. at 41–42.  This argument does not hold water.  While the Opposition concludes that "[a]s in the case of *Bank of Am., N.A.,* the Arbor Family Policies 'forestall housing integration and freeze existing racial segregation patterns'" (Opp. at 40), Plaintiffs omit the court's full justification for that holding: the plaintiffs "alleged, ***using detailed dissimilarity indices as a baseline***, that the defendant's policies forestall housing integration . . . ."  *Bank of Am.,* 401 F. Supp. 3d at 641 (emphasis added).  That is not the case here.

13

Even accepting Plaintiffs' allegations as true, the FAC only includes inspection information from 2014 through 2017. The FAC omits the same information for 2018 through the present, even though that information is readily available. *See* Mot. at 10. Recent judicially-noticeable inspection data demonstrates few, if any, violations for BVS between 2017 and 2022. Therefore, the FAC's allegations concerning perpetuation are misleading and implausible. Mot. at 11 fig.1.[11] Moreover, even if such allegations could demonstrate a perpetuation of segregation (which they do not), they fall far short of demonstrating that purported community blight was proximately caused by ***the Hyattsville Defendants' conduct***. Mot. at 28. It defies logic to conclude that maintenance decisions at two apartment complexes in a county of nearly 1,000,000 people[12] caused pre-existing racial disparities and purported urban blight, particularly when the FAC alleges there are at least 11 other apartment complexes in the county with similar demographics and conditions. *Prince George's Cnty., Md. v. Wells Fargo & Co.*, 397 F. Supp. 3d 752, 764 (D. Md. 2019); FAC ¶¶ 83–102.[13] Therefore, the FAC does not state a claim for perpetuation of segregation.

As to Plaintiffs' interference claim, the FAC does not state a claim under § 3617 because it has not adequately alleged that the Hyattsville Defendants (or any Defendant) were motivated by an intent to discriminate. Mot. at 29; *supra,* § I.C. The FAC's allegations show, at most, a

---

[11] The Opposition argues that the Hyattsville Defendants seem "unaware of the global pandemic which froze the inspection and licensing regimes" between February 2020 and the present. Opp. at 41 n.12. However, the pandemic had no impact on the 2018 and 2019 data. Mot. at 11. Further, while the Opposition argues that the Motion does not include the total number of inspections, that information is not publicly available. *See* Prince George's County Open Data Portal, https://data.princegeorgescountymd.gov (data last updated as of Aug. 23, 2021, last visited April 20, 2022).

[12] *See* https://www.census.gov/quickfacts/princegeorgescountymaryland.

[13] Further, on a nationwide basis, it is implausible that the "policies" could "prevent interracial association." As the FAC alleges, the nationwide portfolio of the "Arbor" properties are fully integrated and consist of 51% White and 48.4% non-White tenants. FAC ¶ 130.

racial disparity when two properties in a single census tract are compared to three more properties (which lack pertinent demographic and statistical data).  Such allegations do not demonstrate a nationwide policy, particularly without any statistical analysis controlling for alternative explanations.  Plaintiffs' allegations fall far short of those deemed sufficient in *Bank of America* and cannot plausibly show that the claimed practice was motivated by an intent to discriminate for purposes of § 3617.  *Bank of Am.,* 401 F. Supp. 3d at 641–42.

## II.  PLAINTIFFS' CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

Plaintiffs concede that they cannot state a civil conspiracy claim without establishing a violation of the FHA.  Opp. at 53.  As explained, Plaintiffs do not plausibly allege an FHA violation. *See supra* § I.  Therefore, Plaintiffs' civil conspiracy claim must be dismissed.  The Opposition also does not address the Hyattsville Defendants' argument that corporate affiliates are legally incapable of conspiring with one another.  *See* Mot. at 30 n.22; Opp. at 54; FAC ¶ 328 (referring to "a confederation of each of the named Defendants").  The intra-corporate conspiracy doctrine provides an additional, independent ground for dismissal of the civil conspiracy claim.[14]

Even if the FAC alleged a conspiracy between each Defendant and RMS only (and it does not), that claim too would fail.  Plaintiffs deny alleging a conspiracy "between a principal and an agent" because RMS "has a contract with only Bedford United and Victoria United."  Opp. at 54. Therefore, Plaintiffs argue, RMS cannot be considered the agent of any other entity for purposes of the intra-corporate immunity doctrine.  *Id.* at 54–55.  However, corporate affiliates are legally

---

[14] Plaintiffs may not use the Opposition to amend the allegations in the FAC.  *Southern Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013)*.*  The FAC bases the civil conspiracy claim on an FHA violation.  *See* FAC ¶ 329 (alleging that the "Defendants conspired to refrain from performing maintenance or making repairs . . . to further the policies identified above ***in violation of the FHA***" (emphasis added)).  While the Opposition now contends that this claim is also based on a violation of the "duties imposed by [PG County] Local Ordinances" (Opp. at 53), this assertion is unsupported by the FAC (¶¶ 327–30).

incapable of conspiring with their alter egos. *Slade Healthcare, Inc.,* 381 F. Supp. 3d at 572. If, as the FAC alleges, the Arbor Related Defendants are "alter egos" of one another, RMS—as the agent of Bedford and Victoria United—is the agent to all Arbor Related Defendants. *See* FAC ¶ 35. Thus, there can be no conspiracy involving RMS here because the FAC alleges only that RMS committed acts in the scope of its role as property manager of the BVS properties (acting as an agent). *See* Mot. at 30 n.22.[15]

### III. PLAINTIFFS MAY NOT RELY ON GROUP PLEADING OR VEIL PIERCING.

Plaintiffs may not unilaterally impose collective liability on the seven distinct corporate entities they choose to group under the umbrella term "Arbor." As is clear from the Motion and the Arbor Defendants' Reply, which is fully incorporated here, Plaintiffs' indeterminate group pleading fails to satisfy Rule 8 even under their own cited authorities.

First, Plaintiffs readily concede that the FAC is a "group pleading." Opp. at 58. But they contend that the FAC provides "more than sufficient detail" about each Defendant's role. *Id.* As described in the Motion, it does not. *See* Mot. at 11–13. Indeed, many of the FAC's allegations against the Hyattsville Defendants are implausible and contradicted by other allegations. Mot. at 20 (noting the Hyattsville Defendants are legally incapable of acting as a REIT or holding a nationwide portfolio).[16]

---

[15] The Opposition acknowledges that there is no conspiracy "when an entity and its employees or agents are working for the joint benefit of the entity." Opp. at 55. In a last-ditch bid to revive the claim, Plaintiffs state that "here RMS is working for its own benefit . . . [and that] RMS is engaged in the conspiracy to benefit itself." *Id.* That is implausible, and contradicted by the FAC. *See* FAC ¶ 80 (the Defendants work "in agreement amongst themselves and with property managers [including RMS] to conspire to implement policies that violate the FHA . . .").

[16] For example, while Plaintiffs assert that each of the four policies are "applied equally" across properties nationwide, they allege that Bedford, Victoria, and Hyattsville United are "single purpose" holding companies established solely to own and/or collect rent from BVS. FAC ¶¶ 120, 123. Such entities are not legally capable of owning or controlling the other properties. It is nonsensical to treat them as REIT entities or as "a national commercial real estate investment firm"

16

Second, the Opposition ignores Defendants' arguments that Plaintiffs have not alleged sufficient or plausible facts to justify veil piercing.  Plaintiffs conclude in a footnote that "the analysis of the alter ego argument by the Arbor Family itself supports that each" of the factors concerning veil piercing "have [sic] indeed been pled sufficiently."  Opp. at 16 n.4; *cf.* Mot. at 13–17.  But Plaintiffs do not offer plausible factual allegations supporting each element of veil-piercing or attempt to demonstrate abuse of the corporate form, as required to survive a motion to dismiss.  *See, e.g.*, *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015); Mot. at 16.  Therefore, dismissal with prejudice is warranted.

## IV. PLAINTIFFS' BREACH OF CONTRACT CLAIMS CANNOT PROCEED.

The breach of contract and warranty claims (Counts V and VI) should be dismissed as brought by CASA and Ms. Ramirez, and as brought by all Plaintiffs against AMAC and Hyattsville United because none of them is a party to the lease agreement with the relevant Defendant.  Mot. at 30–33.  The Opposition completely ignores this argument as it pertains to Count V and thus concedes that the breach of contract claims are insufficient.  Count V should be dismissed with prejudice as to those parties.  *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (failure to respond to arguments raised in the motion to dismiss "abandon[s] th[e] claim").

The Opposition solely addresses the implied warranty of habitability claim.  Opp. at 44–46.  Plaintiffs assert that this claim is based on a "violation of a duty imposed upon an owner or manager of a property by virtue of local ordinance," and cite two provisions of the Prince George's County Housing Code which impose duties on a "landlord."  Opp. at 44–45.  However, Plaintiffs

which purportedly "owns and operates over 8,000 units."  *Id.* ¶ 29.  Further, the Hyattsville Defendants cannot control the properties because, according to the FAC, "the management of [the nationwide properties] must be outsourced to third party management companies and not undertaken by the Arbor Family Defendants or any of their related entities."  *Id.* ¶ 215.

do not identify the correct legal standard.  Plaintiffs' cited authorities deal with warranty claims under the Maryland Consumer Protection Act ("MCPA"), not tort or negligence claims based upon violation of a local housing code.  *See Benik v. Hatcher,* 750 A.2d 10 (Md. 2000) (MCPA claim); *Richwind Joint Venture 4 v. Brunson,* 645 A.2d 1147 (Md. 1994) (MCPA and negligence claims), *overruled by Brooks v. Lewin Realty III, Inc.,* 835 A.2d 616 (Md. 2003); *Brown v. Dermer*, 357 Md. 344, 360 (2000) (negligence claim).[17]

Even if the Opposition did identify the relevant precedent, that would not save Plaintiffs' breach of implied warranty claims against AMAC or Hyattsville United.  Plaintiffs do not dispute that Defendants are not parties to the leases and owe no duties to Plaintiffs under the leases.  Mot. at 30–33.  Because neither AMAC nor Hyattsville United is the "legal and equitable owner(s) of [the] property" or the "corporation who manages the multifamily by contractual agreement with the owner," they also owe no duties to Plaintiffs under the Prince George's Housing Code.  The Code applies only to "landlords" as thereby defined.  Prince George's County Code of Ordinances § 13-138(a)(7) (defining "landlord"); *id.* § 13-153 (referring to duties applicable to a "landlord")*.*

Given that neither the leases nor the Housing Code impose any duties on AMAC or Hyattsville United, the Opposition turns to general negligence principles to argue that these Defendants failed to exercise reasonable care in performing a "voluntarily assumed duty."  Opp. at 46 (citing *Kemp v. Armstrong,* 392 A.2d 1161, 1164 (Md. Ct. Spec. App. 1978)).  The Opposition incorrectly insists that *Richwind* stands for the notion that "violation of a local code

---

[17] The two cases the Opposition cites that involve implied warranty claims not brought under the MCPA do not analyze the elements of liability for such claims, nor even make clear that such claims are based upon violation of the local code.  *See Williams v. Hous. Auth. of Balt. City,* 361 Md. 143, 158 (2000) (generally noting that a claim for implied warranties under the Baltimore City Housing Code is within a particular state court's jurisdiction); *McDaniel v. Baranowski,* 419 Md. 560, 561 (2010) (noting that "[t]he legal relationship between landlord and tenant is governed by the contract between the parties, as well as any statutory authority").

g[ives] rise to a breach of warranty claim that is analyzed under negligence principles." Opp. at 44. But that is not true. *Richwind* did not involve an implied warranty claim premised on violation of a local code—rather, it involved a claim under the MCPA and an ordinary negligence claim. 645 A.2d at 1150 ("[T]he complaint alleged that the defendants were negligent, created a nuisance, and violated Maryland's Consumer Protection Act."). Thus, the holding in *Richwind* is irrelevant to Plaintiffs' implied warranty claim.

Moreover, the FAC falls far short of plausibly alleging that AMAC and Hyattsville United "purposely availed themselves to [sic] the BVS properties" under negligence principles. Opp. at 46. The Opposition cites to three paragraphs of the FAC relating solely to Arbor Realty Trust, Arbor Realty SR, and Arbor Realty Limited. *Id.* None of these passages relates to Hyattsville United, and the one paragraph that mentions AMAC merely speculates that AMAC "manages BVS" when incontrovertible facts demonstrate the contrary. *Id.*; Mot. at 17 n.15.

Because the only parties who owe duties to Plaintiffs under the lease agreements and pursuant to the Prince George's County Housing Code are Bedford and Victoria United (the actual property owners), no other Defendant may be held liable for breach of the warranty of habitability. For this reason and for those described in the Motion, Counts V and VI should be dismissed with prejudice as to the Hyattsville Defendants.

### V.  CASA FAILS TO REBUT ITS LACK OF STANDING.

The Motion establishes that CASA lacks (i) representational standing to bring claims on its members' behalf for money damages as to all counts, because such damages would require individualized analysis that undermines representational standing; and (ii) organizational standing to bring claims on behalf of its members for the state-law contract claims (Counts V and VI), because CASA lacks a special relationship with its members and the Named Plaintiffs can assert

their own breach of contract claims.  Mot. at 33–34.  CASA ignores these arguments and instead responds to extraneous points not raised by the Motion.  *See* Opp. at 56–57.  CASA only cites cases supporting that it has standing to sue on behalf of its members when ***injunctive relief, and not damages***, are sought.  These holdings are inapplicable and do not support standing here.  *See id.*; *Casa de Maryland v. U.S. Dep't of Homeland Sec.,* 284 F. Supp. 3d 758, 771 (D. Md. 2018) (finding CASA had representational standing where "the relief sought is injunctive and declaratory relief—***not damages or any other remedy requiring the individual Dreamers***.") (emphasis added).  The Court should dismiss CASA's requests for money damages: (i) on behalf of its members as to all counts and (ii) on its own behalf as to Counts V and VI.

### VI.  PLAINTIFFS FAIL TO REBUT THAT THEY SEEK TIME BARRED DAMAGES.

The Motion establishes that the FAC improperly seeks damages not available under the continuing breach theory for Counts V and VI.  Mot. at 34–35.  The Opposition fails to address this argument, other than stating in a footnote that "there is no statute of limitations issue in the present litigation, as the Arbor Family's illicit policies are still in effect."  Opp. at 41 n.12.  But the Fourth Circuit does not permit the recovery of damages under the continuous breach theory outside of the limitations period.  Mot. at 34–35.  The Opposition also incorrectly cites *Bank of Am.,* 401 F. Supp. 3d at 630, which analyzed the continuing violation theory ***solely*** in the context of FHA claims and not under the continuing breach theory.  To the extent Plaintiffs seek damages for breaches outside of the limitations period, such requests are time barred.

### <u>CONCLUSION</u>

For the foregoing reasons, and the reasons stated in their Motion, the Hyattsville Defendants respectfully request that the Court dismiss Plaintiffs' claims with prejudice.

Dated: April 25, 2022                     Respectfully submitted,

*/s/ Benjamin B. Klubes*
Benjamin B. Klubes (Bar Number 08085)
Amanda R. Lawrence (*pro hac vice*)
**BUCKLEY LLP**
2001 M Street NW, Suite 500
Washington, D.C.  20036
(202) 349-8000 (Telephone)
(202) 349-8080 (Facsimile)
bklubes@buckleyfirm.com
alawrence@buckleyfirm.com

*Counsel for Defendants,*
*Bedford United, LLC*
*Victoria United, LLC*
*Hyattsville United, LLC*
*Arbor Management Acquisition Company, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served this 25th day of April, 2022 through the Court's CM/ECF system, which will send notification of this filing to all counsel of record.

<u>*/s/ Benjamin B. Klubes*</u>
Benjamin B. Klubes (Bar Number 08085)
*Counsel for Defendants*,
*Bedford United, LLC*
*Victoria United, LLC*
*Hyattsville United, LLC*
*Arbor Management Acquisition Company, LLC*

22