IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| CASA DE MARYLAND, INC., et al,<br><br>                Plaintiffs,<br><br>v.<br><br>ARBOR REALTY TRUST, INC., et al,<br><br>                Defendants. | Civil Action No. DKC-21-01778 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS CLASS-RELATED
ALLEGATIONS**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... II

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ......................................................................................................................... 2

      A.    Plaintiffs' Allegations ............................................................................................. 2

      B.    The Amended Complaint's Proposed Classes and Causes of Action ...................... 4

      C.    The Motion to Dismiss Decision ............................................................................ 4

      D.    Sale of the BVS Properties ..................................................................................... 5

ARGUMENT ............................................................................................................................... 6

I.     COURTS FREQUENTLY DISMISS CLASS ALLEGATIONS WHERE THE COMPLAINT PROVIDES NO BASIS FOR CLASS CERTIFICATION ......................... 6

II.    INDIVIDUAL QUESTIONS PREDOMINATE OVER ANY COMMON QUESTIONS ...................................................................................................................... 7

III.   THERE IS NO OTHER BASIS FOR CLASS CERTIFICATION .................................. 12

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akeem v. Dasmen Residential, LLC*,
    2021 WL 4804049 (E.D. La. Oct. 14, 2021) ....................................................................9, 10

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...............................................................................................................12

*Baker v. Equity Residential Mgmt., L.L.C.*,
    390 F. Supp. 3d 246 (D. Mass. 2019) .....................................................................................11

*Bennett v. Donaldson Grp., L.L.C.*,
    2022 WL 2981494 (Md. App. July 28, 2022) .........................................................................10

*Claborne v. Hous. Auth. of New Orleans*,
    165 So. 3d 268 (La. App. 2015) ..............................................................................................10

*Cox v. Stone Ridge at Vinings, LLC*,
    2014 WL 12663763 (N.D. Ga. Sept. 30, 2014) ........................................................................9

*Diamond v. New York City Hous. Auth.*,
    179 A.D.3d 525, 118 N.Y.S.3d 77 (1st Dep't 2020) ...............................................................10

*Donelson v. Ameriprise Fin. Servs., Inc.*,
    999 F.3d 1080 (8th Cir. 2021) ..................................................................................................6

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................................1, 6

*Morgan v. Carlyle Grp., Inc.*,
    2007 WL 9780604 (D. Md. Jan. 5, 2007) ...............................................................................10

*Ortiz v. Fireboard Corp.*,
    527 U.S. 815 (1999) ...............................................................................................................12

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ....................................................................................................6

*Ross-Randolph v. Allstate Ins. Co.*,
    2001 WL 36042162 (D. Md. May 11, 2001) ..................................................................6, 7, 10

*Strange v. Norfolk & W. Ry. Co.*,
    809 F.2d 786 (4th Cir. 1987) (unpublished table decision) ......................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................................9

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................................8

*Williams v. Potomac Fam. Dining Grp. Operating Co.*,
    2019 WL 5309628 (D. Md. Oct. 21, 2019) ...........................................................6, 7

**Statutes**

Fair Housing Act..............................................................................................................1, 4

Prince George's County Code Section 13-157(c)................................................................8

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
    1383 (3d ed.) ..........................................................................................................6, 7

Fed. R. Civ. P. 12(f)..............................................................................................................7

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

Restatement (Second) of Property, Landlord & Tenant § 17.6 cmt. c (1977).....................8

Defendants Arbor Realty Trust, Inc. ("Arbor Realty Trust"), Arbor Realty Limited Partnership ("Arbor Realty Limited"), and Arbor Realty SR, Inc. ("Arbor Realty SR") (collectively, the "Arbor Defendants"); Victoria United, LLC ("Victoria United"), Bedford United, LLC ("Bedford United"), Hyattsville United, LLC ("Hyattsville United"), and Arbor Management Acquisition Company, LLC ("AMAC") (collectively, the "Hyattsville Defendants"); and Realty Management Services, Inc. ("RMS", and together with the Arbor Defendants and the Hyattsville Defendants, the "Defendants") respectfully move, pursuant to Rules 23(c)(1)(A) and/or 23(d)(1)(D) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint's class-related allegations.

## PRELIMINARY STATEMENT

As the Supreme Court has recognized, "[s]ometimes the issues are plain enough from the pleadings to determine" that class treatment is untenable. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). This is such a case.

In this landlord-tenant dispute, the seven named plaintiffs (the "Plaintiffs") seek to represent a class of individuals regarding allegedly inadequate housing conditions at two apartment complexes in Prince George's County. But with the dismissal of their claims under the Fair Housing Act, the theories of liability that plaintiffs once relied on to unify their putative classes are no longer available. And the remaining causes of action—state-law claims for breach of the implied warranty of habitability and breach of contract—are wholly unsuitable for class treatment.

Courts throughout the country and in this Circuit, including this one, have not hesitated to decide class certification issues at the pleading stage when no amount of discovery can overcome the barriers to class certification that are evident from the complaint. Such determinations fulfill

Rule 23's instruction to resolve class issues "at an early practicable time" and avoid the unnecessary expenditure of judicial resources. They also significantly streamline litigation by avoiding costly and burdensome discovery on claims that ultimately cannot be sustained.

Here, the Amended Complaint illustrates that there is no genuinely common issue that will advance the determination of liability or damages on a classwide basis. Instead, resolution of the remaining state-law claims will require individualized attention to the conditions of each tenant's apartment unit—and the individual actions of each putative class member. The plaintiffs therefore cannot meet the threshold requirement of commonality required by Rule 23(a). But even if Plaintiffs could identify some arguably "common" question, it would come nowhere close to predominating in the litigation that would follow, rendering Rule 23(b)(3) inapplicable. Nor can Plaintiffs satisfy the requirements for class certification under Rule 23(b)(1) or 23(b)(2), regardless of any information that could conceivably be exchanged in discovery. No amount of discovery could eliminate any of these barriers to certification—let alone all of them. The Court should therefore deny class certification and dismiss the Amended Complaint's class-related allegations.

## BACKGROUND

### A.   Plaintiffs' Allegations

Plaintiffs allege that they live at two apartment complexes in Langley Park, Maryland: Bedford Station and Victoria Station (together, the "BVS Properties"). Plaintiffs say that the living conditions at the BVS Properties are inadequate, and that the eight Defendants are responsible for these conditions. Plaintiffs allege that, during the relevant time period, the Hyattsville Defendants owned the BVS Properties; the Arbor Defendants, whose business activities are focused primarily on real estate investment, exerted control over the Hyattsville

Defendants; and RMS was the property manager of the BVS Properties.  *See generally* Am. Compl., ECF No. 43.

Plaintiffs allege that Defendants have failed to perform maintenance and repairs at the BVS Properties, resulting in conditions such as mold, pest infestations, and electrical defects.  *See* Am. Compl. ¶¶ 1-3.  These contentions vary from Plaintiff to Plaintiff.  Two of the seven Plaintiffs allege they have suffered "water intrusion."  *Id*. ¶¶ 24, 26.  One Plaintiff complains of "defective flooring and a defective bathroom."  *Id.* ¶ 25.  Two Plaintiffs complain of defective appliances.  *Id.* ¶¶ 25 (stove), 26 (stove and refrigerator).  Two Plaintiffs complain of "defective HVAC."  *Id.* ¶¶ 24, 25.

While several Plaintiffs describe infestations, the types of pests and severity of the problems vary.  Two plaintiffs describe mice.  *Id.* ¶¶ 22, 26.  Two Plaintiffs (who share a single apartment) complain of bed bugs, which they say were sufficiently severe, "from time to time," to constitute "constructive eviction."  *Id.* ¶ 233.  One Plaintiff complains specifically of roaches (*id.* ¶ 22), while others describe problems with "insects" generally (*id.* ¶¶ 24-26).  In another instance, a Plaintiff "*previously*" had insect problems that apparently have since abated.  *See id.* ¶ 23. (emphasis added).

Six of the seven Plaintiffs allege experience with electrical problems, but they have been affected in different ways.  In one case, the electrical defects are deemed "dangerous" (*id.* ¶ 25), while other Plaintiffs have been required to use an extension cord to use their stove (*id.* ¶ 22).  Some of the alleged electrical problems have caused appliances "to be defective" (*id.* ¶ 22), while the effects of others (if any) are not described (*see id.* ¶ 24).  One Plaintiff "previously" experienced "electrical failures" (*id.* ¶ 23) and another Plaintiff does not complain of electrical outages at all (*see id.* ¶ 26).

Most of the Plaintiffs also complain of mold, but one of them does not. *See* ¶ 24. For those who do allege mold, the problems vary in severity. In one instance there is "visible mold throughout" the apartment (*id.* ¶ 22), while, in another instance, the mold is limited to certain rooms (*see id.* ¶ 23). Other Plaintiffs do not specify the extent of the problem. *Id.* ¶¶ 25, 26.

### B. The Amended Complaint's Proposed Classes and Causes of Action

The Amended Complaint originally asserted claims on behalf of the individual Plaintiffs, CASA de Maryland, Inc. ("CASA"), and two putative classes. The two putative classes were (i) the "Arbor Family Nationwide Class," consisting of "[a]ll current tenants nationwide of any of Arbor's approximately 139 properties owned by the Arbor Family or any affiliate of Arbor Realty Trust, Inc. who do not qualify for the 'BVS Class'" and (ii) the "BVS Class," consisting of "[a]ll current and prior tenants for the last three years" of the BVS Properties. Am. Compl. ¶ 242.

On behalf of the named plaintiffs and both putative classes, the Amended Complaint asserted claims for violations of the Fair Housing Act (the "FHA") and for civil conspiracy. *Id.* ¶¶ 267-294, 327-30. On behalf of the named plaintiffs and the BVS Class only, it asserted claims for breach of contract and breach of the implied warranty of habitability. *Id.* ¶¶ 295-316.

### C. The Motion to Dismiss Decision

In its September 6, 2022 Memorandum Opinion (ECF No. 76) and accompanying Order (ECF No. 77), the Court dismissed all counts for violations of the FHA and for civil conspiracy. These were the only counts asserted on behalf of the putative Arbor Family Nationwide Class. The Court also dismissed the counts for breach of contract and for breach of the implied warranty of habitability as to plaintiff CASA, finding that CASA lacks organizational and representational standing. In making that finding, the Court underscored that the adjudication of the contract claim will require an individualized assessment as to each tenant:

> Here, the breach of contract claims are for damages. Such claims and the relief requested require individual participation. The damages sought are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Individual tenants will have individualized problems (or not) with their apartment. Some have been evicted or subject to eviction requests. Others have spent their own resources on making repairs. These damages require individualized assessments.

ECF No. 76 at 43 (internal quotations and citations omitted). The Court also dismissed the contract claim brought by Anita Ramirez because she was neither a signatory to nor identified as an occupant on the lease executed by her husband. *Id.* at 45.[1]

Following the Court's resolution of the motions to dismiss, the only remaining claims are those for breach of the implied warranty of habitability and (except as to Ms. Ramirez) for breach of contract. None of the remaining counts are asserted on behalf of the Arbor Family Nationwide Class, so the only remaining putative class is the BVS Class. The Amended Complaint does not seek injunctive or declaratory relief with respect to any of the remaining counts. *See* Am. Compl. ¶¶ 306, 316, 332.

    **D.**    **Sale of the BVS Properties**

As the Plaintiffs concede, following submission of the Amended Complaint, the BVS Properties were sold to an unrelated party and are under new ownership. *See* Pls.' Reply in Supp. of Mot. to Compel Discovery, ECF No. 71 at 1-2; *see also* Pls.' Third Supplement to Mot. to Compel Discovery, ECF No. 75. As such, no Defendant currently has any control or ownership over the BVS Properties.

---

[1] The Court also dismissed all contract claims as to Arbor Realty Trust, Arbor Realty Limited, Arbor Realty SR, AMAC, and Hyattsville United. *See* ECF No. 77.

# ARGUMENT

## I. COURTS FREQUENTLY DISMISS CLASS ALLEGATIONS WHERE THE COMPLAINT PROVIDES NO BASIS FOR CLASS CERTIFICATION

"There is no presumption that class action should be allowed," and a defendant "may move for a determination under Rule 23(c)(1) that a class action is unwarranted." *Ross-Randolph v. Allstate Ins. Co.*, 2001 WL 36042162, at *4 (D. Md. May 11, 2001) (Chasanow, J.) (citation omitted). A defendant also may seek an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D). Together, these rules invite courts to consider the issue of class certification on the pleadings. *See Falcon*, 457 U.S. at 160; *Strange v. Norfolk & W. Ry. Co.*, 809 F.2d 786 (4th Cir. 1987) (unpublished table decision) (holding district court "was not required to wait until [Plaintiff] sought class certification" to consider the issue); *Williams v. Potomac Fam. Dining Grp. Operating Co.*, 2019 WL 5309628, at *4 (D. Md. Oct. 21, 2019) (collecting cases); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).

A pre-discovery ruling gives effect to Rule 23's command that certification be decided "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Indeed, courts have held that it is an abuse of discretion *not* to dismiss a complaint's class allegations when it is apparent that class treatment is inappropriate. *See, e.g.*, *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021). These courts recognize that "permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383 (3d ed.)).

Courts in this District dismiss class allegations "when it is clear from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification

-6-

because the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." *Williams*, 2019 WL 5309268 at *5 (citation and quotation marks omitted). This Court's decision in *Ross-Randloph* is instructive. There, the Court found at the pleading stage that the putative class did not meet the Rule 23(a)(2) commonality requirement because "individual determination" and "individual factual inquiries" were necessary to evaluate each plaintiff's claim. *Ross-Randolph*, 2001 WL 36042162 at *6. The Court also held that the putative class did not meet the Rule 23(b)(3) predominance requirement because it was "apparent from the pleadings that individual factual determinations will constitute a significant part of th[e] action." *Id.* at *9. As discussed below, the same outcome is warranted here, where Plaintiffs' claims are equally "riddled with individual inquiries." *Id.* at *9.[2]

## II. INDIVIDUAL QUESTIONS PREDOMINATE OVER ANY COMMON QUESTIONS

Resolution of each tenant's claim will require mostly—if not exclusively—individualized proof and analysis. Among other things, the trier of fact will have to consider and answer the following questions with regard to each and every person:

- Whether the tenant's apartment unit was affected by one or more of the various conditions alleged in the Amended Complaint (and, if so, the nature of such condition).

- Whether such conditions were caused by acts and omissions by a Defendant, by the tenant and his or her guests, or by some other intervening cause.

---

[2] To be clear, this motion is not brought pursuant to Rule 12(f). *See* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1383 (3d ed.) ("[C]ourts generally have not used doctrine applicable to traditional uses of Rule 12(f) in addressing motions to strike class allegations."); *see also Williams*, 2019 WL 5309628, at *4 n.5 (recognizing "an understanding among courts adjudicating putative class actions that defendants often label early attempts to thwart class claims as 'motions to strike' without intending to seek a Rule 12(f)-based ruling").

- Whether the tenant notified management personnel of the conditions and what was done in response.³

- Whether such conditions were sufficiently severe to constitute a breach of the lease agreement and/or the implied warranty of habitability.

- Whether and to what extent the tenant suffered injury and cognizable damages as a result of the alleged conditions.

Indeed, the Court already presciently articulated the individualized nature of the plaintiffs' claims when addressing CASA's lack of standing: "Such claims and the relief requested require individual participation. The damages sought 'are not common to the entire membership, nor shared by all in equal degree. . . . [B]oth the fact and extent of injury would require individualized proof.' Individual tenants will have individualized problems (or not) with their apartment." ECF No. 76 at 43 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)).

Meanwhile, the Amended Complaint does not identify any questions pertinent to Plaintiffs' state-law claims that are truly "common" to the proposed class for purposes of Rule 23. One purportedly "common" question is "[w]hether Defendants are in breach of contract for violating an implied warranty of habitability." Am. Compl. ¶ 250. But that question merely invites a legal conclusion, which in turn depends on a host of subsidiary, particularized questions (some of which are listed above) concerning each individual unit and each tenant's specific circumstances, actions, and/or inaction.

Plaintiffs may argue that Defendants allegedly engaged in a pattern of acts and omissions that affected all of the residents at BVS. For example, the Amended Complaint lists as a "common" question "[w]hether Defendants failed to perform adequate maintenance at BVS." *Id.*

---

³ Section 13-157(c) of the Prince George's County Code requires a tenant to report defective conditions that come to the tenant's attention. This is consistent with the requirements of common law as described in a restatement published by the American Law Institute. *See* Restatement (Second) of Property, Landlord & Tenant § 17.6 cmt. c (1977).

This is precisely the sort of "common" question that is easy to recite, but insufficient under Rule 23. Instead, the claims must depend on a common *contention* that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis added). A case like this, in which the supposedly "common" contentions are about "poor building management practices," is unsuited to class litigation. *See Cox v. Stone Ridge at Vinings, LLC*, 2014 WL 12663763, at *4 (N.D. Ga. Sept. 30, 2014) (citations omitted). That is because "class members would have to prove [f]acts relating to Defendants['] handling and maintenance of each of their individual apartments even if they were successful in presenting probative evidence of Defendants' deficient overall maintenance and building management practices." *Id.* at *5; *see also Akeem v. Dasmen Residential, LLC*, 2021 WL 4804049, at *5 (E.D. La. Oct. 14, 2021) (finding no commonality where tenants did not "sustain[] the same injuries by the same actions of the same defendants").

Plaintiffs' Amended Complaint illustrates the point. In describing the alleged inadequacy of the building maintenance, Plaintiffs claim that "the BVS Apartments are not inspected annually by Ross, but, instead, *Ross maintenance personnel visit the BVS apartments on an 'as needed' basis only*. As a result, *many* of the BVS apartments have not faced a habitability or safety inspection for years despite their dilapidated condition." Am. Compl. ¶ 146 (emphasis added). Plaintiffs go on to say that maintenance is only performed when "sufficient funds" are available. *Id.* ¶ 149. Accepting Plaintiffs' allegations as true, they describe a practice that, however deficient Plaintiffs think it is, has necessarily affected different units in different ways at different times, depending on individual assessments of the "need" in each case and what maintenance personnel did (or allegedly failed to do) to address that need on each occasion.

The lack of commonality is fatal to class certification. *See Ross-Randolph*, 2001 WL 36042162 at *7 (analysis under Rule 23(b) unnecessary if Rule 23(a) requirements not met) (citation omitted). But even if Plaintiffs could identify a truly "common" issue that meets the *Dukes* standard, it would not predominate over the individualized issues, which in all events will require the trier of fact to "examin[e] whether and to what extent each individual apartment unit was affected by the alleged water intrusion, mold, maintenance problems, or other disrepair, and the exact nature of each person's alleged injuries." *Akeem*, 2021 WL 4804049, at *8. Whatever narrow range of "common" issues arguably exists, it will inevitably be swamped by the overwhelming volume of one-by-one adjudications regarding both liability and damages. *See Bennett v. Donaldson Grp., L.L.C.*, 2022 WL 2981494, at *5 (Md. App. July 28, 2022) ("specific elements of each case would essentially engulf the 'common' issues" in warranty-of-habitability case, where each class member would "have to establish which portions of the unit were damaged, that repairs were not performed in a reasonable time, and that the breach caused actual damages") (internal citations and quotation marks omitted); *see also Morgan v. Carlyle Grp., Inc.*, 2007 WL 9780604, at **4-5 (D. Md. Jan. 5, 2007) (finding commonality and predominance requirements not met in putative class action by mobile-home tenants for breach of lease).

The few decisions allowing landlord-tenant disputes to proceed as class actions actually underscore why such treatment is not appropriate here. Those cases typically involve specific, clearly defined events or conditions—not allegations of generally deficient management practices that resulted in a variety of problems. *See, e.g.*, *Diamond v. New York City Hous. Auth.*, 179 A.D.3d 525, 527-28, 118 N.Y.S.3d 77, 79-80 (1st Dep't 2020) (allowing class certification where alleged deficiencies were limited to loss of heat and hot water, and each failed heating system served multiple housing units); *Claborne v. Hous. Auth. of New Orleans*,

165 So. 3d 268, 284 (La. App. 2015) (claims of all members "originate[d] from one common source; namely, plaintiffs' damages from mold exposure"), *writ denied*, 176 So. 3d 1039 (La. 2015).

One case cited by Plaintiffs (*see* ECF No. 86 at 5) is instructive. In *Baker*, there were two potential classes: (i) a "Riser Replacement Class" of tenants who endured a three-month pipe-replacement project that allegedly resulted in "intrusion, confusion, noise, dirt, and dust" and (ii) an "Admitted Outage Class" of people who were tenants during specific dates on which the defendants admitted building-wide losses of heat and hot water. *See Baker v. Equity Residential Mgmt., L.L.C.*, 390 F. Supp. 3d 246, 254-56, 260-62 (D. Mass. 2019). The court found a lack of predominance in the Riser Replacement Class and denied certification because "the project appears to have affected each apartment in a unique way" and "[a]nswering the individual questions concerning the conditions in each apartment and the tenant's ability to use his or her space would overwhelm any common questions about the nature of the project and [the defendant's] justification for it." *Id.* at 261. On the other hand, the court only allowed certification of a modified version of the Admitted Outage Class, limited to tenants who resided at the complex "on a day with a not insubstantial outage of heat or hot water" because "[s]uch an outage likely affected the conditions in each apartment similarly." *Id.* at 262. Here, the panoply of conditions and the generalized nature of the mismanagement alleged in the Amended Complaint make any proposed class even less cohesive than the "Riser Replacement Class" in *Baker*.

For the foregoing reasons, it is apparent on the face of the Amended Complaint that Rule 23(b)(3) does not apply, and no amount of discovery will create a different result. Assuming

everything the Plaintiffs have pleaded is true, those very allegations show why common issues will not predominate in this case.

### III.  THERE IS NO OTHER BASIS FOR CLASS CERTIFICATION

As discussed above, the absence of genuinely "common" issues forecloses class certification and renders unnecessary an analysis of Rule 23(b). But beyond the lack of predominance under Rule 23(b)(3), discussed above, the remaining prongs of Rule 23(b) also are inapplicable here.

Rule 23(b)(1) does not apply to this case. Plaintiffs have alluded to the possibility of asserting a "limited fund" theory pursuant to Rule 23(b)(1)(B). *See* ECF No. 86 at 6. A "limited fund" exists when "numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs have not pleaded adequate facts to sustain such a theory, which, in any event, would be unavailing. The Supreme Court has explained the origins of the "limited fund" rationale in detail and has discouraged expansions of its use beyond those historical antecedents, such as to "aggregate unliquidated tort claims." *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 843 (1999). Plaintiffs have identified no "fund" in this case, much less alleged facts showing that it is a "limited fund" consistent with the principles described in *Ortiz*. *See id.*

Finally, Rule 23(b)(2) applies only in cases where plaintiffs seek declaratory or injunctive relief. But Plaintiffs do not seek such relief in connection with the counts that remain in the case and have conceded that Defendants no longer own or control the BVS Properties following a May 2022 sale. *See* ECF No. 71 at 1-2; ECF No. 75; ECF No. 86. Thus, even if Plaintiffs sought such relief, it could not be granted given the change in the circumstances.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an Order pursuant to Rules 23(c)(1) and 23(d)(1)(D) determining that a class action is unwarranted and requiring that the pleadings be amended to eliminate allegations about absent persons.

Dated: November 16, 2022

Respectfully submitted,

*/s/ Ray D. McKenzie*
Ray McKenzie (Bar Number 21069)
**WTAII PLLC**
1101 Wilson Boulevard, Suite 968
Arlington, VA 22209
(202) 688-3150 (Telephone)
(202) 869-1882 (Facsimile)
ray.mckenzie@wtaii.com

*/s/ Peter W. Tomlinson*
Peter W. Tomlinson (pro hac vice)
Muhammad U. Faridi (pro hac vice)
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000 (Telephone)
(212) 336-2222 (Facsimile)
pwtomlinson@pbwt.com
mfaridi@pbwt.com

*Counsel for Arbor Realty Trust, Inc., Arbor Realty Limited Partnership, Arbor Realty SR, Inc.*

*/s/ Amanda R. Lawrence*
Amanda R. Lawrence (*pro hac vice*)
John B. Williams III (Bar Number 20916)
Sarah B. Meehan (Bar Number 30428)
**BUCKLEY LLP**
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 349-8000 (Telephone)
(202) 349-8080 (Facsimile)
smeehan@buckleyfirm.com
alawrence@buckleyfirm.com
jwilliams@buckleyfirm.com

>Scott T. Sakiyama (*pro hac vice*)
>**BUCKLEY LLP**
>353 N. Clark St., Suite 3600
>Chicago, IL 60654
>(312) 924-9800 (Telephone)
>(312) 924-9899 (Facsimile)
>ssakiyama@buckleyfirm.com
>
>*Counsel for Defendants,*
>*Bedford United, LLC*
>*Victoria United, LLC*
>*Hyattsville United, LLC*
>*Arbor Management Acquisition Company, LLC*
>
>*/s/ Megan T. Mantzavinos*
>Megan T. Mantzavinos (Bar Number 16416)
>**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**
>600 Baltimore Avenue, #305
>Towson, MD 21204
>(410) 339-6880 (Telephone)
>(410) 339-6881 (Facsimile)
>mmantzavinos@moodklaw.com
>
>*Counsel for Realty Management Services, Inc.*