**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CASA DE MARYLAND, INC., et al, | |
| Plaintiffs, | |
| v. | Civ. Action No.: 8:21-CV-01778-DKC |
| ARBOR REALTY TRUST, INC., et al, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS CLASS-RELATED ALLEGATIONS**

## TABLE OF CONTENTS

Table of Contents ..................................................................................................................... i

Table of Authorities ................................................................................................................ ii

I.      Introduction ................................................................................................................ 1

II.     Legal Standard ............................................................................................................ 2

III.    Argument .................................................................................................................... 3

        A. Defendants' motion is waived as it is untimely and in violation of the Court's Scheduling
           Order ................................................................................................................... 3

        B. A Substantial Body of Case Law Certifying Class Actions Proves That Plaintiffs' Claims Are
           Not "Impossible" To Certify ............................................................................... 6

        C. The Amended Complaint Pleads Plausible Common Questions Among the Proposed Class
           Members That Overshadow Individual Issues, especially as to a Liability Class ......... 9

                1.   Multiple Common Questions of Fact and Law Predominate over any
                     Individualized Questions ..................................................................... 9

                2.   Maryland law compels measuring habitability on a pass-fail basis ...................... 12

                3.   Plaintiffs' use of robust representative sampling will demonstrate commonality
                     and predominance .............................................................................. 13

        D. Notice is a common question that predominates because Maryland law provides for
           constructive notice and is ripe for issue class treatment ................................................ 14

                1.   Maryland law holds landlords responsible for constructive notice of defects.... 15

                2.   Constructive notice can be established class-wide using common evidence gained
                     in discovery ......................................................................................... 15

                3.   The Prince George's County Code does not create individual issues because it
                     does not preclude Plaintiffs' recovery under a constructive notice theory. ........ 16

        E. The Amended Complaint Sufficiently Pled Rule 23(b)(1) and Rule 23(b)(2) is Moot ....... 16

IV.     Conclusion ............................................................................................................... 17

Certificate of Service ............................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**

*Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003) .............................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 2

*Baker v. Equity Residential Mgmt., L.L.C.,* 390 F. Supp. 3d 246 (D. Mass. 2019) ....................... 7

*Banks v. Wet Dog, Inc.*, 2014 WL 4271153 (D. Md. Aug. 28, 2014) ............................................. 3

*Bennett v. Donaldson Grp., L.L.C.*, 2022 WL 2981494 (Md. App. July 28, 2022) ...................... 13

*Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607 (W.D. Wis. 2003) ........................................ 3

*Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 835 A.2d 616 (2003) ........................................... 15

*Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484 (D.S.C. 1991) ...................................................... 3

*Claborne v. Hous. Auth. of New Orleans*, 165 So. 3d 268 (La. Ct. App. 2015) ............................ 8

*Cnty. of Dorchester v. AT&T Corp.*, 407 F. Supp. 3d 561 (D.S.C. 2019) ................................... 3

*Diamond v. New York City Hous. Auth.*, 197 AA.D.3d 525, 118 N.Y.S.3d 77 (1st Dep't 2020) .............. 8

*Dyer v. Air Methods Corps*, No. 9:20-cv-2309-DCN (D.S.C. May 7, 2021) ................................ 3

*Edmond v. City of Chi.*, No. 17-cv-04858 (N.D. Ill. Nov. 15, 2018) ........................................... 4

*Equity Residential Prop. v. Yates*, 910 So. 2d 401 (Fla. Dist. Ct. App. 2005) ............................ 6

*Golt v. Phillips*, 308 Md. 1, 517 A.2d 328 (1986) ..................................................................... 12

*Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698 (4th Cir. 2011) .............................................. 9

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) ........................................... 10

*Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259 (4th Cir. 1981) ...................................................................................................................... 3

*Lengen v. Gen. Mills, Inc.*, 185 F. Supp. 3d 1213 (E.D. Cal. 2016) ............................................ 4

*Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405 (6th Cir. 2018) ............................... 15

*McDaniel v. Baranowski*, 419 Md. 560, 19 A.3d 927 (2011) ...................................................... 12

*Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017) ......................................... 10

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295 (1999) ..................................................... 17

*Peviani v. Arbors at Cal. Oaks Prop. Owner, LLC.*, 62 Cal. App. 5th 874 (Cal. Ct. App. 2021).............. 6, 7

*Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 645 A.2d 1147 (1994) .................................. 15

*Roberts v. Ocean Prime, LLC*, 49 N.Y.S.3d 666 (N.Y. App. Div. 2017)........................................ 6

*Scott v. Gage*, 2012 WL 13103179 (M.D. Fla. Jan. 19, 2012) .................................................... 5

*Sharfman v. Premier Medical, Inc.*, 2021 WL 6884683 (M.D. Fla. 2021)........................................ 4

*Strange v. Norfolk & W. Ry. Co.*, 809 F.2d 786 (4th Cir. 1987) (unpublished table decision) ................. 4

*Techer v. Roberts-Harris*, 83 F.R.D. 124 (D. Conn. 1979)............................................................... 8

*Thompson v. Procter & Gamble Co.*, No. 18-cv-60107-GAYLES/SELTZER (S.D. Fla. Oct. 19, 2018). 4

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 136 S. Ct. 1036 (2016)........................................ 13

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................. 11

*Williams v. Hous. Auth.*, 361 Md. 143, 760 A.2d 697 (2000) .................................................. 12

*Williams v. Potomac Fam. Dining Grp. Operating Co., LLC*, No. GJH-19-1780, 2019 WL 5309628 (D. Md. Oct. 21, 2019) ..................................................................................................... 2, 4

*Wright v. Family Dollar, Inc.*, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ................................. 4

**Statutes**

Fed. R. Civ. P. 12(f) ................................................................................................... 2

Fed. R. Civ. P. 12(f)(2)................................................................................................ 4

Fed. R. Civ. P. 12(g)(2)............................................................................................... 4

Fed. R. Civ. P. 16(b)(4)............................................................................................... 4

Fed. R. Civ. P. 23(a)(2)............................................................................................... 9

Fed. R. Civ. P. 23(b)(1)............................................................................................... 16

Fed. R. Civ. P. 23(b)(2)............................................................................................... 17

Prince George's County Landlord-Tenant Regulations Section 13-153 ................................. 9

Prince George's County Landlord-Tenant Regulations Section 13-157 .................................................. 16

Prince George's County Landlord-Tenant Regulations Section 13-180 .................................................. 16

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383 (3d ed. 2005).... 2

7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005)............ 11

Black's Law Dictionary 779 (9th ed. 2009) ............................................................................................... 11

Manual of Complex Litigation §11.493 (4th ed. 2004).............................................................................. 8

Restatement (Second) of Property, Landlord & Tenant § 17.6 cmt. c (1977)........................................ 13

## I.   __INTRODUCTION__

Defendants do not want the truth discovered.  In their latest attempt to obfuscate the fact of years of disregard for people's safety in furtherance of their own profits, Defendants seek a highly unusual motion to strike class allegations before the Court can hear the facts developed from any class discovery.

Bedford United and Victoria United ("BVS") is a collection of homes that are wholly unsuitable for human habitation. ECF 43 ¶¶ 1–3.  Preliminary inspection of these units reveals that multiple sanitation and structural deficiencies are undermining residents' ability to live without serious threat of substantial harm to the occupants of any given apartment. Expert Report of Jon Tung, Dec. 8, 2022, "Ex. 1"; Expert Report of Joshua Julius, Dec. 8, 2022, "Ex. 2." These defects form the basis for Plaintiffs' class allegations for breach of contract and breach of the warranty of habitability against the Defendants.

Defendants fail to fulfill the high standard for early dismissal because their efforts are untimely and without merit. Motions to dismiss class allegations under Rule 23 are used at the pleadings stage to test the legal sufficiency of a class action before the case proceeds to discovery. And yet, none of the cases concerning the class-ability of claims against a landlord were dismissed in the way Defendants propose. That is because, at this stage, Plaintiffs are not done building their case and have pled plausible claims for class relief.

Defendants contend that the experiences at BVS are distinct and that the tenants cannot unite because the Defendants' failures to maintain these units have had differing specific impacts on the Plaintiffs.  But Defendants' common course of conduct towards all proposed class members has failed to provide even the basic level of care required under Maryland law or standards of good conscience rendering them in breach of contract and the implied warranty of habitability.

Plaintiffs have been diligently engaging in discovery and began inspecting certain apartments to which they were able to gain proper access.  From the initial inspections, Plaintiffs have developed a method of evaluating these units on a pass-fail system using structural engineers and certified industrial hygienists. Maryland case law on the implied warranty of habitability and breach of contract in the residential context both support evaluating units based on such a "pass-fail" metric. With the benefit of further discovery, Plaintiffs plan to use this method on a statistically significant and randomly selected number of BVS units to model the conditions of the units class-wide for the 589 units at BVS. The Supreme Court of the United States has approved of representative sampling in the class action context. This method will reveal that the conditions at BVS were so pervasive that the common questions of fact and law greatly overwhelm any individual issues among the proposed class members.

For these reasons, Defendants' Motion should be denied.

## II.   <u>LEGAL STANDARD</u>

Assuming Defendants' motion was procedurally proper and not already waived, they have failed to meet the high burden to strike class allegations. When Defendants file *pre-discovery* challenges to class certification "based on the allegations in the complaint only, the standard of review is the same as a motion to dismiss for failure to state a claim." *Williams v. Potomac Fam. Dining Grp. Operating Co., LLC*, No. GJH-19-1780, 2019 WL 5309628, at *5 (D. Md. Oct. 21, 2019) (internal citation omitted). The standard of review for failure to state a claim only requires that the complaint "contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at *5 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court imposes a "relatively low bar to proceed to discovery" because "a ruling on class certification should normally be based on more information than the complaint itself affords." *Williams*, 2019 WL 5309268 at *5. The Court may also consider matters

outside the pleadings, including affidavits. *Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 614 (W.D. Wis. 2003).

At this stage, Defendants must demonstrate that class certification of the claims alleged is "impossible." As the District Court for the District of South Carolina cautioned,

> In a motion to dismiss class allegations, the defendants have the burden of demonstrating from the face of the plaintiffs' complaint that it will be **impossible** to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove, analogous to the standard of review for motions brought pursuant to Rule 12(b)(6). A court may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination.

*Cnty. of Dorchester v. AT&T Corp.*, 407 F. Supp. 3d 561, 565–66 (D.S.C. 2019) (collecting cases) (internal quotations omitted and emphasis added). "Put another way, striking class allegations prior to class discovery is inappropriate where 'Rule 23 could be met.'" *Dyer v. Air Methods Corps*, No. 9:20-cv-2309-DCN, at *5 (D.S.C. May 7, 2021) (*quoting Banks v. Wet Dog, Inc.*, 2014 WL 4271153, at *4 (D. Md. Aug. 28, 2014)). This is a "heavy burden." *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991). The Fourth Circuit has bluntly stated "[i]t is seldom, if ever, possible to resolve class representation questions from the pleadings." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981).

Defendants cannot meet their burden.

## III.   ARGUMENT

### A.   Defendants' motion is waived as it is untimely and in violation of the Court's Scheduling Order

Though they title their motion as one under Rule 23, Defendants seek to strike allegations in a pleading. While neither the Fourth Circuit nor the District of Maryland have definitively chosen a path for a motion of this type, those jurisdictions that permit motions to dismiss class allegations for issues related to the pleadings have articulated that the "sensible approach is to permit class allegations to be stricken at the *pleading* stage." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1383, n. 7.60–7.85 (3d ed. 2005) (identifying the circuit split over the appropriate standard for motions to strike class allegations). Several jurisdictions analyze motions to dismiss class allegations only under Rule 12(f) because "[t]he sole procedural vehicle in the Federal Rules to strike portions of pleadings is Rule 12(f)." *Thompson v. Procter & Gamble Co.*, No. 18-cv-60107-GAYLES/SELTZER, at *9 (S.D. Fla. Oct. 19, 2018). Some jurisdictions authorize the motion under Rule 23 when filed alongside a Rule 12 motion before Plaintiff moves for certification. *Edmond v. City of Chi.*, No. 17-cv-04858, at *30 (N.D. Ill. Nov. 15, 2018) ("If class discovery is needed, a motion to strike should ordinarily be denied, but 'when the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained.'") (*quoting Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010)). And others do not permit the motion at any point. *Lengen v. Gen. Mills, Inc.*, 185 F. Supp. 3d 1213 (E.D. Cal. 2016).

Yet, Defendants suggest the Court create a wholly new path, later than ever permitted before: allow Defendants to strike class allegations after an initial Rule 12 motion was filed and decided, all Defendants answered, and the parties have begun discovery. Among the cases Defendants use to support their claim that their motion is "frequently" used are two unpublished cases, neither of which involve a motion to strike class allegations made during discovery after an earlier Rule 12 motion. *Strange v. Norfolk & W. Ry. Co.*, 809 F.2d 786 *3 (4th Cir. 1987) (unpublished table decision); *Williams v. Potomac Family Dining Grp. Operating Co.*, Case No.: GJH-19-1780, at *11 (D. Md. Oct. 21, 2019) (motion raised "pre-discovery").

Defendants offer no reason why these issues could not have been raised in their earlier Rule 12 motion. *See e.g., Sharfman v. Premier Medical, Inc.*, 2021 WL 6884683, at *3–4 (M.D. Fla. 2021) ("Defendant was therefore required to join the present Rule 12(f) motion with its previous Rule 12 motion, and Defendant makes no argument as to why he could not have included the issues raised in the present motion with his previous Rule 12 motion) (*citing Scott v. Gage*, 2012 WL 13103179, at *1

(M.D. Fla. Jan. 19, 2012) (recommending denial of motion to strike as untimely in part because defendants filed a motion to dismiss and a separate motion to strike, thereby violating Rule 12(g)).

Defendants each filed Answers on October 7, 2022.  ECF 81–83.  By failing to file a motion to strike prior to that, they each waived the defense under Ruler 12(f),

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (2) on motion made by a party either **before responding to the pleading** or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f)(2) (emphasis added).  With their answers, they waived any motion to strike any portion of Plaintiffs' Amended Complaint, including the class allegations.  Further, Defendants are not permitted to file two Rule 12 motions:

> *Limitation on Further Motions.* Except as provided in <u>Rule 12(h)(2)</u> or <u>(3)</u>, a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g)(2).

Further, even if the motion is made under Rule 23, such a motion related solely to the pleadings must have been made at the pleadings stage.  By failing to raise this issue prior to pleading, the defense as to the allegations was waived.

Finally, Plaintiffs note that the Amended Scheduling Order was entered pursuant to a ***Joint*** Status Report, and it Orders that Plaintiffs may move for class certification on or before March 27, 2023.  Thus, Defendants' attempt to modify the scheduling order is improper under Rule 16; and no good cause has been shown for why Plaintiffs may not move for class certification pursuant to the Court's Order.  Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  Defendants' motion now seeks to strike that deadline, to deny Plaintiffs the discovery which the Court's Scheduling Order contemplated, and to install a new scheduling order that Plaintiffs may not move for class certification by March 27, 2023.

**B.      A Substantial Body of Case Law Certifying Class Actions Proves That Plaintiffs' Claims Are Not "Impossible" To Certify**

Multiple cases exist involving failure-to-maintain claims brought against a landlord. These actions are not limited to one-time events and include broad deficiencies in the landlord's duty that resulted in disparate specific deficiencies that yielded broadly defined "uninhabitable" housing.

In one case, a court certified a class of 400 apartments and 15 floors of commercial tenants that asserted claims for a breach of the warranty of implied habitability for a landlord's negligent failure to secure the building from Superstorm Sandy. *Roberts v. Ocean Prime, LLC*, 49 N.Y.S.3d 666, 668 (N.Y. App. Div. 2017). The court found that "differences in proof concerning the applicability of the warranty of habitability … as between residential tenants and commercial tenants is insufficient to overcome the significant common questions." *Id.*

Another court certified a liability class of tenants despite "the landlord's contention that the need for individualized proof to establish damages necessarily undermined commonality, typicality, predominance, and superiority." *Equity Residential Prop. v. Yates*, 910 So. 2d 401, 403–04 (Fla. Dist. Ct. App. 2005). The court explained that "[f]or purposes of class certification, though, liability — not damages — is the focus of the inquiry. *Id.*; *see also id.* ("In this case, we find no abuse of discretion in the trial court's certification of a class action on behalf of the former tenants and rejection of any claim that individualized issues regarding damages would so overwhelm the proceedings that a class action was untenable.").

In one case, the court certified class action for "broad[] habitability problems [including] trash, feces, and pests in the common areas of the property, and the dumpsters" for a class of 450 apartments. *Peviani v. Arbors at Cal. Oaks Prop. Owner, LLC.*, 62 Cal. App. 5th 874, 895 (Cal. Ct. App. 2021). Plaintiffs have made similar allegations of the common areas here, including pictures demonstrating widespread failure to remove trash.  In *Peviani*, the defendants similarly argued that the class could not be certified because "each class member would need to establish the existence of the

defective conditions and the manner and extent to which the condition(s) impacted the individual class member." *Id.* at 886. Yet, on appeal, the California Court of Appeals explained that even though there were minor distinctions between the units and the residents' experiences of the trash, feces, rodents, and other issues affecting the health and safety of the residents, that the "substantial evidence" from "nearly every [residents'] declaration, the declarants cited a combination" of the alleged issues affecting their health or safety. *Id.* at 891. Importantly, the Plaintiffs in *Peviani* did not attempt to conduct expert inspections of the common area to determine if the conditions affected residents' health or safety. The court primarily relied on declarations from the residents. *Id.* It is legally plausible to have a class action for an implied warranty of habitability claim even without the robust analysis that Plaintiffs intend to perform and rely on in their forthcoming motion for class certification.

Similarly, The United States District Court for the District of Massachusetts certified claims for breach of the implied warranty of habitability of an "Admitted Outages Class" for outages of heat or hot water in violation of the sanitary code. *Baker v. Equity Residential Mgmt., L.L.C.,* 390 F. Supp. 3d 246, 261–62 (D. Mass. 2019). The Court reasoned that while a claim for breach of the covenant of quiet enjoyment would depend on individual tenants' use of the apartment, the same was not true for their claims for breach of the warranty of habitability "[b]ecause a habitability claim asks only about the conditions in an apartment, not about the tenant's use of the apartment, Plaintiffs can make their case for breach of the implied warranty of habitability for substantial outages using common proof."[1] *Id.*

Courts have also found predominance in class actions against state and local housing authorities. *Claborne v. Hous. Auth. of New Orleans*, 165 So. 3d 268, 284 (La. Ct. App. 2015); *Diamond v.*

---

[1] Defendants point to the *Baker* court's rejection of a "Riser Replacement Class" under predominance analysis suggesting that the class issues affected each apartment in a unique way. ECF No. 89-1, at 11 of 14). But the *Baker* plaintiffs' Riser Replacement Class was based on the covenant of quiet enjoyment, not the warranty of habitability. *Baker*, 390 F. Supp. at 260.

*New York City Hous. Auth.*, 197 AA.D.3d 525, 118 N.Y.S.3d 77 (1st Dep't 2020). In *Claborne*, the court held that the housing authority's liability presented a common issue that predominated over individual issues because "[t]he claims of all class members **originate from one common source**; namely, plaintiffs' damages from mold exposure **due to defendants' acts or omissions**." *Claborne*, 165 So. 3d at 284. In *Diamond*, the court certified a class of tenants for "system wide" deficiencies, evidenced by the finding that "80% of its housing units experienced heat and/or hot water outages" indicating that "much of the proof will likely concern NYCHA's overall deficiencies, rather than the breakdown of individual heating systems in individual buildings." *Diamond*, 197 AA.D.3d at 527.

Courts have also certified actions in the context of federal housing for failure to maintain public housing under the warranty of implied habitability. The District Court for the District of Connecticut provisionally certified a class of seventy-five tenants with HUD leases at a federally owned low-income housing project to evaluate whether HUD has breached the warranty of habitability. *Techer v. Roberts-Harris*, 83 F.R.D. 124, 131 (D. Conn. 1979). The court determined that the defendants breached the implied warranty of habitability because of the "[t]he dampness resulting from the constant leakage, the danger presented by rodent infestation and live electrical wires as well as the garbage-filled apartments [that] comprise[d] only some of the adverse conditions that materially threaten[ed] the health and welfare of the plaintiffs." *Id.* at 127. This court also solely relied on the plaintiffs' testimony to certify the class, finding that "plaintiffs' testimony concerning the conditions at [the housing complex] was uncontroverted and the photographs submitted into evidence depicted vividly the complete disrepair." *Id.* at n. 2.

Thus, Plaintiffs' claims are not impossible to prove because other classes have passed certification under similar theories of liability.

**C.    The Amended Complaint Pleads Plausible Common Questions Among the Proposed Class Members That Overshadow Individual Issues, especially as to a Liability Class**

*1.   Multiple Common Questions of Fact and Law Predominate over any Individualized Questions*

Defendants prematurely and erroneously suggest that Plaintiffs cannot obtain class certification on the basis of commonality and predominance.  ECF No. 89-1 § II.  Commonality is established when a plaintiff's claims have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The class members' claims need only depend "upon a common contention that is capable of class-wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

 "[T]o satisfy Rule 23(b)(3), common questions must predominate over any questions affecting only individual members; such that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701 (4th Cir. 2011) (internal quotations and citations omitted).

Here, Defendants suggest that there are five individual issues, but these five issues fall within six issues that are actually common to the class. The first three common issues were pled in the Amended Complaint and the last two were proposed by Defendants as individual issues:

1.    Whether Defendants are in breach of contract for violating an implied warranty of habitability;

2.    Whether Defendants are in breach of the implied warranty of habitability for violation of local codes and ordinances including, but not limited to, Sec. 13-153 of the Prince George's County Code of Ordinances;

3.    Whether Defendants failed to perform adequate maintenance at BVS;

4.    If the issues within the units are the product of years of neglect and Defendants failure to provide reasonable maintenance.

5.    If the conditions at BVS are sufficiently severe to consider the entire complex uninhabitable under the Prince George's County Housing Code.

6.      If the conditions persisted for a long enough period and were so readily apparent that the Defendants had constructive notice.

It cannot be deemed impossible that after the record is developed Plaintiffs may be able to show that these common questions predominate over any individual distinctions.

Further, federal District Courts have routinely held that where a "common course of conduct" toward the proposed class members has been alleged, class certification is appropriate because that conduct predominates over individual disparities in outcome or damages.  In *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017), the district court considered whether a dam collapse caused distinct damages throughout the proposed class could nevertheless receive class certification. The court reasoned that,

> Each of these claims is based on Plaintiffs' contention that Defendant did not maintain or abandon the Dam properly, which led to its failure during the Storm, causing harm to the subject neighborhood and Plaintiffs' homes as a result. Thus, the core factual and legal issues with respect to liability in this case—whether or not Defendant's conduct caused the Dam to fail, whether or not the Dam's failure caused flooding in the subject neighborhood, and, if so, to what extent Defendant should be held liable— are resolvable by proof that is common to all class members.

*Id.* at 1308–09.  Obviously not every home in the *Navelski* class area suffered the same quality or extent of damages.  However, the *Navelski* Court relied upon the well-established rule in class actions that "[t]he need for individualized damages determinations, however, does not prevent a finding that common issues predominate." *Id.* at 1309 (*quoting Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003)); *see also*, *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003) ("Courts have routinely rejected this argument, concluding, as we have in previous cases, that the need for individualized proof of damages alone will *not* defeat class certification.") (citations omitted) (emphasis in original).  Here, discovery will show that Defendants maintained a ***policy*** of maintenance (to not maintain the property) that applied to all proposed class members equally.  Similarly, the Prince George's County Code provides all of the proposed class members the same right

to a safe and habitable living environment, and Defendants have violated this under their policy which is, again, equally an imposition for the benefit of all proposed class members. Therefore, the possible fact that different homes in BVS may have suffered a different measure of damages, like those in *Navelski*, does not render class certification "impossible."

Finally, Defendants try to misappropriate the Court's language regarding Plaintiff Casa de Maryland, Inc.'s standing to pursue claims for its members to the Rule 23 analysis at issue now. *See* ECF No. 89-1, at 9 of 18 (quoting ECF No. 76 at 43). The Court did not prejudge that Class Certification was impossible or even inappropriate in this case. Instead, the Court was finding in the context of Casa's request for organizational standing that "[t]he damages sought are not common *to the entire membership*…". ECF No. 76 at 43 of 62 (*quoting Warth v. Seldin*, 422 U.S. 490, 515 (1975)). While ***all the members of CASA*** may not have suffered the same harm or damages, the class is not defined as "the members of CASA." In fact, membership in CASA is wholly irrelevant to the class definition. But the proposed class members' claims ***do*** predominate over any individualized issues pursuant to the case law on class certification (*i.e.* the applicable case law to this question), and class certification is possible, appropriate and granted in cases like this. *Supra.*

Plainly the Court was not ruling that class certification was impossible. At most, the Court was indicating that damages may be individualized amongst the tenants. To deny class certification because damages are distinct would be in contravention of well-established case law that individualized questions of damages do not predominate as a matter of law. *Supra; see also*, *Bouaphakeo*, 577 U.S. at 453–54 (*quoting* 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, 123–24 (3d ed. 2005) (footnotes omitted) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'")

2.   *Maryland law compels measuring habitability on a pass-fail basis*

Though the Court indicated that tenants may have different quality of damages in finding a lack of organizational standing, distinctions in the type of damages—mold, electrical, structural, etc.— is not a bar to class certification so long as the apartment can said to be uninhabitable.  Under Maryland law, "Habitability" is described as "[t]he condition of a building in which inhabitants can live free of serious defects that might harm health and safety." *McDaniel v. Baranowski*, 419 Md. 560, 565, n. 5, 19 A.3d 927, 930 (2011) (*quoting* Black's Law Dictionary 779 (9th ed. 2009)); *see also Williams v. Hous. Auth.*, 361 Md. 143, 146, 760 A.2d 697, 698 (2000) (describing the warranty of habitability as an obligation of the landlord "to repair and eliminate conditions and defects that constitute, or, if uncorrected, would constitute, a serious and substantial threat to the life, health, or safety of the occupants").  Lack of maintenance may have rendered each of the apartments uninhabitable based on specific findings, but importantly is the simple fact that each has been rendered uninhabitable.

Perceived distinctions among tenants for the quality of their unit would become irrelevant under a Maryland law's pass-fail evaluation because the actual damages recoverable to a tenant beyond the full rent paid for a fully uninhabitable unit regardless of the extent of "uninhabitability." *Williams v. Hous. Auth. of Baltimore City*, 361 Md. 143 (2000) (Damages "are limited to the difference between the amount of rent paid or owed and the reasonable rental value of the dwelling in its deteriorated condition."); *McDaniel*, 19 A.3d at 943.[2]  For class certification, there would be no individualized issue among two class members whom both resided in units that were found to be uninhabitable because the reasonable rental value of an uninhabitable unit is still zero. *See Bennett v. Donaldson Grp., L.L.C.*,

---

[2] *See also, Golt v. Phillips*, 308 Md. 1, 13, 517 A.2d 328, 334 (1986) (finding that the damages for a unit that was uninhabitable under a Maryland Consumer Protection Act claim where a tenant occupied the unlicensed unit were one hundred percent of the rent paid).

2022 WL 2981494 *9 (Md. App. July 28, 2022).[3] Thus, under Maryland law, for claims for breach of contract and for the breach of the warranty of habitability for a landlord's failure to maintain a unit, Maryland law is consistent with Plaintiffs' plan to measure class units on a pass-fail basis and Plaintiffs' have pled a legally plausible class claim.

       3.   *Plaintiffs' use of robust representative sampling will demonstrate commonality and predominance*

The Supreme Court has recognized the validity of representative sampling in establishing predominance and class certification: "[i]n many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 446, 136 S. Ct. 1036, 1046 (2016) (*quoting* Manual of Complex Litigation §11.493 (4th ed. 2004)). When Plaintiffs depend on representative sampling to establish the elements of their claim "that evidence cannot be deemed improper merely because the claim is brought on behalf of a class." *Bouaphakeo*, 577 U.S. at 446.

As the supporting affidavits state, the preliminary inspection of twenty-one units at BVS establishes that years of neglect and failures to provide basic maintenance show a common trend among units. Of the units inspected, every single unit was deemed unfit for human occupation because they contained multiple issues, which constituted serious and substantial threats to the life, health, or safety of the occupants. Ex. 1; Ex. 2. But without random sampling or complete sampling, Plaintiffs admittedly cannot properly evaluate the extent of habitability class-wide. Thus, Plaintiffs have also retained a statistician who has determined that after selecting a random sample of the units at BVS, a statistically significant representative sample can evaluate the conditions at BVS to determine what

---

[3] Note that in *Bennett*, the Maryland Court of Special Appeals evaluated a similar issue under an abuse of discretion standard of review when declining to extend the holdings of prior Maryland cases involving total breach of the warranty of habitability cases for an unlicensed unit but did not hold that, as a matter of law, that an expert could find that an uninhabitable unit has a value of zero. *Bennett, L.L.C.*, 2022 WL 2981494.

percentage of the units have been uninhabitable. Expert Report of Dr. Anita Singh, (to be filed Dec. 16, 2022).[4]

Even without representative sampling, Plaintiffs could feasibly inspect every single apartment at BVS to determine the class-wide impact. Plaintiffs, therefore, have a good faith reason to believe that 1) discovery can support their claim that Defendants, through a policy of financialization failed for several years to properly maintain the units at BVS, 2) representative sampling will reveal that a statistically significant sample proves this contention, and 3) the claims could also be established without representative sampling through comprehensive and objective testing.

Defendants claim that, as a matter of law, the policy to inspect the units only on an "as needed basis" creates individualized issues because some units would be affected by this policy in different ways. Yet, Defendants assume that such maintenance returned these units to a habitable condition. To the contrary, Plaintiffs' Amended Complaint did not plead that Defendants' sparse maintenance ever returned any unit at BVS to a state of habitability. ECF No. 43 at ¶ 149 (the relationship between Defendant Ross and the Arbor Family Defendants "prevents even routine maintenance from being undertaken."). Therefore, the Defendants' "maintenance" argument is a strawman.

### D. Notice is a common question that predominates because Maryland law provides for constructive notice and is ripe for issue class treatment

Plaintiffs also have pled that an issue class under Rule 23(c)(4) may be appropriate. One of those issues particularly apt for class certification is whether Defendants had notice of defects at the BVS property because the entire property was in disrepair. Such issue classes are appropriate even if liability may not be determined on a class-wide basis. Because Defendants have not identified any individual issues of notice, the issue of notice may be determined class-wide. See Martin v. Behr

---

[4] Dr. Singh became subject to an illness and also family obligations that rendered the completion of a declaration by the filing of this Opposition untenable. Rather than seek an extension of this opposition to provide Dr. Singh's declaration, Plaintiffs are concurrently seeking leave to supplement this opposition with a short declaration from her.

Dayton Thermal Prods. LLC, 896 F.3d 405, 414 (6th Cir. 2018) ("Nor have Defendants identified any individualized inquiries that outweigh the common questions prevalent within each issue.")

      1.   *Maryland law holds landlords responsible for constructive notice of defects.*

In Maryland, landlords are liable under the warranty of habitability "for the conditions of which he is aware, or of which he could have known in the exercise of reasonable care." *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 671, 645 A.2d 1147, 1152 (1994) *overruled on other grounds by Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 835 A.2d 616 (2003).[5] In some situations, such as actions against landlords for violations of a county housing code, the Maryland Court of Appeals has suggested that even this notice requirement is not required "to establish a prima facie case that the landlord was negligent." *Brooks*, 835 A.2d at 625. Regardless of whether this notice requirement exists here, Plaintiffs have met their burden of pleading this requirement in the Amended Complaint. ECF No. 43 at ¶¶ 103–08, 301, 314.

      2.   *Constructive notice can be established class-wide using common evidence gained in discovery.*

Defendants constructive notice could be established class-wide because discovery concerning Defendants' internal corporate knowledge of the conditions at BVS could also be established through a single action, rather than through multiple trials that would be duplicitous and lead to inconsistent outcomes. This is consistent with Plaintiffs' allegations that BVS was part of Defendants' policies of financialization and divestment and that BVS remained on the Prince George's County "distressed properties" list for the entire period that the Defendants' owned BVS. ECF No. 43 at ¶¶ 88, 109, 122, 148–49, 196, 198–99.

---

[5] *See also,* Restatement (Second) of Property, Landlord & Tenant § 17.6 cmt. c (1977) ("Where the landlord is able to discover the condition by the exercise of reasonable care, he is subject to liability after he has had a reasonable opportunity to discover the condition and to remedy it.").

3.  *The Prince George's County Code does not create individual issues because it does not preclude Plaintiffs' recovery under a constructive notice theory.*

Defendants also identify Section 13-157 of the Prince George's County Landlord-Tenant Regulations. Under Section 13-157, while discussing the conditions for imposing a security deposit, it states that,

(c) Any defective condition within the leased dwelling unit which comes to the tenant's attention, *which he has reason to believe is unknown to the landlord*, shall be reported to the landlord within forty-eight (48) hours. Where the defective condition may cause serious damage to person or property, it shall be reported to the landlord immediately.

This code is consistent with Maryland law that provides for constructive notice as a method of proof for breach of contract and breach of the implied warranty of habitability. But even without constructive notice, this code does not provide a defense against certain Plaintiffs' because it cannot suspend a tenants' right to recover under state law. Section 13-180 of the code expressly states that "[n]othing contained in this Division shall prevent any person from exercising any right or seeking any remedy to which he might otherwise be entitled or from filing any complaint with any other agency, or court of law or equity."

Plaintiffs have met their pleading requirements at this stage because Maryland law does not preclude their class claims for breach of contract or the implied warranty of habitability. But even if constructive notice was unavailable to Plaintiffs' claims, the common issues of liability would overshadow any individual issues.

**E.  The Amended Complaint Sufficiently Pled Rule 23(b)(1) and Rule 23(b)(2) is Moot.**

Class certification is available under Federal Rule of Civil Procedure 23(b)(1), in which predominance is not required, because the Amended Complaint included the necessary elements for a limited fund claim including that "prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants" and "because adjudications respecting individual members of

the Class would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impeding their ability to prosecute their interests." ECF No. 43 at ¶254.

Defendants contend that the "historical antecedents" to the limited fund theory require Plaintiffs to identify a fund in the Complaint to sustain allegations of a limited fund. ECF No. 89. But Defendants fail to explain how Plaintiffs have departed from the "historical limited fund model" that the Advisory Committee intended. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842, 119 S.Ct. 2295, 2312–13 (1999). Plaintiffs have pled a claim that is sufficient to the traditional risk under the Rule Enabling Act of "mandatory class resolution of individual legal claims." *Id.*

This contention is also premature. As the Amended Complaint asserted, the "Arbor Realty Trust has a history of siphoning funds from the other Arbor Related Defendants." ECF 43, at ¶36b. If discovery reveals that Bedford United, LLC and Victoria United, LLC have been passing through rent collected from the proposed class members, a limited fund may be necessary to ensure a recovery under Rule 23(b)(1). But for now, Defendants have not identified any pleading requirement that Plaintiffs have omitted in the Amended Complaint sufficient to strike their Rule 23(b)(1) allegations.

Plaintiffs have no objection to the Court striking the Rule 23(b)(2) class allegation because Defendants' sale of BVS well after the Amended Complaint was filed renders this allegation moot.

IV.   **CONCLUSION**

Defendants Motion to Dismiss Class-Related Allegations should be DENIED.

Respectfully submitted,

**Nidel & Nace, P.L.L.C.**

/s/ Jonathan Nace
Jonathan Nace, Esquire
Bar Number: 18246
Zachary A. Kelsay, Esquire
Bar Number: 30460
One Church Street Suite 802
Rockville, MD 20850
Telephone: (202) 780-5153

jon@nidellaw.com
zach@nidellaw.com

P. Joseph Donahue
Bar Number 06245
**The Donahue Law Firm, LLC**
18 West Street
Annapolis, Maryland 21401
Telephone: (410) 280-2023
pjd@thedonahuelawfirm.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

This shall certify that on this 9th day of December 2022, I served a copy of the foregoing upon all parties and the Court via ECF.

/s/ Jonathan B. Nace
Jonathan B. Nace (Bar No. 18246)
