UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| CASA DE MARYLAND, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 8:21-cv-01778-DKC |
| ) | Judge Deborah K. Chasanow |
| ARBOR REALTY TRUST, INC., *et al.*, ) | Judge Timothy J. Sullivan |
| ) | |
| Defendants. ) | |
| ) | |

**OPPOSITION OF NONPARTIES JAIR LYNCH REAL ESTATE PARTNERS AND 1400 UNIVERSITY BOULEVARD, LLC TO PLAINTIFFS' MOTION TO COMPEL INSPECTION OF LAND AND COMPLIANCE WITH SUBPOENA**

**I.    Introduction**

This lawsuit involves claims by the seven individual Plaintiffs, Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (collectively, "Plaintiffs"), against the prior ownership of the multifamily residential apartment complexes known as Bedford and Victoria Station Apartments, located in Hyattsville, Maryland (the "Property").  The Property comprises 578 residential apartments as well as appurtenant common areas.  The seven Plaintiffs reside, or resided at the relevant times, in five different apartments on the Property. ECF 43 at 1 (First Amended Compl. and Demand for Jury Trial).  1400 University Boulevard, LLC ("1400 University") is the owner of record of the Property, having acquired it on November 22, 2022, after this lawsuit was pending.  1400 University is an affiliate of Jair Lynch Real Estate Partners ("Jair Lynch").

Plaintiffs issued Subpoenas seeking to enter the Property and conduct some sort of inspection.  Although details of what Plaintiffs would propose to do have been scant, and the Subpoenas themselves say nothing other than that an inspection is desired, Plaintiffs have indicated

that they want to bring a "structural engineer" and an "industrial hygienist" to the Property and they expect 1400 University and Jair Lynch to gain entry into apartments leased to residents on their behalf. 1400 University and Jair Lynch have raised various concerns, including that the Subpoenas request entry only into areas possessed or controlled by 1400 University and Jair Lynch, which does not include apartments leased to residents (which are possessed and controlled by the residents). Further details, assurances, and protections have been requested by 1400 University and Jair Lynch, and Plaintiffs have resisted providing that. Plaintiffs have also been asked to coordinate their efforts with the Defendants, to avoid imposing undue burden or expense on these nonparties, which Plaintiffs have also refused to do. This motion should be denied.[1]

## II.   The Pending Claims and the Subpoenas That are the Subject of This Motion

### A.   The Lawsuit and the Subpoenas

The current iteration of this lawsuit is the First Amended Complaint (ECF 43), as affected by the Court's rulings on motions to dismiss (ECF 76, ECF 77). The Subpoenas that are the subject of this motion were first sent to 1400 University, through counsel, on October 25, 2022, and then to Jair Lynch, through counsel, on November 2, 2022. (Undersigned counsel had agreed to accept service of the Subpoenas.) Copies of the Subpoenas are attached as Exhibits "A" and "B" hereto.

---

[1] 1400 University and Jair Lynch remain willing to work with the parties to the lawsuit to agree on a protocol for an inspection of areas of the Property they possess or control, for discovery of information relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The parties presumably are aware of the scope of relevant and discoverable information, taking into account the Court's prior dismissal of certain claims and parties. *See* ECF 76 (Mem. Op.) and ECF 77 (accompanying Order). 1400 University and Jair Lynch, as shown herein, have in fact tried to work out an agreement with both Plaintiffs and the Defendants to try to resolve these issues. In the current posture, however, it appears that Plaintiffs perceive a scope of the Subpoenas that is incorrect and they seek to require 1400 University and Jair Lynch to take action and permit entry into leased apartments and other areas that are beyond what 1400 University and Jair Lynch can facilitate or be required to facilitate.

As to what was requested in terms of an inspection, the Subpoenas were silent; and as to the date and time, the Subpoenas said "TBD by Agreement." *See id.*

Counsel for 1400 University and Jair Lynch have tried to reach such an agreement. In doing so, and in having related discussions with Plaintiffs' counsel, 1400 University and Jair Lynch made several things clear: (a) they would not and could not provide access to apartments rented to residents; (b) they needed an inspection protocol to include protections regarding insurance and indemnity against damage and bodily injury; (c) they needed disclosure of the names and firms of all persons that the Plaintiffs would propose to bring; (d) they needed disclosure of the purposes of the visit; (e) they needed acceptance of time limits and restrictions that any access take place during regular business hours; (f) they needed coordination with the Defendants, to reduce or avoid multiple visits (in accordance with Fed. R. Civ. P. 45(d)(1)'s directive to avoid undue burden or expense on persons subject to subpoenas); (g) existing leases with residents and applicable law would have to be complied with; and (h) 1400 University and Jair Lynch would be provided with all test results and related papers. It was also discussed that 1400 University and Jair Lynch would require a release of claims in connection with additional cooperation going beyond what is legally required under the circumstances. Respectfully, these requests were and are reasonable and necessary. The Property represents a significant asset for 1400 University and Jair Lynch, and legal obligations to the residents who lease apartments must be honored and respected.

**B.      Relevant Discussions Between Undersigned Counsel and Plaintiffs' Counsel**

Counsel for 1400 University and Jair Lynch had a discussion with Plaintiffs' counsel on November 14, 2022 regarding discovery in the case and the Subpoenas. Plaintiffs had also issued subpoenas for documents to 1400 University and Jair Lynch. Counsel for 1400 University and

Jair Lynch indicated, among other things, that they would cooperate reasonably with Plaintiffs, that existing leases with residents and applicable law would have to be complied with, that a written property inspection protocol would have to be agreed on, and that additional protections and provisions would be demanded if 1400 University and Jair Lynch were to go beyond the strict requirements of Fed. R. Civ. P. 45.

      **C.**      **Relevant Correspondence Among Counsel**

On January 30, 2023, undersigned counsel sent Plaintiffs' counsel a draft Confidential Release of Claims, via email attached as Exhibit "C." Related correspondence was exchanged that same date, copies of which are attached as Exhibit "D." Plaintiffs balked at executing the Confidential Release of Claims and raised issues that undersigned counsel believed were not well taken, and Plaintiffs were urged to provide comments and requested revisions to the document. *See id.* No such comments or revisions were forthcoming. In the same correspondence, undersigned counsel advised that a draft property inspection protocol was in process. *See id.* Plaintiffs' counsel responded that: "An inspection protocol is a great idea, and I'm glad that is in the works." *Id.*

On February 2, 2023, Plaintiffs' counsel sent an email attaching the Subpoenas in the same form as they had been served on October 25, 2022 and November 2, 2022, with the requested "Date and Time" changed to "March 7, 8, and 9, 2023." A copy of Plaintiffs' counsel's February 2, 2023 email is attached as Exhibit "E." In the email, Plaintiffs' counsel referred to "the proposed inspections." *Id.* Copies of the Subpoenas sent on February 2, 2023 as attachments to the email are attached as Exhibits "F" and "G" hereto. Plaintiffs' counsel also sent a follow-up email on February 2, 2023 that included assertions regarding potential "obligations" to residents whom Plaintiffs do not represent, in connection with the outcome of an inspection, and otherwise

4

confirmed that no agreement had been reached on any inspection. *See* Email dated February 2, 2023 from J. Donahue to V. Johnson, attached as Exhibit "H."

On February 15, 2023, counsel for Defendants Bedford United, LLC, Victoria United, LLC, Hyattsville United, LLC, and Arbor Management Acquisition Company, LLC (the "Hyattsville Defendants") sent correspondence that, in part, addressed the inspection, raised related concerns and questions about it and the Subpoenas, and expressed a desire to work with Plaintiffs to coordinate efforts and avoid undue burden and expense on the nonparties to whom the Subpoenas had been issued. A copy of that correspondence is attached as Exhibit "I."

Plaintiffs' counsel responded via email and letter dated February 15, 2023, attached as Exhibit "J." Of note, the email asserted that, "As stated in the letter, but to make a specific point about it, we absolutely expect to be given access to random individual apartments during our inspection. If we are not given such access, we will, unfortunately, likely need to engage in further litigation. We hope that we do not reach that point." The letter also stated, among other things, several matters regarding the inspection, including: (a) Plaintiffs refused to provide information about their intentions or to coordinate their efforts with the Defendants;[2] (b) Plaintiffs claimed that 1400 University and Jair Lynch have some sort of legal right to access apartments leased to residents, and related obligations in connection with the Subpoenas; (c) Plaintiffs vaguely referenced some sort of testing that they would want to perform ("As we have previously informed you and the Court, we intend to conduct testing at randomly chosen apartments for environmental

---

[2] Plaintiffs' specific statement in that regard was as follows: "As to your requests that we give you the i) identities of the individuals, ii) the 'specific areas or deficiencies' that they will inspect, or iii) the 'tests' they will perform, the answer is no. You can conduct whatever inspection you like while we conduct ours." These communications are inconsistent with Plaintiffs' representations that they have "specifically indicated a willingness to come to an agreement on a scope of the inspection." *See* ECF 130 at 1.

5

statistical purposes."); and (d) Plaintiffs asserted that 1400 University and Jair Lynch needed to notify residents about possible inspection ("We fully expect that the Current Owners will comply with their leases and inform tenants immediately that their apartments may be inspected on March 7, 8 or 9."). Undersigned counsel then responded to the correspondence by letter dated February 17, 2023, with an enclosed draft Property Inspection Protocol Agreement. Copies of the February 17, 2023 letter and draft Property Inspection Protocol Agreement are attached as Exhibit "K."[3]

Plaintiffs' counsel responded by letter dated February 21, 2023, attached as Exhibit "L." In that letter, Plaintiffs made a number of additional arguments and claims, including that on the November 14, 2022 conference call some sort of agreement had been reached regarding the inspections and that the County Code of Prince George's County, Maryland authorizes 1400 University and Jair Lynch to enable access to apartments for the Plaintiffs. *See id.* Plaintiffs made a number of further assertions about their plans and what they were requesting to do, including: "Please note that we plan to have multiple individuals in the field of industrial hygiene and structural engineering inspecting the property, including but not limited to individual apartments"; and, "Furthermore, I see no reason to identify the experts who will be there with us or the specific issues they will be inspecting." *See id.*

Undersigned counsel sent a further response to Plaintiffs' counsel on February 24, 2023, attached as Exhibit "M." The letter again raised concerns on behalf of 1400 University and Jair Lynch, and made clear, again, the legal concerns with Plaintiffs' intentions, such as they had been

---

[3] In the motion that Plaintiffs filed seeking to shorten time for response to this motion to compel, they represented that "[o]n February 24, 2023, Jair Lynch's counsel notified the parties that they would only give access to the common areas, not the individual units." ECF 131 at 1. That assertion was obviously not accurate, as Plaintiffs had been notified well before that date of the limitations on their ability to require 1400 University and Jair Lynch to provide access to apartments leased to residents.

6

disclosed at that point, regarding the Subpoenas. *See id.* Undersigned counsel indicated a willingness to have a call with Plaintiffs' counsel and Defendants' counsel to try to work through the issues involved.

### D. The Call Among Counsel on February 28, 2023

A call was scheduled among Plaintiffs' counsel, Defendants' counsel, and undersigned counsel on February 28, 2023 at 2:30 p.m. On that call, for the first time, Plaintiffs indicated that they planned to have at least two individuals involved in an inspection, John Tung, who they identified as a "structural engineer," and Josh Debulius, who they identified as an "industrial hygienist." They would not say specifically what these individuals would propose to do, but they said that they contemplated visual inspection and taking mold swipes in apartments, and they said that no invasive or destructive testing was planned. They also said that they could not guarantee that these individuals would not have other colleagues or persons with them to assist. No further information was provided.

No agreement was reached among Plaintiffs' counsel, Defendants' counsel, and undersigned counsel on the call. Plaintiffs filed their motion to compel (ECF 130) and motion to shorten time for response (ECF 131) shortly after the call ended.

### E. Further Recent Correspondence Among Plaintiffs' Counsel and Defendants' Counsel

On March 13, 2023, Plaintiffs' counsel and Defendants' counsel exchanged additional correspondence about these issues, attached as Exhibit "O." In the correspondence, Plaintiffs' counsel seemed to indicate a willingness to coordinate efforts with Defendants' counsel. *See id.* At the same time, Plaintiffs' counsel continued to indicate an unwillingness to provide further details as to what Plaintiffs would propose to do. *See id.*

**ARGUMENT**

### III.  Applicable Legal Standards

Within the scope of discovery under Fed. R. Civ. P. 26(b)(1) (providing for discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"), parties have the ability to serve subpoenas on nonparties pursuant to Fed. R. Civ. P. 45.

Fed. R. Civ. 45(d)(1) dictates that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The Fourth Circuit has noted the particular considerations, and related "demanding and sensitive" inquiry required regarding the imposition of subpoena requests on nonparties. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019).

Moreover, it is axiomatic with respect to a subpoena to request inspection, that inspection can be sought only for a property possessed or controlled by the subpoenaed party. The Subpoenas in this case, Exhibits A, B, F, and G hereto, reflect that limitation on their face.

### IV.  Plaintiffs are not Entitled to an Order Compelling a Property Inspection

As a general matter, Plaintiffs are not entitled to an order compelling a property inspection under the circumstances. Apart from the issues posed by Plaintiffs' apparent desire to force random access to various apartments leased to residents of the Property (which is addressed separately, in Section V of this Opposition), Plaintiffs have not taken proper steps to try to obtain any property inspection.

The Subpoenas themselves (Exhibits A, B, F, and G hereto) do not provide any detail as to a request for inspection, including basic information regarding the identity of the persons and firms involved, disclosure of the purposes of the visit, acceptance of time limits and restrictions that any access take place during regular business hours, or coordination with the Defendants, to reduce or avoid multiple visits. As Plaintiffs note, during the call among counsel on February 28, 2023, they disclosed orally the names of two individuals whom they wanted to have present (Mr. Tung and Mr. Debulius, referenced above). *See* ECF 130 at 3. Plaintiffs refused to provide information regarding these individuals' firms or a complete list of persons who might be present. In fact, they said that they could not guarantee that others might not be present. The Property is a residential apartment complex, and unlimited access to unidentified apartments and the unidentified residents therein cannot be provided. If representatives of the Defendants were to attend, that concern would be magnified.

Nor have Plaintiffs provided details as to what they would seek to do as part of any inspection. They did confirm, for the first time during the February 28, 2023 call, that no destructive or invasive testing is contemplated. *See id.* The Subpoenas themselves provide no related information (*see* Exs. A, B, F, and G hereto) and Plaintiffs' filings, at best, muddle the issue instead of clarifying it. For example, Plaintiffs refer to "their intention to perform inspections of randomly selected apartments [at the Property], that could then be sampled and evaluated on a pass-fail basis." *See* ECF 130 at 1. It is unclear what that statement means or how it fits with the limited information relayed orally on the February 28, 2023 conference call. In the most recent correspondence, Plaintiffs continued to resist providing further information. *See* Ex. O hereto.

The Property is a significant and valuable asset, and 1400 University and Jair Lynch are legitimately concerned that there needs to be a protocol to guide any inspection, to avoid

9

interference with ongoing Property operations, and to protect the interests of these nonparties. This is why Plaintiffs were sent the proposed Property Inspection Protocol Agreement. *See* Ex. K hereto. This was a reasonable approach that is consistent with the requirements of the Federal Rules of Civil Procedure, and other courts have issued orders setting forth site inspection protocols. *See, e.g., In re NC Swine Farm Nuisance Litig.*, 2016 WL 11712478 (E.D.N.C., W. Div., Oct. 19, 2016). Despite having stated that such an agreement is "a great idea," *see* Ex. D hereto, Plaintiffs refused to sign it and did not even provide comments regarding it. Details as to what Plaintiffs want to do, who would be present, how these nonparties' interests and the Property would be protected by insurance and otherwise, and coordination with the Defendants are entirely absent. Given the paucity of information provided, Plaintiffs also cannot demonstrate that whatever they propose to do is relevant to any party's claim or defense or proportional to the needs of the case, *see* Fed. R. Civ. P. 26(b)(1), nor have Plaintiffs fulfilled their obligation to take reasonable steps to avoid imposing undue burden on these nonparties. *See* Fed. R. Civ. P. 45(d)(1). The circumstances are not such that a Court order is justified to compel any sort of inspection.

V. **Plaintiffs Cannot Force 1400 University and Jair Lynch to Admit Plaintiffs' Unidentified Representatives Into Apartments Leased to Residents, Either by Subpoena or Court Order**

    A. **The Subpoenas do not Request Access to Apartments**

On their face, the Subpoenas say nothing about seeking access to specific apartments. *See* Exs. A, B, F, and G hereto. The Subpoenas, in fact, state that no such access is being sought, in that the Subpoenas refer to property "possessed or controlled" by these nonparties. *See id.*

1400 University owns the Property (and is an affiliate of Jair Lynch), but ownership does not equate to possession or control. Plaintiffs have a fundamental, and incorrect, as a matter of law, viewpoint on that issue, asserting in the motion that "Jair Lynch maintains a possessory

10

interest in each apartment, *i.e.*, it owns each." *See* ECF 130 at 4.  In a similar vein, Plaintiffs' suggestion that the ownership means that the subpoenaed parties "maintain[] control of the units," *see id.* at 3, is similarly misplaced.  Ownership does not automatically give rise to possession and control, as Plaintiffs claim.  *See Velicky v. Copycat Bldg. LLC*, 476 Md. 435, 449 n. 13, 264 A.3d 661, 669 n. 13 (2021).  Ownership of real property confers many interests (sometimes referred to as the property owner's "bundle of rights"), including possession; but possession is one interest given by the owner to a tenant during the term of the tenancy, with the property owner holding a reversionary interest.  *See id.*  Having transferred possession to the residents, neither 1400 University nor Jair Lynch "controls" the apartments, either.  Here, possession is given in exchange for valuable consideration, namely payment of rent and security deposit, and the residents/tenants are entitled to quietly enjoy that possessory right, and the privacy that is attendant thereto, without interference by Plaintiffs' counsel and testers.

The issue of possession and access to apartments is controlled by the leases with the residents and the applicable law.  *See McDaniel v. Baranowski*, 419 Md. 560, 575, 19 A.3d 927, 935 (2019) ("The legal relationship between landlord and tenant is governed by the contract between the parties, *Delauter v. Shafer*, 374 Md. 317, 822 A.2d 423 (2003), *Village Green Mutual Homes v. Randolph*, 361 Md. 179, 760 A.2d 716 (2000), as well as any statutory authority.").  Maryland law requires that a property owner offering five or more dwelling units for rent enter into written leases with residents.  Md. Code Real Property Article § 8-208(a)(1).

In this case, a standard form lease exists, of which Plaintiffs presumably are aware (since they entered into such leases during the ownership of the Defendants).  That form has a provision entitled "When We May Enter," the text of which is included in Exhibit "N."  It limits the right of entry to situations not posed by the Subpoenas, such as access to respond to residents' requests, to

11

conduct service, maintenance, or repairs, to respond to housing code complaints, or address emergencies. No provision exists to give access to other parties pursuant to a subpoena issued in a lawsuit. *See id.* The ability to enter apartments is defined and limited, and other protections such as advance notice and written disclosures are also required. *See id.* Although Plaintiffs cite to a Texas case regarding access to property sought ineffectively under Fed. R. Civ. P. 34 without serving a nonparty subpoena, in that case to measure the elevation of a walkway outside of a building owned by the wife and daughter of an expert witness in the case, ECF 130 at 4, the case has no application to the lease and controlling Maryland law regarding the Property and its apartments.

The leases confer possession on the residents, and 1400 University and Jair Lynch cannot be required to invade that possessory right by admitting the Plaintiffs and their unnamed representatives. *See also* Md. Code Real Property Article § 8-208(d)(6) (making unlawful a lease provision "authorizing the landlord to take possession of the leased premises, or the tenant's personal property therein unless the lease has been terminated by action of the parties or by operation of law"). Apart from what the leases require, a landlord can regain possession to property only under specific circumstances that include failure to pay rent (Md. Code Real Property Article § 8-401(a)), breach of lease (Md. Code Real Property Article § 8-402.1(a)), or a tenant's holdover occupancy beyond the lease term. Md. Code Real Property Article § 8-402(b). All of these situations are handled in strict accord with the law and required procedures, unlike what Plaintiffs seemingly might propose here.

The Code also permits the extension of supplementary rights to tenants by local law or ordinance, without abrogating the statutory protections. Md. Code Real Property Article § 8-208(f). Although Plaintiffs have also cited the County Code of Prince George's County, Maryland,

*see* Ex. L hereto, the County Code also fails to support their request.  Code Section 13-155 ("Landlord's right to access") again limits access to certain emergencies and to actions by the landlord (not by other parties) "to enter into the dwelling unit in order to inspect the premises, make necessary repairs, decorations, [alterations] or improvements, supply services as agreed, or exhibit the dwelling unit to prospective purchasers, mortgagees or tenants."

### B. Plaintiffs' Request Seeks to Force These Nonparties to Either Breach Their Contracts or Violate Maryland Law, and is Therefore Improper

Moreover, the undue burden concern regarding the Subpoenas is heightened further in the context of Plaintiffs' request to force access to apartments.  1400 University and Jair Lynch cannot be required to take action that would violate the leases or the applicable law, and yet Plaintiffs are asking the Court to force them to do so.  As Plaintiffs would have it, 1400 University and Jair Lynch should give notices to every resident that there might be random inspections during a several day period, without reference to location, time, individuals present, or other concerns, such that a mass of unidentified persons could enter the sanctity of residents' homes and disrupt their quiet enjoyment.  *See* Ex. J hereto.  It is entirely unclear who might come, what they might seek to do, and how many persons might be tracking through various apartments at unlimited times of day for unlimited periods of time.  It is not clear what sort of information might be compiled to document the work, including photographs, which poses further privacy and related concerns.

The request in this regard plainly violates Rule 45(d)(1)'s strictures that reasonable steps be taken to avoid imposing undue burden or expense.  *See also Virginia Dep't of Corr. v. Jordan*, 921 F.3d at 189 (noting that "a subpoena may impose a burden by invading privacy or confidentiality interests" and thus violate Rule 45(d)(1)).  The Fourth Circuit has also made clear that "Courts may consider the interests of the recipient of the subpoena, as well as others who might be affected."  *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d at 189.

Again, the circumstances do not permit the relief Plaintiffs seek, which includes an order that 1400 University and Jair Lynch somehow give Plaintiffs access to apartments for some sort of undefined "inspection" by unidentified persons.

## VI. Conclusion.

The Property is a large multifamily residential complex at which hundreds of people live. 1400 University and Jair Lynch cannot simply allow unnamed individuals to appear for unspecified purposes and without any constraints or protections to the Property Owner and residents, and without coordination among the parties to the litigation. 1400 University and Jair Lynch remain willing to negotiate an appropriate inspection protocol with all parties to the litigation in the interest of avoiding undue burden or expense. In the meanwhile, for the foregoing reasons, 1400 University Boulevard, LLC and Jair Lynch Real Estate Partners respectfully request that this motion to compel be denied.

Dated: March 14, 2023                    Respectfully submitted,


By: /s/ Vernon W. Johnson, III
Vernon W. Johnson, III (Bar No. 13630)
NIXON PEABODY LLP
799 Ninth Street, NW, Suite 500
Washington, D.C. 20001-4501
Telephone: (202) 585-8000
Facsimile: (202) 585-8080
Email: vjohnson@nixonpeabody.com

*Counsel for Nonparties Jair Lynch Real Estate Partners and 1400 University Boulevard, LLC*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of March, 2023, I caused a true and correct copy of the foregoing Opposition of Nonparties Jair Lynch Real Estate Partners and 1400 University Boulevard, LLC to Plaintiffs' Motion to Compel Inspection of Land and Compliance With Subpoena, Appendix and Index of Exhibits with Exhibits "A" through "O," and Proposed Form of Order, to be filed with the court's Electronic Case Filing System, which will then send a notification of filing (NEF) to all counsel of record:

/s/ Vernon W. Johnson, III
Vernon W. Johnson, III
