IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| CASA DE MARYLAND, INC., et al,<br>  Plaintiffs | * | |
| v. | * | Civil Action No. 8:21-cv-01778-DKC |
| ARBOR REALTY TRUST, INC., et al,<br>  Defendants. | * | |

******

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
CROSS-MOTION FOR ENTRY OF A PROTECTIVE ORDER**

  Pursuant to Federal Rule of Civil Procedure 26(c), Defendants respectfully submit this memorandum of law in support of their Cross-Motion. Defendants move for entry of a protective order to define the scope of the Subpoenas and to mandate coordination between the Parties with respect to Plaintiffs' intended inspection of BVS (the "Inspection"). Throughout the Parties' correspondence and conferences on this issue, Plaintiffs continue to take the position that they are not required to—and do not intend to—coordinate or cooperate with Defendants and need not provide anything more than some very basic information regarding their intended plans for the Inspection. Indeed, the Subpoenas are devoid of any information regarding the Inspection's intended scope or Plaintiffs' intended manner of carrying out the Inspection. The First Amended Complaint's ("FAC") vagueness only compounds the issue, rendering it impossible for Defendants to determine what Plaintiffs will be looking at or for during any inspection of BVS.

  To be clear, Defendants are *not* attempting to prevent the Inspection. Instead, Defendants merely seek to meaningfully participate in the Inspection so that only one inspection of BVS need take place and to avoid burdening the Owners, who are not parties to this litigation, with multiple

inspections. To do so, Defendants require certain basic information—information that should have been included in the Subpoenas—regarding Plaintiffs' intentions for the Inspection. Specifically, Defendants seek the following relief from the Court: (a) that Plaintiffs be required to inform Defendants in writing of (i) the identities of the individuals expected to conduct the Inspection and any testing of BVS; (ii) the specific areas or deficiencies to be observed and/or tested for; and (iii) the specific tests to be conducted (the "Requested Information"); and (b) that Plaintiffs be required to coordinate and cooperate with Defendants in scheduling, planning, and conducting the Inspection.[1] Because the Local and Federal Rules require coordination and cooperation between the Parties, the relief requested herein is reasonable, appropriate, and necessary to avoid disproportionately burdening the non-party Owners from multiple inspections. Therefore, good cause exists for entry of the protective order sought herein.

## FACTUAL BACKGROUND

On October 25 and again on November 2, 2022, Plaintiffs notified Defendants over email of their intention to serve the Subpoenas on the Owners. *See* Attachment 1, Declaration of Sarah B. Meehan ("Meehan Decl.") Exs. A, B. The only information provided in the Subpoenas at that time was that the box for "Inspection of Premises" was checked, the properties listed were BVS, and the date and time were listed as "TBD by Agreement." *Id.*

On February 2, Plaintiffs re-noticed the Subpoenas to the Owners, listing the date for the Inspection as "March 7, 8, and 9, 2023." Meehan Decl. Exs. C, D. Again, glaringly absent from those new Subpoenas was any information on the identity of Plaintiffs' inspectors, the areas or

---

[1] As explained *infra* in Section B of the Argument, Defendants seek specific methods of coordination and cooperation with respect to Plaintiffs' Inspection and in the accompanying proposed order.

deficiencies Plaintiffs' inspectors would be observing and/or testing for, and what tests, if any, Plaintiffs' inspectors intend to conduct at BVS. *Id.*

At this point, Defendants contacted the Owners to propose that Defendants, the Owners, and Plaintiffs coordinate on one joint inspection to minimize the burden on the Owners. Meehan Decl. ¶ 4. Counsel for the Owners stated that he was amenable to this approach. *Id.* On February 15, counsel for Defendants Arbor Management Acquisition Company, LLC, Bedford United, LLC, Victoria United, LLC, and Hyattsville United, LLC (the "Hyattsville Defendants"), Scott T. Sakiyama, wrote to Plaintiffs to request to coordinate with them on the Inspection. Meehan Decl. Ex. E. Specifically, the Hyattsville Defendants stated that to reduce the burden on the non-party Owners, it is "necessary to come to an agreement regarding the scope of the proposed inspection so that [the parties] can mutually assure that the appropriate experts and consultants may be secured well in advance of an agreed upon date and attend the inspection." *Id*. For that reason, the Hyattsville Defendants sought the Requested Information from Plaintiffs concerning: "(i) the identities of the individuals that will be inspecting and conducting any testing on the properties; (ii) the specific areas or deficiencies that the inspectors will be observing and/or testing for; and (iii) the specific tests that the inspectors intend to conduct at the properties." *Id.* Stated most simply, the Hyattsville Defendants stressed that there is no way they could prepare for and meaningfully participate in a joint inspection of BVS without a baseline understanding of what Plaintiffs and their inspectors intend to do.[2] The Hyattsville Defendants also asked whether

---

[2] Indeed, the positions taken by Plaintiffs assure that, at most, Defendants will only be able to observe what Plaintiffs do during their proposed inspection of BVS. Defendants will then be forced to hire the appropriate consultant(s) to return to BVS at a later date to conduct a defensive inspection, thereby furthering the burden on the Owners.

3

"Plaintiffs agree to coordinate with the Hyattsville Defendants to permit a joint inspection of the BVS properties." *Id*.

That same day (within an hour of receiving the Hyattsville Defendants' correspondence), Plaintiffs wrote back: "As to your requests . . . , the answer is no.  You can conduct whatever inspection you like while we conduct ours." Meehan Decl. Ex. F.  In response to Plaintiffs' February 15 correspondence, counsel for the Owners wrote to Plaintiffs and shared their position that "it seems optimal to arrange one single inspection among all parties to the extent feasible.  We would also want the Defendants and their attendees to sign the Property Inspection Protocol Agreement."[3]  Meehan Decl. Ex. G.

On February 21, 2023, Plaintiffs responded to the Owners by letter stating ***for the first time*** (less than two weeks ahead of the intended inspection date) that they "plan to have multiple individuals in the field of industrial hygiene and structural engineering inspecting the property" but that Plaintiffs "see no reason to identify the experts who will be there with us or the specific issues they will be inspecting."  Meehan Decl. Ex. H.  The Owners responded to Plaintiffs on February 24, stating that Plaintiffs "have refused to provide details" regarding their plans for the Inspection, and seeking the same Requested Information sought by the Hyattsville Defendants: "We will require specific information about the identities of all persons you request be permitted access, and information as to insurance held by these individuals and their respective firms that protects our clients."  Meehan Decl. Ex. I.  Additionally, the Owners maintained their refusal to permit inspection of individual units, *id.,* which Plaintiffs continued to insist upon.

---

[3] The Owners' proposed inspection protocol requires advance notice and consent for entry of each participant onto BVS, as well as required obligations on participants concerning insurance, indemnification, confidentiality, sharing of materials obtained from the inspection, and governing behavior for participants during the inspection.  Meehan Decl. Ex. G at 4–8.

4

Following such correspondence, counsel for Defendants, Plaintiffs, and the Owners met and conferred via Zoom on February 28, 2023.  During that conference, Plaintiffs' counsel named two experts who will attend the Inspection and stated that they would conduct visual, non-destructive testing and mold swabs, but refused to provide any additional information regarding the scope of their intended inspection or coordinate on such inspection with Defendants.  Meehan Decl. ¶ 11.  Specifically, Plaintiffs refused to provide the names or titles of any additional participants expected to attend the Inspection beyond the two identified experts and maintained that Plaintiffs need not provide such information under the Local or Federal Rules.  *Id.*  Defendants did not take a position on the dispute between Plaintiffs and the Owners concerning whether the Subpoenas gave Plaintiffs any right to access individual units—rather, Defendants sought the same access to BVS as Plaintiffs for purposes of preparing their defenses.  The Parties did not reach an agreement regarding any of these issues, and accordingly, Plaintiffs filed a motion to compel the Owners to provide access to BVS for the Inspection that same day.  ECF No. 130.

On March 13, 2023, Defendants informed Plaintiffs via email of Defendants' intent to file the Cross-Motion.  Meehan Decl. Ex. J.  In response, Plaintiffs stated that they refuse to provide the Requested Information, but that Plaintiffs were willing to coordinate with Defendants so that only one inspection of BVS need take place.  *See id.*  When Defendants sought Plaintiffs' confirmation that they would agree to work with Defendants in selecting inspection dates that are mutually agreeable to the Owners and Defendants, Plaintiffs would not provide such confirmation. *See id.*

Plaintiffs stated that they seek this inspection to identify evidence for purposes of class certification.  *See* ECF No. 96 at 12–13; ECF No. 130 at 4; ECF No. 131 at 1–2.  They contend that they can conduct a random sampling of 60 individual units, the results of which they claim

5

will prove relevant and useful to support a class certification motion. *Id.*; Meehan Decl. ¶ 11. Defendants disagree with this supposition. More importantly, however, in ruling on Defendants' motions to dismiss, Judge Chasanow held that "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individual proof" and therefore, Plaintiffs' claimed "damages require individualized assessments." ECF No. 76 at 43. Moreover, the non-party Owners have had sole control over the maintenance and upkeep of BVS for over nine months, since May 23, 2022, when they purchased them. Nevertheless, Plaintiffs seek to inspect BVS today to identify conditions that they allege purportedly breach their leases and the implied warranty of habitability dating back to July 2018 through May 2022.[4]

## LEGAL STANDARD

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . (B) specifying terms, including time and place . . . for the disclosure of discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) . . . limiting the scope of disclosure or discovery to certain matters; [and] (E) designating the persons who may be present while the discovery is conducted[.]" Fed. R. Civ. P. 26(c)(1). A Rule 45 subpoena must comply with the scope and limits of discovery set forth in Rule 26 and may be modified for the same reasons that would support a protective order under Rule 26. *See HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) (citing *Cook v. Howard,* 484 F. App'x 805, 812 (4th Cir. 2012)). This Court has long recognized that a party may challenge a subpoena issued to a

---

[4] Defendants disagree with Plaintiffs concerning the admissibility or relevance of any information to be obtained from BVS almost a year after control was relinquished to the Owners. To this end, Defendants expressly reserve and intend to assert all rights and arguments concerning, among other things, the relevance and admissibility of any "evidence" Plaintiffs may glean from inspection of BVS.

6

third-party through a motion for entry of a protective order. *See, e.g., Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2016 WL 560483, at *3 (D. Md. Feb. 12, 2016) (collecting cases).

## ARGUMENT

Good cause exists to enter a protective order to: (i) define the scope of the Subpoenas by providing the Requested Information and (ii) require Plaintiffs to coordinate with Defendants in scheduling, planning, and conducting the Inspection. Whether and to what extent to permit an inspection of land is within the court's discretion. *See Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978). Because "entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection" is warranted. *Id.* Thus, courts must balance the parties' respective interests by weighing "the degree to which the proposed inspection will aid in the search for truth" against the "burdens and dangers created by the inspection." *Id.*

Because Plaintiffs have refused to coordinate, cooperate, or share basic information with Defendants concerning the Inspection and its intended scope, Defendants seek court intervention to obtain such information and to mandate that Plaintiffs participate in a joint inspection of BVS to reduce the burden on the non-party Owners and to allow Defendants a meaningful opportunity to prepare their defenses.

      A.    **The Court Should Require Plaintiffs to Provide a More Specific Statement of the Intended Scope of the Subpoenas.**

Good cause exists to enter a protective order requiring Plaintiffs to provide the Requested Information ahead of the Inspection. Under Rule 45, a party serving a subpoena on a non-party must take reasonable steps to avoid imposing an undue burden or expense on the non-party. Fed. R. Civ. P. 45(d)(1). For non-party discovery, a stronger showing of relevance and proportionality is required and the scope of discovery is more "limited." *See Va. Dep't of Corr. v. Jordan,* 921

7

F.3d 180, 189 (4th Cir. 2019) ("[C]ourts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally."). Rule 34 requires that property inspection requests must "describe with ***reasonable particularity*** each item or category of items to be inspected" and "specify a reasonable time, place, and manner for the inspection and for performing the related acts." Fed. R. Civ. P. 34(b)(1) (emphasis added). These protections from Rule 34 apply with "no less force" to Rule 45 subpoenas for the inspection of non-party property, given the special protections and sensitivities afforded to non-parties. *See Orix USA Corp. v. Armentrout*, No. 3:16-mc-63-N-BN, 2016 WL 3926507, at *2 (N.D. Tex. July 21, 2016); Fed. R. Civ. P. 45 Advisory Committee's Notes, 1991 Amendment, Subdivision (a) ("The non-party witness is subject to the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34.").

For example, in *Belcher*, the Fourth Circuit refused to permit inspection of the defendant's property for lack of requisite "particularity" where "the expert is identified, [but] his special expertise is not described," the plaintiffs did not "suggest the areas of inquiry to which his inspection is to be directed," and the expert will be followed by "an entourage" of "unspecified number." 588 F.2d at 906; *see also Simpson v. Magnum Piering, Inc.,* No. 4:17-cv-00731-NKL, 2018 WL 3352664, at *3 (W.D. Mo. July 9, 2018) (relying on *Belcher* in non-party inspection challenge for premise that "inspection cases . . . demonstrate the necessity of exercising precision and care").

Given the lack of specificity in the Subpoenas and the over-broad allegations in the FAC, which raise a swath of purported defects without any details,[5] neither Defendants nor the Owners

---

[5] By way of example, the only references to "structural issues" in the FAC are generic allegations that Defendants "[f]ail[ed] to maintain electrical, HVAC, and structural aspects of the units, including windows and walls[.]" *See, e.g.,* ECF No. 43 ¶ 302. This does not provide any defendant

8

can meaningfully prepare for the Inspection nor make the necessary advance arrangements to adequately protect their interests without the Requested Information.  Defendants cannot retain appropriate experts to attend the Inspection and will be forced to return to BVS at a later date to conduct a defensive inspection, thereby doubling the number of inspections and the burden on the non-party Owners.  Defendants will have to guess on the appropriate experts to retain and may retain experts that are unnecessary, thereby incurring unnecessary and wasteful expense.  By refusing to provide the Requested Information, Plaintiffs are increasing the burden and expense on both Defendants and the non-party Owners.

Further, without the Requested Information, it is impossible to determine whether the need for the Inspection outweighs the burden on the non-party Owners or is proportionate to the needs of the case.  Plaintiffs have not even attempted to explain why the conditions at BVS today are relevant to the conditions at BVS before the properties were sold.  Nor do the Subpoenas, as drafted, shed any light on this issue.  *See Belcher,* 588 F.2d at 909 (refusing to permit inspection of defendant's facilities where "the plaintiff has made no effort to establish either the area of inquiry to which the inspection is to be directed" or to "defin[e] preliminarily the areas of inquiry" for the inspection); *Equal Emp. Opp. Comm. v. Life Techs. Corp.,* No. WMN-09-2569, 2010 WL 11553083, at *4 (D. Md. May 13, 2010) (granting motion for protective order to protect defendant and its non-party employees from property inspection where "[a]pplying the principle of *Belcher*, . . . the minimal benefit of the proposed inspection is outweighed by the disruption and safety concerns it would create").

---

with the factual information underlying Plaintiffs' habitability and breach of lease claims that is needed to determine what Plaintiffs will be looking at or for during the Inspection.  Furthermore, because the FAC was significantly narrowed by the Court's ruling on the motions to dismiss (ECF No. 76), and due to the change of ownership and passage of time, it is prudent and necessary for Plaintiffs to elaborate on and identify the specific scope of their intended Inspection.

Therefore, good cause exists for entry of a protective order requiring Plaintiffs to provide the Requested Information ahead of any Inspection to give the Parties (and the Owners) equal opportunities to meaningfully prepare for and participate in a single inspection of BVS.

### B. The Court Should Require Plaintiffs to Coordinate and Cooperate with Defendants and the Owners to Schedule and Conduct the Inspection.

To minimize the burden on and inconvenience to the non-party Owners, good cause also exists to require Plaintiffs to cooperate and coordinate with Defendants so that only one inspection need take place. Plaintiffs have made clear that they do not intend to coordinate with Defendants with respect to scheduling, planning, or conducting the Inspection. *See* Meehan Decl. Ex. F ("The answer is no. You can conduct whatever inspection you like while we conduct ours.").[6] While Defendants take no position on the propriety of Plaintiffs' intended methods of inspection at this time, they merely wish to coordinate with Plaintiffs on the scheduling and planning of the Inspection to reduce the burden and disruption imposed on the non-party Owners. *Life Techs Corp.,* 2010 WL 11553083, at *1, 3 (recognizing that "an entourage of six or more individuals with a video camera, moving through" an operating business "would undoubtedly create some disruption and perhaps even safety hazards" and "the videotaping would implicate the privacy concerns of [the] non-party employees"). If the Court does not order Plaintiffs to coordinate in such a manner, Defendants will not be able to meaningfully participate in Plaintiffs' Inspection (nor prepare their defenses) and will be forced to enter the BVS properties on a second occasion, which will cause greater disruption and expense to the non-party Owners and Defendants.

---

[6] While Plaintiffs represented to counsel for the Defendants that they remain willing to cooperate or coordinate on a joint inspection on the eve of Defendants' filing of the Cross-Motion, they have refused to commit to coordinate with Defendants on the scheduling of an inspection and continue to refuse to provide the Requested Information. *See* Meehan Decl. Ex. J.

10

Federal courts routinely require parties to coordinate and cooperate with each other in conducting property inspections to reduce the burden on the property-owner. *See, e.g., In re NC Swine Farm Nuisance Litig.,* No. 5:15-CV-00013-BR, 2016 WL 11712478, at *1–3 (E.D.N.C. Oct. 19, 2016) (ordering the plaintiffs to coordinate and "cooperate" with the defendant on scheduling plaintiffs' noticed non-party property inspection; ordering the parties to (a) jointly develop an inspection protocol, (b) "mutually agree[]" to dates and times for the inspection, and (c) to share all materials/footage obtained from inspection; and ordering plaintiffs to allow defendants to accompany plaintiffs' representatives "during the site visit at all times").

In fact, such cooperation is not only customary, but is required by the Local and Federal Rules. *See Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357–58 (D. Md. 2008) ("It cannot seriously be disputed that compliance with the 'spirit and purpose' of [the FRCP's] discovery rules require cooperation by counsel to identify and fulfill legitimate discovery needs, yet avoid seeking discovery the cost and burden of which is disproportionally large to what is at stake in the litigation."); L.R. App'x A, Guideline (1)(d) ("Cooperation and communication can reduce the costs of discovery, and they are an obligation of counsel.").

Here, in the context of a non-party property inspection, such cooperation must take the following form, at a minimum: coordination among Plaintiffs, Defendants and the non-party Owners in developing an agreed-upon inspection protocol; selection of mutually agreeable dates and times for the inspection in advance; confirmation that Defendants' representatives will be permitted to follow and observe Plaintiffs' representatives (and vice versa); the sharing of materials obtained from the property inspections; and cooperation among the Parties to minimize the disruption on the non-party Owners. *In re NC Swine Farm Nuisance Litig.,* 2016 WL

11712478, at *1–3 (requiring the plaintiffs and defendants to jointly coordinate on non-property inspection in these ways).

Defendants do not wish to prevent Plaintiffs from conducting the Inspection. Defendants merely request that Plaintiffs be required to cooperate with them in scheduling and conducting the Inspection, as set forth in the proposed protective order. Without such an order, Defendants will not be able to meaningfully participate in the Inspection and will be forced to conduct a second inspection. Therefore, good cause exists for entry of a protective order mandating such cooperation to minimize the burden of permitting and conducting multiple inspections on the Owners, as well as Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grants their Cross-Motion.

Dated: March 14, 2023

Respectfully submitted,

*/s/ Sarah B. Meehan*
Sarah B. Meehan (Bar Number 30428)
Amanda R. Lawrence (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE, LLP**
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 349-8000 (Telephone)
(202) 349-8080 (Facsimile)
smeehan@orrick.com
alawrence@orrick.com

Scott T. Sakiyama (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE, LLP**
353 N. Clark St., Suite 3600
Chicago, IL 60654
(312) 924-9800 (Telephone)
(312) 924-9899 (Facsimile)
ssakiyama@orrick.com

Gregory S. Emrick (Bar Number 28860)
Timothy Willman (Bar Number 21088)
**OFFIT KURMAN, PC**
300 E. Lombard St., Suite 2010
Baltimore, MD 21202
(401) 209-6400 (Telephone)
(410) 209-6435 (Facsimile)
gregory.emrick@offitkurman.com
timothy.willman@offitkurman.com

Ian Thomas (Bar Number 03883)
**OFFIT KURMAN, PC**
1325 G St. NW, Suite 500
Washington, DC 20005
(202) 900-8592 (Telephone)
(202) 393-2104 (Fascimile)
ithomas@offitkurman.com

Warren Koshofer (*pro hac vice*)
**OFFIT KURMAN, PC**
1801 Market St., Suite 2300
Philadelphia, PA 19103
(267) 338-1300 (Telephone)
(267) 338-1335 (Facsimile)
warren.koshofer@offitkurman.com

*Counsel for Defendants, Bedford United, LLC, Victoria United, LLC, Hyattsville United, LLC, Arbor Management Acquisition Company, LLC*

<u>*/s/ Megan T. Mantzavinos*</u> (signed by Sarah B. Meehan with the permission of Megan T. Mantzavinos
Megan T. Mantzavinos (Bar Number 16416)
Kieran E. Fox (Bar Number 23993)
**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**
600 Baltimore Avenue, #305
Towson, MD 21204
(410) 339-6880 (Telephone)
(410) 339-6881 (Facsimile)
mmantzavinos@moodklaw.com
kfox@moodklaw.com

*Counsel for Realty Management Services, Inc.*

14