# Exhibit G


# NIXON PEABODY

**Attorneys at Law**
nixonpeabody.com
@NixonPeabodyLLP

**Vernon W. Johnson, III**
T 202-585-8401
F 202-585-8080
vjohnson@nixonpeabody.com

Nixon Peabody LLP
799 9th Street NW
Suite 500
Washington, DC  20001
202-585-8000

February 17, 2023

**VIA EMAIL AND FIRST CLASS MAIL**

Jonathan B. Nace, Esq.
NIDEL & NACE P.L.L.C.
One Church Street
Suite 802
Rockville, MD 20850

      RE:    *Casa de Maryland, Inc., et al. v. Arbor Realty Trust, Inc, et al.*, In the United States District Court for the District of Maryland (Southern Division), Civil Action No. 8:2021-cv-01778 (DKC) (Judge Deborah K. Chasanow)

Dear Jon:

      We are in receipt of your letter dated February 15, 2023 and the accompanying email.  It seems necessary to address a number of matters in your letter and email.

      With respect to the "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" served on 1400 University Boulevard Owner, LLC (the "Owner") and Jair Lynch Real Estate Partners ("Jair Lynch") (with both Subpoenas referred to collectively herein as the "Inspection Subpoena"), in the original form, the Inspection Subpoena stated a date and time "TBD by Agreement."  More recently, you sent us the same documents, but with dates of March 7, 8, and 9, 2023 filled in.  We do not believe that this is a proper amendment of the Inspection Subpoena or that it provides the information that would be needed or the agreement that you acknowledged was required to arrange any inspection.  Nor does the Inspection Subpoena even mention "testing," although you use that term in your letter (without defining what it means).

      As it stands now, you have proposed dates for an inspection of "the designated premises, land, or other property possessed or controlled by" the Owner or Jair Lynch.  You have not provided a time or indicated where or what sort of inspection you desire.  Your email adds: "As stated in the letter, but to make a specific point about it, we absolutely expect to be given access to random individual apartments during our inspection."

Jonathan B. Nace, Esq.
NIDEL & NACE P.L.L.C.
February 17, 2023
Page 2

There is no basis for such a demand, nor does the Inspection Subpoena make any such valid request. At best, you might gain access to the areas "possessed or controlled by" the Owner or Jair Lynch, with additional information and assurances, but not to Apartments leased to residents. Moreover, the assertions in your letter that "the inspection absolutely will involve individual units" and that the Owner or Jair Lynch has some sort of right of entry to allow or require that is incorrect. The Leases you refer to have transferred possession of Apartments to the residents who are parties to the Leases, and give the Landlord limited opportunity to enter Apartments. That opportunity does not include random, spur of the moment requests by a nonparty involved in litigation seeking to enter and conduct some sort of "inspection," and unspecified "testing at randomly chosen apartments for environmental statistical purposes," without notice and with no related information provided. We do not know who might seek to enter, for what sort of time period, and for what purpose. There is no basis on which the Owner could be required to force entry on behalf of you, or whomever you might enlist in this endeavor, for unspecified purposes and unspecified time periods. Nothing in the Leases or the applicable law contains any such requirement.

Apartments are leased to residents. These are the residents' homes. Neither you nor your clients have any right to forced entry and the suggestion to your letter to the contrary is incorrect. In addition, your directive that "the Current Owners will comply with their leases and inform tenants immediately that their apartments may be inspected on March 7, 8, or 9" is without basis. You cannot require that, the Inspection Subpoena does not require it, neither the Owner nor Jair Lynch will be taking such action, and neither the Owner nor Jair Lynch under any circumstances could force or guarantee access to you, even if you provided the further details mentioned above.

As we have indicated before, our clients are willing to cooperate with you within reasonable parameters. Although your letter suggests that Defendants' counsel in this case is acting as "a middleman" regarding our communications with you, that is not correct. We sent you previously (on January 30, 2023) a draft Confidential Release of Claims. We responded in detail to related questions from your co-counsel, Mr. Donahue, regarding the draft. We urged you to provide further questions and revisions, but none were forthcoming. We also told you that we were working on a draft Property Inspection Protocol Agreement, after we asked you previously if you had a form to propose (and you did not respond to that invitation). A draft is attached. We reserve rights for further comments and edits from our clients. Mr. Donahue had acknowledged that this was a great idea, and it is certainly necessary to protect the Owner and others under the circumstances.

Finally, we note from the recent correspondence from Defendants' counsel that they, too, want to be present for any inspection and would also seek to conduct their own inspection. The letter dated February 15, 2023 from Scott Sakiyama provided us with the first detailed information from the Defendants in that regard. We obviously want to minimize the expense and effort for our clients to deal with these issues in the above-referenced lawsuit. It seems optimal to arrange one single inspection among all parties, to the extent feasible. We would also want the Defendants and their attendees to sign the Property Inspection Protocol Agreement.

Jonathan B. Nace, Esq.
NIDEL & NACE P.L.L.C.
February 17, 2023
Page 3

    Your letter seems to suggest what, to us, would be a chaotic approach, in which you conduct some sort of unspecified inspection at the same time as the Defendants. We do not see how this is appropriate, practical, within the scope of the Inspection Subpoena, compliant with the Federal Rules of Civil Procedure, or even possible. We also are not certain if the Defendants would assert that they have the right to attend and observe whatever inspection you might seek to pursue. Perhaps a call with you, Defendants' counsel, and our firm would help work through the related issues.

    We remain willing to cooperate reasonably with you. Out of abundance of caution, however, we must make it clear that if there is any "inspection" on March 7, 2023 pursuant to the Inspection Subpoena, it will be limited to the common areas of the Property and not individual Apartments, we need to coordinate these efforts with the Defendants in the case to avoid undue burden on our clients, and we must know in advance whom you propose to have in attendance and for what purpose they propose to be present.

                                                                                          Sincerely yours,

                                                                                          Vernon W. Johnson, III

Enclosure as Stated

# AGREEMENT REGARDING PROPERTY INSPECTION PROTOCOL

This Agreement Regarding Property Inspection Protocol (the "Agreement") is executed as of February ___, 2023 (the "Effective Date") by and among Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (the "Plaintiffs"), 1400 University Boulevard Owner, LLC (the "Owner") and Jair Lynch Real Estate Partners ("Jair Lynch"). The Parties enter into this Agreement on behalf of and for the benefit of themselves and their respective subsidiaries, agents, affiliates, parent entities, heirs, administrators, attorneys, directors, executors, assigns, agents, representatives, beneficiaries, personal representatives, insurers, trustees, lenders, partners, shareholders, managers, members, associates, employees, servants, successors, predecessors, related entities and assigns and such other parties who are all intended third party beneficiaries of this Agreement. Each of the Plaintiffs, Owner, and Jair Lynch may be referred to in this Agreement as a "Party," and they may be referred to collectively as the "Parties."

This Agreement shall govern any access to and entries upon the residential housing complexes known as Bedford Station and Victoria Station apartment complexes and associated real property, common areas, and appurtenances located in Langley Park, Prince George's County, Hyattsville, Maryland (the "Property") by Plaintiffs and their counsel and third parties acting on their behalf, as part of their discovery and case preparation, and pursuant to Subpoenas that they have issued, in the lawsuit styled as *Casa de Maryland, Inc. et al. v. Arbor Realty Trust, Inc. et al.*, No. 8:21-cv-01778-DKC (the "Litigation"). To the extent that other parties to the Litigation request to be present for Plaintiffs' access to and entries upon the Property, Owner and Jair Lynch reserve the right to require them to agree to be bound by this Agreement.

Each individual requesting entry onto any part of the Property (each, a "Participant") must and hereby does (i) agree to, and abide in all material respects by, the terms of this Agreement, (ii) signify his or her agreement, and the agreement of the firm(s) employing or otherwise retaining his or her services, to abide in all material respects with the terms of this Agreement by executing a Property Inspection Protocol Agreement Form in the form attached hereto as Exhibit A (the "Inspection Protocol"), (iii) obtain the advance express written approval of the Owner prior to each entry, and (iv) abide by applicable legal requirements under Leases or other applicable law. The Owner may make reasonable written modifications to the provisions of this Agreement and the Inspection Protocol form from time-to-time in order to incorporate guidance, protocols and/or requirements issued by state, federal and local officials, laws, and public health organizations. The terms of this Agreement are as follows:

1. **Inspection Protocol Form**. Each prospective Participant must submit a completed Inspection Protocol form and obtain the advance express written approval of the Owner prior to entry. The Owner's advance express written approval must be signified by the Owner's authorized representative's signature at the bottom of Page 2 of the Inspection Protocol. If applicable, Participants must specify the Unit Number(s) of each Property they request to inspect. Participants must use a separate form for each access to the Property, and each Unit, for each requested date of entry, and must obtain the Owner's advance express written approval for each requested date of entry. To the extent that entry is requested for particular Units, the Resident(s) occupying each such Unit must give their advance written consent to such entry in accordance with applicable provisions of Leases and other applicable law. The information submitted by Participants in the

Inspection Protocol must be true and correct in all material respects with respect to each Participant upon delivery of said executed Inspection Protocol and at the time of each entry onto the Property.

Each such executed Inspection Protocol form shall be delivered to the Owner's representative, Vernon W. Johnson, III, by email at vjohnson@nixonpeabody.com, prior to entry on the Property, but not less than seven (7) calendar days prior to the requested date of entry in each instance. The Owner will make reasonable efforts to seek written consent of Residents to any requested entry, but the Owner cannot require such written consent and has no liability or obligation in the event that such written consent cannot be obtained or is denied by the Residents for any reason; and access to Units cannot and will not be provided in the absence of written consent from the affected Residents.

2. **Inspections**. With the advance express written approval of the Owner and Resident(s) as required under this Agreement, Participants may have reasonable access to the common areas of and, subject to Resident(s)' written consent, Units within the Property during regular and customary business hours (or other mutually agreed upon times) for the purpose of conducting, at each Participant's sole cost, risk, and expense, non-invasive physical examinations and inspections (collectively, the "Inspections"). All entries onto the Property by any Participant shall, at all times, be accompanied by representative(s) of the Owner in order to ensure compliance with the requirements of this Agreement. All Participants shall honor the Owner's instructions and shall leave and vacate the Property if directed to do so.

3. **Participants' Obligations**. Participants shall promptly provide the data produced by the Inspections, and any related reports, to the Owner once such inspection results and/or reports are available. Participants shall furnish to the Owner, without charge, copies of any reports, photos, and videos generated in connection with the Inspections. Participants shall not perform any intrusive or destructive testing. Participants shall not conduct any interviews of or solicit information from Residents or staff. Participants shall promptly repair and restore any disturbance or damage caused by the Inspections so as to return the Property to the condition that existed prior to its undertaking of the Inspections. Participants shall repair fully any additional physical damage to the Property caused by the Inspections within a reasonably prompt time after their receipt of written notice of such physical damage which describes the nature of such damage.

4. **Confidentiality.** Participants agree to keep all data, including, but not limited to, all tests and inspection results produced by Inspections, strictly confidential. Any information obtained from the Inspections or reflected in the inspection results or reports, including the results of such physical inspections and documentation thereof, shall not be used by the Plaintiffs or the Participants for any purposes whatsoever, including solicitation of other parties or clients, other than preparing for and conducting the Litigation. Plaintiffs shall also not seek to assert, offer in evidence, or otherwise employ any information obtained thereby, including the results of such physical inspections and documentation thereof, to pursue, or assist in the pursuit of, any claims, whether by Participants, Plaintiffs, or other parties, against Owner and/or Jair Lynch. All documents provided by Owner and/or Jair Lynch that are designated as "Confidential" pursuant to the Stipulated Protective Order entered in the Litigation shall be subject to and used only in strict conformance with the provisions of the Stipulated Protective Order. All results of physical inspections and documentation thereof shall be further given and treated with the same "Confidential" designation by Plaintiffs or Participants, and shall be labeled as "Confidential"

before being produced in the Litigation. In the event that any Participant or any of the Plaintiffs is issued or served with a subpoena, discovery requests, court order or other requests, which purport to mandate or elicit the disclosure of documents or information related to the physical inspection of the Property, including but not limited to the findings, reports, conclusions, inspection protocols, pictures, imaging, testing, analyses, and/or surveys, or the other information provided by Owner or Jair Lynch to Plaintiffs regarding the Property, Owner and Jair Lynch shall be provided with advance notice of any intent to disclose such information at least ten (10) business days prior to disclosure and with sufficient warning so that Owner and Jair Lynch have an opportunity to object to the disclosure and/or request that any such disclosure be subject to a protective or confidentiality order, or if applicable, that it be filed under seal. Any Participant or Plaintiff issued or served with an aforementioned subpoena, discovery request, court order or other request shall work with Owner and Jair Lynch to comply with all reasonable efforts in objection to disclosures when applicable.

5. **License.** Owner shall permit Participants access to the Property by a license, revocable upon notice from Owner to such Participants, to enter the Property provided that: (a) such entry shall be at the sole risk and expense of Participants; (b) Participants shall promptly repair and restore, at Participants' sole cost and expense, any disturbance or damage caused by such entry and storage so as to return the Property to the condition that existed prior to its undertaking of the same; (c) Participants shall indemnify, defend and hold Owner and its representatives harmless with respect to any loss, damage or injury to persons or property caused by such entry; (d) Participants shall repair, at their sole cost and expense, any additional physical damage to the Property caused by such entry within a reasonably prompt time, not to exceed thirty (30) days, after it receives written notice of such physical damage which describes the nature of such damage; and (e) prior to such entry and storage, Participants shall provide Owner with certificates of insurance issued by an insurance carrier reasonably satisfactory to Owner, naming Owner and Jair Lynch as additional insureds and providing the coverages and limits. The foregoing revocable license shall not constitute a lease and Participants waive any contrary claim. The provisions of this Paragraph shall survive any termination or expiration of this Agreement.

6. **Insurance Required for Site Access.** Prior to making any entry onto the Property for the purpose of conducting any Inspections, each Participant shall provide the Owner with certificates of insurance issued by an insurance carrier reasonably satisfactory to the Owner, naming the Owner and Jair Lynch as additional insureds and providing the coverages and limits as follows:

(a) Commercial general liability insurance written on an occurrence basis, including contractual liability insurance, naming the Owner as an additional insured, against claims on account of bodily injury, death or property damage arising as a result of the activities of Participants and their respective employers, employees, agents, contractors and consultants on the Property. Such insurance shall have a combined single limit of not less than $2,000,000 per occurrence for bodily injury, death and property damage and a $5,000,000 umbrella policy. Participants shall be liable for any deductible amount in the event of an insured loss thereunder.

(b) Automobile/vehicle liability insurance in at least the amount of $1,000,000 per occurrence.

- 3 -

      (c)      Workers compensation in the amount required by statute.

All insurance policies required to be maintained hereunder shall be procured from insurance companies authorized to do business in the State of Maryland and rated at least A-VIII or better by the then current edition of Best's Insurance Reports published by A.M. Best Co. All liability insurance policies shall provide that they shall not be canceled or materially changed without providing at least thirty (30) days prior written notice to the Owner and Jair Lynch. Liability insurance limits may be provided through any combination of primary and/or excess insurance policies.

7.    **Indemnity.** Participants and their respective firms hereby undertake to indemnify and hold Owner and Jair Lynch, and their principals and employees, harmless to the fullest extent permitted by law from any claims for damage of any kind (including, but not limited to, any loss, damage, or injury to persons or property) arising out of or related to the access granted by the Owner under this Agreement. Such indemnification shall include reasonable attorneys' fees, expenses, and other similar professional costs.

8.    This Agreement, including any attachments or amendments, constitutes the entire agreement between the Parties, and does not create any other rights, easements, licenses, leases, covenants or rights of way not expressly reserved herein. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by all Parties, except as otherwise expressly provided herein. Each Party to this Agreement hereby acknowledges and agrees that none of the other Parties have made any warranties, representations, covenants or agreements, express or implied, in entering into and executing this Agreement, nor have the Parties relied upon no warranties, representations, covenants or agreements, express or implied, other than those expressly set forth herein.

9.    Failure to insist upon strict compliance with any of the terms, conditions, or covenants herein shall not be deemed to be a waiver of such term, condition, or covenant, nor shall any waiver or relinquishment of any right or power hereunder at any one time or more times be deemed a waiver or relinquishment of that right or power at any time or times.

10.    This Agreement shall be construed fairly as to all Parties and not in favor of or against any Party hereto, regardless of which party prepared this Agreement.

11.    This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland without regard to any conflicts of law principles that would require the application of the laws of any other state or jurisdiction.

12.    EACH PARTY HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHTS THAT HE, SHE, OR IT MAY HAVE TO REQUEST OR DEMAND THAT ANY ACTION, PROCEEDING, CLAIM, OR COUNTERCLAIM BASED UPON OR ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT BE TRIED BY A JURY. THIS WAIVER OF RIGHT TO A JURY TRIAL EXTENDS TO ANY AND ALL RIGHTS TO DEMAND A TRIAL BY JURY ARISING FROM ANY SOURCE INCLUDING, BUT NOT LIMITED TO, THE CONSTITUTIONS OF THE UNITED STATES OR THE STATE OF MARYLAND, COMMON LAW, OR ANY APPLICABLE LAW, STATUTE, OR

REGULATIONS. EACH PARTY ACKNOWLEDGES AND AGREES THAT EACH IS KNOWINGLY AND VOLUNTARILY WAIVING THE RIGHT TO DEMAND TRIAL BY JURY. THE PARTIES SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THIS WAIVER IS ABSOLUTE AND UNCONDITIONAL AND CANNOT BE MODIFIED IN ANY RESPECT OR RELINQUISHED BY THE PARTIES EXCEPT IN A WRITTEN INSTRUMENT SIGNED BY ALL PARTIES TO THIS AGREEMENT.

13. This Agreement may be (i) executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and (ii) executed and delivered electronically via facsimile, electronic mail (including pdf or any electronic signature complying with the United States federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

14. The Parties understand and agree that they were each represented by and had the opportunity to consult with counsel regarding the terms hereof and to participate in the drafting hereof.

15. If for any reason any provision of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement will nevertheless be construed, performed, and enforced as if the invalidated or unenforceable provision had not been included in the text of this Agreement.

16. All obligatory written notices and correspondence pertaining to this Agreement shall be sent to the following:

**For Jair Lynch and Owner:**
1400 University Boulevard Owner, LLC
Jair Lynch Real Estate Partners
c/o Michael S. Long, Esq.
Eroncia M. Berry, Esq.
1400 Sixteenth Street, N.W., Suite 430
Washington, D.C. 20036
msl@jairlynch.com
emb@jairlynch.com

And with a copy to:
Louis E. Dolan, Jr., Esq.
Vernon W. Johnson, III, Esq.
NIXON PEABODY LLP
799 9th Street, NW, Suite 500
Washington, DC 20001-4501
Fax: (202) 585-8080
ldolan@nixonpeabody.com

- 6 -

vjohnson@nixonpeabody.com

**For Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (Plaintiffs):**
c/o Jonathan B. Nace, Esq.
Nidel & Nace, PLLC
One Church Street, Suite 802
Rockville, MD 20850
jon@nidellaw.com

c/o P. Joseph Donahue. Esq.
The Donahue Law Firm, LLC
19 West Street
Annapolis, MD 21401
pjd@thedonahuelawfirm.com

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

     **IN WITNESS WHEREOF**, each of the undersigned, intending to be legally bound hereby, has executed this Agreement Regarding Property Inspection Protocol as of the date set forth below.

Date:_____        By:_____
                                                                           Anita Ramirez

Date:_____        By:_____
                                                                           Ramiro Lopez

Date:_____        By:_____
                                                                           Ervin Obdulio Rodas

Date:_____        By:_____
                                                                           Jesus Gonzalez

Date:_____        By:_____
                                                                           Maria Arely Bonilla

Date:_____        By:_____
                                                                           Maria Lara

Date:_____        By:_____
                                                                           Norma Guadalupe Beltran

Accepted and agreed to by:

**1400 UNIVERSITY BOULEVARD OWNER, LLC**

By:_____
Name:
Title:

Accepted and agreed to by:

**JAIR LYNCH REAL ESTATE PARTNERS**

By:_____
Name:
Title:

Exhibit A

# PROPERTY INSPECTION PROTOCOL AGREEMENT FORM
*(Please use a separate form for each requested date of entry, for the Property and any specific Units.)*

1. **Property Address (the "Property")**

   Street: _____   Unit Number: _____

   City: _____   State: _____   ZIP Code: _____

2. **Date and Time of Request for Entry to Property**

   Date: _____ / _____ / _____

   Start Time: _____ : _____ (AM / PM)   End Time: _____ : _____ (AM / PM)

3. **Individual(s) Requesting Entry to Property ("Participants")**

| Name | Company/Organization | Phone | Email |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

   Check here if you need additional space, and use the form attached as Exhibit B.

4. **Purpose of Entry Request:** _____

   _____

5. **COVID-19 Disclosures.** Participants must confirm the following (check all that apply):

   I am not feeling ill or having any of the symptoms related to COVID-19 (e.g. fever, chills, cough, shortness of breath, difficulty breathing, fatigue, muscle aches, body aches, headache, loss of taste or smell, sore throat, congestion, runny nose, nausea, vomiting, or diarrhea);

   I have not tested positive for COVID-19 in the past 14 days; and

1

I have not been quarantined or, to my knowledge, been exposed to anyone within the last 14 days who (1) tested positive to COVID-19, or (2) was mandated to be quarantined or voluntarily quarantined due to illness.

**6. Owner's Representative(s) Accompanying Participants:** _____

_____

**7.    Insurance.** Participant(s) affirm(s) that they have provided all necessary certificates of insurance as required by Paragraph 6 of the *Property Inspection Protocol Agreement* to the Owner prior to entry of the Property.

**8.    Signatures.** Participant(s) represent(s) that they have been provided with, and have reviewed, and understand and agree to follow all requirements outlined in the *Property Inspection Protocol Agreement* and agree that further restrictions that may apply as dictated by the Owner pursuant to that Agreement. Individuals signing this document on behalf of their respective firms hereby represent and warrant that they have actual authority to do so.

| Name of Individual Participant | Company/Organization | Phone | Email |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| Individual Participant's Firm | Name and Signature of Firm's Authorized Agent | Phone | Email |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

3

|  |  |  |  |
|--|--|--|--|
|  |  |  |  |

*For office use only:*
**Reviewed and accepted by Owner's representative:**

_____          _____
Signature                                                                                             Date

_____
Name

## Exhibit B

**ADDITIONAL PARTICIPANT INFORMATION** *(use only if necessary)*

| Name of Individual Participant | Company/Organization | Phone | Email |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| Individual Participant's Firm | Name and Signature of Firm's Authorized Agent | Phone | Email |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |