IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

| | |
|---|---|
| CASA DE MARYLAND, INC., *et al.*<br><br>**Plaintiffs,**<br><br>v.<br><br>**ARBOR REALTY TRUST, INC.,** *et al.*<br><br>Defendants. | **Civil Action No. 8:21-cv-01778-DKC** |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL INSPECTION OF
LAND AND COMPLIANCE WITH SUBPOENA**

***COME NOW*** Plaintiffs, by and through undersigned counsel, and respectfully Reply in Support of their Motion to Compel Inspection of Land and Compliance with Subpoena issued to Jair Lynch Real Estate Partners and 1400 University Boulevard, LLC (collectively "Ownership.").

Plaintiffs are seeking a standard site inspection of the property at issue, but Ownership and Defendants have made the process needlessly complicated and have backtracked on what they promised in November 2022. Plaintiffs have provided cooperation and relevant information, but Plaintiffs object to disclosing information that is not required under Rule 45 and may be subject to numerous privileges under the Federal Rules of Civil Procedure. If Ownership had merely followed through on promises made in November 2022, and if Defendants had made any timely inquiries into the subpoenaed inspection, this motion would not have been necessary.

**I.  Ownership has a property interest in the individual apartments and can provide access under both the terms of the lease and the law.**

Plaintiffs appreciate that the Court has identified this as a potentially "novel" and complex issue. ECF #142. Therefore, Plaintiffs note the burden of proof lies with Ownership (and Defendants) not with Plaintiffs.

1

> The person seeking to quash or modify a subpoena bears the burden of proof to demonstrate that compliance is unwarranted under Fed. R. Civ. P. 45.

*Strike 3 Holdings v. Doe*, Civil Action No. CCB-20-2748, at *1 (D. Md. Jan. 21, 2021) (citing *Va. Dep't of Corrections v. Jordan*, 921 F.3d 180, 189 n.2 (4th Cir. 2019) (citing *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 818 (5th Cir. 2004)).

First, Ownership's attached lease terms are dispositive of the issue.

> We may enter the Apartment after due notice to you and without reasonable objection during business hours. If practical under the circumstances, we will attempt to provide at least twenty-four (24) hours advance written notice of our intent to enter for the above purposes.

ECF #133-15 ¶ 33(c). Exactly as identified to Ownership previously and to this Court, Ownership has a contractual right of access with more than twenty-four hours' notice. This is precisely what Plaintiffs sought from Ownership and what Ownership consented to: to provide notice to the tenants of the inspection more than twenty-four hours in advance, and then to provide that access.

This is also consistent with the law that grants Ownership a legal interest to enter the property. Additionally, Rule 45's clear language controls. "A subpoena may command: (B) inspection of premises at the premises to be inspected." FRCP 45(c)(2). Further, Maryland holds that the lessor of rental property "retains fee title." *Velicky v. The Copycat Bldg. LLC*, 476 Md. 435, 448 (Md. 2021) (quoting 49 Am. Jur. 2d *Landlord and Tenant* § 1 (2021); *see id.* ("The rights of a lessee and a lessor in property that is subject to a lease are divided: the lessee has a possessory interest; and the lessor has the reversionary interest. Thus, 'a lessee has a present possessory interest in the premises, while the lessor has a future reversionary interest and retains fee title.'"). Because Ownership retains fee title, it owns the property and has a real, valid, and legal property interest in each apartment it leases. Without any case law to the contrary to support their argument, Ownership cannot meet its burden to quash or modify the subpoena.

Consistent with this, Prince George's County permits landlords to enter apartments for "inspections."

> (a) The tenant shall not unreasonably withhold his consent to the landlord to enter into the dwelling unit **in order to inspect the premises**, make necessary repairs, decorations, alternations or improvements, supply services as agreed, or exhibit the dwelling unit to prospective purchasers, mortgagees or tenants.

Pr. G. Cty. Code § 13-155(a) (emphasis added). Therefore, Ownership has a legal right to inspect the premises to which it has title.

No landlord, including Ownership, can abuse this right. Pr. G. Cty. Code § 13-155(b). For this reason, notice should be given to the tenants by Ownership of the subpoenaed inspection in advance, exactly as they would do if they were conducting their own inspection. With this notice, Ownership can comply with the subpoena and permit entry into tenant apartments for inspection. That is all that Plaintiffs ask.

Finally, Plaintiffs note that though Ownership has told the Court it "could not" provide access to these apartments, the proposed Inspection Protocol contemplated Ownership providing access to these apartments, just as Ownership agreed to do on November 14, 2022, before discussing the subpoena with Defendants in February 2023 and revoking that ability. *Infra.*

**II.    Plaintiffs have made good faith attempts over the court of several months to engage in cooperative discussions with all relevant parties, including Ownership.**

The Court's Order, which denied the Plaintiffs' motion to shorten time, states in part that Plaintiffs could "have either obtained the consent of the non-parties to comply with their inspection plan and subpoenas sooner, or sought relief from the Court well in advance of when they needed to conduct the inspection." ECF #132. This was unexplained by the Plaintiffs to the Court, however, this is precisely what Plaintiffs believed they had obtained: consent to proceed.

Plaintiffs respectfully refer the Court to the Declaration of Plaintiffs' Counsel attached hereto as Ex. 1. On October 25, 2022, Plaintiffs served a subpoena for inspection of the premises upon

Ownership. On November 14, 2022, Plaintiffs' counsel had a meet and confer with Louis E. Dolan and Audrey Gariepy-Bogui of Nixon Peabody, who represented Ownership at the time. During the meeting, it was disclosed to Ownership Counsel that Plaintiffs were seeking to inspect 50-60 randomly selected apartments for the purpose of class certification. Plaintiffs also clarified that they would not perform any destructive testing and were only performing visual observation with two experts. Ownership Counsel acknowledged the request and did not indicate that access to any apartment could not be granted, stating instead that an agreed-upon protocol and a release of liability may be necessary. Plaintiffs' counsel expressed their willingness to consider a release of liability for any harm that may occur due to the inspection. However, they made it clear that they would not agree to release claims against Ownership in exchange for access. Plaintiffs also indicated their willingness to release Ownership from any damages that arose prior to their purchase of the Property.

Ownership Counsel unequivocally understood and agreed to the inspection dates of March 7, 8, and 9. The only remaining task was to draft a protocol that would reflect the agreement made during the call. However, Ownership Counsel caused delay by failing to respond to Plaintiffs numerous requests to finalize the inspection agreement.

- December 2, 2022: Email from Ownership Counsel stating "Notably, our recommendation is that we proceed with a physical inspection of the property subject to a release of claims by the named Plaintiffs." Ex. 2 (composite emails)

- December 2, 2022: Response from Plaintiffs' counsel stating "Please send your proposed release as soon as possible. But, we are not waiving any rights or remedies we may seek if we can't come to an agreement on a release."

- December 2, 2022: Reply from Ownership Counsel requesting a two-week extension on a document production subpoena and stating "Understood. We will send the proposed release as soon as we have approval to do so. Please confirm whether you consent to the two-week extension until December 16th."

- December 2, 2022: Plaintiffs' counsel responds "Sure, you can have two more weeks. But this is not an agreement that we **must** sign a release before we get your documents. Hopefully we can agree on the language and its not an issue,

4

but if we can't agree, we reserve the right to move to compel the documents with or without a release."

- December 16, 2022: Ownership provides discovery responses to Plaintiffs' document subpoena but no production of documents.

- December 21, 2022: Plaintiffs' counsel requested a meeting to discuss "Do you have time today or tomorrow to discuss next steps. We did receive your formal responses, but no production."

- January 11, 2023: Plaintiffs' counsel tries again "I think we didn't connect over the holidays and I'm circling back now. Do you have time today to discuss your production/objections? Also, I thought you all were going to prepare a proposed release so that we could get dates for inspecting the property."

- January 17, 2023: with no response to Plaintiffs' request, a second email was sent "Circling back from my email of late last week. We are still looking for language about a proposed release from you and would like dates for the inspection."

- January 23, 2023: a third email from Plaintiffs' counsel stated "I've been trying to get in touch with you lately and haven't had much success. We really need dates for an inspection and your clients documents now. I'm hoping we are still progressing to working this out amicably. But we need some movement. When we last spoke, you were going to send me a release for liability during the inspection itself, and also a proposed release for claims that arose prior to your client's purchase of the property. I haven't seen either to my knowledge."

- January 26, 2023: Plaintiffs' counsel still trying to cooperate without court intervention stated "Reviewing correspondence over the last two months, it appears you are simply ignoring our requests here. Can you please advise where we are on (1) documents and (2) dates for inspection here. We are happy to issue a new subpoena with a date that works for all parties. It seems silly to involve the Court on this. With that said, we remain willing to work this out, but at this point we don't even appear to have an ongoing dialogue. Please advise."

- On January 26, 2023, Mr. Vernon Johnson of the same firm representing Ownership states was introduced by Mr. Dolan as taking over the matter: "We are not ignoring your requests and have no desire to have you issue new subpoenas. By cc of this email, I am asking my partner Vernon Johnson to take the lead on getting these issues resolved."

- On February 8, 2023, a motion to compel was sent to Mr. Dolan because no documents were produced, and no proposed protocol was ever produced.

5

- On February 8, 2023, Mr. Dolan responded "I have told you that our clients are working on producing documents. I have also told you that we have a draft Property Inspection Protocol in process. We hope to be able to provide that to you soon."

*See* Exs. 1 and 2. At no time in these exchanges did Ownership ever indicate that they could not or would not provide access to apartments as requested on November 14, 2022. And while in hindsight it can be stated that Plaintiffs should have moved to compel sooner, its also true that Plaintiffs' counsel was attempting to resolve this dispute without wasting judicial resources on an issue they believed was settled.

Mr. Johnson then provided the first draft protocol and release on February 17, 2022, which provided for inspecting apartments, *exactly as was discussed in the November 2022 meeting*.

> 2. Inspections. With the advance express written approval of the Owner and Resident(s) as required under this Agreement, **Participants may have reasonable access** to the common areas of **and, subject to Resident(s)' written consent, Units within the Property** during regular and customary business hours (or other mutually agreed upon times) for the purpose of conducting, at each Participant's sole cost, risk, and expense, non-invasive physical examinations and inspections (collectively, the "Inspections"). All entries onto the Property by any Participant shall, at all times, be accompanied by representative(s) of the Owner in order to ensure compliance with the requirements of this Agreement. All Participants shall honor the Owner's instructions and shall leave and vacate the Property if directed to do so.

ECF #133-12, p. 6 of 15 (emphasis added). This language clearly contemplates Plaintiffs' November request for in-unit inspections that was discussed; and Plaintiffs suggest it was not incorporated out of the kindness of Ownership, but **because** it was already requested and agreed to in principle in November 2022.

On February 15, 2023, *nearly four months after the subpoena was sent to Defendants*, the first notion of any objection by Defendants was sent by defense counsel to Plaintiffs' counsel. Then, on the eve of the inspection, Defendants requested additional information about the inspection. Defendants suddenly needed to know "(i) the identities of the individuals that will be inspecting and

6

conducting any testing on the properties; (ii) the specific areas or deficiencies that the inspectors will be observing and/or testing for; and (iii) the specific tests that the inspectors intend to conduct at the properties" or else they would object to the inspection occurring. *See* Ex. 3. Additionally, defense counsel indicated 1) they had been "coordinating" document production with Ownership Counsel about Plaintiffs' subpoenas; 2) "do not believe that the subpoenas, as presently postured, comply with the Parties' obligation to avoid undue burden or expense" though they had no standing to object to the subpoena; and 3) objected to the relevance of the inspection because they had sold the property. *Id.*

Plaintiffs' counsel immediately responded that day indicating that there was no objection to the subpoena from Ownership about the scope of the inspection. "It is not clear to me that Jair Lynch or 1400 University Boulevard Owner, LLC has any concerns with the valid subpoena that was served on them in compliance with Rule 4 and Rule 45. Though you claim that they have concerns, I am aware of none." Ex. 4. Plaintiffs' counsel agreed that Ownership can produce documents directly to the Defendants if it wishes.

Plaintiffs' counsel only objected to providing i) identities of the individuals, ii) the "specific areas or deficiencies" that they will inspect, or iii) the "tests" they will perform." *Id.* To those extremely late requests (obviously sought to delay the inspection), Plaintiffs stated "the answer is no." *Id.* But Plaintiffs' counsel agreed "You can conduct whatever inspection you like while we conduct ours." *Id.* Finally, Plaintiffs note that they had already informed both Defendants:

> Finally, the inspection absolutely will involve individual units. Jair Lynch and 1400, LLC are the owners of the property and have rights of ingress with notice. Each lease gives Landlord the right of entry with twenty-four hours "written or oral notice" to the tenant. This is consistent with the law in the State of Maryland. As we have previously informed you and the Court, we intend to conduct testing at randomly chosen apartments for environmental statistical purposes.

*Id.* A courtesy copy of this letter was sent to Mr. Johnson.

7

With knowledge of this request in November 2022, and having sent a proposed protocol that included the inspection of apartment units themselves, Ownership completely reversed course on February 17, 2023, and for the first time stated that the inspection would be limited to common areas.

Plaintiffs' counsel responded on February 21, 2023, and informed Mr. Johnson of the same timeline of events laid out herein. On February 24, 2023, Mr. Johnson responded. First, he admitted that Plaintiffs' counsel requested access to individual apartments in November 2022, and that they agreed to make them available. However, he stated that they would only do so in exchange for a release:

> You also suggest that there was some prior agreement on our part to give you access to "approximately fifty apartments." This is not an accurate statement of those discussions. **We understood that you might want access to individual apartments**. Even though we cannot require or guarantee such access (and were quite clear about that), **we were willing to work with you to try to seek to facilitate such access, subject to a release** (the draft of which we sent you on January 30, 2023) and an appropriate property inspection protocol agreement (the draft of which we sent you on February 17, 2023).

Ex. 5.

This exchange reveals the true basis for objecting to providing access to units. The reason is that Ownership wants a release of claims against them in exchange for compliance with a subpoena.

Plaintiffs' motion to compel ensued after months of attempts to work this out, after Ownership passed this case to co-counsel, after Ownership reversed course on their belief that they can provide access to individual apartments under the law and the leases, and after Ownership demanded a release of liabilities to comply with a valid subpoena.

**III.    Ownership's current demands are either already agreed to or unreasonable and not required by the Rule 45.**

In its opposition, Ownership eventually expresses a list of demands that are simply not required of any party that wishes to conduct a site inspection. Many of them were already agreed to by Plaintiffs, and the rest are unreasonable:

> "(a) they would not and could not provide access to apartments rented to residents;
> (b) they needed an inspection protocol to include protections regarding insurance and indemnity against damage and bodily injury;
> (c) they needed disclosure of the names and firms of all persons that the Plaintiffs would propose to bring;
> (d) they needed disclosure of the purposes of the visit;
> (e) they needed acceptance of time limits and restrictions that any access take place during regular business hours;
> (f) they needed coordination with the Defendants, to reduce or avoid multiple visits (in accordance with Fed. R. Civ. P. 45(d)(1)'s directive to avoid undue burden or expense on persons subject to subpoenas);
> (g) existing leases with residents and applicable law would have to be complied with; and
> (h) 1400 University and Jair Lynch would be provided with all test results and related papers.
>
> It was also discussed that 1400 University and Jair Lynch would require a release of claims in connection with additional cooperation going beyond what is legally required under the circumstances."

ECF #133, p. 3. None of this is required by Rule 45; nevertheless, most of these demands are not in dispute.

Taking each of these in specific turn, Plaintiffs either already agreed to the request or object for the reasons stated.

### a. "They would not and could not provide access to apartments."

Plaintiffs responded to this legal argument, which was first raised more than three months after the subpoena was served above. *Supra* § I. Further, as stated, Ownership previously agreed to do so by teleconference and even provided an Inspection Protocol which contemplated in-unit inspections. Suddenly, Ownership "would not and could not" provide this access.

### b. "They needed an inspection protocol."

As Ownership counsel pointed out, Plaintiffs "agreed to agree" to an inspection protocol. After months of requesting specifics as to what Ownership was seeking, Ownership's counsel finally provided an overly complex and unnecessary "Inspection Protocol" that spans five single spaced pages of restrictive language. This language includes such outlandish requests as 1) demand that all data be

9

confidential; 2) proof of insurances for site access, including "automobile/vehicle liability insurances in at least the amount of $1,000,000 per occurrence," 3) demands for all data to be provided to Ownership, 4) indemnification and attorneys' fees and expenses for any loss (presumably including loss caused by Ownership as it plans to attend), and 5) a waiver of any jury trial rights. This is not an inspection protocol.

  The expected proposed inspection protocol would have stated the following simple facts:

1. Plaintiffs' counsel and expert witnesses may inspect the BVS properties on agreed upon dates.

2. Plaintiffs will not conduct any destructive testing or sampling anywhere on the premises.

Ownership's last-minute "Inspection Protocol" turned a simple acknowledgment to agree into a five-page document that can be described as unnecessarily complicated, assuming it was put together in good faith and not for the purpose of delay. Plaintiffs had already agreed to many of these requests, but it also added other outlandish requests that would never be agreed to by any attorney that has a good faith need to inspect the premises under Rule 45.

  **c. "They needed disclosure of all names and firms of all persons."**

  This was requested on February 28, 2023, and it was substantially provided to Ownership and all parties. Plaintiffs' counsel provided the names of expert witnesses who would attend as well as their company names. The only caveat was that Plaintiffs' counsel informed all parties and Ownership that there may be additional data gatherers brought by the experts themselves, but that these individuals would be employees of the same firms as the proposed experts.

  **d. "They needed disclosure of the purpose of the visit."**

  Plaintiffs do not comprehend what this request is, assuming it is something other than to conduct a site inspection related to the disclosed litigation. If there is something further Ownership wishes to be disclosed, Ownership should identify what that is.

10

e. **"Acceptance of time limits and restrictions that any access take place during regular business hours."**

Plaintiffs have always demanded three consecutive days of inspection due in part to the size of the property. But Plaintiffs are not willing to identify any specific amount of time for any area that is to be inspected. This is because, Plaintiffs do not know what they will find in any specific area; hence, the need for the inspection. Plaintiffs expect that each apartment will take approximately fifteen minutes of visual inspection but object to being held to strict time limits. Some apartments may be more easily accessed or inspected than others; some apartments may need more attention.

Plaintiffs, of course, agreed to conduct these inspections during business hours and never objected to such.

f. **"Coordination with the Defendants, to reduce or avoid multiple visits (in accordance with Fed. R. Civ. P. 45(d)(1)'s directive to avoid undue burden or expense on persons subject to subpoenas)."**

Consistent with the Local Rules, Plaintiffs provided the subpoenas to Defendants prior to service on Ownership in November 2022. The subpoenas listed the dates and times for inspection. Defendants offered no objection or requested no other information until February 2023. Plaintiffs would have been willing to accommodate such a request if made by Defendants. However, Defendants never made any such request.

If the request is that Plaintiffs and Defendants must coordinate the same type of experts and must agree to the same inspection, then Plaintiffs object. Rule 45 permits inspection of the premises. Plaintiffs are not required to conduct only an inspection that Defendants wish to conduct. Nor are Plaintiffs required to drill down in any more detail than what is provided: the names and subject matter of expertise for each expert.

    **g. "Existing leases with residents and applicable law would have to be complied with."**

Plaintiffs obviously do not object to this. Ownership has not identified in any way how this is pertinent, what law is at issue, or what term of the lease needs to be complied with any specificity at all. At present, it is just an amorphous request to comply with the law, with which Plaintiffs obviously agree.

    **h. "1400 University and Jair Lynch would be provided with all test results and related papers"**

This request was first made in the proposed "Inspection Protocol" sent on February 17, 2023, *i.e.* nearly four months after the subpoena was served and two-and-a-half weeks before the previously agreed upon inspection was to occur. However, Ownership cannot articulate any basis for why they would be entitled to any expert's or attorney's work product regarding the inspection. It is not contemplated by the Rules of Civil Procedure, nor is there any case law that has been cited compelling such.

Additionally, it plainly infringes on attorney work product and expert privileges. *See* FRCP 26(b)(3)(A) ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.."); FRCP 26(b)(4)(C) ("Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications…").

Additionally, any expert who is inspecting the premises may eventually ***not*** even be disclosed as a testifying expert indicating that all of the documents or testing may remain work product.

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.

FRCP 26(b)(4)(D). Simply, even if there was any basis for a non-party to make a document request on a party, the request for all testing and "related papers" patently infringes on work product and privileged information. Plaintiffs should not be compelled to release privilege to conduct a Rule 45 inspection.

### i. "A release of claims in connection with additional cooperation going beyond what is legally required under the circumstances."

The notion that Plaintiffs should release Ownership from any and all potential claims as a condition of complying with Rule 45 is not only absurd but also offensive to the Federal Rules of Civil Procedure. It is not Plaintiffs' responsibility to release potential claims against a non-party for that non-party's "cooperation." If this were the case, Rule 45 would be a meaningless tool for discovery.

On November 14, 2022, Plaintiffs agreed to consider a release of claims 1) for acts happening *prior* to the current Ownership purchasing the property, and 2) for harm that might occur during the inspection itself. Now, Ownership is asking for a release of liability in exchange for complying with a subpoena. That is unacceptable.

## IV. CONCLUSION

Plaintiffs' motion to compel should be granted. Ownership has a contractual right to enter the land with notice to the tenants and a statutory right pursuant to Prince George's County Code. Plaintiffs have diligently pursued this discovery and should not have to provide any additional information or release of liabilities other than what is already provided.

Respectfully submitted,

**Nidel & Nace, P.L.L.C.**

/s/ Jonathan Nace
Jonathan Nace, Esquire
Bar Number: 18246
Zachary Kelsay
Bar Number: 30460

13

> One Church Street
> Suite 802
> Rockville, MD 20850
> Telephone:(202) 780-5153
> jon@nidellaw.com
> zach@nidellaw.com

**CERTIFICATE OF SERVICE**

      This is to certify that on this 28th day of March 2023, I caused a copy of the foregoing to be served upon all parties.  I further certify that a copy was sent to counsel for Jair Lynch and 1400 University Owner Boulevard, LLC via email service:

Vernon W. Johnson, III
Nixon Peabody LLP
799 9th Street NW, Suite 500,
Washington, DC 20001-5327
vjohnson@nixonpeabody.com

                                        */s/ Jonathan Nace*
                                        Jonathan Nace, Esquire
                                        Bar Number: 18246