IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| CASA DE MARYLAND, INC., et al,<br>　　Plaintiffs | * | |
| v. | * | Civil Action No. 8:21-cv-01778-DKC |
| ARBOR REALTY TRUST, INC., et al,<br>　　Defendants. | * | |

******

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' CROSS-MOTION FOR ENTRY OF A PROTECTIVE ORDER

As stated in the Cross-Motion, Defendants[1] seek certain basic, necessary protections so that Defendants can meaningfully participate in the Inspection of BVS and ensure that the Owners are only burdened by one inspection during the course of this litigation.[2] Good cause exists for the Court to enter the proposed protective order and nothing in Plaintiffs' Opposition (ECF No. 142) or their incorporated Reply (ECF No. 141) alters that analysis.

Plaintiffs' Opposition is premised on several misguided notions. First, Plaintiffs contend that they have provided all of the Requested Information. Opp. at 2. That is false. Plaintiffs still refuse to identify the specific areas or deficiencies that they will be inspecting at the BVS properties and the methods and/or tests that Plaintiffs intend to use. Second, Plaintiffs assert that the terms of the proposed protective order impinge on Plaintiffs' ability to conduct the inspection

---

[1] Defined terms have the meaning ascribed to them in the Cross-Motion. *See* ECF No. 135-1.
[2] It may not be necessary for the Court to reach the issues raised in the Cross-Motion because the Owners contest whether the Inspection may proceed at all. *See* ECF No. 133 at 8–14. Moreover, as noted in the Cross-Motion, Defendants reserve any and all objections to the relevance of any materials that may be obtained from the proposed Inspection nearly a year after BVS was sold to an unrelated third-party. However, if the Court permits the Inspection, Defendants seek the relief identified in the Cross-Motion to ensure a fair and productive Inspection.

they desire and will require Plaintiffs to turn over privileged documents. Opp. at 3–5. They are wrong on both fronts—the proposed terms (which other courts within this Circuit have approved when addressing similar circumstances) do not limit Plaintiffs from conducting their intended inspection and do not call for the production of privileged materials.[3] They simply ensure that the Inspection serves a useful purpose in this litigation with minimal impact on the non-parties.

As Plaintiffs admit, "common sense dictates that the parties will inspect the property at the same time with their respective experts." Opp. at 3. Yet, without the proposed protective order, Defendants will be unable to do so. In fact, without the Requested Information, Defendants cannot retain the necessary expert witnesses to attend the Inspection, forcing them to conduct a second inspection to the Owners' (and Defendants') detriment. Therefore, both "common sense" and good cause support entry of the proposed protective order.

## ARGUMENT

### A. Plaintiffs Continue to Refuse to Provide Information Necessary for Defendants to Meaningfully Participate in the Inspection.

Although Plaintiffs agree with Defendants that they are required to disclose "what they will do" at their Inspection with "reasonably particularity" (Opp. at 3), they refuse to do so. Indeed, Plaintiffs claim that they have provided all of the Requested Information, but that is not true. Opp. at 2. They either wholly ignore important categories of Requested Information or side-step the issue. *See* Opp. at 2–3.

For example, Plaintiffs assert that they provided the specific areas or deficiencies to be observed and/or tested by "identif[ying] that they intend to inspect 50-60 randomly selected apartments" and pointing to the allegations in the FAC. Opp. at 2–3. But, as Defendants explained

---

[3] As noted in Section C, Plaintiffs' assertion that Defendants have brought the Cross-Motion in "bad faith" or for improper "delay" is unfounded (Opp. at 2). *Infra* § C.

to Plaintiffs at the meet and confer, this is insufficient due to the scattershot set of vague defects alleged in the FAC, such as "failed plumbing" and "electrical and appliance defects."  FAC ¶ 3; Cross-Motion at 8-9.  If Plaintiffs are not compelled to identify the specific issues that are the focus of the inspection, Defendants will be left guessing what competencies their retained experts should have and what tests they should be prepared to administer, or require them to prepare for *all* possibilities, thereby unnecessarily increasing expenses.  Furthermore, Defendants may be forced to seek a second Inspection to perform more appropriate testing, thereby unnecessarily increasing the burden on both the Owners and Defendants.

Plaintiffs contend that they have provided the "specific tests to be conducted" by identifying "the expertise of the experts."  Opp. at 1–2.  Again, this does not answer Defendants' inquiry.  A certified industrial hygienist and a structural engineer could use any number of tests and/or methodologies since these broad areas of specialty cover a wide range of competencies, activities, and procedures.  Further, Plaintiffs have taken varying positions concerning the tests they intend to conduct, rendering the scope of the Inspection fuzzy, at best.  *Compare* Opp. at 4 (stating that Plaintiffs wish to do "a visual inspection of the property only")*, with* Meehan Decl. ¶ 11 (stating at the meet and confer that Plaintiffs intend to conduct visual, non-destructive testing *and* mold swabs).[4]  Plaintiffs admit that they know the methods and testing that their experts will use, but they simply refuse to share that information with Defendants.  Opp. at 2 ("The methods and testing that will be used during the inspection are not novel.").  To date, Plaintiffs' refusal to

---

[4] Plaintiffs contend that "Defendants objected to the inspection when they did own the property despite the possibility of spoliation of evidence," but that is a mischaracterization.  Opp. at 4. Plaintiffs first raised the notion of a property inspection in their reply in support of their motion to compel the premature opening of discovery (ECF No. 71 at 3).  In their motion for leave to file a sur-reply—which was later denied—Defendants simply responded that such concerns did not warrant the opening of discovery before the resolution of the motions to dismiss.  ECF No. 72-1 at 2–3.

provide the Requested Information has created increased confusion and unnecessary cost for Defendants and Owners alike. Moreover, requiring that Plaintiffs identify what defects they intend to inspect and how they will test for those conditions with "reasonable particularity" ensures that the Inspection remains properly within the bounds of permissible discovery, and does not become an unrestricted fishing expedition. Fed. R. Civ. P. 34(b)(1).

Defendants have been crystal clear in identifying the specific information sought from Plaintiffs, yet Plaintiffs continue to refuse to provide such necessary information, even now, despite admitting that they are required to do so. Opp. at 3 (admitting that Plaintiffs have to describe the Inspection "with reasonably particularity"). Nothing in Plaintiffs' Opposition obviates the good cause set forth in the Cross-Motion requiring Plaintiffs to provide the Requested Information.

    **B.    The Terms of the Proposed Protective Order Are Necessary and Appropriate.**

Plaintiffs assert two attacks on the terms of the proposed protective order. *See* Opp. at 3–5. First, Plaintiffs manufacture a strawman composed purely of hypothetical arguments that have not been raised—namely, that Defendants have improperly sought to narrow or constrict the scope of Plaintiffs' Inspection. *See* Opp. at 3–4. Then, Plaintiffs go on to assert that the protective order should not be entered because it might require Plaintiffs to produce privileged materials. *See* Opp. at 4–5. Both arguments are meritless.

Plaintiffs point to a number of hypothetical scenarios as evidence for why the protective order should not issue—none of which reflect the terms of the proposed protective order or are even at issue in this dispute.[5] Defendants have never suggested that "Defendants can[] tell

---

[5] Plaintiffs' focus on issues not in dispute leaves Defendants' legal arguments unaddressed. Plaintiffs fail to reference or even attempt to distinguish any of the compelling case law raised by

4

Plaintiffs [] what they can and cannot inspect" or that Defendants "will control what type of inspection [Plaintiffs] can perform or how long Plaintiffs can inspect any property." Opp. at 3. In fact, Defendants have taken ***no*** position on any of the following topics: the types of testing that may occur; who may be permitted entry onto the properties; which areas of BVS may be inspected (common areas versus units); how long the inspection may last; the particular defects or deficiencies that Plaintiffs may inspect; or even when the inspection may take place. *See* Cross-Motion; ECF No. 135-14 (terms of proposed protective order). The proposed protective order merely seeks ***procedural*** safeguards that are reciprocal in nature to ensure that Defendants be permitted equal access to the properties as Plaintiffs—safeguards that stem from relevant and persuasive case law addressing this same topic. *See* Cross-Motion at 10–12. Plaintiffs' hypothetical concerns are not grounded in the facts, and none provide any basis to reject entry of the proposed protective order.

Next, Plaintiffs argue that the proposed protective order must not issue because it "infringes on attorney work product and Rule 26 privileges." Opp. at 4. This is false—the proposed order seeks only non-privileged discoverable information. Under Rule 26, both the "facts or data considered by the [testifying expert] witness" and communications between attorneys and testifying expert witnesses "identify[ing] facts or data" are discoverable. Fed. R. Civ. P. 26(a)(2)(B), (b)(4)(C); *see also* Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment (specifying that "the expert's testing of material involved in litigation, and notes of any such testing" are discoverable). The proposed order seeks reciprocal sharing of the raw materials, photographs, video or audio footage taken at BVS, and such data is plainly discoverable under this Rule. *See,*

---

Defendants in the Cross-Motion establishing the appropriateness of the proposed protective order. *See* Cross-Motion at 7–12.

*e.g.*, *Carroll Co. v. Sherwin-Williams Co.*, No. WMN-11-1700, 2012 WL 4846167, at *5 (D. Md. Oct. 10, 2012) (requiring production of "documents, communications, and information seen or considered by [the testifying expert witness]"). Therefore, these terms are appropriate and do not alter the scope of ordinary discovery.

Contrary to what Plaintiffs may claim (Opp. at 4), Plaintiffs' experts are testifying experts because they are expected to testify at trial and, in fact, have already submitted sworn testimony in this case. *See, e.g., Ramaco Res., LLC v. Fed. Ins. Co.*, No. 2:19-CV-00703, 2020 WL 5261320, at *3 (S.D.W. Va. Sept. 3, 2020) (finding witnesses who performed initial property inspections to be testifying experts because "their trial testimony was likely from the outset of the case"). Both of the witnesses that Plaintiffs represent will attend the Inspection have submitted sworn expert testimony in prior court filings in this case, and Plaintiffs have made clear their intentions to rely on such testimony in their upcoming class certification motion.[6] These actions are clearly "incompatible with retaining the status of a mere consulting expert immune from discovery," and Plaintiffs cannot seriously contend that they do not intend these experts to be testifying witnesses. *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-CV-2226 SI KAW, 2013 WL 1402337, at *2 (N.D. Cal. Apr. 5, 2013) (finding expert to be a testifying expert and permitting discovery into the "facts [] relied upon" where witness submitted "sworn testimony similar to testimony at trial" in the form of an affidavit or declaration but "had not been disclosed as [a] testifying expert[]").[7]

---

[6] *See* ECF Nos. 96-2, 96-3 (declarations from Joshua Julius and Jon Tung); ECF No. 96-1 at 13–14 ("But without random sampling or complete sampling, Plaintiffs admittedly cannot properly evaluate [ . . .] the conditions at BVS to determine what percentage of the units have been uninhabitable."); ECF No. 133 at 7 (identifying the same experts as those who will attend the Inspection).

[7] It is of no consequence that Plaintiffs have not yet made their Rule 26 expert witness disclosures. *See Coastline Terminals of Conn., Inc. v. U.S. Steel Corp.*, 221 F.R.D. 14, 16 (D. Conn. 2003) (holding that a party who "clearly stated its intention to name [an entity] as its expert witness" has

Therefore, the terms of the proposed protective order do not infringe on any privilege or other protection held by Plaintiffs.[8]  *See In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2016 WL 11712478, at *1–3 (E.D.N.C. Oct. 19, 2016) (requiring the same terms in protective order concerning non-party property inspection).

Finally, Plaintiffs conclude—without factual or legal support—that they "have already complied with the rest of the proposed protective order and the language is unnecessary" and "ridiculous." Opp. at 4–5.  However, this single sentence is unsupported by any information regarding their purported compliance, or the terms to which they take umbrage.  Plaintiffs have not complied with the proposed order and continue to refuse to do so.

### C.     Plaintiffs Are the Cause of Any Delay, Not Defendants.

Contrary to Plaintiffs' statements in their Opposition, Defendants are not trying to prevent, delay, or constrict Plaintiffs' Inspection.  Defendants merely seek to meaningfully participate in a single inspection of BVS when it takes place.  Plaintiffs' attempts to distract the Court from the relevant issues through a series of factual misstatements and mischaracterizations should be ignored.

While Plaintiffs repeatedly accuse Defendants of improper delay,[9] this Court has already determined that any delay with respect to the Inspection is "of Plaintiffs' own making." ECF No.

---

indicated that the entity was an expert "hired to testify" whose "communications [we]re subject to disclosure at trial and, therefore, [we]re not confidential communications").

[8] The proposed order expressly accounts for any privilege or work product concerns that Plaintiffs have raised (Opp. at 4–5), providing that Plaintiffs' counsel may "confer privately" with their expert witnesses to discuss any privileged theories or mental impressions during the Inspection. *E.g.*, ECF No. 135-14 at 2.

[9] Plaintiffs contend that "the obvious purpose of this motion was to delay the inspection until after the motion for class certification was due in an improper attempt to prejudice Plaintiffs.  They nearly succeeded." Opp. at 2.  This is both factually inaccurate and logically impossible.  As the docket reflects, Defendants did not file the Cross-Motion until after the Court denied Plaintiffs'

132. Contrary to Plaintiffs' assertions (Opp. at 5; Reply at 6, 11), none of the Defendants were made aware of the proposed March inspection dates until February 2, 2023—when Plaintiffs re-noticed the subpoenas to Defendants with the proposed March dates added. *See* Meehan Decl. ¶¶ 2–3, Exs. A–D. When Plaintiffs first notified Defendants of the subpoenas on October 25 and November 2, 2022, the date field for the inspection was left blank or stated "TBD." Meehan Decl. Exs. A, B. Once Plaintiffs re-noticed the subpoenas on February 2 with the March inspection dates included, Defendants promptly acted to gather further information from both Plaintiffs and the Owners. *See* Meehan Decl. ¶¶ 4–5. However, Plaintiffs refused to provide the Requested Information to Defendants, which triggered the further exchange of correspondence and meet-and-confers, all of which took up the rest of February with no resolution. Therefore, the record, consistent with the Court's prior ruling, shows that any delay was entirely Plaintiffs' responsibility.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grants the Cross-Motion.

---

motion to expedite their motion to compel the Inspection. That order (ECF No. 132)—not Defendants' behavior—is what prevented Plaintiffs' motion to compel from ripening before the original class certification deadline. Moreover, it is difficult to see how Defendants "nearly succeeded" in causing Plaintiffs to miss their class certification deadline, because Defendants, in fact, ***agreed*** to extend Plaintiffs' deadlines. *See* ECF No. 136.

Dated: April 11, 2023                               Respectfully submitted,

*/s/ Sarah B. Meehan*
Sarah B. Meehan (Bar Number 30428)
Amanda R. Lawrence (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE, LLP**
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 349-8000 (Telephone)
(202) 349-8080 (Facsimile)
smeehan@orrick.com
alawrence@orrick.com

Scott T. Sakiyama (*pro hac vice)*
**ORRICK, HERRINGTON & SUTCLIFFE, LLP**
353 N. Clark St., Suite 3600
Chicago, IL 60654
(312) 924-9800 (Telephone)
(312) 924-9899 (Facsimile)
ssakiyama@orrick.com

Gregory S. Emrick (Bar Number 28860)
Timothy Willman (Bar Number 21088)
**OFFIT KURMAN, PC**
300 E. Lombard St., Suite 2010
Baltimore, MD 21202
(401) 209-6400 (Telephone)
(410) 209-6435 (Facsimile)
gregory.emrick@offitkurman.com
timothy.willman@offitkurman.com

Ian Thomas (Bar Number 03883)
**OFFIT KURMAN, PC**
1325 G St. NW, Suite 500
Washington, DC 20005
(202) 900-8592 (Telephone)
(202) 393-2104 (Fascimile)
ithomas@offitkurman.com

Warren Koshofer (*pro hac vice*)
**OFFIT KURMAN, PC**
1801 Market St., Suite 2300
Philadelphia, PA 19103
(267) 338-1300 (Telephone)
(267) 338-1335 (Facsimile)
warren.koshofer@offitkurman.com

*Counsel for Defendants,*
*Bedford United, LLC*
*Victoria United, LLC*
*Hyattsville United, LLC*
*Arbor Management Acquisition Company, LLC*


<u>*/s/ Megan T. Mantzavinos*</u> (signed by Sarah B. Meehan with the permission of Megan T. Mantzavinos)
Megan T. Mantzavinos (Bar Number 16416)
Kieran E. Fox (Bar Number 23993)
**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
600 Baltimore Avenue, #305
Towson, MD 21204
(410) 339-6880 (Telephone)
(410) 339-6881 (Facsimile)
mmantzavinos@moodklaw.com
kfox@moodklaw.com

*Counsel for Realty Management Services, Inc.*

10

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served this 11th day of April, 2023 through the Court's CM/ECF system, which will send notification of this filing to all counsel of record. I further certify that a copy was sent to counsel for Jair Lynch Real Estate Partners and 1400 University Boulevard Owner, LLC via email service:

>Vernon W. Johnson, III
>Nixon Peabody LLP
>799 Ninth Street, NW, Suite 500
>Washington, D.C. 20001-4501
>Telephone: (202) 585-8000
>Facsimile: (202) 585-8080
>vjohnson@nixonpeabody.com

>_/s/ Sarah B. Meehan_
>Sarah B. Meehan (Bar Number 30428)
>
>*Counsel for Defendants*,
>*Bedford United, LLC*
>*Victoria United, LLC*
>*Hyattsville United, LLC*
>*Arbor Management Acquisition Company, LLC*