IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CASA DE MARYLAND, INC., et al, <br><br> Plaintiffs, <br><br> v. <br><br> ARBOR REALTY TRUST, INC., et al, <br><br> Defendants. | Civ. Action No.: 8:21-CV-01778-DKC |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Plaintiffs Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (collectively, "Named Plaintiffs"), by and through undersigned counsel, submit this Memorandum of Law in support of their Unopposed Motion for Preliminary Approval of Class Settlement, appointment of Plaintiffs as class representatives and their counsel as class counsel, certification of the class for settlement only and setting a final approval hearing and notice in this action.

In order to inform the members of the Class of the proposed settlement, and obtain their views regarding the proposed settlement, Plaintiffs respectfully request that the Court issue an Order which: (1) sets a final approval hearing (at a date to be determined by the Court); (2) approves the form of the Notice of Class Action and Proposed Settlement (hereinafter referred to as "the Notice"); (3) authorizes mailing of the Notice; (4) sets dates for elections to be included and the submission of any objections; (5) certifies the Class and claims for the purpose of effectuating the settlement only; (6) preliminarily approves the settlement for submission to the Class; (7) appoints Plaintiffs as class

1

representatives and appoints their counsel as Class Counsel; and (8) stays all proceedings in this case, other than proceedings necessary to carry out the terms and provisions of the settlement.

## INTRODUCTION

Plaintiffs brought this action individually and on behalf of others similarly situated under Federal Rule of Civil Procedure 23. ECF 1. Plaintiffs alleged that residents at Bedford Station and Victoria Station ("BVS") apartment complexes experienced health and safety issues during their tenancies at BVS, between July 2018 and May 2022.

The parties negotiated a Settlement Agreement following mediation with the assistance of Linda R. Singer, Esq. subject to the Court's approval. Exhibit 1. The settlement agreement represents a compromise between the parties' conflicting positions. The agreement provides for relief on the class claims set out below:

The Class consists of:

**All current and prior Tenants who resided at the Bedford and Victoria Station Apartment Complexes between July 19, 2018, and May 23, 2022.**

The Claims to be addressed on a class basis are: any and all actions, causes of actions, claims, demands that have been or could have been asserted in any form by Class Members, including but not limited to, claims based on statutory or regulatory violations, tort (excluding personal injury and wrongful death), contract, common law causes of action, and any claims for damages (including any compensatory damages, special damages, consequential damages, punitive damages, statutory fines or penalties, attorneys' fees, costs and any equitable relief), direct or indirect, whether or not currently unknown, arising out of, based upon or related in any way to the allegations set forth in the First Amended Complaint.

The proposed settlement class meets the prerequisites of Rule 23(a). It is sufficiently numerous, and has commonality, typicality, and adequacy of representation. The requirements of Rule 23(b)(3) are also met: the common issues predominate, and a class action is superior to separate individual actions under the circumstances of the class. Manageability of the class is not an issue in a settlement class.

The proposed settlement is fair and adequate. Defendants have already created and funded a common settlement fund of $3,000,000.00. From that fund, class members who submit a valid claim will participate in distribution of the funds with weight afforded to the length of time that the claimant resided at Bedford Station or Victoria Station. Specifically, a formulaic distribution of funds will be employed to compensate all such class members:

$$\text{Individual Apartment Recovery} = \frac{(N) * \text{Net Settlement Fund}}{\text{(Total Number of Occupancy Years for All Claimed Units)}}$$

$N$ = Maximum Number of partial years residing at BVS during the Class Period (1, 2 or 3) but no more than 3 for a specific unit

Individuals who make a claim on the same apartment and for the same year will divide the apartment's recovery pro rata for the year. The "Net Settlement Fund" will be calculated based upon the Gross Settlement fund of $3,000,000.00 less approved attorneys' fees, service fees to the Named Plaintiffs, and administrative costs.

Under the proposed settlement, Class Members have the right to object to the Settlement and the Fee and Service Awards Application; and to opt out of the settlement class. The Class Notice will advise Class Members of this right and the requirements for objections, opting out, and other rights associated with their membership in the class.

Additionally, dismissed Plaintiff CASA de Maryland, Inc. and Defendants signed a settlement

agreement to mutually release all claims against each other.  *See* Ex. 1; *see also* Ex. 8 (separately attached for convenience).

## FACTUAL BACKGROUND

Defendants Bedford United, LLC and Victoria United, LLC ("Defendants") owned the BVS apartment complexes during the relevant time period of July 19, 2018 through May 23, 2022.  The Plaintiffs alleged that the BVS Apartments suffered from a lack of maintenance and neglect during their leases from July 2018 to June 2022.  During the pendency of the litigation, the BVS property complexes were sold to an unrelated and unaffiliated corporate buyer.  Following the Settlement Agreement, the Named Plaintiffs dismissed Arbor Realty Trust. Inc., Arbor Realty SR, Inc., Arbor Realty Limited Partnership, Arbor Management Acquisition Company, LLC, Hyattsville United, LLC, and Realty Management Services, Inc. pursuant to the Settlement Agreement.  The Settlement Agreement resolves all claims of the Named Plaintiffs against Defendants and the dismissed entities.

## THE SETTLEMENT TERMS

The terms of the settlement are as follows: In exchange for a release of claims against Bedford United, LLC, Victoria United, LLC, Hyattsville United, LLC, Arbor Management Acquisition Company, LLC, Arbor Realty Trust, Inc., Arbor Realty SR, Inc., Arbor Realty Limited Partnership, Realty Management Services, Inc., and each of its past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf (the "Release Entities"), Defendants shall create a gross settlement fund in the amount of $3,000,000.00.  The fund was created and fully funded on August

28, 2023. The fund shall be managed by a claims administrator, American Legal Claim Services, LLC, and shall be used to pay recovery to class members on their claims, administrative costs, any fee and expense award and any service awards. All other terms of the settlement are described in Exhibit 1.

## THE SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR A CLASS ACTION

Rule 23 requires that for a class to be certified:

(1) the class is so numerous that joinder of all members is impracticable ("numerosity");

(2) there are questions of fact or law common to the class ("commonality");

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and

(4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").

### 1. Ascertainability

Rule 23 "contains an implicit "threshold requirement that the members of a proposed class be readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (internal quotation omitted). Class certification requires that "a court can readily identify the class members in reference to objective criteria." *Id.* Here, the settlement terms limit class members to individuals who were tenants at the Bedford and Victoria Station Apartment complexes during a specific timeframe. Ex. 1. These are objective criteria because individuals can be identified through their lease agreements with the Defendants and/or through other sworn, documentary proof evidencing residency during the relevant time period, and the agreement includes a temporal limitation on these claims. Thus, Plaintiffs have proposed ascertainable class areas based on objectively discernable criteria.

### 2. Numerosity

Rule 23(a)(1) requires that the class "be so numerous that joinder of all class members is impracticable." *Cent. Wesleyan Coll. v. W.R. Grace Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (finding "that some 480 potential class members would easily satisfy the numerosity requirement."). There is no numerical threshold, and all that is required is that Plaintiffs make some reasonable estimate, for which a good-faith estimate is sufficient. *Id.* Defendants' records indicate that there are approximately 589 units at BVS, most with multiple occupants, making the total number of tenants at BVS during the applicable class period sufficiently numerous to satisfy Rule 23(a)(1)'s numerosity requirement.

### 3. Commonality

Rule 23(a)(2)'s commonality requirement for class certification requires that "there are questions of law or fact common to the class." This standard "is a liberal one that cannot be defeated by the mere existence of some factual variances among class members." *Smith v. Res-Care, Inc.,* Civil Action No. 3:13-5211, at *8 (S.D.W. Va. Feb. 3, 2015). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 369 (2011). Although the rule speaks of questions, "what matters to class certification is the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 338 (cleaned up).

Here, commonality exists because the Plaintiffs' claims depend on the resolution of the following common contentions:

1. Whether Defendants violated the implied warranty of habitability;
2. Whether Defendants violated local codes and ordinances including, but not limited to, Sec. 13-153 of the Prince George's County Code of Ordinances;
3. Whether Defendants failed to perform adequate maintenance at BVS;
4. Whether the issues within the units were the product of Defendants' purported failure to provide reasonable maintenance.

6

      5.      Whether the conditions at BVS were sufficiently severe to consider the entire complex uninhabitable under the Prince George's County Housing Code; and
      6.      Whether Defendants had constructive notice of the conditions at BVS.

If a class settlement were not certified, each individual plaintiff would offer the same evidence, including the same experts, against Defendants, and Defendants in turn would likely offer the same counter evidence, including experts, to defend itself. These questions and their corresponding answers, therefore, are common to the class members.

### 4. Typicality

Rule 23(a)(3) requires that the class representative have claims or defenses "typical of the claims or defenses of the class." As with commonality, the threshold requirement for typicality is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (citation omitted). Typicality does not require the claims of the class members to be perfectly identical; rather, typicality is satisfied where the claims are based on the same remedial legal theory. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011). "[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001).

In short, the inquiry is whether Plaintiffs are class members that can assert the same claims, on the same basic facts as the other class members. That is the case here because all the named Plaintiffs were tenants at BVS between July 19, 2018, and May 23, 2022, and each have claims relating to habitability and alleged maintenance issues like the proposed class members.

## 5. Adequacy

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." This requires a two-pronged inquiry: "1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *Donaldson v. Primary Residential Mortg., Inc.*, Civil No. ELH-19-1175, at *11 (D. Md. May 28, 2021).

### *(a) Adequacy of Representatives*

The requirement of adequate representation is not a search for a perfect plaintiff with an unassailable claim. The requirement merely assures that absent class members who will be bound by the result are protected by a vigorous and competent prosecution of the case by someone who shares their interests. *See* 1 NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS, § 3:21 (4th ed. 2004).

The Named Plaintiffs in this case do not have interests antagonistic to the class members because they have a shared interest in seeking compensation for their shared harm. To date, they have actively participated in this litigation, and will continue to do so on behalf of the members of the class. Plaintiffs are like the class members and share their interests in that all were tenants at BVS during the same timeframes.

### *(b) Adequacy of Counsel*

The adequacy of counsel is addressed by Rule 23 (g) which provides:

> (g) Class Counsel.
>
> (1) Appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:
>
> (i) the work counsel has done in identifying or investigating potential claims in the action;

8

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

Consideration of each of these factors warrants appointment of the Plaintiffs' counsel as class counsel in this matter.

INVESTIGATION: Counsel undertook substantial efforts to investigate the class claims before filing this case in 2021. Counsel spoke with hundreds of class members, who retained proposed class counsel to represent their claims. Counsel also recruited a Certified Industrial Hygienist and several Structural Engineers to perform multiple day-long site inspections of class members' units on May 4, 2021, July 20-21, 2022, and March 21-23, 2023, which counsel were also present for. Plaintiffs' counsel also retained and consulted with an expert in Environmental Statistics who determined whether a representative sample could be taken and whether the results portended the existence of class-wide habitability concerns. Plaintiffs' counsel have litigated this case through three day-long mediations, multiple motions to dismiss, multiple discovery motions, and have led efforts to obtain discovery from the Defendants and third-parties. Counsel have also reviewed thousands of pages of the discovery from the Defendants and third parties.

EXPERIENCE & KNOWLEDGE OF APPLICABLE LAW: Plaintiffs' counsel has combined extensive experience with class action litigation, including environmental class actions, and

9

Maryland habitability law in their representation of the proposed class members.

RESOURCES COUNSEL HAS COMMITTED: To date, Plaintiffs' counsel combined have devoted more than one-thousand (1000) hours to this case and will devote all additional time necessary to ensure that every claim asserted and every paper filed is well founded and done to the best of their ability and with allocation of appropriate resources.[1]  Plaintiffs' counsel will continue to commit the necessary resources to litigate this case to its conclusion.

## THE RULE 23(B)(3) REQUIREMENTS ARE SATISFIED

Rule 23(b)(3) requires that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."

**A. Predominance**

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members..." "Where the purported class members were subject to the same harm resulting from the defendant's conduct and the qualitatively overarching issue in the case is the defendant's liability, courts generally find the predominance requirement to be satisfied." *Starr v. Credible Behav. Health, Inc.*, Civil No. 20-2986 PJM, at *7 (D. Md. May 25, 2021) (cleaned up). "The entire notion of predominance implies that the plaintiffs' claims need not be identical, and, as the Supreme Court has noted, a class can meet this requirement 'even though other important matters will have to be tried separately.'" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (cleaned up).

---

[1] Proposed class counsel will provide specific hours and a proposed blended rate in any petition for approval of attorneys' fees.

Critically, while Rule 23(b)(3) requires a showing that common questions predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class. *Amgen Inc. v. Ct. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) ("[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'").

The predominance requirement is satisfied in this case as common issues clearly predominate. The presence of individual questions regarding the extent of harm or specific effects of the Defendants' conduct on individuals does not undermine predominance. The facts and legal elements essential to the claims of all class members are identical: Plaintiffs assert the existence of widespread uninhabitability issues at BVS and attribute the failure to address these issues to the insufficient funds allocated by Defendants for maintaining the units of proposed class members. To support these allegations, Plaintiffs conducted habitability inspections on a statistically significant sample of units and supplemented their findings with historical inspection reports for every unit at BVS. The overarching concern in this litigation revolves around the Defendants' liability for these maintenance deficiencies. Since these allegations pertain to the common conduct of Defendants with respect to the proposed class members, the common issues surrounding this liability clearly predominate over any individualized concerns among the class members.

### B. Superiority

Superiority is the second prong of Rule 23(b)(3) and it "requires the court to analyze whether the proposed class action would be superior to other available methods for the fair and efficient adjudication of the controversy raised by the action." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 449 (4th Cir. 2003) (cleaned up). Rule 23(b)(3) aims to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponent into court at all." *Amchem*,

521 U.S. at 617. No known competing actions have been filed and there is no evidence of any competing interest in controlling the litigation. Concentrating the litigation in this Court is desirable because the Court is familiar with this matter, and it is the proper venue for claims arising from Defendants' local activities. Managing individual actions will clearly be more onerous than a class action. Requiring duplicative discovery and multiple trials—likely hundreds of individual suits—regarding the same issues would be wasteful, unfair to the litigants, and would unnecessarily consume judicial resources. The size of this housing case, coupled with its attendant cost of experts, discovery, and trial, would render pursuit of individual claims economically infeasible. Thus, all requirements for Rule 23(b) are satisfied.

## **THE SETTLEMENT IS FAIR AND ADEQUATE**

Once it has been determined that the Class should be certified, the Court must additionally evaluate the proposed class settlement for purposes of preliminary approval. The settlement must be fair and adequate to receive preliminary approval. Fed. R. Civ. P. 23(e)(2). The Rule requires the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Each of these factors weighs in favor of the proposed settlement.

As stated above, compensation will be provided to each class member who submits a valid claim for compensation. A formulaic approach to provide greater compensation to individuals who lived in an apartment for longer periods of time was formed:

Individual Apartment Recovery = $((N)*\text{Net Settlement Fund}) / (\text{Total Number of Occupancy Years for All Claimed Units})$

N = Maximum Number of partial years residing at BVS during the Class Period (1, 2 or 3) but no more than 3 for a specific unit

Individuals who make a claim on the same apartment and for the same year will divide the apartment's recovery *pro rata* for the year.

Once all claim forms have been obtained and validated, each apartment will receive a *pro rata* distribution for each year at which they resided at Bedford Station or Victoria Station during the class period, but not more than three years (considering the statute of limitations). Individuals who make separate claims for the same year of the same apartment will share that individual apartment *pro rata* with each other so that larger families will not benefit by submitting multiple claims for the same apartment.

**Adequate representation:**

The named plaintiffs possess a strong understanding of the issues at hand and are committed to diligently pursuing the interests of the class members. Class counsel are highly experienced in class action litigation and their expertise and resources ensure that the class members will be effectively represented throughout the litigation process.

**The settlement was negotiated at arm's length:**

The settlement agreement, attached as Exhibit 1, was the product of extensive and fair negotiations between the parties during mediation. Indeed, the parties participated in several unsuccessful sessions with a private mediator, Linda Singer, before coming to terms on a settlement . The terms were discussed in good faith, and both the plaintiffs and the defendants had the opportunity to present their respective positions. The resulting agreement reflects a fair and reasonable compromise that benefits the class members.

**The relief provided is adequate**

The relief provided for the class is adequate considering the costs, risks, and delay of trial and appeal, which are substantial and burdensome compared to the amount of recovery that each class member would be entitled to. The processing of class-member claims ensures efficient and effective distribution of compensation to eligible class members. The terms of the proposed award of attorney's fees, including the timing of payment are reasonable and align with prevailing practices and rates in this type of litigation. Based on educated estimates incorporating expected claims rates and the knowledge of the class members' interest in the case, proposed class counsel hope that apartments will obtain five-figure payments.  Absent this settlement agreement, class members would face significant challenges, expenses, and delays in obtaining relief, if any, including moving for class certification, completing fact and expert discovery, briefing and litigating summary judgment, and a lengthy trial. As such, considering these risks, delay, and difficulties involved in establishing a right to recovery, and the likelihood that this litigation will be further protracted and expensive, the recovery provided for under the settlement agreement is adequate.  The settlement agreement complies with all necessary requirements and safeguards the rights of the class members.

**The proposal treats class members equitably relative to each other:**

The settlement agreement provides fair and proportionate relief to all class members based on the harm suffered due to the defendants' actions. The distribution of compensation is structured in a manner that prioritizes fairness and avoids any arbitrary distinctions among class members. Due consideration is given to the fact that some claimants will have resided in alleged uninhabitable conditions longer than others, and so claimants that resided at BVS for a longer period will receive more compensation than others. The proposal ensures that all class members are treated equitably and receive appropriate relief for their respective claims.

## THE PROPOSED NOTICE IS APPROPRIATE

The Notice Plan provides for multiple mechanisms of notice to reach proposed class members: 1) direct mail; 2) email notice; 3) publication notice; and 4) website notice. Each will be available in both English and Spanish, giving due consideration to the class members' language. Spanish translations were accomplished by native or fluent translators in Spanish and verified by multiple people for accuracy.

Direct mail is appropriate and feasible as the parties know the address and/or names of many tenants who resided at Bedford Station or Victoria Station during the relevant class period through their rental records. The settlement administrator will also post notice on a settlement website and publish notice in English in the *Hyattsville Life and Times* and in Spanish in *El Tiempo Latino*. Both are local newspapers which will run the notice for four consecutive weeks. Email notice will also be sent in both English and Spanish to last known email addresses for all tenants who provided email addresses to the Defendants and resided in either Bedford Station or Victoria Station during the Class Period.

Attached hereto as Exhibits for the Court's convenience and review are the following:

15

| | |
|---|---|
| Exhibit 2 | Claim and Release Form (English) |
| Exhibit 3 | Claim and Release Form (Spanish) |
| Exhibit 4 | Notice of Class Settlement (English) |
| Exhibit 5 | Notice of Class Settlement (Spanish) |
| Exhibit 6 | Publication Notice (English) |
| Exhibit 7 | Publication Notice (Spanish) |

Each of these documents was likewise attached to the proposed settlement agreement and incorporated therein as part of Exhibit 1.

## **CONCLUSION**

Plaintiffs respectfully request that this Court grant preliminary approval of the class settlement, finding the settlement satisfies the requirements of Rule 23 and is fair and reasonable. Plaintiffs request that the following class definition be certified:

**All current and prior Tenants who resided at the Bedford and Victoria Station Apartment Complexes between July 19, 2018, and May 23, 2022.**

Plaintiffs further move for an order appointing each individual Plaintiff as a class representative and appointing Jonathan Nace and Zachary Kelsay of Nidel & Nace, PLLC and P. Joseph Donahue of the Donahue Law Firm as Class Counsel.

Plaintiffs further move for the Court to enter the attached Order of Preliminary Approval approving of the form and process for notice, opt outs, objections, and claims.

Plaintiffs respectfully request that the Court set a date for a Final Approval Hearing for no less than ninety (90) days from the date of the entry of a Preliminary Approval Order.

Respectfully submitted,

*/s/ Jonathan Nace*
**Nidel & Nace, P.L.L.C.**
Jonathan Nace, Esquire
Bar Number: 18246
Zachary Kelsay
Bar Number: 30460
One Church Street
Suite 802
Rockville, MD 20850
Telephone:(202) 780-5153
jon@nidellaw.com
zach@nidellaw.com

P. Joseph Donahue
Bar Number 06245
**The Donahue Law Firm, LLC**
18 West Street
Annapolis, Maryland 21401
Telephone: (410) 280-2023
pjd@thedonahuelawfirm.com

*Attorneys for the Named Plaintiffs
and the Putative Class*

**CERTIFICATE OF SERVICE**

This is to certify that on this 6th day of September 2023, I caused a copy of the foregoing to be served upon all parties.

>*/s/ Jonathan Nace*
>Jonathan Nace, Esquire
>Bar Number: 18246