IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| CASA de MARYLAND, INC., et al. | |
| | : |
| | |
| v. | : Civil Action No. DKC 21-1778 |
| | |
| | : |
| ARBOR REALTY TRUST, INC., et al. | |
| | : |

**MEMORANDUM OPINION**

Presently pending in this housing conditions case is an unopposed motion for preliminary approval of a settlement agreement between Named Plaintiffs Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (collectively, "Named Plaintiffs") and Defendants Arbor Realty Trust, Inc., *et al.* ("Defendants"). (ECF No. 157). Named Plaintiffs also seek certification of a settlement class; their appointment as class representatives; appointment of their counsel as class counsel; the setting of a final approval hearing, notice, and dates for elections to be included and submission of objections; and a stay of all proceedings other than those necessary to carry out the terms and provisions of the settlement. The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for preliminary approval of the settlement, and its

accompanying requests, will be denied without prejudice to renewal with additional information.

## I.   Background

The relevant factual background in this case is set out in a prior opinion.  (ECF No. 76, at 2-6); *CASA de Maryland, Inc. v. Arbor Realty Tr., Inc.*, No. 21-cv-1778-DKC, 2022 WL 4080320, at *1-2 (D.Md. Sept. 6, 2022).  In short, Plaintiff CASA de Maryland, Inc. and Named Plaintiffs (collectively, "Plaintiffs") allege that Defendants failed to maintain and repair the properties in which Named Plaintiffs lived and discriminated against them through the deficient maintenance and repair of their apartments.  (ECF Nos. 1, at 114-130; 76, at 5); *CASA*, 2022 WL 4080320, at *2.  On their own behalf and on behalf of those similarly situated, Plaintiffs filed this suit on July 19, 2021. (ECF No. 1).  They allege violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, Prince George's County Code § 13-153, and Maryland common law.  (*Id.* at 110, 114-130).

After Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on December 20, 2021 (ECF Nos. 30, 35, 40), Plaintiffs filed an amended complaint as of right on January 10, 2022.  (ECF No. 43).  On February 18, 2022, Defendants again moved to dismiss.  (ECF Nos. 46, 47, 49).  The court dismissed all claims except those alleging breach of contract and breach of implied warranty of habitability.  (ECF No. 76, at 31, 36, 43-54, 61);

*CASA*, 2022 WL 4080320, at *12, 15, 17-21, 24.  After Defendants answered on October 7, 2022 (ECF Nos. 81-83) and following the denial of Defendants' motion to dismiss class allegations (ECF No. 139), the parties jointly moved to stay the action pending settlement negotiations.  (ECF No. 146).  The court then granted the parties' three joint motions to extend the stay to finalize the settlement.  (ECF Nos. 149, 151, 153).

While discovery was ongoing, the parties participated in three day-long mediation sessions with a private mediator.  (ECF Nos. 157-1, at 14; 157-2, at 1, 90-91; 157-9, at 1-2).  Following mediation and arms-length negotiations with counsel (ECF Nos. 157-1, at 12, 14; 157-2, at 72), the parties agreed to settlement terms including dismissal of six Defendants, leaving Bedford United, LLC and Victoria United, LLC as the only remaining Defendants.  (ECF Nos. 155; 157-1, at 4; 157-2, at 1, 10).  On September 6, 2023, Plaintiffs filed the instant unopposed motion for preliminary approval of a settlement agreement.  (ECF No. 157).

## II.  The Settlement Agreement

### A. The Settlement Class

The Agreement proposes a Settlement Class consisting of all current and prior tenants who resided at the Bedford Station and Victoria Station ("BVS") apartment complexes between July 19, 2018 and May 23, 2022.  (*Id.* at 2).

**B. Consideration**

The Agreement creates a settlement fund of $3,000,000. (*Id.* at 3). It will be used to cover attorneys' fees and costs, settlement administration costs, service payments to Named Plaintiffs, and a settlement payment to Class Members. (*Id.*). In return, all Class Members who do not exclude themselves from the settlement in a timely manner agree to release Defendants from all claims that "have been or could have been asserted in any form by Class Members . . . arising out of, based upon or related in any way to the allegations set forth in the First Amended Complaint." (*Id.* at 2; ECF Nos. 157-3, at 5; 157-5, at 5).

Although Defendants continue to deny the allegations of the amended complaint and all liability to Plaintiffs, they agreed to the Settlement Agreement "to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims which have or could have been asserted" by Plaintiffs. (ECF Nos. 157-2, at 2; 157-9, at 2). Counsel for the Named Plaintiffs, in turn, represents that the Settlement Agreement is in the best interests of the Named Plaintiffs and the members of the proposed Settlement Class given the substantial "risks, delay, and difficulties involved in establishing a right to recovery in excess of that offered by this Agreement." (ECF Nos. 157-2, at 2; 157-9, at 2).

4

Before distributing the settlement to Class Members, the settlement administrator will deduct from the fund, in the following order, administrative costs, taxes owed by the gross settlement fund, fees approved by the court, service awards to class representatives approved by the court, and settlement payments. (ECF No. 157-2, at 9-10). Plaintiffs will not seek a service payment greater than $7,500 per class representative. (*Id.* at 13). They expect to request attorneys' fees up to $900,000, or thirty percent of the gross settlement fund. (*Id.* at 14). Named Plaintiffs have not provided an estimate of the proposed class counsel's costs and expenses, or those of the settlement administrator. The remaining amount in the settlement fund ("the Net Settlement Fund") will be distributed to Class Members based on an individualized calculation. (ECF Nos. 157-1, at 3, 13; 157-2, at 11).

To determine each Member's payment, the Net Settlement Fund will be allocated among Class Members as follows:

Individual Apartment Recovery = ((N)*Net Settlement Fund)/
                                (Total Number of Occupancy
                                Years for All Claimed Units)

N = Maximum number of partial years residing at BVS during the Class Period (1, 2 or 3) but no more than 3 for a specific unit

(*Id.*). Accordingly, payments will be weighted based on "the length of time that the claimant resided at Bedford Station or Victoria Station." (ECF No. 157-1, at 3). "Individuals who make a claim

on the same apartment and for the same year will divide the apartment's recovery pro rata for the year." (ECF Nos. 157-1, at 3, 13; 157-2, at 11). Counsel have not addressed whether tenants who lived in a BVS apartment for less than one year may recover, and if so, how their share would be calculated.

### C. Notices

Within seven days after entry of the Agreement's preliminary approval, BVS will provide class counsel and the settlement administrator with a list of Class Members, and if they have it, the Members' email addresses. (ECF No. 157-2, at 15-16).

The settlement administrator will send a settlement notice by mail or email to Class Members and arrange for *El Tiempo Latino* and *Hyattsville Life and Times* to publish the notice within fourteen days after entry of preliminary approval. (ECF Nos. 157-1, at 15; 157-2, at 15-17; 157-5; 157-6; 157-7; 157-8). The notice will provide instructions for submitting a claim and release form, opting out of the Class, objecting to the Settlement, and attending a hearing. (ECF Nos. 157-5; 157-6). Attached to the notice will be a claim and release form to opt-in to the Class (ECF Nos. 157-3; 157-4).

After the hearing, and within fourteen days after entry of the Agreement's final approval, the settlement administrator will calculate the Net Settlement Fund and provide the parties with the calculation. (ECF No. 157-2, at 12).

6

The parties have defined the Agreement's Effective Date as "the later of: (i) 31 days after the docketing and entry of the Final Approval Order which is also the day after the last date for filing a Notice of Appeal, or (ii) the day after any order on appeal becomes final and non-appealable and there are no further proceedings on remand" (ECF No. 157-2, at 4, 92; 157-9, at 3).[1] Within fourteen days of that "Effective Date," the settlement administrator will

> calculate on a percentage basis and dollar basis the allocation to each Settlement Class Member to be made from the Net Settlement Fund and disseminate to the Parties' counsel a final list identifying each Settlement Class Member, the percentage of the Net Settlement Fund to be paid to each Settlement Class Member, and the amount of payment to each Settlement Class Member.

(ECF No. 157-2, at 12).  Also within fourteen days of the Agreement's Effective Date, the settlement administrator will send an email to all Class Members advising them of the option to select a digital payment method and state that if they do not select a digital payment method, they will receive their settlement payment by check.  (ECF No. 157-2, at 12).  Settlement payment will be effectuated or mailed by check (depending on whether Class Members

---

[1] The parties contemplate a potential appeal before the final "Effective Date" and the proposed notice will alert potential class members that payment could be delayed while an appeal takes place. The parties are directed to reveal to the court if an appeal is already planned by any of the parties.

selected a digital payment option) within thirty days of the Effective Date. (*Id.* at 13).

Plaintiffs contend that "[b]ased on educated estimates incorporating expected claims rates and the knowledge of the class members' interest in the case, proposed class counsel hope that apartments will obtain five-figure payments." (ECF No. 157-1, at 14). Plaintiffs have not, however, included their estimates that lead to a five-figure payment. Assuming a Net Settlement of $2,000,000 (with the other $1,000,000 constituting attorneys' fees and costs, settlement administration costs, and service payments to Named Plaintiffs), if all 589 apartments opt in, each will recover $1,131.86 per year. Thus, the total maximum recovery is $3,395.58 for those who lived in BVS for all three years. The only way each apartment will receive a five-figure recovery is if at most 200 apartments opt in. In that scenario, each apartment would recover $3,333.33 per year, for a total of $10,000 for tenants who lived in BVS during all three years. Plaintiffs have not explained why they believe fewer than half of the apartments will opt in.

## III. Analysis

The parties have not provided enough information to assess whether the Agreement can be approved preliminarily.

### A. Settlement Approval

Generally, approval of a Rule 23 class action settlement involves a two-step process.  First, the terms of the proposed settlement must be reviewed in order to issue a preliminary fairness evaluation.  *Grice v. PNC Mortg. Corp. of Am.*, No. 97-cv-3084-PJM, 1998 WL 350581, at *2 (D.Md. May 21, 1998); *see also Manual for Complex Litig. (Fourth)* § 21.632 (2004) ("The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.").  Courts have condensed this into an analysis of whether the settlement is fair and adequate and identified various factors for both.  *See McDaniels v. Westlake Servs., LLC*, No. 11-cv-1837-ELH, 2014 WL 556288, at *8 (D.Md. Feb. 7, 2014) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)).  "By far the most important factor is a comparison of the terms of the proposed settlement with the likely recovery that plaintiffs would realize if they were successful at trial." *Id.* (quotation omitted).  When performing this analysis, a district court must "act[] as a fiduciary of the class." *1988 Trust for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022) (quotation omitted).  At this initial stage, preliminary approval should be granted when a proposed settlement is "within the range of possible approval," subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object.

*Benway v. Resource Real Estate Servs., LLC*, No. 05-cv-3250-WMN, 2011 WL 1045597, at *4 (D.Md. Mar. 16, 2011) (quotation omitted).

Where, as here, a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Fed.R.Civ.P. 23(a) and at least one of the subsections of Fed.R.Civ.P. 23(b). *See Manual for Complex Litig. (Fourth)* § 21.632; *cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).[2]   The parties must also be directed to provide notice to the putative class members regarding the terms of the proposed settlement and the date of the final fairness hearing, where arguments and evidence may be presented in

---

[2]     Fed.R.Civ.P. 23(a) provides as follows:

(a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable;  (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(b)(3), the subsection relied on by the Named Plaintiffs here, permits a class action to be maintained only if it can be concluded (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

support of, and in opposition to, the settlement.  *See* Fed.R.Civ.P. 23(e).  At the second stage, following the final fairness hearing, final approval will be granted "[i]f the proponents of the settlement have satisfied their burden of showing that it is fair, adequate and reasonable." *Grice*, 1998 WL 350581, at *2.

### 1. Missing Information

Plaintiffs have not provided enough information to assess the reasonableness and adequacy of the Agreement.  Most importantly, they have not specified how they would measure the compensatory and restitution damages they sought under their breach of contract and breach of implied warranty of habitability theories if the case were to proceed to trial.  Plaintiffs have also provided no information to support their contention that "[b]ased on educated estimates incorporating expected claims rates and the knowledge of the class members' interest in the case, proposed class counsel hope that apartments will obtain five-figure payments."  (ECF No. 157-1, at 14).  Nor have they provided information about how many Class Members are likely to opt-in to the Class, or estimates of the proposed class counsel's and settlement administrator's costs and expenses.  Without this information, the court cannot weigh the amount of the settlement against the potential recovery. *See Hall v. Higher One Machs., Inc.*, No. 15-cv-0670-JCF, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016) (denying motion for preliminary approval where the parties did not provide "any

11

meaningful discussion of . . . how the relief secured by the proposed settlement compares to the putative class members' likely recovery if the case goes to trial").

**B. Notice**

For class action settlements, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed.R.Civ.P. 23(e)(1)(B).  The notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)).  "Put another way, Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Id.* (quotation omitted).

Here, there is no reason to be concerned that the proposed Notice will not accurately and fairly inform potential Class Members about the Agreement.  The identity of the potential Members is easily ascertainable because "the parties know the address and/or names of many tenants who resided at Bedford Station or Victoria Station during the relevant class period through their rental records."  (ECF No. 157-1, at 15).  The settlement administrator will provide notice by email to each Class Member

whose email address BVS provides in the Member List, and mail for all Class Members for whom no email address appears on the Class Member list. (ECF No. 157-2, at 16). The proposed Notice will be "available in both English and Spanish, giving due consideration to the class members' language." (ECF No. 157-1, at 15). "The settlement administrator will also post notice on a settlement website and publish notice in English in the *Hyattsville Life and Times* and in Spanish in *El Tiempo Latino*," both for "four consecutive weeks." (*Id.*).[3]

The proposed Notice properly explains to Class Members the importance of opting-in to the Class. It provides a simple, easy-to-read chart displaying each option including "Submit a Claim and Release Form," "Exclude Yourself," "Object," "Go to a Hearing," and "Do Nothing." (ECF No. 157-5). The "Submit a Claim and Release Form" option clearly states that it is "[t]he only way to get a cash payment." (*Id.*). Each option in the chart includes a deadline. (*Id.*). The claim and release form provides, in bolded capitalized text, "You must complete this claim and release form in order to receive a settlement payment." (ECF No. 157-3, at 1).

---

[3] The court learned during the course of this litigation that the properties had been sold. If so, that would explain why the parties have not proposed to post a notice at BVS. If Defendants do, however, own the buildings, notice should also be posted in a common space in each building.

The parties, however, must amend the clause in the proposed Notice concerning the methods for learning the precise terms and conditions of the settlement.  The notice is to distinguish the non-court sources, and must state: "PLEASE DO NOT CONTACT THE COURT DIRECTLY. The Court cannot provide you with legal advice or any opinion regarding the lawsuit or proposed settlement."  The Notice may state that access to the court docket is available for a fee via PACER (as the notice now states) or through computers at the clerk's office in Greenbelt (put in address and hours) where they may view the docket and read documents.  There is a fee of $0.10 per page to obtain copies of any document at the Clerk's office.

**C. List of Information Necessary to Assess the Agreement**

If Plaintiffs renew their motion for preliminary approval of the Agreement, they should include additional information to address the concerns addressed above and other gaps not addressed in detail in this opinion but referenced below.  The new information should include, but need not be limited to:

- The number of total Settlement Class Members;

- An estimate or an estimated range, preferably from the settlement administrator, of the percent of Class Members that will opt-in to the Class and the percent that will opt-out of the Agreement;

- An estimate of the costs and expenses to be paid to the proposed class counsel;

14

- An estimate of the costs and expenses to be paid to the claims administrator;

- An estimate of both the average and lowest possible recovery that each apartment will receive, classified by whether the tenants lived in the apartment for one, two, or three years;

- Clarification on whether tenants who lived in BVS for less than one year will be included in the Class;

- Clarification regarding whether and, if applicable, how individual recovery estimates will be communicated to Class Members; and

- Whether either party intends to file an appeal.

## IV.  Conclusion

For the foregoing reasons, the unopposed motion for preliminary approval of the Settlement Agreement will be denied without prejudice.  A separate order will follow.


                                          /s/
                                   _____
                                   DEBORAH K. CHASANOW
                                   United States District Judge