IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CASA DE MARYLAND, INC., et al,

Plaintiffs,

v.

ARBOR REALTY TRUST, INC., et al,

Defendants.

Civ. Action No.: 8:21-CV-01778-DKC

**PLAINTIFFS' CORRECTED MEMORANDUM IN SUPPORT OF RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Plaintiffs Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (collectively, "Named Plaintiffs"), by and through undersigned counsel, submit this Memorandum of Law in support of their Renewed Unopposed Motion for Preliminary Approval of Class Settlement, appointment of Plaintiffs as class representatives and their counsel as class counsel, certification of the class for settlement only and setting a final approval hearing and notice in this action.

Plaintiffs pointedly address the bulleted concerns raised by the Court in its Memorandum Opinion below. *See* ECF #158 (Court's Opinion requesting specific information about the proposed settlement terms). Additionally, Plaintiffs incorporate their prior Motion and Memorandum seeking Preliminary Approval, ECF #157,[1] and re-state much of the relevant information again for the Court's convenience.

In order to inform the members of the Class of the proposed settlement, and obtain their views regarding the proposed settlement, Plaintiffs respectfully request that the Court issue an Order

---

[1] Defined terms have the same meaning as set forth in the prior Motion and Memorandum, ECF 157.

1

which: (1) sets a final approval hearing (at a date to be determined by the Court); (2) approves the form of the Notice of Class Action and Proposed Settlement (hereinafter referred to as "the Notice"); (3) authorizes mailing of the Notice; (4) sets dates for elections to be included and the submission of any objections; (5) certifies the Class and claims for the purpose of effectuating the settlement only; (6) preliminarily approves the settlement for submission to the Class; (7) appoints Plaintiffs as class representatives and appoints their counsel as Class Counsel; and (8) stays all proceedings in this case, other than proceedings necessary to carry out the terms and provisions of the settlement.

## INTRODUCTION

Plaintiffs brought this action individually and on behalf of others similarly situated under Federal Rule of Civil Procedure 23. ECF 1. Plaintiffs alleged that residents at Bedford Station and Victoria Station ("BVS") apartment complexes experienced health and safety issues during their tenancies at BVS, between July 2018 and May 2022.

The parties negotiated a Settlement Agreement following mediation with the assistance of Linda R. Singer, Esq. subject to the Court's approval. Exhibit 1. The settlement agreement represents a compromise between the parties' conflicting positions. The agreement provides for relief on the class claims set out below:

The Class consists of:

**All current and prior Tenants who resided at the Bedford and Victoria Station Apartment Complexes between July 19, 2018, and May 23, 2022.**

The Claims to be addressed on a class basis are: any and all actions, causes of actions, claims, demands that have been or could have been asserted in any form by Class Members, including but not limited to, claims based on statutory or regulatory violations, tort (excluding personal injury and wrongful death), contract, common law causes of action, and any claims for damages (including any compensatory damages, special damages, consequential damages, punitive damages, statutory fines or penalties, attorneys' fees, costs and any equitable relief), direct or indirect, whether or not currently

2

unknown, arising out of, based upon or related in any way to the allegations set forth in the First Amended Complaint.

The proposed settlement class meets the prerequisites of Rule 23(a). It is sufficiently numerous, and has commonality, typicality, and adequacy of representation. The requirements of Rule 23(b)(3) are also met: the common issues predominate, and a class action is superior to separate individual actions under the circumstances of the class.  Manageability of the class is not an issue in a settlement class.

The proposed settlement is fair and adequate. Defendants have already created and funded a common settlement fund of $3,000,000.00.  From that fund, class members who submit a valid claim will participate in distribution of the funds with weight afforded to the length of time that the claimant resided at Bedford Station or Victoria Station.   Specifically, a formulaic distribution of funds will be employed to compensate all such class members:

Individual Apartment Recovery =     ((N)*Net Settlement Fund) / (Total Number of Occupancy Years for All Claimed Units)

N = Maximum Number of partial years residing at BVS during the Class Period (1, 2 or 3) but no more than 3 for a specific unit

Individuals who make a claim on the same apartment and for the same year will divide the apartment's recovery pro rata for the year.  The "Net Settlement Fund" will be calculated based upon the Gross Settlement fund of $3,000,000.00 less approved attorneys' fees, service fees to the Named Plaintiffs, and administrative costs.

Under the proposed settlement, Class Members have the right to object to the Settlement and the Fee and Service Awards Application; and to opt out of the settlement class. The Class Notice will advise Class Members of this right and the requirements for objections, opting out, and other rights associated with their membership in the class.

Additionally, dismissed Plaintiff CASA de Maryland, Inc. ("CASA") and Defendants signed a

settlement agreement to mutually release all claims against each other. *See* Ex. 1; *see also* Ex. 8 (separately attached for convenience).

## FACTUAL BACKGROUND

Defendants Bedford United, LLC and Victoria United, LLC ("Defendants") owned the BVS apartment complexes during the relevant time period of July 19, 2018 through May 23, 2022. The Plaintiffs alleged that the BVS Apartments suffered from a lack of maintenance and neglect during their leases from July 2018 to June 2022. During the pendency of the litigation, the BVS property complexes were sold to an unrelated and unaffiliated corporate buyer. Following the Settlement Agreement, the Named Plaintiffs dismissed Arbor Realty Trust. Inc., Arbor Realty SR, Inc., Arbor Realty Limited Partnership, Arbor Management Acquisition Company, LLC, Hyattsville United, LLC, and Realty Management Services, Inc. pursuant to the Settlement Agreement. The Settlement Agreement resolves all claims of the Named Plaintiffs against Defendants and the dismissed entities.

## THE SETTLEMENT TERMS

The terms of the settlement are as follows: In exchange for a release of claims against Bedford United, LLC, Victoria United, LLC, Hyattsville United, LLC, Arbor Management Acquisition Company, LLC, Arbor Realty Trust, Inc., Arbor Realty SR, Inc., Arbor Realty Limited Partnership, Realty Management Services, Inc., and each of its past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf (the "Release Entities"), Defendants shall create a gross settlement fund in the amount of $3,000,000.00. The fund was created and fully funded on August 28, 2023. The fund shall be managed by a claims administrator, American Legal Claim Services, LLC

("ALCS"), and shall be used to pay recovery to class members on their claims, administrative costs, any fee and expense award and any service awards. All other terms of the settlement are described in Exhibit 1.

## SPECIFIC SUPPLEMENTAL RESPONSE TO THE COURT'S ORDER

In response to the specific information that the Court identified, counsel respond with the following:

- Proposed Class Counsel estimates that the Settlement Class consists of 2,356 Class Members.[2]

- ALCS estimates that less than 1% or less than 6 apartments or 24 Class Members will opt out of the Settlement Agreement. *See id.* at xx.

- Proposed Class Counsel estimates that its costs, fees, and expenses are likely to be, but will not exceed, approximately $1 Million and are described in greater detail *infra*.

- Proposed Class Counsel estimates that the costs paid to ALCS are likely to be approximately $27,601.

- As explained further *infra*, Proposed Class Counsel estimates the following average and lowest possible recovery based on the assumptions that Net Settlement Fund is $1.9 million, and that the average claim will be for 2 years of residence at BVS:[3]

    o Proposed Class Counsel estimates that the average recovery per claim will be approximately $9,500.00. This estimate assumes an average claim for two years of residency so the average yearly recovery would be $4,750.00. As described *infra*, this average estimate assumes that 34% of the apartments make a claim; and

---

[2] Defendants' records show approximately 589 apartments where Class Members may have resided during the relevant time period, and approximately 1,200 individuals who are potential Class Members. Proposed Class Counsel's estimate of the total number of Class Members includes those that resided at the Bedford and Victoria Station Apartment Complexes but are not identified in Defendants' records.
[3] The Court's prior order referred to recovery by "apartment." Proposed Class Counsel provides information by claim to demonstrate for the Court how recovery would work under the formula in the Settlement Agreement.

- o Proposed Class Counsel estimates that the lowest possible recovery, if all 2,356 estimated class members made claims for three years would be $806.45 per claim with a yearly average of $403.23.
- Tenants who resided at BVS for less than one year are included in the Class. The Settlement Agreement Defines "N" to be the Maximum Number of partial years residing at BVS during the Class Period (1, 2 or 3) but no more than 3 for a specific unit. Thus, for purposes of recovery, a Class Member who resided for a portion of the year will have "N" rounded up to either 1, 2 or 3. Individuals who make a claim on the same apartment and for the same year may recover on a *pro rata* basis for the portion of the year they resided at BVS.
- Individual recovery estimates will not be communicated to Class Members prior to receiving their disbursements.
- Neither Plaintiffs nor Defendants intend to file an appeal. The reference to an appeal in the Settlement Agreement is intended to address the circumstance where an objector appeals the approval of the settlement.

In response to the Court's specific questions regarding the expected relief to members of the proposed class, Proposed Class Counsel has discussed the issues with ALCS. ACLS assumes an average of 4 occupant groups during the class period per unit for each of the 589 units in the BVS apartment complexes for a total estimate of 2,356 individuals that make up the class. *See* Ex. 9 (Declaration of Benny W. Davis). Based on information known to date and its own experience, ALCS expects that between 15% and 40% of the units (88 to 235 units) will file a claim. *See id.* They expect an average of 2 occupying groups will file a claim per unit, so the total number of claims is expected to range between 176 on the low end and 470 claims on the higher end. *See id.* Based upon their experience in claims administration, ALCS estimates that on average, 34% of the units or 200 units will file claims, and that 2 occupant groups per unit will file a claim, for a total of 400 claims filed on

average. ALCS estimates that less than 1% of the units or 6 units or 24 individuals will opt out. This is based upon historical rates for cases that ALCS has administered.

As for costs, ALCS estimates that it will cost a total of $27,601 in administrative costs to administer the settlement under the terms set forth in the Settlement Agreement.

Plaintiffs' counsel states that to date they collectively incurred expenses of approximately $75,000.00 with some outstanding expenses expected to be billed to them soon. Plaintiffs' counsel estimates that after payment of any petitioned for and subsequently approved attorneys' fees and reimbursement of expenses, $1,900,000.00 will remain for apportionment among the Class Members who submit a valid claim form.[4]

If all estimated 2,356 class members submitted a claim for the full three years, the amount of recovery per claimant would be $806.45. However, a 100% claims rate is unlikely based on the experience of Proposed Class Counsel and ALCS. Rather, ALCS estimates that between 15%-40% of the **units** will submit claims.

Moreover, Proposed Class Counsel reasonably predicts that fewer than half of the total units at the BVS apartment complexes will submit claims, based on their experience with this specific class and their outreach efforts prior to and throughout the course of this litigation. CASA is a non-profit organization located *literally* amongst the "garden style" BVS apartments. They have numerous active members who reside in the BVS apartment complexes and have organized a tenant association of BVS. Plaintiffs and their counsel have made multiple efforts at outreach to the community and estimate that between 100 and 200 apartments will make claims on the settlement fund. If 200 units make claims for an average of 2 years, each year will be worth $4,750.00 with an average total recovery

---

[4] Plaintiffs' counsel anticipates petitioning for a 30% fee based upon applicable case law as well as a lodestar cross-check and a reasonable multiplier. *See Singleton v. Domino's Pizza, LLC,* 2013 WL 12246357, at *1, 4 (D. Md. May 13, 2013) (Chasanow, J.) (granting approval of class action settlement agreement that called for an award of attorneys' fees of 30% of the settlement fund).

7

of $9,500 per claim.[5] The estimate provided by Plaintiffs' counsel of 200 apartments opting to make a claim is a reasonable one, based upon their knowledge of the community, and is further supported by ACLS's experience administering claims in this area. Indeed, 200 units would be 34% which falls within the Administrator's estimate of 15-40%.

As is customary with class action settlements wherein the recovery to class members is dependent upon certain factors that cannot be determined at the onset of the notice plan, including the number of opt-ins and opt-outs, the Settlement Agreement does not contemplate notifying individual class members of their specific individual recovery until the class members receive payment from the Class Administrator. The notice and the proposed settlement are transparent about the method for allocating money to claimants. There is no guarantee to any claimant of any specific amount, and a Claimant can choose to opt-out based on the disclosure that their specific recovery amount is not set for certain until the entirety of the class is determined. However, this is not unusual for class settlements to not provide projections as to the values to be obtained by any given class member and is customary where the amount of recovery for class members is dependent upon variables that cannot be determined at the initiation of the notice plan.

Plaintiffs measure their compensatory and restitutionary damages sought in the FAC for breach of contract and breach of the implied warranty of habitability as follows. Under Maryland law, the damages recoverable for breach of contract and for breach of the implied warranty of habitability are the difference in the amount of rent paid or owed on each unit and the reasonable rental value of the unit in its condition. *See* Ex. 10 (*Bennett v. Donaldson Grp., LLC,* 2022 WL 2981494, at *8-9 (Md. Ct. Spec. app. July 28, 2022). Named Plaintiffs have alleged they were charged between $1,520 and $1,613 per month in rent. Assuming an average rent of $1,566.50 per month, the yearly rent would

---

[5] Applying these parameters to the recovery formula yields the following: N = two, the Net Settlement Fund is $1.9 million, 200 claims are filed, the claims are for an average of two years. Thus, the formula in the settlement agreement would be 2*1,900,000/(2*200) = $9,500.00.

be $18,798, $37,596 for two years, and $56,394 for three years. This represents the ceiling in per-apartment compensatory or restitution damages under a breach of contract and breach of the implied warranty of habitability damages if the case were to proceed to trial.

Therefore, that Class Members may recover between $806.45 at the absolute minimum and on average, $4,750.00 per year provides significant relief to the Class Members in comparison against the potential damages recovery available under Maryland law. In fact, Plaintiff's counsel has recently tried a claim in Montgomery County Circuit Court, seeking restitution of rent due to the presence of mold in the tenant's apartment under claims for breach of contract, the implied warranty of habitability, and the Maryland Consumer Protection Act, among other claims. The plaintiff in that matter sought in excess of $30,000 in damages but received a verdict of only $2,500. *See* Ex. 10. In addition to eliminating the uncertainty of obtaining a verdict at trial, settlement here occurs before a contested motion for class certification or summary judgment. Therefore, due to the uncertainties involved with obtaining any relief—let alone the value of the requested relief sought—Plaintiffs and Proposed Class Counsel believe that the settlement is fair and provide adequate relief to the Class Members.

## **THE SETTLEMENT IS FAIR AND ADEQUATE**

The settlement must be fair and adequate to receive preliminary approval. Fed. R. Civ. P. 23(e)(2). The Rule requires the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
>   (iv) any agreement required to be identified under Rule 23(e)(3); and

>  (D) the proposal treats class members equitably relative to each other.

Each of these factors weighs in favor of the proposed settlement.

As stated above, compensation will be provided to each class member who submits a valid claim for compensation. A formulaic approach to provide greater compensation to individuals who lived in an apartment for longer periods of time was formed:

> Individual Apartment Recovery = ((N)*Net Settlement Fund) / (Total Number of Occupancy Years for All Claimed Units)
>
> N = Maximum Number of partial years residing at BVS during the Class Period (1, 2 or 3) but no more than 3 for a specific unit

Individuals who make a claim on the same apartment and for the same year will divide the apartment's recovery *pro rata* for the year.

Once all claim forms have been obtained and validated, each apartment will receive a *pro rata* distribution for each year at which they resided at Bedford Station or Victoria Station during the class period, but not more than three years (considering the statute of limitations). Individuals who make separate claims for the same year of the same apartment will share that individual apartment *pro rata* with each other so that larger families will not benefit by submitting multiple claims for the same apartment.

## THE SETTLEMENT PROVIDES REAL AND SIGNIFICANT RELIEF TO THE CLASS MEMBERS

Plaintiffs previously stated, and reiterate below, that the settlement provides fair and adequate relief to the proposed class members. The present proposal goes far beyond and represents significant relief to the members of the class that would be unattainable without the class, and even in some reasonable doubt in the event individual actions were filed and the case were successful.

Plaintiffs and Counsel have also considered the fact that litigation is unpredictable and that despite every effort made, they could still obtain nothing. Given the challenges, risks, delay and difficulty involved with establishing a right to recovery, and the likelihood that this litigation will be further protracted and expensive, Plaintiffs and Proposed Class Counsel have legitimate reason to believe that this settlement will compensate the class members with relief that is in excess of that which could be won (or lost) at any trial and more expeditiously than what may ultimately be obtained post-trial. The compensation afforded by this resolution is significant to the residents of the BVS apartment complexes and provides the class members with adequate and fair relief.

**Adequate representation:**

Named plaintiffs possess a strong understanding of the issues at hand and are committed to diligently pursuing the interests of the class members. Proposed Class Counsel are highly experienced in class action litigation and their expertise and resources ensure that the class members will be effectively represented throughout the litigation process.

**The settlement was negotiated at arm's length:**

The settlement agreement, attached as Exhibit 1, was the product of extensive and fair negotiations between the parties during mediation. Indeed, the parties participated in several days-long unsuccessful sessions with a private mediator, Linda Singer, before coming to terms on a settlement. The terms were discussed in good faith, and both the plaintiffs and the defendants had the opportunity to present their respective positions. The resulting agreement reflects a fair and reasonable compromise that benefits the class members.

**The proposal treats class members equitably relative to each other:**

The settlement agreement provides fair and proportionate relief to all class members based on the harm suffered due to the defendants' actions. The distribution of compensation is structured in a manner that prioritizes fairness and avoids any arbitrary distinctions among class members.

**THE SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR A CLASS ACTION**

Rule 23 requires that for a class to be certified:

(1) the class is so numerous that joinder of all members is impracticable ("numerosity");

(2) there are questions of fact or law common to the class ("commonality");

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and

(4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").

### Ascertainability

Rule 23 "contains an implicit "threshold requirement that the members of a proposed class be readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (internal quotation omitted). Class certification requires that "a court can readily identify the class members in reference to objective criteria." *Id*. Here, the settlement terms limit class members to individuals who were tenants at the Bedford and Victoria Station Apartment complexes during a specific timeframe. Ex. 1. These are objective criteria because individuals can be identified through their lease agreements with the Defendants and/or through other sworn, documentary proof evidencing residency during the relevant time period, and the agreement includes a temporal limitation on these claims. Thus, Plaintiffs have proposed ascertainable class areas based on objectively discernable criteria.

### Numerosity

Rule 23(a)(1) requires that the class "be so numerous that joinder of all class members is impracticable." *Cent. Wesleyan Coll. v. W.R. Grace Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (finding "that some 480 potential class members would easily satisfy the numerosity requirement."). There is no numerical threshold, and all that is required is that Plaintiffs make some reasonable estimate, for which a good-faith estimate is sufficient. *Id*. Defendants' records indicate that there are approximately 589

units at BVS, most with multiple occupants, making the total number of tenants at BVS during the applicable class period sufficiently numerous to satisfy Rule 23(a)(1)'s numerosity requirement.

### Commonality

Rule 23(a)(2)'s commonality requirement for class certification requires that "there are questions of law or fact common to the class." This standard "is a liberal one that cannot be defeated by the mere existence of some factual variances among class members." *Smith v. Res-Care, Inc.,* Civil Action No. 3:13-5211, at *8 (S.D.W. Va. Feb. 3, 2015). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 369 (2011). Although the rule speaks of questions, "what matters to class certification is the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 338 (cleaned up).

Here, commonality exists because the Plaintiffs' claims depend on the resolution of the following common contentions:

1. Whether Defendants violated the implied warranty of habitability;
2. Whether Defendants violated local codes and ordinances including, but not limited to, Sec. 13-153 of the Prince George's County Code of Ordinances;
3. Whether Defendants failed to perform adequate maintenance at BVS;
4. Whether the issues within the units were the product of Defendants' purported failure to provide reasonable maintenance.
5. Whether the conditions at BVS were sufficiently severe to consider the entire complex uninhabitable under the Prince George's County Housing Code; and
6. Whether Defendants had constructive notice of the conditions at BVS.

If a class settlement were not certified, each individual plaintiff would offer the same evidence, including the same experts, against Defendants, and Defendants in turn would likely offer the same

counter evidence, including experts, to defend itself. These questions and their corresponding answers, therefore, are common to the class members.

### Typicality

Rule 23(a)(3) requires that the class representative have claims or defenses "typical of the claims or defenses of the class." they purport to represent." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001). In short, the inquiry is whether Plaintiffs are class members that can assert the same claims, on the same basic facts as the other class members. That is the case here because all the named Plaintiffs were tenants at BVS between July 19, 2018, and May 23, 2022, and each have claims relating to habitability and alleged maintenance issues like the proposed class members.

### Adequacy

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." This requires a two-pronged inquiry: "1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *Donaldson v. Primary Residential Mortg., Inc.*, Civil No. ELH-19-1175, at *11 (D. Md. May 28, 2021).

*(a) Adequacy of Representatives*

The Named Plaintiffs in this case do not have interests antagonistic to the class members because they have a shared interest in seeking compensation for their shared harm. To date, they have actively participated in this litigation, and will continue to do so on behalf of the members of the class. Plaintiffs are like the class members and share their interests in that all were tenants at BVS during the Relevant Time Period.

*(b) Adequacy of Counsel*

The adequacy of counsel is addressed by Rule 23 (g). Plaintiffs' counsel restate the following in support of the finding that they are adequate counsel:

INVESTIGATION: Counsel undertook substantial efforts to investigate the class claims before filing this case in 2021. Counsel spoke with over one hundred potential class members regarding the issues in this case. Counsel also recruited a Certified Industrial Hygienist and several Structural Engineers to perform multiple day-long site inspections of class members' units on May 4, 2021, July 20-21, 2022, and March 21-23, 2023, which Proposed Class Counsel were also present for. Plaintiffs' counsel also retained and consulted with an expert in Environmental Statistics who determined whether a representative sample could be taken and whether the results portended the existence of class-wide habitability concerns. Plaintiffs' counsel have litigated this case through three day-long mediations, multiple motions to dismiss, multiple discovery motions, and have led efforts to obtain discovery from the Defendants and third-parties. Counsel have also reviewed thousands of pages of the discovery from the Defendants and third parties.

EXPERIENCE & KNOWLEDGE OF APPLICABLE LAW: Plaintiffs' counsel has combined extensive experience with class action litigation, including environmental class actions, and Maryland habitability law in their representation of the proposed class members.

RESOURCES COUNSEL HAS COMMITTED: To date, Plaintiffs' counsel combined have devoted more than one-thousand (1000) hours to this case and will devote all additional time necessary to ensure that every claim asserted and every paper filed is well founded and done to the best of their ability and with allocation of appropriate resources.[6] Plaintiffs' counsel will continue to commit the necessary resources to litigate this case to its conclusion.

## THE RULE 23(b)(3) REQUIREMENTS ARE SATISFIED

Rule 23(b)(3) requires that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action [be]

---

[6] Proposed class counsel will provide specific hours and a proposed blended rate in any petition for approval of attorneys' fees.

superior to other available methods for fairly and efficiently adjudicating the controversy."

### Predominance

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members..." Critically, while Rule 23(b)(3) requires a showing that common questions predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class. *Amgen Inc. v. Ct. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) ("[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'").

The predominance requirement is satisfied in this case as common issues clearly predominate. The presence of individual questions regarding the extent of harm or specific effects of the Defendants' conduct on individuals does not undermine predominance. The facts and legal elements essential to the claims of all class members are identical: Plaintiffs assert the existence of widespread uninhabitability issues at BVS and attribute the failure to address these issues to the insufficient funds allocated by Defendants for maintaining the units of proposed class members. To support these allegations, Plaintiffs conducted habitability inspections on a statistically significant sample of units and supplemented their findings with historical inspection reports for every unit at BVS. The overarching concern in this litigation revolves around the Defendants' liability for these maintenance deficiencies. Since these allegations pertain to the common conduct of Defendants with respect to the proposed class members, the common issues surrounding this liability clearly predominate over any individualized concerns among the class members.

### Superiority

Superiority is the second prong of Rule 23(b)(3) and it "requires the court to analyze whether the proposed class action would be superior to other available methods for the fair and efficient adjudication of the controversy raised by the action." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417,

449 (4th Cir. 2003) (cleaned up).  Managing individual actions will clearly be more onerous than a class action. Requiring duplicative discovery and multiple trials—likely hundreds of individual suits—regarding the same issues would be wasteful, unfair to the litigants, and would unnecessarily consume judicial resources.

## **THE PROPOSED NOTICE IS APPROPRIATE AS AMENDED**

The parties have amended their clause of their Proposed Notice to provide non-court sources for the class members to learn the precise terms and conditions of the settlement and will add the following language:

> PLEASE DO NOT CONTACT THE COURT DIRECTLY. The Court cannot provide you with legal advice or any opinion regarding the lawsuit or proposed settlement. Access to the court docket is available for a fee via PACER or through computers at the clerk's office in Greenbelt (6500 Cherrywood Lane Greenbelt, MD 20770 Open 9a.m. – 4p.m.) where they may view the docket and read documents. There is a fee of $0.10 per page to obtain copies of any document at the Clerk's office.

The Notice Plan provides for multiple mechanisms of notice to reach proposed class members: 1) direct mail; 2) email notice; 3) publication notice; and 4) website notice. Each will be available in both English and Spanish, giving due consideration to the class members' language. Spanish translations were accomplished by native or fluent translators in Spanish and verified by multiple people for accuracy.

Direct mail is appropriate and feasible as the parties know the address and/or names of many tenants who resided at Bedford Station or Victoria Station during the relevant class period through their rental records. The settlement administrator will also post notice on a settlement website and publish notice in English in the *Hyattsville Life and Times* and in Spanish in *El Tiempo Latino*. Both are local newspapers which will run the notice for four consecutive weeks. Email notice will also be sent in both English and Spanish to last known email addresses for all tenants who provided email addresses to the Defendants and resided in either Bedford Station or Victoria Station during the Class Period.

Attached hereto as Exhibits for the Court's convenience and review are the following:

| | |
|---|---|
| Exhibit 2 | Claim and Release Form (English) |
| Exhibit 3 | Claim and Release Form (Spanish) |
| Exhibit 4 | Notice of Class Settlement (English) |
| Exhibit 5 | Notice of Class Settlement (Spanish) |
| Exhibit 6 | Publication Notice (English) |
| Exhibit 7 | Publication Notice (Spanish) |

Each of these documents was likewise attached to the proposed settlement agreement and incorporated therein as part of Exhibit 1.

Plaintiffs' counsel again suggests that if notice should indicate that there is some degree of uncertainty as to the expected return of compensation, that can be accomplished, and Plaintiffs will so note. Otherwise, the notice is transparent, easily understood and identifies all the rights and obligations of the proposed class members.

## **CONCLUSION**

Plaintiffs respectfully request that this Court grant preliminary approval of the class settlement, finding the settlement satisfies the requirements of Rule 23 and is fair and reasonable. Plaintiffs request that the following class definition be certified:

> **All current and prior Tenants who resided at the Bedford and Victoria Station Apartment Complexes between July 19, 2018, and May 23, 2022.**

Plaintiffs further move for an order appointing each individual Plaintiff as a class representative and appointing Jonathan Nace and Zachary Kelsay of Nidel & Nace, PLLC and P. Joseph Donahue of the Donahue Law Firm as Class Counsel.

Plaintiffs further move for the Court to enter the attached Order of Preliminary Approval approving of the form and process for notice, opt outs, objections, and claims.

Plaintiffs respectfully request that the Court set a date for a Final Approval Hearing for no less than ninety (90) days from the date of the entry of a Preliminary Approval Order.

        Respectfully submitted,

*/s/ Jonathan Nace*
**Nidel & Nace, P.L.L.C.**
Jonathan Nace, Esquire
Bar Number: 18246
Zachary Kelsay
Bar Number: 30460
One Church Street
Suite 802
Rockville, MD 20850
Telephone:(202) 780-5153
jon@nidellaw.com
zach@nidellaw.com

P. Joseph Donahue
Bar Number 06245
**The Donahue Law Firm, LLC**
18 West Street
Annapolis, Maryland 21401
Telephone: (410) 280-2023
pjd@thedonahuelawfirm.com

*Attorneys for the Named Plaintiffs
and the Putative Class*

**CERTIFICATE OF SERVICE**

This is to certify that on this 6th day of October 2023, I caused a copy of the foregoing to be served upon all parties.

/s/ Jonathan Nace
Jonathan Nace, Esquire
Bar Number: 18246