```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                    :
CASA de MARYLAND, INC., et al.
                                    :

     v.                             :   Civil Action No. DKC 21-1778

                                    :
ARBOR REALTY TRUST, INC., et al.
                                    :
```

**MEMORANDUM OPINION AND ORDER**

Presently pending in this housing conditions case is a corrected unopposed motion for preliminary approval of a settlement agreement between Named Plaintiffs Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (collectively, "Named Plaintiffs") and Defendants Arbor Realty Trust, Inc., *et al.* ("Defendants"). (ECF No. 160). Named Plaintiffs also seek certification of a settlement class; their appointment as class representatives; appointment of their counsel as class counsel; approval of the form of and authorization to mail the notice; the setting of a final approval hearing and dates for elections to be included and submission of objections; and a stay of all proceedings other than those necessary to carry out the terms and provisions of the settlement.

CASA de Maryland, Inc., *et al* ("Plaintiffs") filed their first motion for preliminary approval in September, which was denied

because the court required additional details about Plaintiffs' estimates regarding the likely recovery per class member. Plaintiffs filed a declaration from Benny Davis, Jr., managing director of American Legal Claims Services, LLC ("ALCS"), who provided more detailed estimates, as well as corrected versions of the motion for preliminary approval of class settlement and notices. (ECF Nos. 160-1; 160-5, at 3; 160-7, at 1; 160-10). The court now reviews those corrected documents.

The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for preliminary approval of the settlement, and its accompanying requests, will be granted.

**I.   Background**

The relevant factual background in this case is set out in a prior opinion. (ECF No. 76, at 2-6); *CASA de Maryland, Inc. v. Arbor Realty Tr., Inc.*, No. 21-cv-1778-DKC, 2022 WL 4080320, at *1-2 (D.Md. Sept. 6, 2022). In short, Plaintiffs allege that Defendants failed to maintain and repair the properties in which Plaintiffs lived and discriminated against them through the deficient maintenance and repair of their apartments. (ECF Nos. 1, at 114-130; 76, at 5); *CASA*, 2022 WL 4080320, at *2. On their own behalf and on behalf of those similarly situated, Plaintiffs filed this suit on July 19, 2021. (ECF No. 1). They allege violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, Prince George's

2

County Code § 13-153, and Maryland common law. (*Id.* at 110, 114-130).

With the assistance of a mediator, the parties reached a settlement agreement. (ECF Nos. 157, at 14; 157-9, at 1-2). Plaintiffs moved unopposed on September 9, 2023, for preliminary approval of the settlement. (ECF No. 157). As noted above, that motion was denied without prejudice. (ECF No. 158). The court found that "the parties ha[d] not provided enough information to assess whether the [a]greement [could] be approved preliminarily." (*Id.* at 8). To assess the adequacy of the agreement, the court required estimates of the size of the class, percentage of members who will opt in, expected recovery per unit, costs and expenses to be paid to the proposed class counsel and claims administrator, whether tenants who lived in Bedford Station and Victoria Station ("BVS") for less than a year will be included in the class, and how the recovery would compare to the damages Plaintiffs would seek if they proceeded to trial. (*Id.* at 14-15). The court also asked Plaintiffs to clarify whether either party intends to appeal and to add language in the notice instructing class members not to contact the court directly. (*Id.*). Finally, the court instructed Plaintiffs to post a notice in a common space in each BVS building if Defendants have not sold the properties. (*Id.* at 13).

On October 6, 2023, Plaintiffs submitted an unopposed corrected motion for preliminary approval of class settlement

3

which provided new information and included revised notices. (ECF Nos. 160-1; 160-5, at 3; 160-7, at 1). Before addressing the merits of Plaintiffs' motion, the court summarizes the new information provided. Unless mentioned here, all other portions of the Agreement and Notice remain materially unchanged from Plaintiffs' first motion for preliminary approval and are accurately described in the court's preceding opinion. (*See* ECF No. 158); *CASA de Maryland, Inc. v. Arbor Realty Tr., Inc.*, No. 21-cv-1778-DKC, 2023 WL 6125531 (D.Md. Sept. 19, 2023).

II. **The Settlement Agreement and Notice**

    **A. Agreement Terms**

The Agreement itself remains unchanged. It applies to the same current and former tenants of BVS for the same period of time. (ECF No. 160-1, at 2). As before, the Agreement creates a Settlement Fund of $3,000,000. (*Id.* at 3). It will still be used first to cover attorneys' fees and costs, settlement administration costs, and a service payment to Named Plaintiffs, before the remaining amount (the "Net Settlement Fund") is distributed to Settlement Class Members. (*Id.*). Class Members waive all claims arising out of, based upon, or related in any way to the allegations set forth in the complaint. (*Id.* at 2; 160-9, at 5). The method for distributing the Net Settlement Fund to Settlement Class Members remains as follows:

4

```
Individual Apartment Recovery =  ((N)*Net Settlement Fund)/
                                 (Total  Number  of  Occupancy
                                 Years for All Claimed Units)
```

N = Maximum number of partial years residing at BVS during the Class Period (1, 2 or 3) but no more than 3 for a specific unit

(ECF No. 160-1, at 3).

Based on new information provided by the Plaintiff, it is now possible to generate more specific estimates of how the Agreement will operate.  Proposed class counsel indicates that the Settlement Class consists of 2,356 Class Members, based on ALCS's assumption of "an average of 4 occupant groups during the class period per unit for each of the 589 units in the BVS apartment complexes." (*Id.* at 6).  ALCS also estimates that "between 15% and 40% of the units (88 to 235 units) will file a claim" and that "an average of 2 occupying groups will file a claim per unit, so the total number of claims is expected to range between 176 on the low end and 470 claims on the higher end."  (*Id.*).  ALCS predicts that "less than 1% or less than 6 apartments or 24 Class Members will opt out of the Settlement Agreement."  (*Id.* at 5).  Proposed class counsel estimates that "its costs, fees, and expenses are likely to be, but will not exceed, approximately $1 [m]illion," and that "the costs paid to ALCS are likely to be approximately $27,601."  (*Id.*). Proposed class counsel expects that the deductions will produce a Net Settlement Fund of $1.9 million.  (*Id.*).  They estimate that "the average recovery per claim will be approximately $9,500.00,"

5

which assumes (1) "an average claim for two years of residency so the average yearly recovery would be $4,750.00" and that (2) "34% of the apartments make a claim." (*Id.*). They also estimate that "the lowest possible recovery, if all 2,356 estimated class members made claims for three years[,] would be $806.45 per claim with a yearly average of $403.23." (*Id.* at 6). The estimates are based on CASA de Maryland's outreach efforts amongst the community living in BVS and ACLS's experience administering claims in this area. (*Id.* at 7-8).

In addition to providing more details about the expected recovery per unit, Plaintiffs also address several of the court's questions. First, the court inquired whether tenants who resided at BVS for less than a year will be included in the Class. (ECF No. 158, at 15). Plaintiffs reply that "[i]ndividuals who make a claim on the same apartment and for the same year may recover on a *pro rata* basis for the portion of the year they resided at BVS." (ECF No. 160-1, at 6). Second, the court instructed Plaintiffs to clarify whether individual recovery estimates will be communicated to Class Members. (ECF No. 158, at 15). Plaintiffs respond negatively, asserting that it is "customary" when "recovery to class members is dependent upon certain factors that cannot be determined at the onset of the notice plan, including the number of opt-ins and opt-outs" not to "notify[] individual class members of their specific individual recovery until the class members

6

receive payment from the Class Administrator." (ECF No. 160-1, at 8). Third, because the parties defined the Agreement's "Effective Date" as "the day after the last date for filing a Notice of Appeal," (ECF No. 157-2, at 4), the court directed the parties to reveal whether they plan to file an appeal. (ECF No. 158, at 7 n.1). Plaintiffs respond that neither they "nor Defendants intend to file an appeal," explaining that "[t]he reference to an appeal in the Settlement Agreement is intended to address the circumstance where an objector appeals the approval of the settlement." (ECF No. 160-1, at 6). Fourth, the court instructed the parties to post the notice in a common space in each BVS building if Defendants still own the properties. (ECF No. 158, at 13 n.3). As Plaintiffs do not address this point, the court will assume that the buildings have been sold. Consequently, the parties will not be required to post notice in the buildings. Fifth, the court instructed Plaintiffs to add language to the notices providing: "PLEASE DO NOT CONTACT THE COURT DIRECTLY. The Court cannot provide you with legal advice or any opinion regarding the lawsuit or proposed settlement." (*Id.* at 14). The parties did so. (ECF Nos. 160-1, at 17; 160-5, at 3; 160-7, at 1).

Finally, and perhaps most importantly, the court directed Plaintiffs to "specif[y] how they would measure the compensatory and restitution damages they sought under their breach of contract and breach of implied warranty of habitability theories if the

7

case were to proceed to trial." (ECF No. 158, at 11). The court requires this information to "weigh the amount of the settlement against the potential recovery." (*Id.*). Plaintiffs respond that, pursuant to Maryland law, they measure their damages as "the difference in the amount of rent paid or owed on each unit and the reasonable rental value of the unit in its condition." (ECF No. 160-1, at 8) (citing *Bennett v. Donaldson Grp., LLC*, No. 1372, Sept. term, 2021, 2022 WL 2981494, at *9 (Md.Ct.Spec.App. July 28, 2022), *cert. denied sub nom. Bennett v. Donaldson Grp.*, 482 Md. 33, 284 A.3d 413 (2022)). They calculate the damages as follows:

> Named Plaintiffs have alleged they were charged between $1,520 and $1,613 per month in rent. Assuming an average rent of $1,566.50 per month, the yearly rent would be $18,798, $37,596 for two years, and $56,394 for three years. This represents the ceiling in per-apartment compensatory or restitution damages under a breach of contract and breach of the implied warranty of habitability damages if the case were to proceed to trial.
>
> Therefore, that Class Members may recover between $806.45 at the absolute minimum and on average, $4,750.00 per year provides significant relief to the Class Members in comparison against the potential damages recovery available under Maryland law.

(*Id.* at 8-9).

### B. Notice

The court did not request any changes to the parties' form of notice besides the instruction not to contact the court directly.

8

**III. Analysis**

As noted above, Named Plaintiffs move for preliminary approval of the Agreement.  They also seek certification of a settlement class; their appointment as class representatives; appointment of their counsel as class counsel; approval of the form of and authorization to mail the notice; the setting of a final approval hearing and dates for elections to be included and submission of objections; and a stay of all proceedings other than those necessary to carry out the terms and provisions of the settlement.  Generally, approval of a Rule 23 class action settlement involves a two-step process.  First, the terms of the proposed settlement must be reviewed in order to issue a preliminary fairness evaluation. *Grice v. PNC Mortg. Corp. of Am.*, No. 97-cv-3084-PJM, 1998 WL 350581, at *2 (D.Md. May 21, 1998); *see also Manual for Complex Litig. (Fourth)* § 21.632 (2004) ("The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.").  Courts have condensed this into an analysis of whether the settlement is fair and adequate and identified various factors for both. *See McDaniels v. Westlake Servs., LLC*, No. 11-cv-1837-ELH, 2014 WL 556288, at *8 (D.Md. Feb. 7, 2014) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)).  "By far the most important factor is a comparison of the terms of the proposed settlement with the likely recovery that plaintiffs would realize

9

if they were successful at trial." *Id.* (quotation omitted). When performing this analysis, a district court must "act[] as a fiduciary of the class." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (quotation omitted). At this initial stage, preliminary approval should be granted when a proposed settlement is "within the range of possible approval," subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object. *Benway v. Res. Real Estate Servs., LLC*, No. 05-cv-3250-WMN, 2011 WL 1045597, at *4 (D.Md. Mar. 16, 2011) (quotation omitted).

Where, as here, a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Fed.R.Civ.P. 23(a) and at least one of the subsections of Fed.R.Civ.P. 23(b). *See Manual for Complex Litig. (Fourth)* § 21.632; *cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).[1]  The parties must also be

---

[1] Fed.R.Civ.P. 23(a) provides as follows:

> (a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

directed to provide notice to the putative class members regarding the terms of the proposed settlement and the date of the final fairness hearing, where arguments and evidence may be presented in support of, and in opposition to, the settlement. *See* Fed.R.Civ.P. 23(e).  At the second stage, following the final fairness hearing, final approval will be granted "[i]f the proponents of the settlement have satisfied their burden of showing that it is fair, adequate and reasonable." *Grice*, 1998 WL 350581, at *2 (internal quotation marks omitted).

Overall, the size of the recovery to the class is fair, reasonable, and adequate in light of the strength of the case against Defendants and the risks of litigation.  Plaintiffs contend that if the case were to proceed to trial, under Maryland law, "the ceiling in per-apartment compensatory or restitution damages under a breach of contract and breach of the implied warranty of habitability damages" would be $18,798 per year (based on the average rent in BVS of $1,566.50 per month).  (ECF No. 160-1, at

---

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(b)(3), the subsection relied on by the Named Plaintiffs here, permits a class action to be maintained only if it can be concluded (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

11

9). While that figure is much higher than what Class Members will recover under the Agreement — "between $806.45 at the absolute minimum and on average, $4,750.00 per year" — Plaintiffs assert that recovery under the Agreement will "provide[] significant relief to the Class Members in comparison against the potential damages recovery available under Maryland law." (*Id.*). They cite a case Plaintiffs' counsel recently tried in Montgomery County Circuit Court that sought "restitution of rent due to the presence of mold in the tenant's apartment under claims for breach of contract, the implied warranty of habitability, and the Maryland Consumer Protection Act, among other claims." (*Id.*). In that case, the plaintiff "sought in excess of $30,000 in damages but received a verdict of only $2,500." (*Id.*). While any number of factors could have led to that verdict, the point is well taken that proceeding to trial can be risky, in addition to being costly and slow. Thus, the prospect of recovering even $806.45 per year if all Class Members opt in may still be more desirable than the remote possibility of recovering up to $18,798 per year at trial.

Upon careful consideration of Named Plaintiffs' unopposed motion and a thorough review of the proposed Settlement Agreement, and subject to further consideration at the hearing described in Paragraph 13 below ("the Final Fairness Hearing"), it is this 26th day of October, 2023, ORDERED as follows:

1. The Named Plaintiffs' Unopposed Motion (ECF No. 157), as supplemented and amended by their Corrected Unopposed Motion (ECF No. 160) BE, and the same hereby IS, GRANTED;

2. Subject to further consideration at the Final Fairness Hearing, the terms of the Settlement Agreement are preliminarily approved as fair, reasonable, and adequate within the meaning of Fed.R.Civ.P. 23(e);

3. For settlement purposes only, and subject to further consideration at the Final Fairness Hearing, the following class of individuals ("the Class Members") BE, and the same hereby IS, CERTIFIED as a class action pursuant to Fed.R.Civ.P. 23(a) & 23(b)(3):

> All current and prior tenants who resided at the Bedford and Victoria Station Apartment Complexes between July 19, 2018, and May 23, 2022.

4. The court preliminarily finds that the Rule 23 Class meets the prerequisites for a class action under Fed.R.Civ.P. 23(a) and (b)(3) in that:

    a. The approximate number of Class Members – 2,356 – is so numerous that joinder of all members thereof is impracticable;

    b. There are questions of law or fact common to the class, including but not limited to the questions of (1) whether Defendants violated the implied

13

      warranty of habitability; (2) whether Defendants violated local codes including Section 13-153 of the Prince George's County Code of Ordinances; (3) whether Defendants failed to perform adequate maintenance at BVS; (4) whether the issues within the units were the product of Defendants' purported failure to provide reasonable maintenance; (5) whether the conditions at BVS were sufficiently severe to consider the entire complex uninhabitable under the Prince George's County Housing Code; and (6) whether Defendants had constructive notice of the conditions at BVS;

c. Named Plaintiffs' claims are typical of the claims of the class they seek to represent because their claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims – namely, Defendants' alleged failure to perform adequate maintenance at BVS during the period between July 19, 2018 and May 23, 2022;

d. Named Plaintiffs and Class Counsel have and will fairly and adequately represent the interests of the class because Named Plaintiffs' interests are not at odds with those of the Class Members and

14

>> because Class Counsel are qualified, experienced, and competent (*see* ECF No. 160-1, at 14-15);

5. Solely for the purpose of settlement, the court further provisionally finds that the requirements of Rule 23(b)(3) are satisfied in that:

>> a. The questions of law or fact common to the class predominate over any factual or legal variations among Class Members, because the central issues in this litigation are common among Plaintiffs, and the elements of Plaintiffs' claims can be evaluated through common evidence; and
>>
>> b. Class adjudication of Class Members' claims is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, whose claims are relatively small and who may not be in a position to enforce their rights through a lengthy and costly suit;

6. Named Plaintiffs Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran BE, and the same hereby ARE, APPOINTED to serve as the representatives of the class;

7. The law firms of Nidel & Nace, P.L.L.C. and The Donahue Law Firm, LLC, BE, and the same hereby ARE, APPOINTED to serve as Class Counsel for the Class pursuant to Fed.R.Civ.P. 23(g);

8. American Legal Claims Services BE, and the same hereby IS, APPOINTED to serve as the Settlement Administrator for the Settlement Agreement;

9. The notice protocols described in Section VI of the Settlement Agreement are approved pursuant to Fed.R.Civ.P. 23(c)(2)(B) and the parties are directed strictly to follow the agreed-upon protocols; the court finds that the notice protocols constitute valid, due, and sufficient notice to the Settlement Class Members;

10. The Notice, Claim and Release Form, and Publication Notice, attached to the Settlement Agreement, are approved pursuant to Fed.R.Civ.P. 23(c)(2)(B);

11. Class Members who wish to opt into the Settlement Agreement must follow the procedures described in Question 11 of the Notice; Class Members must either complete the Claim and Release Form online or mail it with all accompanying documents postmarked no later than ninety (90) days after the notice of class action lawsuit is sent to Class Members;

12. Class Members who wish to object to the Settlement Agreement must follow the procedures described in Section VII of the Settlement Agreement and Question 19 of the Notice; in order to exercise the right to appear and be heard at the Final Fairness Hearing, Class Members must file with the court and deliver to Class Counsel and Defendants' Counsel a written notice of objection

16

no later than sixty (60) days after the notice of class action lawsuit is sent to Class Members;

13. Class Members who wish to opt out of the Settlement Agreement must follow the procedures described in Section VII of the Settlement Agreement and Question 14 of the Notice; Class Members must mail their exclusion request postmarked no later than sixty (60) days after the notice of class action lawsuit is sent to Class Members;

14. Pursuant to Fed.R.Civ.P. 23(e), a Final Fairness Hearing addressing final approval of the Settlement Agreement shall be held on Friday, March 8, 2024, at 10:00 a.m. at the United States District Courthouse, 6500 Cherrywood Lane, Greenbelt, Maryland 20770. The specific courtroom will be noted at www.mdd.uscourts.gov/calendar/calendar.asp. Appropriate notices will be noted on the docket and the court's calendar;

15. At least 14 days prior to the Final Fairness Hearing, Class Counsel shall file all papers in support of (a) final approval of the Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed.R.Civ.P. 23(e); (b) final certification of the Rule 23 Class; (c) the attorneys' fees and expenses requested by Class Counsel; and (d) the incentive fee requested on behalf of Named Plaintiffs;

16. All proceedings in this action are hereby stayed pending the Final Fairness Hearing;

17

17. The parties are directed strictly to follow the agreed-upon protocols; and

18. The clerk will transmit copies of this Memorandum Opinion and Order to counsel for the parties.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
