IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CASA DE MARYLAND, INC., et al, <br><br> Plaintiffs, <br><br> v. <br><br> ARBOR REALTY TRUST, INC., et al, <br><br> Defendants. | Civ. Action No.: 8:21-CV-01778-DKC |

**PLAINTIFFS' PETITION FOR PLAINTIFF AWARDS, AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

***COME NOW*** Plaintiffs and pursuant to Federal Rules of Civil Procedure 23(h) and 54, and pursuant to the Court's Order Preliminarily Approving the Proposed Class Settlement, move for an incentive award for each of the seven named plaintiffs, and for an award of attorneys' fees to Class Counsel as well as reimbursement of expenses, all of which are sought to be paid from the Common Fund established by the Preliminarily Approved Class Settlement. In support of this, Plaintiffs and Class Counsel state the following.

I.  **INTRODUCTION AND LITIGATION HISTORY**

On July 19, 2021, seven residents (Anita Ramirez, Ramiro Lopez, Ervin Rodas, Jesus Gonazlez, Maria Bonilla, Maria Lara and Norma Beltran) of the Bedford Station and Victoria Station ("BVS") apartment complexes in Langley Park, Maryland filed this class action on behalf of residents alleging that they had experienced health and safety issues during their tenancies at BVS, between July 2018 and May 2022.[1] Plaintiffs brought claims for violations of the federal Fair Housing Act (FHA) and also common law claims for breach of the implied warranty of habitability and breach of contract,

---

[1] The immigration advocacy and assistance non-profit organization, CASA de Maryland, Inc., also filed this matter as a Plaintiff for its own damages. CASA supported the effort for class certification at the outset but was not a proposed class representative.

which resulted in a fully detailed 125 page Complaint.  *See* Doc. 1.  Plaintiffs brought claims against eight total defendants, including multiple entities alleged to have owned or operated BVS as well as the property manager.

Defendants responded to the Complaint by collectively filing three motions to fully dismiss the case.  Docs. 46, 47, 49.  Plaintiffs opposed the motion in an omnibus opposition responding to each of the three groups of Defendants complex legal arguments.  The Court considered the arguments of the parties and issued a detailed sixty-two (62) page Memorandum Opinion.  Doc. 76; *see also* Doc. 77 ("Order" granting in part and denying in part Defendants' motions).  The Court's Opinion and Order dismissed the federal FHA and the Breach of Contract claims as to certain Defendants.  However, the Plaintiffs' Breach of the Implied Warranty of Habitability Claim survived as to all Defendants, and the Breach of Contract Claims survived as to the agreed express parties to leasing agreements.

A scheduling order was entered; however, Defendants subsequently filed a motion to strike Plaintiffs' class allegations.  Doc. 89.  Plaintiffs opposed the motion and proceeded into discovery.  *See* Doc. 96.  The Court issued a Memorandum Opinion and Order which denied the motion to strike the class allegations.  The Court's Opinion stated, "the Amended Complaint is not 'so devoid of a basis for a class action as to warrant dismissal before the Plaintiffs even move for class certification." *Id.* at p. 3 (citations omitted).

In response to Plaintiffs' written discovery requests, Defendants produced in excess of 50,000 pages of documents.  Additionally, Plaintiffs issued subpoenas to an entity that purchased BVS during the course of this litigation as well as certain contractors which Plaintiffs determined may have had relevant information.  Plaintiffs and their counsel zealously pursued discovery including timely motions to compel both Defendants and third parties to engage in certain discovery.

Additionally, Plaintiffs pursued critical discovery through other means. Notably, Plaintiffs and Plaintiffs' counsel conducted significant outreach to residents of BVS regarding the conditions of their apartments. This information was used to conduct site inspections with multiple expert witnesses, including an expert in structural engineering and his team of assessors, and a certified industrial hygienist and his team. Plaintiffs' counsel and their experts conducted inspections of approximately seventy-four individual apartments, and some of these were inspected on more than one occasion. In conjunction with the inspections and reviewed documents expressing complaints regarding the conditions of multiple apartments throughout BVS, an environmental statistician was prepared to testify consistent with Supreme Court case law that this representative evidence demonstrated class-wide habitability issues.

While discovery was unfolding, the parties negotiated a Settlement Agreement following several mediation sessions over months of discussions and with the assistance of Linda R. Singer, Esq. Settlement was not achieved easily. The parties and their counsel engaged in three full-day mediation sessions with Linda Singer in an attempt to resolve this matter for as advantageous a settlement as possible. The final mediation session resulted in the proposed class-wide settlement agreement, which establishes a $3,000,000.00 common fund for class member compensation court-approved fees, expenses and awards.

Plaintiffs' counsel prepared and filed a motion for preliminary approval, which the Court denied without prejudice. Plaintiffs' counsel filed a Renewed Motion for Preliminary Approval, which the Court granted. Within the Settlement Agreement, the parties agreed:

> On or before 30 days prior to the Response Deadline, Class Counsel may apply to the Court for a Service Award from the Gross Settlement Fund for each Class Representative not to exceed $7,500 per Class Representative.

Doc. 160-2 at p. 13. As to Attorneys' Fees and Costs, the Agreement states:

> The Gross Settlement Fund shall be used to pay, in the following order: (1) all Administrative Costs; (2) any taxes owed by the Gross Settlement Fund (but not

3

any taxes owed by any individual Class Counsel, Plaintiffs, or Class Members); (3) any Fee and Expense Award approved by the Court; (4) any Service Awards to the Class Representatives approved by the Court; and (5) Settlement Payments.

*Id.* at pp. 9-10. The Settlement Agreement further states:

Class Counsel may apply to the Court for a Fee and Expense Award from the Gross Settlement Fund, not to exceed 30% of the Gross Settlement Fund as reasonable attorneys' fees, plus Class Counsel's reasonable expenses incurred in the Lawsuit.

*Id.* at p. 14. Consistent with the terms of the Settlement Agreement and Federal Rule of Civil Procedure 23, Plaintiffs now file this Petition for Plaintiff Awards, Attorneys' Fees and Expenses.

## II.    ARGUMENT

### a.    The Named Plaintiffs are entitled to an incentive award.

Anita Ramirez, Ramiro Lopez, Ervin Rodas, Jesus Gonazlez, Maria Bonilla, Maria Lara and Norma Beltran each move for an award of $7,500.00. "Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015). Here, the Named Plaintiffs reflects the efforts made to produce a class-wide settlement that has benefits beyond themselves. Each of the Named Plaintiffs received written discovery requests in the form of interrogatories and requests for documents to which they responded. Additionally, the Class Representatives prepared for and engaged in three day-long mediations, each of which required these working-class individuals to seek time off from work. Finally, the Class Representatives were consistently and conscientiously involved in both aggregating information for their counsel and in identifying other tenants at BVS who could support the matter both for class certification and on the merits of the claims.

An incentive award of $7,500 to each of the Class Representatives for their efforts and the benefits they obtained for the class is reasonable and should be approved. It is also consistent with awards in similar type cases that have been approved by Courts in Maryland. See e.g., *Muga v. BB &*

*T*, WDQ-10-00890 (awarding a $7,500 incentive payment); *Miller v. Prestige Financial*, Case No. 09-1671-BEL, ECF 36 (awarding $6,000 incentive award to each representative plaintiff); *Yost v. Elon Property Management Company,* 2023 WL 185178 at * 10 (D. Md. Jan. 13, 2023) (awarding $5,000.00 incentive payment); *Curry v. Money One Federal Credit Union,* 2021 WL 5839432 at * 4 (D. Md. Dec. 9, 2021) (awarding $6,000.00 incentive payment); *Smith v. Toyota Motor Credit Corp.,* 2014 WL 4953751 (D. Md. Oct. 2, 2014) (awarding $5,000 incentive payments to each plaintiff).

It is respectfully requested that the incentive payment be approved and that each of the seven Class Representatives be awarded $7,500.00 from the common fund of $3,000,000.00 which their efforts supported in creating.

### b. Class counsel should be awarded their reasonable attorneys' fee.

Rule 23(h) permits courts to award "reasonable attorney's fees … that are authorized by law or by the parties' agreement." The Fourth Circuit has held that "[t]here are two main methods for calculating the reasonableness of attorney's fees—the lodestar method and the percentage-of-recovery method"—and a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). Plaintiffs' counsel seeks an award of $900,000.00 in fees and an additional $78,965.18 in reimbursement of non-taxable advanced expenses. Further, a "*lodestar* cross-check" supports the award based upon the hours worked and reasonable hourly rate for Plaintiffs' counsel. The parties settled the case after significant investigation of the nearly 600 apartment properties pre-suit, extensive motions practice of complex issues of law, the zealous engagement in the discovery process, and multiple attempts at mediation. They were ready, willing, and able to pursue the litigation through trial, as they have done in previous class action cases in this court and elsewhere.

***First***, Plaintiffs suggest that the amount requested is reasonable as a percentage of recovery. $900,000.00 represents 30% of the percentage of recovery sum of $3,000,000.00. To determine

whether a requested percentage of a settlement is a reasonable award for attorney's fees, the Court considers: (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy. *Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 771 (D. Md. 2022). But the Court need not apply these factors in a "formulaic way" and may weigh the factors as appropriate for a particular case. *Id.* A "request for one-third of a settlement fund is common in this Circuit and generally considered reasonable." *Boger v. Citrix Sys.*, Civil Action 19-cv-01234-LKG (D. Md. June 1, 2023) (collecting cases).

Here, the attorneys' fee award in the amount of $900,000.00 is reasonable for several reasons. Class Counsel achieved a good result for the Class Members in this case, given the potential defenses to their claims. Each of the class members can expect to receive a significant sum of money for a difficult claim. The quality of Class Counsel's legal work is evidenced by the substantial benefit conferred to the Settlement Class in the face of significant litigation obstacles, such as surviving multiple motions to dismiss and conducting extensive discovery and in-person data collection in dozens of BVS apartments. Class Counsel are also experienced in class action litigation and this case involved complex analysis and coordination of multiple experts from multiple disciplines. Next, the risk of non-payment was a very realistic outcome when Class Counsel took this matter on a contingency fee basis. Fourth, this was a significantly complex case involving not only issues of class certification, but complex issues of statistics and environmental science.

Finally, public policy dictates the award of the 30% fee that is being sought by Class Counsel. Affordable but safe and secure housing is a significant issue in this case. Residents who find that they have leased an apartment complex that is less than secure, including problems with mold, environmental hygiene, or structure or electrical defects (all of which were alleged here) often find it

difficult to secure representation for reasonable redress through the judicial process. This is especially true for underprivileged and underserved residents who lack resources and knowledge regarding the legal options available to them. Lawyers, including contingency-fee-based lawyers, often cannot see a viable economic method to pursue litigation. In this matter, Class Counsel took on these concerns and produced a path forward for these litigants and the Class.

Additionally, Class Counsel overcame specific legal hurdles that were raised in efforts to defeat this case. Notably, this Court critically opined that the Prince George's County Code provided a cause of action for breach of implied warranty of habitability under general negligence principles, and that this applied to both landlords and property managers. *See* Doc. 76 at p. 54. Further, the Court denied the motion to strike the class allegations in this matter opining that the Complaint did not "warrant dismissal before the Plaintiffs even move for class certification." Doc. 138 at p. 3. These opinions were not guaranteed at the inception of this litigation, and the development of the law likely opens the door for future matters that previously might not have been able to secure legal counsel.

**Second**, Class Counsel's petition is a reasonable request when confirmed with a *lodestar* cross-check. Though it is not necessary to conduct a lodestar analysis, a lodestar cross-check may be undertaken in assessing the reasonableness of fees. *Kruger v. Novant Health, Inc.*, 2016 WL 6769066 at *4 (M.D.N.C. Sept. 29, 2016). Class Counsel have collectively devoted over 1000 attorney hours to litigating this case for several years through investigation, discovery, settlement and pre-approval. More specifically, the two law firms kept contemporaneous records of time spent on the matter and Class Counsel invoiced the following hours:[2]

---

[2] Counsel will provide time sheets at the Court's request, but if requested will move to do so under seal and *ex parte* with the Court due to perceived ethical requirements.

7

| Attorney | Hours | Adjusted Laffey Rate Award[3] | Dist. of Maryland Rate Award[4] | Award with Average of Rates[5] |
|---|---|---|---|---|
| Jonathan B. Nace | 167.60 | $147,152.80 | $71,230 | $109,191.40 |
| P. Joseph Donahue | 755.65 | $587,140.05 | $226,695 | $404,650.57 |
| Zachary A. Kelsay | 269.64 | $117,832.68 | $60,669 | $89,250.84 |
| **Total** | **1,192.89** | **$852,125.53** | **$358,594.00** | **$603,092.81** |

The Adjusted Laffey Matrix is an accepted method for identifying reasonable hourly rates of attorneys. *See DL v. Dist. of Columbia*, 924 F.3d 585 (D.C. Cir. 2019). This Rate provides for nearly the full $900,000.00 in fees despite any request for a multiplier. *See infra*. Therefore, the cross-check with the Laffey Rate supports the request.

If this Court questions the utility of the Adjusted Laffey rates, the District of Maryland has promulgated Guidelines for assessing fee petitions like this one, and Class Counsel's request is again a reasonable request. The Guidelines express "[t]hese rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees. The factors established by case law obviously govern over them… The Court recognizes that there are attorneys for whom, and cases for which, the market rate differs from these guideline rates." Loc. R., App. B, FN at p. 126. Case law in this jurisdiction has established that a "risk multiplier" of hourly rates and hours is appropriate in justification of a fee petition. *See e.g.*, *Kelly v. Johns Hopkins Univ.*, Civ. No. 16-2835-GLR, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020). The Guideline proposed hourly rates are less than the Adjusted Laffey Matrix. However, a justified multiplier of 2.51 supports a fee award of $900,000.00 as requested by Class Counsel using the District Court Guidelines. Such a multiplier is well within the range that is acceptable in the Fourth Circuit. *See Kelly* at *7 (approving 2.45 multiplier

---

[3] Rate for Jonathan B. Nace is $878 per hour; rate for Joseph Donahue is $777 per hour; rate for Zachary Kelsay is $437 per hour. Rates available at http://www.laffeymatrix.com/see.html (last reviewed on November 29, 2023).
[4] Rate for Jonathan B. Nace is $425 per hour; rate for Joseph Donahue is $300 per hour; rate for Zachary Kelsay is $225 per hour.
[5] Rate for Jonathan B. Nace is $651.50 per hour; rate for Joseph Donahue is $535.50 per hour; rate for Zachary Kelsay is $331 per hour.

of lodestar); *see also Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *5 (colleting cases approving Lodestar multipliers of 2.5 to 8.9).

Finally, using the average of the Adjusted Laffey rates and the Guideline rates, a multiplier of merely 1.49 again supports an award of $900,000.00. Again, this is well within the range of accepted methods of calculating reasonable attorney awards under the lodestar method in the Fourth Circuit. *Id.*

Class Counsel also notes another benefit to the Class that is not captured by the monetary fund that has been set up: the sale of the property to new ownership and management. The Plaintiffs-Class Representatives filed this lawsuit due to frustration with Defendants in their responsiveness to habitability concerns that they raised. With new ownership and management, the Class Representatives have new hope that their complaints will be addressed, and their concerns alleviated.

Thus, a fee of $900,000.00 is a reasonable award in this case. The fee represents 30% of the total settlement fund created and is supported by a Lodestar cross-check with both the Adjusted Laffey Matrix and the Local Rules' hourly rates with a reasonable multiplier.

### c. Plaintiffs' counsel seeks reimbursement of expenses incurred and paid.

Rule 23(h) makes clear that the Court may also award "non-taxable costs" in addition to attorneys' fees earned. "There is no doubt that costs, if reasonable in nature and amount, may appropriately be reimbursed from the common fund." *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 791 (E.D. Va. 2001) (citing *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994)). Plaintiffs, therefore, respectfully move for reimbursement of a total of $78,965.18 in costs with $64,943.73 reimbursed to Nidel & Nace, PLLC and $14,021.45 reimbursed to The Donahue Law Firm.

Each of the requested costs is reasonable and can be broken down as follows:[6]

---

[6] Plaintiffs' counsel will provide itemized statements of their expenses to the Court, but respectfully moves to do so only *ex parte* and under seal if the Court desires the statements.

| Category | Amount | ~Percentage of Costs |
|---|---|---|
| Expert Witness Fees | $64,091.94 | 81% |
| Mediators | $8,562.73 | 11% |
| Research Costs (Legal or Factual) | $4,112.75 | 5% |
| Postage/Delivery Services | $398.96 | 3% |

Each of the requested expenses was necessary to the litigation for this matter and were reasonable in both need and amount. Expert witnesses in the fields of structural engineering, industrial hygiene, environmental statistics, and real estate demographics were all necessary to prosecute this matter. Plaintiffs respectfully request reimbursement of them pursuant to Rule 23(h). These expenses have all been fully paid by Class Counsel as of the filing of this motion and were incurred and paid with no promise or reimbursement without success.

### III.  CONCLUSION

For all of the reasons set forth above, the Plaintiff requests the court to approve the payments of an incentive payment of $7,500 to each Class Representative and the payment to Class Counsel of $900,000.00 in attorneys' fees, which is 30% of the cash common fund recovered, and $78,965.18 in reasonable costs and expenses, consistent with the contingency fee basis on which they pursued the claim and for their time, dedication, expenses, and for the risk undertaken and results obtained for the class.

Wherefore, the Plaintiffs pray this Court grant this Petition for Fee and Incentive Awards as sought by this Motion.

Respectfully submitted,

*/s/ Jonathan Nace*
**Nidel & Nace, P.L.L.C.**
Jonathan Nace, Esquire
Bar Number: 18246
Zachary Kelsay

Bar Number: 30460
One Church Street
Suite 802
Rockville, MD 20850
Telephone:(202) 780-5153
jon@nidellaw.com
zach@nidellaw.com

P. Joseph Donahue
Bar Number 06245
**The Donahue Law Firm, LLC**
18 West Street
Annapolis, Maryland 21401
Telephone: (410) 280-2023
pjd@thedonahuelawfirm.com

*Attorneys for the Named Plaintiffs
and the Putative Class*

**CERTIFICATE OF SERVICE**

This is to certify that on this 1st day of December 2023, I caused a copy of the foregoing to be served upon all parties.

A copy was also caused to be made available on the Class Settlement Website at https://www.bedfordandvictoriastationsettlement.com/.

*/s/ Jonathan Nace*
Jonathan Nace, Esquire
Bar Number: 18246