## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CASA DE MARYLAND, INC., et al, | |
| Plaintiffs, | |
| v. | Civ. Action No.: 8:21-CV-01778-DKC |
| ARBOR REALTY TRUST, INC., et al, | |
| Defendants. | |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

Plaintiffs Anita Ramirez, Ramiro Lopez, Ervin Obdulio Rodas, Jesus Gonzalez, Maria Arely Bonilla, Maria Lara, and Norma Guadalupe Beltran (collectively, "Named Plaintiffs"), through undersigned counsel, submit this Memorandum of Law in support their Unopposed Motion for Final Approval of Settlement, Appointment of Class Counsel and Class Representatives, Certification for Settlement, and Dismissal of Lawsuit with Prejudice.

Plaintiffs incorporate by reference the Memoranda and Exhibits previously submitted in support of the preliminary approval of the Settlement: ECF 157, 160.

The Court preliminarily approved the Settlement by its Order dated October 26, 2023. ECF 162. Notice of the Settlement has been provided by mail, email, publication, and website, and class members have been given an opportunity to opt out or object. Specifically:

| | |
|---|---|
| Notices Mailed Via US Mail: | 996 Initial Mailings |
| Notices Returned: | 52 |
| Notices Remailed to New Address: | 9 |
| Remailed Notices Returned: | 0 |
| Mail Notices Deemed Undeliverable: | 43 |

| Email Notices Sent | 214 |
|---|---|
| Total Claims Received: | 167 |
| Valid Claims | 137 |
| Claims Disallowed as Deficient and not Cured or Duplicative: | 30 |
| Opt-Outs Received | 0 |
| Objections Received | 0 |

*See* Administrator's Report and Declaration, Ex. 1. A final hearing is set for March 8, 2024, at 10:00 am. ECF 162. Pursuant to that hearing, Plaintiffs move the Court to enter the proposed Final Order and Judgment for the reasons set forth herein.

## I.   INTRODUCTION

Plaintiffs brought this action individually and on behalf of others similarly situated under Federal Rule of Civil Procedure 23. ECF 1. Plaintiffs alleged that residents at Bedford Station and Victoria Station ("BVS") apartment complexes experienced health and safety issues during their tenancies at BVS, between July 2018 and May 2022.

The parties negotiated a Settlement Agreement following mediation with the assistance of Linda R. Singer, Esq. subject to the Court's approval. ECF 157, 157-1. The Settlement Agreement represents a compromise between the Parties' conflicting positions. The agreement provides for relief on the class claims set out below.

The Class consists of:

**All current and prior Tenants who resided at the Bedford and Victoria Station Apartment Complexes between July 19, 2018, and May 23, 2022.**

The Claims to be addressed on a class basis are: any and all actions, causes of actions, claims, demands that have been or could have been asserted in any form by Class Members, including but

not limited to, claims based on statutory or regulatory violations, tort (excluding personal injury and wrongful death), contract, common law causes of action, and any claims for damages (including any compensatory damages, special damages, consequential damages, punitive damages, statutory fines or penalties, attorneys' fees, costs and any equitable relief), direct or indirect, whether or not currently unknown, arising out of, based upon or related in any way to the allegations set forth in the First Amended Complaint.

The proposed settlement class meets the prerequisites of Rule 23(a). It is sufficiently numerous, and has commonality, typicality, and adequacy of representation. The requirements of Rule 23(b)(3) are also met: the common issues predominate, and a class action is superior to separate individual actions under the circumstances of the class.  Manageability of the class is not an issue in a settlement class.

The proposed settlement is fair and adequate. Defendants have already created and funded a common settlement fund of $3,000,000.00.  From that fund, class members who have submitted a valid claim will participate in distribution of the funds with weight afforded to the length of time that the claimant resided at Bedford Station or Victoria Station.   Specifically, a formulaic distribution of funds will be employed to compensate all such class members:

Individual Apartment Recovery =      ((N)*Net Settlement Fund) /
(Total Number of Occupancy Years for All Claimed Units)

N = Maximum Number of partial years residing at BVS during the Class Period (1, 2 or 3) but no more than 3 for a specific unit

Individuals who made a claim on the same apartment and for the same year will divide the apartment's recovery pro rata for the year.  The "Net Settlement Fund" will be calculated based upon the Gross Settlement fund of $3,000,000.00 less approved attorneys' fees, service fees to the Named Plaintiffs, and administrative costs.

Under the settlement, Class Members had the right to object to the Settlement and the Fee

and Service Awards Application; and to opt out of the settlement class. The Class Notice advised Class Members of this right and the requirements for objections, opting out, and other rights associated with their membership in the class. No individuals have opted out of the Proposed Class; no individuals objected to the Preliminarily Approved Class Settlement; and 137 have filed valid claims for participation in the Class.

Additionally, dismissed Plaintiff CASA de Maryland, Inc. and Defendants signed a settlement agreement to mutually release all claims against each other.  ECF 157.

The Plaintiffs contend that the Settlement Class meets the four prerequisites of Rule 23(a) for a class action. The Settlement Class meets the requirements for numerosity, commonality, typicality, and adequacy of representation by Plaintiffs and counsel. Moreover, the Settlement Class meets the requirements of Rule 23(b)(3) on the basis of predominance.

## II.    FACTUAL BACKGROUND

Defendants Bedford United, LLC and Victoria United, LLC ("Defendants") owned the BVS apartment complexes during the relevant time period of July 19, 2018 through May 23, 2022.  The Plaintiffs alleged that the BVS Apartments suffered from a lack of maintenance and neglect during their leases from July 2018 to June 2022.  During the pendency of the litigation, the BVS property complexes were sold to an unrelated and unaffiliated corporate buyer.  Following the Settlement Agreement, the Named Plaintiffs dismissed Arbor Realty Trust. Inc., Arbor Realty SR, Inc., Arbor Realty Limited Partnership, Arbor Management Acquisition Company, LLC, Hyattsville United, LLC, and Realty Management Services, Inc. pursuant to the Settlement Agreement.  The Settlement Agreement resolves all claims of the Named Plaintiffs against Defendants and the dismissed entities.

## III.    BENEFITS OF THE SETTLEMENT TO CLASS MEMBERS

The terms of the settlement are as follows: In exchange for a release of claims against Bedford United, LLC, Victoria United, LLC, Hyattsville United, LLC, Arbor Management Acquisition

Company, LLC, Arbor Realty Trust, Inc., Arbor Realty SR, Inc., Arbor Realty Limited Partnership, Realty Management Services, Inc., and each of its past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf (the "Released Entities"), Defendants shall create a gross settlement fund in the amount of $3,000,000.00.  The fund was created and fully funded on August 28, 2023.  The fund has been managed by a claims administrator, American Legal Claim Services, LLC, and shall be used to pay recovery to class members on their claims, administrative costs, any fee and expense award and any service awards. All other terms of the settlement are described in ECF 157 and 160.

The Settlement achieves a superior result for the Class. Following arms-lengths negotiations, the Parties crafted an agreement that provides substantial monetary relief for the class.

The class will receive substantial and real monetary benefit that would otherwise be difficult to obtain absent class certification.

This Court has already determined that the settlement set forth meets the criteria of Rule 23 for preliminary approval. The settlement set forth in the Settlement Agreement is believed by Plaintiffs and Class Counsel to be fair, adequate, and reasonable. As a result, Class Counsel respectfully submits that the settlement is favorable for the Class and should be Finally Approved.

## IV.    THE CLASS MEETS THE REQUIREMENTS FOR A CLASS ACTION

### A.    Factors To Be Considered In Certifying A Class Action

Fed. R. Civ. P. 23(a) imposes four prerequisites for a class action: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of fact or law

common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, the requirements of one of the three subsections of Rule 23(b) must be satisfied.

Plaintiffs here seek final approval of the Settlement Class pursuant to Rule 23(b)(3), where the plaintiff must demonstrate that (1) the common questions of fact or law predominate over questions affecting only individual members ("predominance") and (2) that a class action is superior to individual actions for the fair and efficient handling of the claim ("superiority").

The relevant factors in determining superiority include:

(1) The interest of the individual members in controlling the prosecution or defense of their case;

(2) the extent and nature of other litigation already commenced involving the parties;

(3) the desirability of concentrating the claims in a particular forum;

(4) the difficulties likely to be encountered in the management of the case.

*See* Rule 23(b)(3).

   i.   *Ascertainability*

Rule 23 contains an implicit "threshold requirements that the members of a proposed class be readily identifiable." *EQT Prod. Co. v. Adair,* 764 F.3d 347, 358 (4th Cir. 2014) (internal quotation omitted). Class certification requires that "a court can readily identify the class members in reference to objective criteria." *Id.* Here, the settlement terms limit class members to individuals who were tenants at BVS Apartments during a specific timeframe. These are objective criteria because individuals can be identified through their lease agreements with the Defendants and/or through other sworn, documentary proof evidencing residency during the relevant time period, and the agreement includes a temporal limitation on these claims. Thus, the class is capable of being identified based on

objectively discernable criteria.

   *ii.   Numerosity*

The numerosity prerequisite is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 18-40. *Cypress v. Newport News General & Nonsectarian Hospital Ass'n.*, 375 F.2d 648, 653 (4th Cir.1967) (18 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326 (7th Cir.1969) (40 sufficient).

Defendants' records indicate that there are approximately 589 units at BVS, most with multiple occupants, making the total number of tenants at BVS during the applicable class period sufficiently numerous to satisfy Rule 23(a)(1)'s numerosity requirement.  Additionally, over 140 valid claims have been received, further solidifying that numerosity has been satisfied.

   *iii.   Commonality*

Rule 23(a)(2)'s commonality requirement for class certification requires that "there are questions of law or fact common to the class." This standard "is a liberal one that cannot be defeated by the mere existence of some factual variances among class members." *Smith v. Res-Care, Inc.,* Civil Action No. 3:13-5211, at *8 (S.D.W. Va. Feb. 3, 2015).

Here, commonality exists because the Plaintiffs' claims depend on the resolution of the following common contentions:

1.   Whether Defendants violated the implied warranty of habitability;
2.   Whether Defendants violated local codes and ordinances including, but not limited to, Sec. 13-153 of the Prince George's County Code of Ordinances;
3.   Whether Defendants failed to perform adequate maintenance at BVS;
4.   Whether the issues within the units were the product of Defendants' purported failure to provide reasonable maintenance.
5.   Whether the conditions at BVS were sufficiently severe to consider the entire complex uninhabitable under the Prince George's County Housing Code; and
6.   Whether Defendants had constructive notice of the conditions at BVS.

If a class settlement were not certified, each individual plaintiff would offer the same evidence, including the same experts, against Defendants, and Defendants in turn would likely offer the same counter evidence, including experts, to defend itself. These questions and their corresponding answers, therefore, are common to the class members.

   *iv.* *Typicality*

Rule 23(a)(3) requires that the class representative have claims or defenses "typical of the claims or defenses of the class." As with commonality, the threshold requirement for typicality is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (citation omitted). Typicality does not require the claims of the class members to be perfectly identical; rather, typicality is satisfied where the claims are based on the same remedial legal theory. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

In short, the inquiry is whether Plaintiffs are class members that can assert the same claims, on the same basic facts as the other class members. That is the case here because all the named Plaintiffs were tenants at BVS between July 19, 2018, and May 23, 2022, and each have claims relating to habitability and alleged maintenance issues like the proposed class members.

   *v.* *Adequacy*

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." This requires a two-pronged inquiry: "1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *Donaldson v. Primary Residential Mortg., Inc.*, Civil No. ELH-19-1175, at *11 (D. Md. May 28, 2021).

   (a) Adequacy of Representatives

The requirement of adequate representation is not a search for a perfect plaintiff with an unassailable claim.  The requirement merely assures that absent class members who will be bound by

the result are protected by a vigorous and competent prosecution of the case by someone who shares their interests. *See* 1 NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS, § 3:21 (4th ed. 2004).

The Named Plaintiffs in this case do not have interests antagonistic to the class members because they have a shared interest in seeking compensation for their shared harm. To date, they have actively participated in this litigation, and will continue to do so on behalf of the members of the class. Plaintiffs are like the class members and share their interests in that all were tenants at BVS during the same timeframes.

(b) Adequacy of Counsel

The adequacy of counsel is addressed by Rule 23 (g) which provides:

(g)  Class Counsel.

(1) Appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

Consideration of each of these factors warrants appointment of the Plaintiffs' counsel as class

counsel in this matter.

INVESTIGATION: Counsel undertook substantial efforts to investigate the class claims before filing this case in 2021. Counsel spoke with hundreds of class members, who retained proposed class counsel to represent their claims. Counsel also recruited a Certified Industrial Hygienist and several Structural Engineers to perform multiple day-long site inspections of class members' units on May 4, 2021, July 20-21, 2022, and March 21-23, 2023, for which class counsel were also present. Plaintiffs' counsel also retained and consulted with an expert in Environmental Statistics who determined whether a representative sample could be taken and whether the results portended the existence of class-wide habitability concerns. Plaintiffs' counsel have litigated this case through three day-long mediations, multiple motions to dismiss, multiple discovery motions, and have led efforts to obtain discovery from the Defendants and third-parties. Counsel have also reviewed thousands of pages of the discovery from the Defendants and third parties.

EXPERIENCE & KNOWLEDGE OF APPLICABLE LAW: Plaintiffs' counsel has combined extensive experience with class action litigation, including environmental class actions, and Maryland habitability law in their representation of the proposed class members.

RESOURCES COUNSEL HAS COMMITTED: To date, Plaintiffs' counsel combined have devoted more than one-thousand (1000) hours to this case and will devote all additional time necessary to ensure that every claim asserted and every paper filed is well founded and done to the best of their ability and with allocation of appropriate resources.[1]  Plaintiffs' counsel will continue to commit the necessary resources to litigate this case to its conclusion.

---

[1] Class counsel have provided specific hours and a proposed blended rate in their petition for approval of attorneys' fees. ECF 163.

B. Rule 23(b)(3) Factors

i.    *Predominance*

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members..." "Where the purported class members were subject to the same harm resulting from the defendant's conduct and the qualitatively overarching issue in the case is the defendant's liability, courts generally find the predominance requirement to be satisfied." *Starr v. Credible Behav. Health, Inc.*, Civil No. 20-2986 PJM, at *7 (D. Md. May 25, 2021) (cleaned up). "The entire notion of predominance implies that the plaintiffs' claims need not be identical, and, as the Supreme Court has noted, a class can meet this requirement 'even though other important matters will have to be tried separately.'" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (cleaned up).

The predominance requirement is satisfied in this case as common issues clearly predominate. The presence of individual questions regarding the extent of harm or specific effects of the Defendants' conduct on individuals does not undermine predominance. The facts and legal elements essential to the claims of all class members are identical: Plaintiffs assert the existence of widespread uninhabitability issues at BVS and attribute the failure to address these issues to the insufficient funds allocated by Defendants for maintaining the units of proposed class members.

ii.    *Superiority*

Superiority is the second prong of Rule 23(b)(3) and it "requires the court to analyze whether the proposed class action would be superior to other available methods for the fair and efficient adjudication of the controversy raised by the action." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 449 (4th Cir. 2003) (cleaned up). Rule 23(b)(3) aims to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponent into court at all." *Amchem*, 521 U.S. at 617. No known competing actions have been filed and there is no evidence of any

competing interests in controlling the litigation. Concentrating the litigation in this Court is desirable because the Court is familiar with this matter, and it is the proper venue for claims arising from Defendants' local activities. Managing individual actions will clearly be more onerous than a class action. Requiring duplicative discovery and multiple trials—likely hundreds of individual suits—regarding the same issues would be wasteful, unfair to the litigants, and would unnecessarily consume judicial resources. The size of this housing case, coupled with its attendant cost of experts, discovery, and trial, would render pursuit of individual claims economically infeasible.

Further, the fact that 167 claimants have actively participated by submitting claims on behalf of the more voluminous class, in addition to the complete absence of either opt-outs or objections further demonstrates the superiority of the class settlement. That no class members have opted out to pursue an individual claim or objected to the terms of the settlement further displays the superiority of the class action vehicle in obtaining beneficial relief to the class as a whole.

Thus, all requirements for Rule 23(b) are satisfied.

## V.    THE SETTLEMENT IS FAIR AND ADEQUATE

Once it has been determined that the Class should be certified, the Court must additionally evaluate the proposed class settlement for purposes of Final Approval. The settlement must be fair and adequate to receive approval.  "'The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement.'" *Boger v. Citrix Sys.*, Civil Action 19-cv-01234-LKG, 2023 WL 3763974, at *8 (D. Md. June 1, 2023) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).

Rule 23 states the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Fourth Circuit has developed some factors in assessing the fairness of the Proposed Class Settlement, "the Court considers: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation. *Boger,* 2023 WL 3763974, at *9 (citing *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) (citing *Jiffy Lube*, 927 F.2d at 159)). Ultimately, "[t]he fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Boger,* 2023 WL 3763974, at *9 (quoting *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *Jiffy Lube*, 927 F.2d at 159)). Each of these factors weighs in favor of the proposed settlement.

### 1. *Adequate representation*

The Named Plaintiffs possess a strong understanding of the issues at hand and are committed to diligently pursuing the interests of the class members. The Named Plaintiffs participated in three day-long mediations before achieving a settlement. Likewise, Class counsel are highly experienced in class action litigation and their expertise and resources ensure that the class members will be effectively represented throughout the litigation process.

### 2. *The settlement was negotiated at arm's length.*

There is no collusion between the parties. The settlement was reached through arm's length negotiations between experienced counsel during mediation and with the participation by a private mediator, Linda Singer. The terms were discussed in good faith, and both the Plaintiffs and Defendants had the opportunity to present their respective positions and negotiate to an agreed-upon outcome. Plaintiffs are represented by experienced class action counsel. The Defendants are represented by well-respected defense counsel, experienced in cases of this type. The resulting agreement reflects a fair and reasonable compromise that benefits the class members.

### 3. *The relief provided is adequate.*

The relief provided for the class is adequate considering the costs, risks, and delay of trial and appeal, which are substantial and burdensome compared to the amount of recovery that each class member would be entitled to. After an adequate notice and claims period, 141 valid claims were made for a total of 390 years.  Each year of tenancy will result in payment of $4,976.49[2] to each class member (subject to *pro rata* reduction for claims made on the same apartment for the same time period).  This yearly recovery is aligned with the estimate provided to the Court in Plaintiff's motion for preliminary approval, which estimated the average yearly recovery to be $4,750.00, ECF 161. Absent this settlement agreement, class members would face significant challenges, expenses, and delays in obtaining relief, if any, including moving for class certification, completing fact and expert discovery, briefing and litigating summary judgment, and a lengthy trial. The settlement agreement complies with all necessary requirements and safeguards the rights of the class members. Moreover, none of the class members elected to opt out or object to the settlement, further demonstrating that the relief provided is adequate.

---

[2] This estimate assumes that the Court grants Plaintiff's requested relief for attorneys' fees, costs, class representative awards, and the costs to the settlement administrator.

4. *The proposal treats class members equitably relative to each other.*

The settlement agreement provides fair and proportionate relief to all class members based on the harm suffered due to the defendants' actions. The distribution of compensation is structured in a manner that prioritizes fairness and avoids any arbitrary distinctions among class members. Due consideration is given to the fact that some claimants will have resided in alleged uninhabitable conditions longer than others, and so claimants that resided at BVS for a longer period will receive more compensation than others. Further, the claims administration process comports with due process and ensures that the class members with valid claims will not have their recovery diluted by persons without an actual claim to recovery. The proposal ensures that all class members are treated equitably and receive appropriate relief for their respective claims.

## VI.     NOTICE WAS PROVIDED AS DIRECTED BY THE COURT.

After preliminary approval, the Parties provided notice of the settlement in accordance with the parties' agreement and this Court's preliminary approval order. See Administrator's Report and Declaration, Ex. 1. The class notice consisted of direct notice of the form of mail and email notice, as well as a settlement website where class members could view and access both English and Spanish versions of the class notice. Email notice was sent to 214 class members for whom the Defendants provided an email address. Administrator's Report and Declaration, Ex. 1. The administrator mailed notice to 996 class members. Pursuant to these efforts, 52 notices were returned as undeliverable and the administrator re-sent the notice to 9 class members for whom it was able to determine an updated mailing address. None of those 9 mailings have been returned, resulting in a final total of only 43 mailings being deemed undeliverable after reasonable efforts. The publication notice was published for a period of four consecutive weeks in El Tiempo Latino (in Spanish) in November 2023 and in Hyattsville Life and Times (in English) in December 2023. *Id.*

The administrator received a total of 167 total claims. The administrator validated 137 claims

as valid and meeting the requirements, and 26 claims were disallowed or were deficient. Pursuant to the settlement agreement, the administrator followed up with these 26 claims to cure the deficiencies by sending out a notice and requesting that the identified deficiencies in the claim submission be cured within the requisite cure period. *Id.* Following such attempts to cure and in light of any additional documentation received from these claimants, ALCS determined that these claims were not valid because they lacked the necessary documentation. 4 claims were denied as duplicative. *Id.* No claims were received by ALCS after the claims submission deadline. *Id.* No opt-outs or objections were received.

The class notice adequately described the litigation and the Settlement Agreement and the procedures to opt out and object. The Notices further explained the amount of the Settlement, the plan of allocation, the requirements for a valid claim, Class Counsel's intent to apply for an award of attorneys' fees and expenses and for class representative service awards. Notice was also provided to state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

## VII.  CLASS COUNSEL SHOULD BE AWARDED THEIR REASONABLE ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Rule 23(h) permits courts to award "reasonable attorney's fees ... that are authorized by law or by the parties' agreement." The Fourth Circuit has held that "[t]here are two main methods for calculating the reasonableness of attorney's fees—the lodestar method and the percentage-of-recovery method"—and a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). Plaintiffs' counsel seeks an award of $900,000.00 in fees and an additional $78,965.18 in reimbursement of non-taxable advanced expenses.

Counsel has filed a Petition for Plaintiff Awards, Award of Attorneys' Fees and Reimbursement of Expenses, and incorporates that Petition herein. *See* Doc. 163. Class Counsel seek an award of a contingency fee equal to 30% of the common fund of $3,000,000.00. The importance

of a contingency arrangement to promote access to lawyers and to the courts is well established.  *See generally In re Abrams & Abrams, P.A.*, 605 F.3d 238 (4th Cir. 2010).  Seven factors have been identified in assessing the reasonableness of a fee petition in a class action settlement.  *See Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 771 (D. Md. 2022).  Here, Class Counsel achieved a good result for the class members.  Those who filed valid claims can expect to receive approximately $4,976.49 per year of their tenancy.  The litigation was hard-fought on all sides and included several obstacles including multiple motions to dismiss and conducting extensive discovery and in-person data collection in dozens of BVS apartments. Class Counsel are also experienced in class action litigation and this case involved complex analysis and coordination of multiple experts from multiple disciplines. Next, the risk of non-payment was a very realistic outcome when Class Counsel took this matter on a contingency fee basis.  Fourth, this was a significantly complex case involving not only issues of class certification, but complex issues of statistics and environmental science.

Additionally, a "*lodestar* cross-check" confirms the reasonableness of the fee sought though it is not necessary.  *Kruger v. Novant Health, Inc.*, 2016 WL 6769066 at *4 (M.D.N.C. Sept. 29, 2016).  Class Counsel have collectively devoted over 1000 attorney hours to litigating this case for several years through investigation, discovery, settlement and pre-approval. More specifically, the two law firms kept contemporaneous records of time spent on the matter and Class Counsel invoiced the following hours:[3]

| Attorney | Hours | Adjusted Laffey Rate Award[4] | Dist. of Maryland Rate Award[5] | Award with Average of Rates[6] |
|---|---|---|---|---|
| Jonathan B. Nace | 167.60 | $147,152.80 | $71,230 | $109,191.40 |

---

[3] Counsel will provide time sheets at the Court's request, but if requested will move to do so under seal and *ex parte* with the Court due to perceived ethical requirements.

[4] Rate for Jonathan B. Nace is $878 per hour; rate for Joseph Donahue is $777 per hour; rate for Zachary Kelsay is $437 per hour.  Rates available at http://www.laffeymatrix.com/see.html (last reviewed on November 29, 2023).

[5] Rate for Jonathan B. Nace is $425 per hour; rate for Joseph Donahue is $300 per hour; rate for Zachary Kelsay is $225 per hour.

[6] Rate for Jonathan B. Nace is $651.50 per hour; rate for Joseph Donahue is $535.50 per hour; rate for Zachary Kelsay is $331 per hour.

| | | | | |
|---|---|---|---|---|
| P. Joseph Donahue | 755.65 | $587,140.05 | $226,695 | $404,650.57 |
| Zachary A. Kelsay | 269.64 | $117,832.68 | $60,669 | $89,250.84 |
| **Total** | **1,192.89** | **$852,125.53** | **$358,594.00** | **$603,092.81** |

The suggested *Laffey* Rate provides for nearly the full $900,000.00 in fees without any request for a multiplier.  The District of Maryland Rate, or an averaging of the two published rates, provides for the sought award with as reasonable multiplier, as permitted by the Fourth Circuit.  *See e.g.*, *Kelly v. Johns Hopkins Univ.*, Civ. No. 16-2835-GLR, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020).  Therefore, the cross-check supports the request.

Here, there is also a complete lack of objections to the Fee Petition that was filed on December 1, 2023, which "tends to show that at least from the class members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by class counsel." *Singleton*, 976 F. Supp. 2d at 684 (D. Md. 2013).

Finally, Rule 23(h) makes clear that the Court may also award "non-taxable costs" in addition to attorneys' fees earned.  "There is no doubt that costs, if reasonable in nature and amount, may appropriately be reimbursed from the common fund." *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 791 (E.D. Va. 2001) (citing *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994)).  Plaintiffs, therefore, respectfully move for reimbursement of a total of $78,965.18 in costs with $64,943.73 reimbursed to Nidel & Nace, PLLC and $14,021.45 reimbursed to The Donahue Law Firm.

Each of the requested costs is reasonable and can be broken down as follows:[7]

| Category | Amount | ~Percentage of Costs |
|---|---|---|
| Expert Witness Fees | $64,091.94 | 81% |
| Mediators | $8,562.73 | 11% |

---

[7] Plaintiffs' counsel will provide itemized statements of their expenses to the Court, but respectfully moves to do so only *ex parte* and under seal if the Court desires the statements.

| | | |
|---|---|---|
| Research Costs (Legal or Factual) | $4,112.75 | 5% |
| Postage/Delivery Services | $398.96 | 3% |

Each of the requested expenses was necessary to the litigation for this matter and were reasonable in both need and amount.  These expenses have all been fully paid by Class Counsel as of the filing of this motion and were incurred and paid with no promise or reimbursement without success.  *See also* Doc. 168 at pp. 9-10.

## VIII.   PLAINTIFFS SHOULD EACH BE AWARDED $7,500 AS AN INCENTIVE AWARD

Anita Ramirez, Ramiro Lopez, Ervin Rodas, Jesus Gonazlez, Maria Bonilla, Maria Lara and Norma Beltran each move for an award of $7,500.00.  "Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015). Here, the Named Plaintiffs reflects the efforts made to produce a class-wide settlement that has benefits beyond themselves.  *See* Doc. 163 at pp. 4-5

The requested award is within the range of awards typically made in this District. *Berry,* 807 F.3d at 613 (4th Cir. 2015)(upholding award of $5,000); *Miller v. Prestige Financial*, Case No. 09-1671-BEL, ECF 36 (awarding $6,000 incentive award to each of 2 representative plaintiffs); *Hauk v. LVNV Funding, LLC.*, CCB-09-003238 (awarding $4,000 in incentive payments to plaintiffs); *Muga v. BB & T*, WDQ-10-00890 (awarding a $7,500 incentive payment); *Castillo v. Nagle & Zaller, P.C.*, WDQ-12-002338 (awarding $3,500 incentive payment); *Yost v. Elon Property Management Company,* 2023 WL 185178 at * 10 (D. Md. Jan. 13, 2023)(awarding $5,000.00 incentive payment); *Curry v. Money One Federal Credit Union,* 2021 WL 5839432 at * 4 (D. Md. Dec. 9, 2021)(awarding $6,000.00 incentive payment); *Smith v. Toyota Motor Credit Corp.,* 2014 WL 4953751 (D. Md. Oct. 2, 2014)(awarding $5,000

incentive payments to each plaintiff). Therefore, it is respectfully requested that the incentive payment be approved.

### IX.    CONCLUSION

The Court should enter the Proposed Final Order and Judgment which includes the following: (1) final approval and certification of the Settlement Class, with the Named Plaintiffs as class representatives and their counsel as Class Counsel; (2) final approval of the Settlement Agreement; and (3) dismissal of the Released Claims with prejudice as provided for in the Settlement Agreement.

Respectfully submitted,

*/s/ Jonathan Nace*
**Nidel & Nace, P.L.L.C.**
Jonathan Nace, Esquire
Bar Number: 18246
Zachary Kelsay
Bar Number: 30460
One Church Street
Suite 802
Rockville, MD 20850
Telephone:(202) 780-5153
jon@nidellaw.com
zach@nidellaw.com

P. Joseph Donahue
Bar Number 06245
**The Donahue Law Firm, LLC**
18 West Street
Annapolis, Maryland 21401
Telephone: (410) 280-2023
pjd@thedonahuelawfirm.com

*Attorneys for the Named Plaintiffs*
*and the Putative Class*

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on this 23rd day of February 2024, I caused a copy of the foregoing to be served upon all parties and the Court via ECF service.

A copy was also caused to be made available on the Class Settlement Website at https://www.bedfordandvictoriastationsettlement.com/.

_/s/ Jonathan Nace_　　　　
Jonathan Nace, Esquire
Bar Number: 18246
